# IN THE DISTRICT COURT OF THE UNITED STATES

## for the Western District of New York

_____

MAY 2018 GRAND JURY
(Impaneled 05/04/2018)

**THE UNITED STATES OF AMERICA**

**INDICTMENT**

**-vs-**

**Violations:**

**JOSEPH BONGIOVANNI**

Title 21, United States Code,
Section 846;
Title 18, United States Code, Sections
371, 201(b)(2)(A), 201(b)(2)(C),
1001(a)(2), and 1519
(11 Counts and Forfeiture Allegation)

## INTRODUCTION

### The Grand Jury Charges That:

As relevant to this Indictment:

1.    The defendant, **JOSEPH BONGIOVANNI** ("**BONGIOVANNI**"), began his career in law enforcement as an Erie County Sheriff Deputy in or about 1995. In or about 1998, the defendant **BONGIOVANNI** joined the Drug Enforcement Administration ("DEA") as a Special Agent ("SA") and his career with the DEA took him out of the Buffalo area for a period of time. In or about 2001, until his retirement on or about February 1, 2019, the defendant **BONGIOVANNI** was assigned to Buffalo, New York, DEA Resident Office.

2.    As a DEA SA, the defendant **BONGIOVANNI** was a "public official" as defined in Title 18, United States Code, Section 201(a)(1).

3.      The defendant **BONGIOVANNI** had friends and associates who he knew were involved in possession, use, distribution, and importation of controlled substances including marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance. The defendant **BONGIOVANNI**'s friends and associates who were involved in possession, use, and distribution, and importation of controlled substances, included, among others, individuals he believed to be members of, connected to, or associated with Italian Organized Crime (IOC) in the Western District of New York and elsewhere.

4.      The DEA was an agency within the executive branch of the Government of the United States, and the DEA is charged with, among other things, investigating narcotics trafficking activity and enforcing the controlled substance laws of the United States. The DEA required its SAs to uphold the rule of law, and to act with integrity in their personal and professional actions.

5.      As a DEA SA, the defendant **BONGIOVANNI** was specially trained in the investigation of drug trafficking activity and was familiar with DEA policy, record keeping, procedures, and databases.

6.      The lawful functions of DEA SAs included, but were not limited to, initiating and conducting investigations; interviewing witnesses and DEA confidential sources; protecting the identity of witnesses and DEA confidential sources; protecting the integrity, confidentiality, and operational security of federal and state investigations; collecting and preserving evidence; preparing truthful and accurate DEA memoranda and reports; preparing search warrant and criminal complaint affidavits, documenting information that was helpful to current and future DEA investigations; arresting individuals who had violated federal and

state drug laws; preparing and proposing DEA cases for prosecution; and acting with honesty and integrity in their representations and communications with prosecutors and other members of law enforcement.

7.      The defendant **BONGIOVANNI**, through training and experience, was familiar with how the DEA and other law enforcement agencies conducted drug trafficking investigations, and how DEA agents and other law enforcement officers utilized de-confliction databases as a means to coordinate investigations with other agents and law enforcement agencies.

8.      De-confliction databases enabled law enforcement officers conducting an investigation of a specific individual or specific individuals to be alerted if another law enforcement officer or agency had an investigative interest in the same individual or individuals.

**<u>COUNT 1</u>**

**(Conspiracy to Defraud the United States)**

**The Grand Jury Further Charges That:**

1.      The allegations of the Introduction are repeated and re-alleged and incorporated by reference as if set forth fully herein.

2.      Beginning in or about 2008 and continuing until in or about June, 2019, in the Western District of New York, and elsewhere, the defendant, **JOSEPH BONGIOVANNI**, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown:

a.      to defraud the United States and the Drug Enforcement Administration (DEA), an agency of the United States, by interfering with and obstructing by means of deceit, craft, and trickery, the lawful and legitimate governmental functions and rights of the DEA, that is:

i.      the right to have its business and its affairs, and the transaction of the official business of the DEA conducted honestly and impartially, free from corruption, fraud, improper and undue influence, dishonesty, unlawful impairment and obstruction; and

ii.     the right to the conscientious, loyal, faithful, disinterested and unbiased services, decisions, actions and performance of his duties by the defendant, **JOSEPH BONGIOVANNI**, in his official capacity as a DEA SA free from corruption, partiality, improper influence, bias, dishonesty and fraud in dealing with the DEA and other law enforcement agencies;

b.      directly and indirectly, corruptly to give, offer, and promise a thing of value to a public official, with intent to influence official acts and induce a public official to do an act and omit to do an act in violation of his official duty, in violation of Title 18, United States Code, Sections 201(b)(1)(A) and 201(b)(1)(C); and

c.      directly and indirectly, corruptly to demand, seek, receive, accept, and agree to receive and accept, a thing of value personally, in return for being influenced in the performance of an official act, and being induced to do an act and omit to do an act in violation of official duty in violation of Title 18, United States Code, Sections 201(b)(2)(A) and 201(b)(2)(C).

## MANNER AND MEANS

3.      The conspiracy was carried out by the Manner and Means set forth below.

4.      It was part of the conspiracy that, in order to build trust and maintain continuity with his coconspirators, the defendant **BONGIOVANNI** did not investigate his friends and associates and used his position as a DEA SA in Buffalo, New York, to shield his friends and associates, including those he believed were connected to or associated with IOC, from criminal investigations.

5.      It was part of the conspiracy that, in exchange for payments he received and in order to ingratiate himself to individuals whom he believed were members and associates of IOC, the defendant **BONGIOVANNI** utilized his position as a DEA SA to attempt to dissuade other members of law enforcement: from conducting investigations of his coconspirators, friends, associates and individuals the defendant believed to be connected to or associated with IOC; and from conducting investigations into any individuals who may have been able to expose his criminal activities and those of his friends, associates, and individuals the defendant believed to be connected to or associated with IOC.

6.      It was part of the conspiracy that, in exchange for payments he received, and to ingratiate himself to individuals he believed to be connected to or associated with IOC, the defendant **BONGIOVANNI** used his position as a DEA SA to gain and provide information about federal investigations, and about individuals cooperating or suspected to be cooperating with law enforcement, to enable his coconspirators, friends, and associates to continue their drug trafficking activities without disruption by law enforcement.

7.      It was part of the conspiracy that, between in or about 2008 and in or about 2017, in exchange for bribes totaling approximately at least $250,000 in United States

currency, the defendant **BONGIOVANNI** used his position as a DEA SA to protect the coconspirator drug traffickers who were paying him bribes and their associates.

8.     It was part of the conspiracy that the defendant **BONGIOVANNI** was paid bribes on a recurring basis in exchange for regular debriefings whereby the defendant **BONGIOVANNI** provided information designed to protect and conceal the drug trafficking activities of his friends, associates, and coconspirators.

9.     It was part of the conspiracy that, utilizing state and DEA de-confliction databases, the defendant **BONGIOVANNI** would be alerted when other agents were looking at the drug trafficking activity of individuals associated with the defendant **BONGIOVANNI** or under his protection.

10.     It was part of the conspiracy that, in exchange for bribes he received and in order to create the appearance of a legitimate DEA investigation and to maximize his ability to utilize de-confliction databases to monitor the activities of other law enforcement agents and agencies, and to ensure no other law enforcement agents or agencies successfully investigated the drug traffickers under the defendant **BONGIOVANNI**'s paid protection, the defendant **BONGIOVANNI** initiated a DEA case file in the names of coconspirator drug traffickers who were paying the defendant **BONGIOVANNI** protection bribes.

11.     It was part of the conspiracy that the defendant **BONGIOVANNI** utilized his access to DEA databases and information, meetings with other law enforcement officers and Assistant United States Attorneys, and knowledge of law enforcement techniques, methods,

and procedures, to advise and assist drug traffickers in avoiding law enforcement scrutiny and detection.

12.     It was part of the conspiracy that, in exchange for bribes he received, defendant **BONGIOVANNI** provided information to his coconspirators about the existence of investigations, the status of investigations, the identity of cooperators, and specific information, including specific techniques utilized or under consideration in investigations that he learned through his position as a DEA SA and his interactions with other members of law enforcement.

13.     It was part of the conspiracy that, in exchange for bribes he received and to protect the continuing drug trafficking operations of his coconspirators, after opening a DEA file, the defendant **BONGIOVANNI** feigned legitimate investigation so that information about his coconspirators, and anyone seeking to cooperate against them, would be funneled towards him, and so inducing other members of law enforcement to defer investigation of his coconspirators to him.

14.     It was part of the conspiracy that, after feigning legitimate investigation for a period of time so that information about his coconspirators, and anyone seeking to cooperate against them, would be funneled towards him, the defendant **BONGIOVANNI** closed the DEA file related to drug traffickers under defendant **BONGIOVANNI's** paid protection knowing that, even with the file closed, he would continue to receive de-confliction notices related to individuals under his protection.

15.     It was part of the conspiracy that, even after the defendant **BONGIOVANNI** closed the DEA file related to drug traffickers under the defendant **BONGIOVANNI**'s paid protection, he continued to represent to others in law enforcement that he had an active investigation in an effort to dissuade other members of law enforcement from commencing and developing an investigation of his friends, associates, and coconspirators.

16.     It was part of the conspiracy that the defendant **BONGIOVANNI** made false entries and representations in DEA documents, and false statements and representations to other members of law enforcement, in order to protect his friends, associates, and coconspirators from investigation, arrest, prosecution, and potential incarceration.

17.     It was part of the conspiracy that the defendant **BONGIOVANNI** would falsely deny to other agents of the DEA the existence of any connections between himself and individuals he knew to be involved in the possession, use, distribution, and importation of controlled substances, and individuals he believed were connected to or associated with IOC.

18.     It was part of the conspiracy that the defendant **BONGIOVANNI** provided cover stories to his coconspirators and would instruct such individuals that, if the communications or meetings between the defendant and the coconspirators were ever questioned by law enforcement, the conspirators should conceal the true nature of their relationship with the defendant **BONGIOVANNI** by pretending the defendant **BONGIOVANNI** was recruiting such individuals to be DEA informants.

19.     It was part of the conspiracy that, upon request, the defendant **BONGIOVANNI** made efforts to use his position as a DEA SA to help coconspirators get out of trouble with other law enforcement agencies.

20.     It was part of the conspiracy that the defendant **BONGIOVANNI** would conceal his possession, use, and distribution of controlled substances, the bribes he received, and the assistance he provided to his friends, associates, coconspirators, and individuals who he believed were members of, connected to, or associated with IOC.

**<u>OVERT ACTS</u>**

21.     In furtherance of the conspiracy and to effect the objects thereof, the following overt acts were committed in the Western District of New York, and elsewhere, by the defendant and others.

22.     Between in or about 2008 and in or about 2017, the defendant **BONGIOVANNI** was paid and accepted bribes on a recurring basis totaling approximately at least $250,000 in United States currency in exchange for protection from arrest and prosecution.

23.     Between in or about 2008 and in or about 2017, the defendant **BONGIOVANNI** provided information about investigations, including the status of specific investigative techniques, potential witnesses, and confidential sources during routine recurring meetings with drug traffickers who were paying him bribes.

24.     Between on or about November 1, 2009, and on or about November 3, 2009, in response to information he received from Coconspirator 1, a person known to the Grand Jury, the defendant **BONGIOVANNI** contacted the United States Probation Office in an effort to intercede on Coconspirator 1's behalf and to help Coconspirator 1 mitigate any sanctions that might be imposed by the Probation Office for Coconspirator 1 violating the terms and conditions of his term of federal supervised release.

25.     On or about November 6, 2009, the defendant **BONGIOVANNI** authored an official DEA 6 report in which the defendant **BONGIOVANNI** made false, fraudulent, fictitious, and misleading statements, namely, that that Coconspirator 1 had acted as a confidential source and had provided information to the DEA in narcotics investigations.

26.     On or about November 6, 2009, in the DEA 6 report referenced above, the defendant **BONGIOVANNI** omitted documenting any telephone number for Coconspirator 1.

27.     In or about November 2009, the defendant **BONGIOVANNI** engaged in conduct and made statements portraying Coconspirator 1 as a DEA confidential source, when in fact Coconspirator 1 was not a DEA confidential source, in order to dissuade a member of another federal law enforcement agency from investigating and potentially charging Coconspirator 1 with federal criminal offenses.

28.     Between on or about November 6, 2009, and on or about October 31, 2018, the defendant **BONGIOVANNI** did not document in any DEA reports or memoranda any information about Coconspirator 1, and did not document the substance of any in-person or

telephonic contacts he had with Coconspirator 1, a convicted felon and individual whom the defendant **BONGIOVANNI** knew and had reason to know was involved in possession, use, and distribution of controlled substances, and believed to be a member of, connected to, or associated with IOC.

29.     In or about January 2013, the defendant **BONGIOVANNI** submitted names, including the names of drug traffickers and associates who were paying him bribes, and the defendant's contact information, to "Safety-Net," a state de-confliction system.

30.     On or about November 28, 2012, the defendant **BONGIOVANNI** opened DEA Case Number C2-13-0026.

31.     On or about December 24, 2012, the defendant **BONGIOVANNI** added target names to the file in DEA Case Number C2-13-0026, including the names of drug traffickers and associates who were paying him bribes.

32.     In or about April 2013, the defendant **BONGIOVANNI** became aware of a individual, known to the Grand Jury, who could cooperate against the drug traffickers paying the defendant **BONGIOVANNI** bribes, and the defendant **BONGIOVANNI** signed up the individual as a DEA confidential source ("CS") with himself as the handling agent.

33.     On or about May 2, 2013, in DEA Case Number C2-13-0026, the defendant **BONGIOVANNI** indexed names related to individuals who were paying the defendant **BONGIOVANNI** bribes to give the appearance of legitimate investigation and so that DEA de-confliction database procedures would alert him if other members of law enforcement were

investigating the individuals and associates of individuals who were paying the defendant **BONGIOVANNI** bribes.

34.     Between on or about April 30, 2013, and on or about September 9, 2013, the defendant **BONGIOVANNI** ensured that the CS provided no cooperation against the drug traffickers who were paying him bribes.

35.     On or about May 23, 2013, defendant **BONGIOVANNI** sent an email regarding DEA Case Number C2-13-0026 to members of the United States Attorney's Office, Western District of New York, and a Special Agent with the Internal Revenue Service (IRS) stating that "we are making strides in the street and will report back soon."

36.     On or about July 16, 2013, the defendant **BONGIOVANNI** sent an email to members of the United States Attorney's Office, Western District of New York, and a Special Agent with the IRS, and copied his supervisor in the DEA Buffalo Resident Office, that read in part "we are working on GPS warrant for trackers to locate these grow operation [*sic*] a CI [confidential informant] reported they are turning the grow over in 8 to 9 weeks. Joe."

37.     On or about September 11, 2013, the defendant **BONGIOVANNI** prepared a DEA 6 report in DEA Case Number C2-13-0026 wherein he made false, fraudulent, fictitious, and misleading statements as follows: "Agents are presently waiting for approval from the United States Attorney's Office (WDNY) to utilized [*sic*] GPS trackers to aid in the investigation."

38.     On September 9, 2013, the defendant **BONGIOVANNI** de-activated the CS who had an ability to cooperate in DEA Case Number C2-13-0026.

39.     Between on or about April 30, 2013, and on or about November 4, 2014, the defendant **BONGIOVANNI** made false representations regarding DEA Case Number C2-13-0026 to others in law enforcement that he did not have a source who could provide information about the locations of marijuana grow operations being controlled and operated by those who were paying the defendant **BONGIOVANNI** bribes.

40.     On or about September 26, 2013, the defendant **BONGIOVANNI** met with other members of law enforcement and an Assistant United States Attorney at the United States Attorney's Office for the Western District of New York regarding in DEA Case Number C2-13-0026 during which meeting, specific investigative techniques were discussed.

41.     Between in or about 2008 and in or about 2017, during routine and recurring meetings with individuals paying the defendant **BONGIOVANNI** bribes, the defendant **BONGIOVANNI** passed along information regarding specific techniques utilized or being considered by other members of law enforcement in DEA Case Number C2-13-0026.

42.     During conversation with other members of law enforcement involved in the investigation of DEA Case Number C2-13-0026, the defendant **BONGIOVANNI** falsely stated that he did not have a confidential informant and, as a result, marijuana grow locations could not be located to further the investigation in DEA Case Number C2-13-0026.

43.     On or about November 4, 2014, in preparation for closing DEA Case Number C2-13-0026, the defendant **BONGIOVANNI** prepared a DEA 6 report wherein he made false, fraudulent, fictitious, and misleading statements as follows: "The confidential informant associated with this case/file is no longer viable and can not provide credible information in furtherance of this investigation. This agent will not [*sic*] prepare this case for closure."

44.     On or about January 28, 2015, the defendant **BONGIOVANNI** prepared a DEA 6 report in DEA Case Number C2-13-0026 officially closing the DEA file related to investigation of individuals and associates of individuals who were paying him bribes.

45.     On or about February 21, 2016, the defendant **BONGIOVANNI** attended a party in Toronto, Canada with friends and associates involved in possession, use, and distribution of cocaine.

46.     In or about June 2016, in response to another DEA SA in the Buffalo Resident Office subpoena of phone records showing contacts between Coconspirator 1 and the defendant **BONGIOVANNI**, the defendant **BONGIOVANNI** attempted to dissuade the other SA from further investigating by asking his colleague if he "hated Italians."

47.     In or about August 2016, the defendant **BONGIOVANNI** used his position as a DEA SA in an attempt to dissuade a member of different federal law enforcement agency from investigating some of the defendant **BONGIOVANNI**'s friends and associates.

48.     On a date unknown to the Grand Jury, in response to a telephone call from Coconspirator 1 after a stripper overdosed on drugs at a gentlemen's club operated by

Coconspirator 1 in Cheektowaga, New York, the defendant **BONGIOVANNI** advised Coconspirator 1 to "get her out" of the gentlemen's club.

49. On or about May 4, 2017, Coconspirator 1 left a voicemail message on the defendant **BONGIOVANNI**'s DEA issued cell phone, as follows:

> "Hey Joe, it's [Coconspirator 1]. Listen, if a guy is dealing drugs he's got a regular phone…it's a phone that's, one of those Tracfones. Is there a way to ping it like police do? Where they can tell where you're at? I just want to know if you could do that or not. Give me a call back 725-1931."

to which the defendant **BONGIOVANNI** responded via text message, "Yes but you would need a warrant to get a ping order."

50. At various times while the defendant **BONGIOVANNI** was a DEA SA assigned to the Buffalo Resident Office, he possessed, used and distributed, and observed others possess, use, and distribute, cocaine.

51. On or about November 1, 2018, the defendant **BONGIOVANNI** authored and submitted an internal DEA memorandum in which he made false and misleading statements as follows: "It should be known that any contact I have had with [Coconspirator 1] in the past was minimal in-person contact and primarily consisted of random telephonic communication based on the fact we were childhood friends. I would sometimes randomly encounter [Coconspirator 1] at a restaurant or golf outing and have not made plans to meet him socially in several years."

52. On or about December 10, 2018, the defendant **BONGIOVANNI** authored and submitted an internal DEA memorandum wherein he made false and misleading

statements as follows: "I have and will report all contact with [Coconspirator 1] to a DEA supervisor like I have in the past[.]"

53.     On or about January 28, 2019, the defendant **BONGIOVANNI** authored and submitted an internal DEA memorandum wherein he made false and misleading statements regarding the nature of Coconspirator 1's relationship with another DEA SA in the Buffalo Resident Office.

54.     On or about February 1, 2019, the defendant **BONGIOVANNI**'s last day as a DEA SA in the Buffalo Resident Office due to his retirement from the DEA, the defendant caused his DEA issued cellular telephone to be wiped clean such that all data was deleted from the telephone.

55.     On a date unknown to the Grand Jury, but before on or about February 1, 2019, without authorization or permission, the defendant **BONGIOVANNI** removed the DEA working file in DEA Case Number C2-13-0026, which contained DEA database information (including de-confliction database information), administrative subpoenas and responses, cellular telephone toll analysis, and other DEA records and property, from the DEA Buffalo Resident Office and stored and concealed this DEA property in the basement of his residence.

56.     On or about March 29, 2019, in an interview conducted by Department of Justice (DOJ) Office of Inspector General (OIG) Special Agents, the defendant **BONGIOVANNI** made several false and misleading statements, including: (i) the defendant denied ever witnessing Coconspirator 1 consume narcotics; (ii) the defendant denied that Coconspirator 1 ever called him while a staff member or customer was actively overdosing at

the gentlemen's club operated by Coconspirator 1; and (iii) the defendant denied ever initiating contact with Coconspirator 1.

57.     On or about June 6, 2019, in an interview conducted by members of federal law enforcement, including SAs with DOJ OIG and Homeland Security Investigations, the defendant **BONGIOVANNI** made several false and misleading statements, including: (i) the defendant denied he was in a close relationship with Coconspirator 1; (ii) the defendant stated that he had not spoken with Coconspirator 1 in over a year; (iii) the defendant stated that he had never attended a party with Coconspirator 2, a person known to the Grand Jury; (iv) the defendant stated that he knew Coconspirator 3, a person known to the Grand Jury, because Coconspirator 3 was his landscaper; (v) the defendant stated that he never socialized with Coconspirator 3, and they never went on any trips together; (vi) the defendant stated that Coconspirator 3's number was in the defendant's telephone because Coconspirator 3 had done landscaping for the defendant; (vii) the defendant stated that Coconspirator 1 once tried to cooperate with the DEA and that the defendant recused himself at the time because he knew Coconspirator 1 personally; (viii) the defendant stated that he did not remember if Coconspirator 2 was at a party with the defendant and others in Toronto, Canada; (ix) the defendant stated that Coconspirator 1 and the defendant were together, with others, a few years ago at Lake Erie around the 4th of July by chance encounter; (x) the defendant stated that he kept a DEA case file in his house because it was an old case and he thought it would come up again and the defendant wanted to verify everything was on the up and up; (xi) the defendant stated that he knew there was an ongoing investigation of IOC which is why the defendant kept the file; (xii) the defendant stated that Peter Millitello was the source in DEA Case Number C2-13-0026, but Millitello was arrested for selling fentanyl and heroin; and (xiii)

the defendant stated that he learned about a current investigation when a DOJ OIG SA asked him about the subject of the investigation during an interview earlier in the year.

**All in violation of Title 18, United States Code, Section 371.**


## COUNT 2

**(Conspiracy to Distribute Controlled Substances)**

**The Grand Jury Further Charges That:**

1. The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.


2. Beginning in or about 2008, and continuing to in or about 2017, the exact dates being unknown to the Grand Jury, in the Western District of New York, and elsewhere, the defendant, **JOSEPH BONGIOVANNI**, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown to the Grand Jury, to commit the following offenses, that is, to possess with intent to distribute, and distribute, 1000 kilograms or more of a mixture and substance containing marijuana, a Schedule I controlled substance, and cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C).

**All in violation of Title 21, United States Code, Section 846.**


## COUNT 3

**(Public Official Accepting a Bribe)**

**The Grand Jury Further Charges That:**

1. The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.

2.	Beginning in or about 2008, and continuing to in or about 2017, the exact dates being unknown to the Grand Jury, in the Western District of New York, the defendant, **JOSEPH BONGIOVANNI**, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return for being influenced in the performance of an official act and being induced to do an act and omit to do an act in violation of his official duty; that is the defendant, **JOSEPH BONGIOVANNI**, was paid at least $250,000 in United States currency to provide information about federal investigations, law enforcement methods and techniques, and the identity of individuals cooperating and potentially cooperating with law enforcement in order to conceal the drug trafficking activities, and to help such drug trafficking activities continue, of individuals associated with the defendant, including individuals the defendant believed to be connected to and associated with IOC.

**All in violation of Title 18, United States Code, Sections 201(b)(2)(A) and 201(b)(2)(C).**


## COUNT 4

**(Obstruction of Justice)**

**The Grand Jury Further Charges That:**

1.	The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.


2.	Beginning on or before September 11, 2013, and continuing until on or about January 28, 2015, in the Western District of New York, the defendant, **JOSEPH BONGIOVANNI**, did knowingly falsify and make false entries in records and documents with intent to impede, obstruct, and influence the investigation and proper administration of

a matter within the jurisdiction of the Drug Enforcement Administration, an agency of the United States, that is, the defendant, **JOSEPH BONGIOVANNI** made false and misleading statements in DEA 6 reports he prepared relating to the status of a drug trafficking investigation in DEA Case Number C2-13-0026 and the viability and credibility of the confidential source who was providing information to the DEA regarding a drug trafficking organization in order to close the DEA file and investigation into the organization and shield members and associates of the organization from arrest and prosecution.

**All in violation of Title 18, United States Code, Section 1519.**

### COUNT 5
**(Obstruction of Justice)**

**The Grand Jury Further Charges That:**

1.      The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.

2.      On or about November 1, 2018, in the Western District of New York, the defendant, **JOSEPH BONGIOVANNI**, did knowingly falsify and make false entries in a record and document with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General, and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, **JOSEPH BONGIOVANNI**, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, including Coconspirator 1, and the drug trafficking activities of such individuals, made false and misleading statements in a memorandum relating to the nature of his

relationship and extent of his communications with Coconspirator 1 in order to cover up, mislead, create a false justification for, and misrepresent the true relationship between the defendant and Coconspirator 1.

**All in violation of Title 18, United States Code, Section 1519.**

## COUNT 6
### (Obstruction of Justice)

**The Grand Jury Further Charges That:**

1.      The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.

2.      On or about December 10, 2018, in the Western District of New York, the defendant, **JOSEPH BONGIOVANNI**, did knowingly falsify and make false entries in a record and document with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General, and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, **JOSEPH BONGIOVANNI**, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, including Coconspirator 1, and the drug trafficking activities of such individuals, made false and misleading statements in a memorandum relating to the nature of his relationship and extent of his communications with Coconspirator 1 in order to cover up, mislead, create a false justification for, and misrepresent the true relationship between the defendant and Coconspirator 1.

**All in violation of Title 18, United States Code, Section 1519.**

## COUNT 7

### (Obstruction of Justice)

### The Grand Jury Further Charges That:

1. The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.


2. On or about January 28, 2019, in the Western District of New York, the defendant, **JOSEPH BONGIOVANNI**, did knowingly falsify and make false entries in a record and document with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General, and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, **JOSEPH BONGIOVANNI**, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, including Coconspirator 1, and the drug trafficking activities of such individuals, made false and misleading statements in a memorandum relating to the nature of his relationship and extent of his communications with Coconspirator 1 in order to cover up, mislead, create a false justification for, and misrepresent the true relationship between the defendant and Coconspirator 1 and to misrepresent the true nature of the relationship between Coconspirator 1 and a DEA Special Agent known to the Grand Jury.

**All in violation of Title 18, United States Code, Section 1519.**

## COUNT 8

### (Obstruction of Justice)

### The Grand Jury Further Charges That:

1.      The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.

2.      Beginning on a date unknown but no later than February 1, 2019, to on or about February 8, 2019, in the Western District of New York, the defendant, **JOSEPH BONGIOVANNI**, did knowingly alter, destroy, mutilate and conceal a record and tangible object with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General, and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, **JOSEPH BONGIOVANNI**, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, and the drug trafficking activities of such individuals, did cause the contents of, and data on, his DEA-issued cellular telephone to be deleted.

**All in violation of Title 18, United States Code, Section 1519.**

## COUNT 9

### (Obstruction of Justice)

### The Grand Jury Further Charges That:

1.      The allegations of the Introduction and Count 1 are incorporated by reference as though set forth fully herein.

2. Beginning on a date unknown, but no later than February 1, 2019, and continuing to on or about June 6, 2019, in the Western District of New York, the defendant **JOSEPH BONGIOVANNI**, did knowingly conceal and cover up records, documents, and tangible objects, with intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Drug Enforcement Administration, Homeland Security Investigations, the Department of Justice, Office of Inspector General, and the Federal Bureau of Investigation, agencies of the United States, that is, the defendant, **JOSEPH BONGIOVANNI**, in an investigation regarding the nature of the relationship between the defendant and individuals involved in drug trafficking activities, and the drug trafficking activities of such individuals, did unlawfully take, remove, conceal, and store the working file in DEA Case Number C2-13-0026 in his residence.

**All in violation of Title 18, United States Code, Section 1519.**

## COUNT 10

**(False Statements to an Agency of the United States)**

**The Grand Jury Further Charges That:**

On or about March 29, 2019, in the Western District of New York, the defendant, **JOSEPH BONGIOVANNI**, in a matter within the jurisdiction of the executive branch of the United States, did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations to special agents of the Department of Justice, Office of the Inspector General, in that the defendant denied ever witnessing Coconspirator 1, a person known to the Grand Jury, consume narcotics; the defendant denied that Coconspirator 1 ever called him while a staff member or customer was actively overdosing at the gentlemen's club operated by Coconspirator 1; and the defendant denied ever initiating contact with Coconspirator 1, whereas in truth and in fact, and as the defendant then and there well knew,

24

the defendant had witnessed Coconspirator 1 consume narcotics; Coconspirator 1 did call the defendant while a staff member was overdosing; and the defendant did previously initiate contact with Coconspirator 1.

**All in violation of Title 18, United States Code, Section 1001(a)(2).**

## COUNT 11

**(False Statements to an Agency of the United States)**

**The Grand Jury Further Charges That:**

On or about June 6, 2019, in the Western District of New York, the defendant, **JOSEPH BONGIOVANNI**, in a matter within the jurisdiction of the executive branch of the United States, did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations to special agents of the Department of Justice, Office of the Inspector General, and Homeland Security Investigations in that the defendant stated as follows:

(i) he denied he was in a close relationship with Coconspirator 1, a person known to the Grand Jury;

(ii) that he had not spoken with Coconspirator 1 in over a year;

(iii) that he had never attended a party with Coconspirator 2, a person known to the Grand Jury;

(iv) that he never socialized with Coconspirator 3, a person known to the Grand Jury, and they never went on any trips together;

(v) that Coconspirator 3's number was in the defendant's telephone because Coconspirator 3 had done the defendant's landscaping;

(vi) that Coconspirator 1 once tried to cooperate with the DEA and that the defendant recused himself at the time because he knew Coconspirator 1 personally;

(vii) that Coconspirator 1 and the defendant were together, with others, a few years ago at Lake Erie around the 4th of July by chance encounter;

(viii) that he kept the file regarding DEA Case Number C2-13-0026 in his house because it was an old case and he thought it would come up again and the defendant wanted to verify everything was on the up and up; and

(ix) that Peter Millitello was the source in DEA Case Number C2-13-0026; whereas in truth and in fact, and as the defendant then and there well knew,

(i) he did have a close relationship with Coconspirator 1;

(ii) he had spoken with Coconspirator 1 within the preceding year;

(iii) he did attend a party with Coconspirator 2;

(iv) he did socialize with Coconspirator 3 and they were on a trip to Toronto, Canada together; (v) Coconspirator 3's number was in his telephone for reasons other than landscaping;

(vi) Coconspirator 1 did not try to cooperate with DEA and the defendant did not recuse himself;

(vii) Coconspirator 1 and the defendant were not together at Lake Erie around the 4th of July a few years ago by chance encounter;

(viii) he did not keep the file regarding DEA Case Number C2-13-0026 in his house to verify everything was on the up and up; and

(ix) Peter Millitello was not the source in DEA Case Number C2-13-0026.

**All in violation of Title 18, United States Code, Section 1001(a)(2).**

**FORFEITURE ALLEGATION**

**(Proceeds Forfeiture)**

**The Grand Jury Alleges That:**

Upon conviction of any or all of the offenses set forth in Counts 1 through 3 of this Indictment, the defendant, **JOSEPH BONGIOVANNI,** shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following:

**A.  MONETARY SUM**

The sum of two hundred and fifty thousand dollars ($250,000), which sum is equal to or less than the total amount of proceeds that **JOSEPH BONGIOVANNI** obtained as a result of the offenses for which he is charged in Counts 1 through 3.  In the event that the above sum is not available, then a money judgment for the same amount will be entered against the defendant.

If any of the property described above, as a result of any act or omission of the defendant;

1.      cannot be located upon the exercise of due diligence;

2.      has been transferred or sold to, or deposited with, a third person;

3.      has been placed beyond the jurisdiction of the Court;

4.      has been substantially diminished in value; or

5.      has been commingled with other property which cannot be divided without difficulty;

The United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

**All pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 21, United States Code, Section 853(p), and Title 28, United States Code, Section 2461(c).**

DATED: Buffalo, New York, October 31, 2019.

JAMES P. KENNEDY, JR.
United States Attorney

BY: S/JOSEPH M. TRIPI
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716/843-5839
joseph.tripi@usdoj.gov

A TRUE BILL:

S/FOREPERSON