United States District Court
Western District of New York

United States of America,

*Plaintiff*

*vs*

Joseph Bongiovanni

*Defendant*

**Defendant Joseph Bongiovanni's
Response to Government's Supplemental
Post-Hearing Memorandum of Law (Dkt 284)**

19-cr-227-JLS

Dated: June 1, 2022

James P. Harrington
Harrington & Mahoney
70 Niagara Street, 3rd Floor
Buffalo, NY   14202-3407
Ph: 716-853-3700 (fax)
Facs: 716-853-3710
*Attorneys for Joseph Bongiovanni*

# Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Was the BWI Search of Mr. Bongiovanni's Cell Phone a Routine Border Search . . . . . . 2

Good Faith Does Not Apply (Original Brief). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# Table of Authorities

## Cases

*Alsaad v. Nielsen,* 419 F.Supp3rd 142 (D.Mass 2019). . . . . . . . . . . . . . . . . . . . . . . . [5](#)

*Riley v. California*, 573 U.S. 373 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [2](#), [4](#), [5](#)

*United States v Ramsey*, 431 U.S. 606 1977  . . . . . . . . . . . . . . . . . . . . . . . . . . . [4](#), [5](#)

*United States v. Aigbekaen*, 943 F.3d 713 (2019 . . . . . . . . . . . . . . . . . . . . . . . . . . [5](#)

*United States v. Cano*, 934 F3d 1002 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . [4](#), [5](#)

*United States v. Kolsuz*, 890 F3d 133 (14th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . [5](#)

*United States v. Leon*, 468 U.S. 897 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [4](#)

*United States v. Young, 2013 WL 885 288* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . [2](#)

# Introduction

At the end of the oral argument on suppression issues, with respect to the issue of the search and seizure of information from Joseph Bongiovanni's cell phone at Baltimore and Washingtn International Airport ("BWI") on April, 2019, the Court offered the government an opportunity to case law and argument on these issues:

1.    Whether Mr. Bongiovanni's encounter at BWI was routine or non-routine.

2.    If non-routine, was there reasonable suspicion for the search and seizure of information from his cell phone in the record of the suppression hearing.

3.    The Government's position on reopening the hearing.

First, addressing the third point, the government presented no argument for why the hearing should be re-opened. It relied on it's normal argument that whatever the government attorneys say to the Court should be considered as evidence. It assumes that, if any agents involved in this case had reasonable suspicion regardless of whether evidence was produced at the hearing, the Court should consider this. For example, see Government brief, Docket 284, at pp 18-20, where it submits that HSI Special Agent Curtis Ryan, had reasonable suspicion and lists areas of questioning he did on Mr. Bongiovanni at his home on June 6, 2019 during the execution of a search warrant. As it did in oral argument on April 26, 2020, however, it seems to believe it can say or write whatever its version of the facts are and the Court is bound by them without the benefit of testimony.

The Court repeatedly asked government counsel during oral argument if it was asking to re-open the hearing to make a fuller record. The government would not state it was asking for this. In it's request at the end of oral argument, however, the Court, without stating whether it would grant the relief to re-open, asked the government to brief the issue. It did

1

not.  In these circumstances, the government should be precluded from introducing facts not presented at the testimonial hearing.  In fact, it is the law of the case.  This Court said in reference to an issue not raised by Peter Gerace, Mr. Bongiovanni's co-defendant,  "No, I think that boat has sailed, Mr. LaTona."  Transcript of oral argument on April 26, 2022, page 86, line 16.  The government's boat has also set sail.

# Was the BWI Search of Mr. Bongiovanni's Cell Phone a Routine Border Search

The government, Mr. Bongiovanni and many courts agree that what is "routine" has not been clearly delineated.  The government's brief cites a long list of cases where it seems that the reasoning is unclear and courts seem constrained in each by the factual circumstances.

The level of intrusion into a person's privacy determines whether a search is routine or not.  With respect to cell phones, that issue has been changed by *Riley v. California, 573 U.S. 373 (2014)*.

The government's argument of limited time or lack of use of machine does not overcome *Riley*.  The cell phone has become, in the court's eyes, a special part of human privacy rights.   The government's extensive reliance in its brief on Hon. Jeremiah McCarthy's decision in *United States v. Young, 2013 WL 885 288,* is misplaced because it was decided before *Riley* which elevated the cell phone because of the intimate privacy information people carry in them.

Part of the problem with the routine/non-routine definition is that common behavior may be routine to the actor, ie. custom agent because "we always do it."  That, however, may

2

be contrary to the legal standard for routine.

       The stopping and seizure of Mr. Bongiovanni's phone was not routine. It was a contrived effort to search his cell phone for purposes which had nothing to do with the responsibilities of United States Customs and Border Patrol.  The purpose of the request was for an "advanced" search of his phone.  This was undisputed by each of the agents and officers involved in making the request and the search as they testified. But for a malfunction of the CBP machine to be used to copy Mr. Bongiovanni's cell phone, its entire contents would have been copied or imaged with unlimited use by the government and without judicial oversight as in a search warrant.

       The testimony and exhibits at the hearing is barren of what the purpose of the request for the search was.  There was no testimony of Mr. Bongiovanni trafficking contraband.  The cell phone could not carry weapons, narcotics or other contraband.  Information was its only cargo.  There was nothing in the record or even in the government's representations of child pornography or other cell phone content crimes. The agents knew he was on vacation with his wife and stepson.  The case against him is historical, in the sense that his alleged criminal conduct took place while he was a DEA Agent which ended February 1, 2019, over two months before his trip to the Dominican Republic.  Mr. Bongiovanni's cell phone had nothing to do with the CBP's duties at the international border.

       HSI Curtis Ryan and other agents testified they were circumspect about what information they had from their investigation because it was a sensitive case.  The only information given was that it was a "transnational organized crime" investigation.  No details were provided for this conclusion.  There are none in the record.  Agent Ryan described a Transnational Organized Crime as "any organized group that is seeking to exploit Customs or International Law." (Transcript, p 16)  No proof was presented to this Court that there was any organized group.  No proof was presented that any organized group was seeking to exploit Customs or Immigration Law.  The CBP agents who were doing the search of Mr.

3

Bongiovanni's phone, may have assumed this. But they had no reasonable suspicion other that another agent requested it. No matter what information Agent Ryan had in Buffalo, the government chose not to present proof to that effect. It apparently made a tactical decision to avoid Mr. Bongiovanni learning something about his case they did not want him to know. It cannot now attempt to persuade the Court of reasonable suspicion without giving to the Court and the defense the opportunity to challenge it. As *Cano* shows, *Riley* has change the assumption of the government that all border searches are permissible. The Court cannot make such an assumption on the hearing record in this case.

# Good Faith Does Not Apply (Original Brief)

The government may attempt to bypass the reasoning of *Cano* and other decisions above by arguing that border agents did not know about the limitations of the "free border search" and thus relied on their old, misused, and mis-named friend the "good faith exception" in effecting their search. *See, generally, United States v. Leon*, 468 U.S. 897 (1987)(establishing good faith exception to exclusionary rule). This argument, however, will not succeed.

Even when it established the border search concept in The government may attempt to bypass the reasoning of *Cano* and other decisions above by arguing that border agents did not know about the limitations of the "free border search" and thus relied on their old, misused, and mis-named friend the "good faith exception" in effecting their search. *See, generally, United States v. Leon*, 468 U.S. 897 (1987)(establishing good faith exception to exclusionary rule). This argument, however, will not succeed.

Even when it established the border search concept in *United States v Ramsey*, 431 U.S. 606 1977 the Supreme Court did not claim that the "free border search" allows the depth and intrusiveness allowed in Mr. Bongiovanni's case, nor has it done so since. Such a claim

4

would not square with the historic doctrine allowing such searches, as observed by the courts in *Cano, Aigbekaen,* and *Alsaad v. Nielsen, 419 F.Supp3rd 142 (D.Mass 2019).* After *Riley,* the government cannot continue to argue that *carte blanche* seizure and search of phones at the border is in any way a good faith national security measure, especially where, as here, government agents *admit* in writing that they conducted the search "because" the defendant was a target in an ongoing investigation. Not only was the search unreasonably intrusive under any rationale, it was obviously not connected to the kind of justifications for warrantless border searches articulated under *Ramsey*. Agents lied to Mr. Bongiovanni and told him it was a "random" search in order to delay him and his family.

The precedent which creates these searches itself limits them. Thus, agents cannot claim in good faith that they did not know they could do warrantless border searches without also admitting they would know the intrinsic limitations on them. Nor can they claim that they effected such a search here, when their own memorandum of the encounter shows it was done deliberately because Mr. Bongiovanni was the target of an ongoing investigation.

# Conclusion

Neither the Second Circuit nor the United States Supreme Court has made a definitive decision of how the search of cell phones at United States International border crossing should be determined since *Riley v. California* was decided in 2022. The Circuits are split. See *United States v. Cano*, 934 F3d 1002 (9th Cir. 2019), *United States v. Aigbekaen*, 943 F.3d 713 (2019), *United States v. Kolsuz*, 890 F3d 133 (14th Cir. 2018). The reasoning of these and other cases together with the unique facts in each case made the analysis difficult. In Mr. Bongiovanni's case, the Court should make its decision based on the factual record it has from the testimony presented by the parties and not by recommendations or statements of fact by counsel. In this record, Mr. Bongiovanni's stop, detention, and cell phone search were not routine given the way they originated. There is no reasonable suspicion in the

record before the Court to sustain a search for a non-routine search.


Dated:  June 1, 2022

Respectfully submitted,
/s/ James P. Harrington

James P. Harrington
HARRINGTON & MAHONEY
70 Niagara Street, 3rd Floor
Buffalo, NY  14202-3093
(716) 853-3710 (*facsimile)*
(716) 853-3700 (*voice*)
mjm@harringtonmahoney.com