United States District Court
Western District of New York

United States of America
                               *Plaintiff*

                 *vs*.

Joseph Bongiovanni,
                            *Defendant*

**Defendant Joseph Bongiovanni's
Reply to Government's Responses to
Bongiovanni's Severance Motion**

**19-CR-227-JMS-MJR**

Dated: February 10, 2023

                                   James P. Harrington, Esq.
                                   Harrington & Mahoney
                                   70 Niagara Street - Third Floor
                                   Buffalo, New York 14202-3407
                                   *Tele:* (716) 853-3700
                                   *Facs:* (716) 853-3710
                                   *jph@harringtonmahoney.com*
                                   *Attorneys for Joseph Bongiovanni*

# Introduction

A trial should be severed under Rule 14 if "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Relevant factors include: "the number of defendants and the number of counts; the complexity of the indictment; the estimated length of the trial; disparities in the amount or type of proof offered against the defendants; disparities in the degrees of involvement by defendants in the overall scheme; possible conflict between various defense theories or trial strategies; and, especially, prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant." *United States v. Gallo*, 668 F.Supp. 736, 749 (E.D.N.Y. 1987).

A defendant can be unfairly prejudiced by the admission of evidence against a co-defendant which would not be admissible against the defendant. See *United States v. Figueroa*, 618 F.2d 934, 946-47 (2d Cir. 1980); see also *Zafiro*, 506 U.S. at 539 (severance is appropriate when "evidence of a co-defendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty."); see also *United States. v. James*, 2007 WL 1579978, *2 (E.D.N.Y. 2017) ("Spillover prejudice occurs when proof inadmissible against a defendant becomes a part of his trial solely due to the presence of co-defendants as to whom its admission is proper.") (internal quotations omitted). In that regard, prejudice may also be found solely on the basis of the anticipated length of trial. *United States v. Casamento*, 887 F.2d 1141, 1152 (2d Cir. 1989) abrogated on other grounds by *United States v. Williams*, 504 U.S. 36 (1992).

The Second Circuit has also recognized that "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all." *United States v. Halper*, 590 F.2d 422, 430-31 (2d Cir. 1978).

# First Severance Motion

# Count 9

Count 9 only charges Peter Gerace.  Joseph Bongiovanni is not named as a principal or as a co-conspirator.  The alleged conduct alleged against Peter Gerace as set forth in the Government's response to this severance motion as it related to the "sex trafficking" allegations only relate to Mr. Gerace.

The government argues that the sex trafficking allegations are integrally twined with the drug conspiracy. It even argues that this evidence is admissible if Mr. Bongiovanni is tried alone. It attempts to combine drug crimes with sex trafficking as inseparable. This is not the case. The fact that an end user of drugs commits another crime and is the victim of another crime is not proof of a drug conspiracy.

Mr. Bongiovanni does not object to the proof that the government claims it has that there were drugs used and/or sold at Pharaoh's Gentlemen Club ("PGC).  That is relevant to the drug conspiracy. As part of the conspiracy, there is no relevancy to anything else, including crimes, that happened in PGC. If the government had evidence of Mr. Bongiovanni's conduct being part of a conspiracy for sex trafficking, it surely would have charged it.

The government claims a close relationship between Mr. Bongiovanni and Mr. Gerace. If, for the purpose of this argument we accept that as fact, it adds rather than subtracts from the need for a severance. If evidence is presented to the jury of this alleged close and involved relationship, the prejudice to Mr. Bongiovanni is heightened. It is too easy for the jury, even with a jury instruction not to consider it against him, to be affected by the spillover.

Sex trafficking is considered as a heinous crime and potential federal sentences verify that fact. Mr. Tripi mentions the use of drugs, force and violence associated with the alleged activities at PGC related to sex trafficking. The stigma for this offense is severe.

In a case where ultimately severance was not granted for other reasons, the 2nd Circuit recognized that, in weighing the prejudicial affects of spillover, the type of spillover crime may require a severance.

Relief by severance may be more appropriate when the unrelated evidence reflects activities of a violent nature because the risk of substantial prejudice is greater. The unrelated evidence presented in the instant case revealed only another bank fraud scheme; disparity in the quantity of evidence and of proof of culpability are inevitable in any multi-defendant trial, and by themselves do not warrant a severance. *United States v. Cardascia*, 951 F.2d 474 (2nd Cir. 1991)

This is the circumstance in Mr. Bongiovanni's case.

In a case not cited by the government in our district, the Hon. Frank Geraci, Chief District Judge for the Western District of New York at this time, granted a severance where sex trafficking charges were alleged against one defendant but not another, and where there

was a drug conspiracy alleged. *United States v. Lewis*, 2019 WL 2442145 (WDNY, 2019) In that case, illegal drugs were supplied by one defendant, Valentino Shine ("Shine") to co-defendant Jesse Lewis ("Lewis"). Lewis then gave them to sex trafficking victims as part of the coercion to commit sex acts. This is what the government alleges Mr. Gerace used drugs for. Judge Geraci found that this evidence was prejudicial and would be inadmissible against Shine. He also stated that this joint trial would focus on the sex trafficking charge.

# Second Severance Motion
# Gerace's Testimony

There is no real disagreement between the government and the defense regarding how the Court must approach the issue of a co-defendant's testimony in determining whether a severance motion should be granted. *United States v. Finkelstein*, 26 F.2d 517, 523-524 (2nd cir. 1975)

There is, however, disagreement concerning how the Court should look at the *Finkelstein* factors in Mr. Bongiovanni's case.

### A.    Factor 1 - Insufficient Details of Mr Gerace's Potential Testimony

The government avers that Mr. Gerace's affidavit is self-serving and lacks sufficient detail. It alleges, without stating how it knows this, that Mr. Bongiovanni's motion is on behalf of Mr. Gerace, so Mr. Gerace can get a severance. While the granting of a severance to Mr. Bongiovanni would result in that outcome, it is insulting to Mr. Bongiovanni, whose own life, reputation, and freedom are on the line in this case and to me as his attorney that I filed a frivolous or bad faith motion as a stalking horse for Mr. Gerace. When this began,

the government stated with great public marketing and fanfare that Mr. Bongiovanni was assisting Italian Organized Crime ("IOC") in Buffalo for many years. It now claims that the existence of IOC is not an issue, but the connection to IOC is that Mr. Bongiovanni believed he was helping IOC even if it did not exist at the time. It has never corrected this nuance with the public, but has allowed a horrible and very public cloud to hang over Mr. Bongiovanni, prejudicing him and his potential jury pool. This point is raised because it helps the Court understand how important Mr. Gerace is to Mr. Bongiovanni's defense with a jury.

Mr. Bongiovanni needs Mr. Gerace's testimony to support his defense, nothing more. Mr. Gerace's affidavit is specific enough to advise the Court and the government of the substance of his needed testimony. The government shows two photographs with multiple persons purportedly demonstrating Mr. Bongiovanni's and Mr. Gerace's friendship. After full searches of their homes, is this what they have to demonstrate how close this relationship was? The level or degree of that friendship is an issue which the jury needs to evaluate. Mr. Gerace's affidavit states that he will rebut any claim of the government about the relationship. While Mr. Bongiovanni and Mr. Gerace have known each other most of their lives, the relationship is not what the government claims. Part of the testimony of Mr. Gerace will be to refute the government's proof on this issue, a critical one to the government, will be based on what proof the government offers. The systemic failure of the federal discovery rules prohibit the defense from knowing what this proof will be until at least Jencks material is provided, but more likely trial testimony, is received.

## B.  Factor 2 - Cumulative Testimony

The defense thanks the government for its unsolicited suggesting and telling it how it can defend the case and which witnesses it can call.  That advice is not needed.  Much of what Mr. Gerace would be testifying to is information that others are not part of, not privy to, or only known by inadmissible hearsay from other witnesses such as friends and family. The relationship between Mr. Bongiovanni and Mr. Gerace is an important part of the government's theory of how their close relationship explains the alleged conduct.  Mr. Bongiovanni, however,  should not be limited in how he presents his evidence to refute this. He has a right to compulsory process, which means a right to present a defense, which should not be controlled by the government under the 6th Amendment to the United States Constitution.

It is also not an appropriate response to tell Mr. Bongiovanni that he can testify on his own behalf.  He cannot be compelled to testify in his own defense.  There may be other reasons unrelated to admissions against interest that make testimony by a defendant an unwise decision.  The defense should be able to charts its own course in what witness it calls to testify.

Further, if Mr. Bongiovanni testifies, having corroboration from the person who is also accused in the crime is not cumulative, as the government well knows. It will understandably have multiple witnesses to testify to the same facts. Rebutting the government's exaggerated conclusions about Mr. Bongiovanni and Mr. Gerace is essential and not cumulative.  It is also necessary to undermine the government's manipulation of other facts in its case.

## C. Factor 3 - Judicial Economy

This factor is close to the heart of every trial judge who is trying to manage its precious trial time. The defense recognizes this. The government argues that it has over one hundred witnesses, although it advised the Court it is trimming that number at this time and that number may be fifty or so. In separate trials, presumably that number would be less for each defendant. This is especially true for Mr. Bongiovanni if Count 9 is severed. In addition, there will be motions *in limine* to prohibit any sex trafficking testimony by the alleged victims of sex trafficking not related to the drug conspiracy. The testimony beyond that such a coerced or drug induced sex acts have nothing to do with what Mr. Bongiovanni is personally charged with.

## D. Factor 4 - Substantial Impeachment

Everyday the government offers witnesses who have "baggage" in their backgrounds such as previous convictions or other bad acts. It tells a jury "We don't get to pick our witnesses sometimes." Yet it believes it can dictate to the defense which witnesses it should call.

Mr. Gerace has previous convictions and some other past behavior which would likely survive a defense motion *in limine* to prohibit their use in the government's cross-examination of him. Whatever is brought out in direct or cross-examination about those would certainly be a consideration for a jury in believing his substantive testimony. That, however, is with Mr. Bongiovanni. He was aware of Mr. Gerace's record and other behavior cited by the government before this motion was filed. Had he, with my advice, believed that precluding Mr. Gerace's testimony, could not assist his case this motion would not have been

brought. There are many ways of presenting witnesses who have some potential cross-examination problems and this case is one of them. Many a conviction has been obtained where the key witness had far more "baggage" than Mr. Gerace. Similarly, many witness with more "baggage" have helped in acquittals. Mr. Bongiovanni should not be precluded from offering an essential witness where he is willing to have a jury determine the accuracy and truthfulness of the substantive testimony regardless of collateral cross-examination. Precluding him from being able to offer this witness should not be based on a trial court's or government's pre-trial evaluation of the testimony's efficiency for this reason. The 6th Amendment's right to present a defense and the 5th Amendment's right to due process will not allow this. See *Chambers v. Mississippi*, 410 US 284 (1973), in a case about the use of hearsay evidence by the defense, the United States Supreme Court stated the underlying due process principle

> "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations. The rights to confront and cross-examine witnesses and to call witnesses on one's own behalf have long been recognized as essential to due process."

**E.   Miscellaneous Factor - Trial Advantage**

The argument of giving Mr. Bongiovanni a trial advantages if Mr. Gerace is tried first is specious. How does this argument apply to a mistrial or a reversal and a new trial ordered by a federal appellate court? Similarly, the additional time to review *Jencks*' material is unpersuasive. The defense appreciates the agreement that was worked out between the Court, the government, and the defense for early *Jencks* disclosures. It also concedes that

having that material for a longer period may help in making better use of it. That, however, is not a reason for denying a severance motion. In addition, if the Court grants a severance, a new *Jenc*ks order can be put in place to coordinate it with a new trial date.

## Conclusion

A trial court should always bear in mind that precedents from the Circuit Court result from appeals after convictions. While the principles or factors for analysis by the trial courts are binding, there is a different way of looking at the case before trial and on appeal. Many cases are not clear cut one way or the other. A decision against a defendant on a severance, even where meritorious is a difficult appeal. One in favor of the defendant can be appealed by the government before the prejudicial damages is done.

Federal Rules of Criminal Procedure Rules 8 and 14 were written for the purpose of protecting those accused of federal crimes from undue prejudice in joint trials. Mr. Bongiovanni's case is one where these rules apply. The Court should sever Count 9 from Mr. Bongiovanni's trial if he and Mr. Gerace are tried jointly and/or sever all charges to allow Mr. Gerace to testify on his behalf at separate trials.

Dated: February 10, 2023

/s/ James P. Harrington

James P. Harrington, Esq.
Harrington & Mahoney
70 Niagara Street - Third Floor
Buffalo, New York 14202-3407
*Tele:* (716) 853-3700
*Facs:* (716) 853-3710
[jph@harringtonmahoney.com](mailto:jph@harringtonmahoney.com)
*Attorneys for Joseph Bongiovanni*