IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.                                                         19-CR-227-JLS

JOSEPH BONGIOVANNI,
PETER GERACE, JR.,

        Defendants.

---

UNITED STATES OF AMERICA,

    v.                                                          23-CR-37-JLS-MJR

PETER GERACE, JR.,

        Defendant

---

## GOVERNMENT'S EXPERT DISCLOSURE

    **THE UNITED STATES OF AMERICA**, Trini E. Ross, United States Attorney for the Western District of New York, Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi, David J. Rudroff, and Nicholas T. Cooper, Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby submits its expert disclosure pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, and requests leave to submit such other disclosures as may be appropriate prior to at the close of the evidence. The government will be calling witnesses pursuant to Rule 702 of the Federal Rules of Evidence who will have specialized knowledge and/or provide expert

testimony about matters which will assist the trier of fact to understand the evidence and/or to determine a fact in issue. The government's expert witnesses will be as follows:

1.  **REBECCA BENDER, SUBJECT MATTER EXPERT ON SEX AND HUMAN TRAFFICKING (Los Angeles, California)**

Date:  TBD                                              Length of Testimony: 4 Hours

Ms. Bender is an expert in the areas of sex and human trafficking. She is the founder and CEO of the Rebecca Bender Initiative ("RBI") and Elevate Academy. Ms. Bender holds a Master's Degree in Religious Studies. Through the RBI, Ms. Bender works to educate law enforcement, community leaders, and others to identify, resource, and address sex trafficking. Additionally, Elevate Academy, which Ms. Bender founded, is the largest online school for human trafficking survivors, offering courses in professional development and economic empowerment to survivors of sex trafficking at no cost.

Ms. Bender was appointed to the National Advisory Council to Congress by the United States Department of Health and Human Services. She has received numerous public and private awards for her work, as listed on pages 2 and 3 of her curriculum vitae, which is attached and incorporated by reference as **Exhibit A**. Ms. Bender has testified as an expert witness in State Courts in California, Oregon, and Texas, as well as United States District Court for the Northern District of Texas. In the last four years specifically, Ms. Bender has testified or assisted as an expert in the following proceedings:

- State of California v. Herbert Goodwin
- State of California v. Jonathan Boyd
- State of California v. Samantha Johnson

2

- State of Oregon v. Virgil Rucker

- State of Oregon v. Javeion Drum

- United States v. Tremont "Macknificent" Blakemore

Ms. Bender has interacted with over 1300 human trafficking survivors through RBI and she has personal experience as an individual who was sex trafficked for approximately six years, including through strip clubs. Ms. Bender trains professionals and law enforcement agencies, including members of the FBI and the Department of Homeland Security Investigations, to identify and investigate sex trafficking committed through the use of force, fraud, and coercion. Her digital classes and online resources have had over 40 million downloads on the internet.

In this case, Ms. Bender will testify regarding:

- The dynamics of sex trafficking, including the use of force, fraud, and coercion by sex traffickers.

- The methods of psychological control and manipulation traffickers use over their victims to ensure compliance, including, among others: threats, rewards, violence, preying on known drug addiction or dependence, and false promises;

- The use of drugs to coerce victims into commercial sex acts, including providing drugs to, and then withholding drugs from, known drug addicts to coerce victims into engaging in commercial sex acts.

- Sex traffickers' use of threats to the financial, professional, and reputational well-being of their victims to coerce commercial sex acts. This will include testimony regarding coercion through an employer's control of work shifts and outside employment opportunities, and how the threatening loss of livelihood coerces a victim into engaging in commercial sex acts.

- Why victims continue to engage in sex trafficking when they do not want to, including fear of violence, drug withdrawal, or economic consequences.

- How some sex trafficking victims feel a sense of loyalty to, or dependence upon, their traffickers.

- How it is rare for sex trafficking victims to promptly report their traffickers to law enforcement.

- How traffickers often identify potential victims, including by looking for someone that appears (among other characteristics) easy to control or has a characteristic or need the trafficker can exploit, such as a drug addiction, a need for shelter, or inadequate support outside of the relationship with the trafficker.

Ms. Bender's CV is attached hereto as **Exhibit A**. Below, Ms. Bender has provided her signature to indicate that she has reviewed the above statement.

**s/Rebecca Bender**

Dated: May 10, 2023

2.  **MICHAEL J. PREISSER, SPECIAL AGENT, FEDERAL BUREAU OF INVESTIGATION (Rochester, NY)**

**Date: TBD**                          **Length of Testimony: 2 hours**

Special Agent Preisser has served as an FBI Special Agent for more than twenty-five years. He graduated from the FBI Academy in Quantico, Virginia in 1996. During his time with the FBI, he has participated in investigations involving drug trafficking and organized crime matters, including multiple long-term narcotics investigations and investigations involving court-authorized interception of wire and oral communications. His investigations have been in the Western District of New York. Special Agent Preisser has had the opportunity to work with other FBI agents and other law enforcement agents and officers of varying experience levels, who have also investigated drug trafficking networks. As a result of Special Agent Preisser's experience, he is familiar with how controlled substances are obtained, diluted, packaged, distributed, sold, and used in the framework of drug trafficking

in the Western District of New York. Furthermore, Special Agent Preisser is not a fact witness in this case. In other words, he has no personal knowledge of the underlying investigation.

Special Agent Preisser, through his training and experience, is familiar with the means and methods of trafficking of cocaine, heroin, narcotic pills, marijuana, and other controlled substances in the Western District of New York and throughout the country. He will testify that cocaine, heroin, narcotic pills, and most marijuana travels in interstate and foreign commerce. He will also testify that laundering U.S. currency through casinos is a common method of money laundering used by narcotics traffickers.

Below, SA Preisser has authorized the use of his electronic signature to indicate that he has reviewed the above statement.

s/Michael J. Preisser

Dated: May 10, 2023

**3.     JEFFREY BANAS, FORENSIC CHEMIST II, ERIE COUNTY CENTRAL POLICE SERVICES FORENSICS LAB (Buffalo, NY)**

**Date:  TBD**                                                                      **Length of Testimony: 2 hours**

Mr. Banas is a Forensic Chemist II employed by the Erie County Central Police Services Laboratory since April 2002. Mr. Banas received a Bachelor of Arts in Chemistry and a Bachelor of Science in Criminalistics from SUNY College at Buffalo in 1995. Mr. Banas' work at CPS includes analyzing substances to determine the presence and weight, if

any, of controlled substances. He has testified as an expert witness regarding controlled substance cases at least 42 times. Specifically, in the last four years, Mr. Banas has testified as an expert in the following cases:

- *People v. McNeil* (Buffalo City Court)
- *United States v. Dunnigan, et al.* (Western District of New York)
- *People v. Williams* (New York State Supreme Court)
- *People v. Cannon, et al.* (New York State Supreme Court)
- *People v. Richeal* (Tonawanda City Court)

Mr. Banas' education, work history, certifications and training are detailed in his curriculum vitae, which has been provided to the defense.

At trial, Mr. Banas will testify regarding the following:

- Based upon his testing and analysis, as set forth in Mr. Banas's report dated July 26, 2018, under lab number 17-02507, Mr. Banas tested numerous items submitted by Erie County Sheriff Deputy Tim Donovan for the presence of controlled substances.

- Mr. Banas tested a black garbage bag containing three bags of vegetable matter (Item 1). The vegetable matter was found to contain marijuana. The total weight was approximately 1,099.1 grams (+/- 1.6 grams) at a 99.73% level of confidence.

- Mr. Banas examined the contents of a zip-lock bag containing 20 tablets, imprinted "Endo 602" (Item 8). The shape and markings of the tablets was consistent with oxycodone. Mr. Banas analyzed one of the tablets and found that it was positive for oxycodone.

- Mr. Banas examined the contents of a zip-lock bag with 30 tablets imprinted "E/5" (Item 10). The shape and markings of the tablets was consistent with oxymorphone. Mr. Banas analyzed one of the tablets and found that it was positive for oxymorphone.

- Mr. Banas examined the contents of a zip-lock bag containing 100 tablets imprinted "M/57 71" (Item 11). The shape and markings of the tablets was consistent with methadone. Mr. Banas analyzed one of the tablets and found that it was positive for methadone.

- Mr. Banas examined the contents of a zip-lock bag containing 26 tablets imprinted "54 411" (Item 12). The shape and markings of the tablets was consistent with buprenorphine. Mr. Banas analyzed one of the tablets and found that it was positive for buprenorphine.

- Mr. Banas examined the contents of an unlabeled prescription bottle containing 107 tablets imprinted "M/57 71" (Item 13) The shape and markings of the tablets was consistent with methadone. Mr. Banas analyzed one of the tablets and found that it was positive for methadone.

- Mr. Banas examined the contents of an unlabeled prescription bottle containing 14 capsules imprinted "M.AmphetSalts 25mg" (Item 14). The shape and markings of the capsules was consistent with amphetamine. Mr. Banas analyzed one of the capsules and found that it was positive for amphetamine.

- Mr. Banas examined the contents of a zip-lock bag containing 2 tablets imprinted "CDN/80" (Item 23). The shape and markings of the tablets imprinted "CDN/80" was consistent with oxycodone. Mr. Banas analyzed one of the tablets and found that it was positive for fentanyl.

Mr. Banas's CV is attached and incorporated herein by reference as **Exhibit B**. Below, Mr. Banas has authorized the use of his electronic signature to indicate that he has reviewed the above statement.

**s/Jeffrey Banas**

Dated: May 10, 2023

4. **KAITLIN DROLLETTE, FORENSIC CHEMIST III, ERIE COUNTY CENTRAL POLICE SERVICES LAB (Buffalo, NY)**

**Date: TBD**                                           **Length of Testimony: 2 hours**

Ms. Drollette is a Forensic Chemist III employed by the Erie County Central Police Services Lab since June 2008. As a Forensic Chemist III, Ms. Drollette supervises other

7

forensic chemists. Ms. Drollette obtained a Bachelor of Arts Degree in Chemistry and Mathematics from the University at Buffalo and a Master's of Science Degree in Pharmacy and Pharmaceutical Sciences from the University of Florida. Ms. Drollette's work at CPS includes analyzing substances to determine the presence and weight, if any, of controlled substances. She has testified as an expert witness in United States District Court (Buffalo and Rochester), as well as Buffalo City Court, Erie County Court, Erie County Family Court, and New York State Supreme Court. Specifically, in the last four years, Ms. Drollette has testified as an expert in the following matters:

- *People v. White* (New York State Supreme Court)

- *United States v. Watkins* (Western District of New York)

- *United States v. Goudelock, et al.* (Western District of New York)

- *People v. Steele* (Erie County Court)

- *People v. Rodriguez* (Erie County Court)

- *United States v. Arrington* (Western District of New York)

Ms. Drollette's education, work history, certifications and training are detailed in her curriculum vitae, which will be provided to the defense.

At trial, Ms. Drollette will testify regarding her testing and analysis related to Lab Number 17-02522. Specifically:

- Ms. Drollette will testify that she examined a plastic wrap containing green vegetable matter (Item 1). She analyzed the vegetable matter, and it tested positive for marijuana. The weight of the vegetable matter was 888.3 grams (+/-0.9 grams) with a confidence level of 99.73%.

- Ms. Drollette will testify that she examined a pastic bag containing suspected controlled substances (Item 3). She analyzed the exhibit and found that it contained cocaine. The total weight was 128.78 grams (+/- 0.16 grams) with a confidence level of 99.73%.

- Ms. Drollette will testify that she examined a plastic bag containing 505 tablets imprinted "CDN/80," two partial tablets, and a defaced tablet, similar in appearance (Item 4). The shape and markings of the tablets indicates that they contain oxycodone. Ms. Drollette will testify that she analyzed one of the tablets and found that it was positive for fentanyl. The total weight of the 505 tablets, 2 partial tablets, and defaced tablet was 154.56 grams (+/-0.08 grams).

- Ms. Drollette examined two digital scales (Item 7). She analyzed residue on the scales and found it to contain marijuana, cocaine, and heroin.

- Ms. Drollette examined a prescription bottle containing 37 capsules marked "M. Amphet Salts 20 mg" (Item 12). The shape and markings on the capsules were consistent with amphetamine. The capsules were analyzed and found that contain amphetamine. The weight of the 37 capsules is 11.41 grams (+/- .08 grams), at a 99.73% confidence level.

- Ms. Drollette examined a prescription bottle containing, among other things, 29 tablets imprinted "M/57 71" (Item 12). The shape and markings on the tablets were consistent with methadone. Ms. Drollette analyzed the tablets and found that they contained methadone. The weight of the 29 tablets is 7.24 grams (+/- 0.08 grams), at a 99.73% confidence level.

Ms. Drollette's CV is attached and incorporated herein by reference as **Exhibit C**. Pursuant to Federal Rule of Criminal Procedure 16(g)(v), Ms. Drollette's opinions and the bases therefor are contained within her signed reports, which have been provided to the defense. As such, her signature on this document is not required.

5. **SHEILA HAGERTY, FORENSIC CHEMIST II, ERIE COUNTY CENTRAL POLICE SERVICES FORENSICS LAB (Buffalo, NY)**

**Date: TBD**                                              **Length of Testimony: 2 hours**

Ms. Hagerty is a Forensic Chemist employed by the Erie County Central Police Services Lab since September of 2017. Ms. Hagerty obtained a Bachelor of Science Degree

in Biology and a Masters Degree in Forensic Science from SUNY Buffalo. Ms. Hagerty's work at CPS includes analyzing substances to determine the presence and weight, if any, of controlled substances. She has testified as an expert witness in Erie County Court and in a variety of County District and Circuit Courts in the State of Kentucky. In the last four years, Ms. Hagerty testified in the following cases specifically:

- *People v. Deshawn Whims* (Erie County Court)
- *People v. Alfonso Quinney* (Erie County Court)
- *People v. Paul Tolbert* (Erie County Court)

Ms. Hagerty's education, work history, certifications and training are detailed in her curriculum vitae, which has been provided to the defense.

At trial, Ms. Hagerty will testify regarding her testing and analysis related to Lab Number 19-03938. Specifically, with respect to Report 1, dated August 21, 2019, Ms. Hagerty will testify that:

- Ms. Hagerty analyzed one plastic wrap containing suspected drug residue (Item 24). The residue was confirmed to contain testosterone propionate, a controlled substance.

- Ms. Hagerty received one sealed plastic bag with five sealed plastic bags containing vegetable matter (Item 003). She analyzed three of the five bags, and the vegetable matter was confirmed to contain marijuana. The weight of the analyzed vegetable matter was 1,392.0 grams (+/- 1.2 grams).

- Ms. Hagerty analyzed one sealed plastic bag with 24 items containing suspected controlled substances (Item 004). One of the 24 items was analyzed and confirmed to contain delta-9 tetrahydracannabinol, a controlled substance.

- Ms. Hagerty analyzed one sealed plastic bag with one container of suspected controlled substances (Item 006). The submitted exhibit was analyzed and

confirmed to contain delta-9 tetrahydracannabinol, a controlled substance.

With respect to Report 2, dated September 12, 2019, Ms. Hagerty will testify that:

- Ms. Hagerty analyzed one sealed plastic bag with vegetable matter (Item 3A). The vegetable matter was analyzed and confirmed to contain marijuana. The weight of the analyzed vegetable matter was 1,620.9 grams (+/- 1.2 grams).

- Ms. Hagerty analyzed one sealed plastic bag with a zip-locked plastic bag containing suspected controlled substances, including a gummy (Item 26). The gummy was analyzed and confirmed to contain delta-9 tetrahydracannabinol, a controlled substance.

- Ms. Hagerty analyzed one sealed plastic bag with suspected controlled substances, including, among other things, one bottle labeled testosterone enanthate (Item 28). The bottle was analyzed and confirmed to contain testosterone enanthate, a controlled substance.

- Ms. Hagerty analyzed one sealed plastic bag with one plastic corner containing a powder substance (Item 30). The powder substance was analyzed and confirmed to contain cocaine. The weight of the analyzed substance was 1.68 grams (+/- 0.07 grams).

Ms. Hagerty's CV is attached and incorporated by reference as **Exhibit D**. Ms. Hagerty has authorized the use of her electronic signature to indicate that she has reviewed the above statement.

**s/Sheila Hagerty**

Dated: May 10, 2023

6. **STEPHANIE M. BIFANO, C.P.A., CFE, FORENSIC ACCOUNTANT, FEDERAL BUREAU OF INVESTIGATION (Buffalo, NY)**

**Date: TBD**                                          **Length of Testimony: 4 hours**

The government will present testimony from Forensic Accountant Stephanie Bifano

11

pursuant to Rule 1006. Ms. Bifano has reviewed voluminous financial records associated with Joseph Bongiovanni and Lindsay Bongiovanni and has produced summary charts detailing financial activity in various accounts over time. *See* Fed. R. Evid. 1006; *see also United States v. Rigas*, 490 F.3d 208, 224 (2d Cir. 2007); *United States v. Blakstad* 2021 WL 5233417, at *4-6 (S.D.N.Y. Nov. 9, 2021). However, in an abundance of caution, and to the extent the Court or defense counsel believe that expert notice is required pursuant to Rule 16, the government submits a summary of Ms. Bifano's qualifications and anticipated testimony.

Ms. Bifano has served as a Federal Bureau of Investigation Forensic Accountant for over 12 years. She graduated from FBI Academy in Quantico, VA in 2011, following completion of the FBI Forensic Accounting Core Training Session. She holds a Certified Public Accountant license in the State of New York and has maintained that license since 2003. Ms. Bifano is also a Certified Fraud Examiner and has held that certification since 2014. Ms. Bifano received her Bachelor of Science Degree in Business Administration with an emphasis in Accounting from West Virginia University in 1998. To maintain her CPA license in New York, Ms. Bifano completes 40 hours of continuing education per year. To maintain her CFE credential, Ms. Bifano completes 20 hours of continuing education per year.

In the last eight years, Ms. Bifano has testified pursuant to Rule 1006, but not as an expert, in the following cases:

- *United States v. Michael Luehrsen* (Western District of New York)
- *United States v. Steve S. Jabar, et al.* (Western District of New York)

- *United States v. James A. MacCallum* (Western District of New York)

At trial, Ms. Bifano will testify regarding her review and analysis of Joseph Bongiovanni and Lindsay Bongiovanni's joint finances from approximately 2012 to 2018. Ms. Bifano will discuss sources of income identified through her analysis, including, but not limited to, W-2 wages, rental income, and loan proceeds. Ms. Bifano will also discuss uses of income from the Bongiovannis' accounts, including, but not limited to, cash withdrawals, credit card payments, and loan payments. Ms. Bifano will also testify regarding her analysis of the Bongiovannis' tax records obtained through Intuit and mortgage applications. The government also anticipates that it will receive copies of the Bongiovannis' tax returns from the Internal Revenue Service prior to trial, and those records will be incorporated into Ms. Bifano's analysis. Ms. Bifano will testify that her analysis established that the Bongiovannis often received tax refunds resulting from sizeable charitable deductions claimed.

Ms. Bifano will introduce summary exhibits based on her analysis of the accounts and taxes. Ms. Bifano's analysis and the summary exhibits will establish that, but for cash deposits and tax refunds, Joseph and Lindsay Bongiovanni would have been financially unstable, and their uses would have far exceeded their sources of income.

Ms. Bifano will also testify regarding Bongiovanni's borrowing behavior during the relevant period. This will include loans against his home and classic car, multiple loans from his retirement account, and loans taken to refinance credit card debt. Ms. Bifano will also

summarize activity associated with numerous credit cards held by the Bongiovanni's. Ms. Bifano's analysis will establish that the Bongiovanni's had significant and rising amounts of credit card debt and high levels of credit card utilization over the years she analyzed. In sum, her testimony will establish that, during the years she analyzed, Joseph and Lindsay Bongiovanni were heavily leveraged, and their debt was increasing.

Ms. Bifano has authorized the use of her electronic signature to indicate that she has approved the above statement.

**s/Stephanie M. Bifano**

May 10, 2023

DATED: Buffalo, New York, May 10, 2023.

| | |
|---|---|
| COREY R. AMUNDSON<br>Chief | TRINI E. ROSS<br>United States Attorney |
| BY: s/JORDAN DICKSON<br>Trial Attorney<br>Public Integrity Section<br>U.S. Department of Justice<br>Criminal Division<br>1301 New York Ave. NW, Suite 1000<br>Washington, D.C. 20530 | BY: s/JOSEPH M. TRIPI<br>s/ NICHOLAS T. COOPER<br>s/ DAVID J. RUDROFF<br>Assistant United States Attorneys<br>Western District of New York<br>138 Delaware Avenue<br>Buffalo, New York 14202 |