1
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK
2
     _____
3    UNITED STATES OF AMERICA,
                                        Case No. 1:19-cr-227
4                   Plaintiff,                    (LJV)
     v.
5                                       February 21, 2024
     JOSEPH BONGIOVANNI,
6
     _____Defendant._____
7

8     TRANSCRIPT EXCERPT - EXAMINATION OF MICHAEL O'ROURKE - DAY 2
              BEFORE THE HONORABLE LAWRENCE J. VILARDO
9                    UNITED STATES DISTRICT JUDGE

10
     APPEARANCES:           TRINI E. ROSS, UNITED STATES ATTORNEY
11                          BY: JOSEPH M. TRIPI, ESQ.
                                NICHOLAS T. COOPER, ESQ.
12                              CASEY L. CHALBECK, ESQ.
                            Assistant United States Attorneys
13                          Federal Centre
                            138 Delaware Avenue
14                          Buffalo, New York 14202
                               And
15                          UNITED STATES DEPARTMENT OF JUSTICE
                            BY: JORDAN ALAN DICKSON, ESQ.
16                          1301 New York Ave NW
                            Suite 1000
17                          Washington, DC 20530-0016
                            For the Plaintiff
18
                            SINGER LEGAL PLLC
19                          BY: ROBERT CHARLES SINGER, ESQ.
                            80 East Spring Street
20                          Williamsville, New York 14221
                               And
21                          LAW OFFICES OF PARKER ROY MacKAY
                            BY: PARKER ROY MacKAY, ESQ.
22                          3110 Delaware Avenue
                            Kenmore, New York  14217
23                          For the Defendant

24   PRESENT:               BRIAN A. BURNS, FBI Special Agent
                            MARILYN K. HALLIDAY, HSI Special Agent
25                          KAREN A. CHAMPOUX, USA Paralegal

|   |   |   |
|---|---|---|
| 1 | **LAW CLERK:** | **REBECCA FABIAN IZZO, ESQ.** |
| 2 | **COURT DEPUTY CLERK:** | **COLLEEN M. DEMMA** |
| 3 | **COURT REPORTER:** | **ANN MEISSNER SAWYER, FCRR, RPR, CRR** |
| 4 | | Robert H. Jackson Federal Courthouse<br>2 Niagara Square |
| 5 | | Buffalo, New York  14202<br>Ann_Sawyer@nywd.uscourts.gov |

6

7                    *    *    *    *    *    *    *

8           (Excerpt commenced at 9:43 a.m.)

09:43AM      9           (Jury seated at 9:43 a.m.)

09:43AM     10           **THE COURT:**  Good morning, everyone.

09:43AM     11           **ALL PARTIES:**  Good morning.

09:43AM     12           **THE COURT:**  Welcome back.

09:43AM     13           The record will reflect that all our jurors are

09:43AM     14     present.

09:43AM     15           I remind the witness that he's still under oath.

09:43AM     16           And I think we're ready to begin cross-examination.

09:44AM     17           **MR. MacKAY:**  May I proceed, Your Honor?

09:44AM     18           **THE COURT:**  Yes.

09:44AM     19

09:44AM     20     **M I C H A E L   O ' R O U R K E,** having been previously duly

09:44AM     21     called and sworn, continued to testify as follows:

09:44AM     22

09:44AM     23                    **CROSS-EXAMINATION BY MR. MacKAY:**

09:44AM     24     Q.  Good morning, Mr. O'Rourke

09:44AM     25     A.  Good morning, Mr. MacKay.

09:44AM   1   Q.  How are you?

09:44AM   2   A.  Good.  How are you?

09:44AM   3   Q.  I'm well, thanks for asking.

09:44AM   4       All right.  So you testified here on direct yesterday,

09:44AM   5   and then you had the opportunity go home, correct?

09:44AM   6   A.  Yes.

09:44AM   7   Q.  Now when you testified yesterday, do you recall you

09:44AM   8   needed your memory refreshed at least once during your

09:44AM   9   testimony?

09:44AM   10  A.  Yes.

09:44AM   11  Q.  Okay.  And I presume that's because the incident we're

09:44AM   12  all talking about happened now over a decade ago, correct?

09:44AM   13  A.  That's correct.

09:44AM   14  Q.  November of 2012, correct?

09:44AM   15  A.  That's correct.

09:44AM   16  Q.  And you recall when you were here in court yesterday,

09:44AM   17  Mr. Tripi refreshed your memory by pointing you to your grand

09:44AM   18  jury testimony; do you remember that?

09:44AM   19  A.  I do.

09:44AM   20  Q.  Okay.  And that took place, you went into the grand jury

09:44AM   21  and you testified in June of 2020, correct?

09:44AM   22  A.  That's correct.

09:44AM   23  Q.  Okay.  Now, at that point in time, when you testified

09:44AM   24  before the grand jury, you had with you a case report,

09:45AM   25  there's about 23 pages long; do you recall that?

09:45AM   1   A.  I do.

09:45AM   2   Q.  Okay.  And that contained mostly the documents that the

09:45AM   3   state police had from the case, correct?

09:45AM   4   A.  That's correct.

09:45AM   5   Q.  Had some search warrant material in it, correct?

09:45AM   6   A.  The documents I believe I had were a copy of the search

09:45AM   7   warrant, and a copy of the booking sheet, and several

09:45AM   8   photographs of the defendants.

09:45AM   9   Q.  Okay.  Do you recall either having at that time or having

09:45AM   10   looked at before you went into the grand jury -- about a --

09:45AM   11   call it a case report, it's about five paragraphs long?

09:45AM   12   A.  I did not prepare that report, so I can't recall if I

09:45AM   13   reviewed that report or not.

09:45AM   14   Q.  Would it help to refresh your recollection to take a look

09:45AM   15   at that report to see if that was something you reviewed

09:45AM   16   before you testified?

09:45AM   17   A.  Yes.

09:45AM   18        MR. MacKAY:  Okay.  Ms. Champoux, can we, for the

09:46AM   19   witness only, put 3510C on the screen?

09:46AM   20        BY MR. MacKAY:

09:46AM   21   Q.  Can you read that, or -- I can see you getting your

09:46AM   22   glasses out.

09:46AM   23   A.  Yep.

09:46AM   24   Q.  So if you look at that silently to yourself, and then

09:46AM   25   look back up at me.

09:46AM    1    A.  I've seen that report before.  I didn't prepare it, so I

09:46AM    2    can't recall exactly if I reviewed it before a grand jury or

09:46AM    3    not.

09:46AM    4           MR. MacKAY:  And, Ms. Champoux, you can take down

09:46AM    5    3510C.  Okay.

09:46AM    6           BY MR. MacKAY:

09:46AM    7    Q.  But the document, is it fair to say that the documents

09:46AM    8    you did have before you in the grand jury and what you

09:46AM    9    reviewed before you went into the grand jury did not include

09:46AM   10    any notes or summary of any meeting with Mr. Bongiovanni?

09:46AM   11    A.  That's correct.

09:46AM   12    Q.  All right.  And you had met with the government about six

09:47AM   13    months before going into the grand jury; does that sound

09:47AM   14    accurate?

09:47AM   15    A.  Yes.

09:47AM   16    Q.  Okay.  Back in December of 2019 was your meeting with

09:47AM   17    them?

09:47AM   18    A.  Yes.

09:47AM   19    Q.  And you spoke with, I assume, some other type of law

09:47AM   20    enforcement, correct?

09:47AM   21    A.  Yes, federal law enforcement.

09:47AM   22    Q.  Okay.  And perhaps prosecutors at that time?

09:47AM   23    A.  I don't recall who was at the meeting other than at least

09:47AM   24    one agent from his.

09:47AM   25    Q.  Okay.  And at that time, you learned a little bit about

09:47AM    1    what this case was about, correct?

09:47AM    2    A.  Yeah.  I learned a small amount, I guess my involvement.

09:47AM    3    Q.  I mean, you knew it was focused somewhere around this

09:47AM    4    November 25th, 2012 arrest, correct?

09:48AM    5    A.  Yes.

09:48AM    6    Q.  Okay.  So let's go to that.

09:48AM    7        You, as part of the New York State Police, participate in

09:48AM    8    this arrest on 17 Elmview Place on November 25th, 2012,

09:48AM    9    correct?

09:48AM   10    A.  That's correct.

09:48AM   11    Q.  I think you told us on direct, in sum and substance what

09:48AM   12    happens is, you get some information from Illinois that calls

09:48AM   13    the New York State Police to act here in Buffalo, correct?

09:48AM   14    A.  Yes.

09:48AM   15    Q.  Simple way of explaining it, drugs are getting dropped

09:48AM   16    off and you make a bust right after that happens, correct?

09:48AM   17    A.  That's true.

09:48AM   18    Q.  And in doing that, you, the State police, arrest both

09:48AM   19    Damien Abbate and Wayne Anderson, correct?

09:48AM   20    A.  Yes.

09:48AM   21    Q.  Your involvement was primarily focused on Wayne Anderson,

09:48AM   22    correct?

09:48AM   23    A.  Yes.

09:48AM   24    Q.  There was somebody else dealing with Damien Abbate,

09:48AM   25    correct?

09:48AM   1    A.  That's correct.

09:48AM   2    Q.  That's Investigator Tony Palmer, correct?

09:48AM   3    A.  That's correct.

09:48AM   4    Q.  And generally you need -- you can't deal with all the

09:48AM   5    defendants on the scene at once, correct?

09:48AM   6    A.  That's true.

09:48AM   7    Q.  Okay.  Now, place him in handcuffs, Mr. Anderson,

09:49AM   8    correct?

09:49AM   9    A.  That's correct.

09:49AM   10   Q.  You get him into your vehicle, your police vehicle,

09:49AM   11   correct?

09:49AM   12   A.  That's correct.

09:49AM   13   Q.  And then you take him down to central booking downtown,

09:49AM   14   correct?

09:49AM   15   A.  That's right.

09:49AM   16   Q.  And during that drive downtown, you talk to him a little

09:49AM   17   bit to try to -- to begin the conversation to potentially

09:49AM   18   flip him; is that fair to say?

09:49AM   19   A.  Yes.

09:49AM   20   Q.  Okay.  And is it fair to say that oftentimes law

09:49AM   21   enforcement will talk during that ride because it can be a

09:49AM   22   stressful time for the defendant?

09:49AM   23   A.  Yes.

09:49AM   24   Q.  And this is a prime time when defendants often start

09:49AM   25   talking when they shouldn't, correct?

Case 1:19-cr-00227-LJV-MJR   Document 777   Filed 02/25/24   Page 8 of 33
USA v Bongiovanni - O'Rourke - MacKay/Cross - 2/21/24

8

09:49AM    1    A.   Sometimes it's the only opportunity we have to

09:49AM    2    communicate with the defendant before he goes to jail, so

09:49AM    3    it's always the best time to communicate with the defendant.

09:49AM    4    Q.   And there's often a lot of pressure on the defendant at

09:49AM    5    that point in time, correct?  Because they're facing charges,

09:50AM    6    correct?

09:50AM    7    A.   Well, I'm sure they're in a very stressful situation.

09:50AM    8    They're in handcuffs, they're going to jail, they're probably

09:50AM    9    feeling quite a bit of pressure.

09:50AM   10    Q.   So in your conversation with Mr. Anderson as he goes

09:50AM   11    downtown, he basically just said I'm not talking, I'm getting

09:50AM   12    a lawyer, correct?

09:50AM   13    A.   Correct.

09:50AM   14    Q.   And once an individual gets a lawyer, you know that you

09:50AM   15    can no longer speak directly to that individual, correct?

09:50AM   16    A.   Correct.

09:50AM   17    Q.   As members of law enforcement, you would now need to go

09:50AM   18    through that person's attorney, correct?

09:50AM   19    A.   Correct.

09:50AM   20    Q.   So the moment somebody says they want a lawyer, you can

09:50AM   21    no longer talk to them, correct?

09:50AM   22    A.   Correct.

09:50AM   23    Q.   Or the moment they enter a court and are either assigned

09:50AM   24    an attorney or they go out and pay an attorney who shows up,

09:50AM   25    you can't talk to them anymore, correct?

| | | |
|---|---|---|
| 09:50AM | 1 | A.  Correct. |
| 09:50AM | 2 | Q.  So if there's any cooperation to be done with an |
| 09:50AM | 3 | individual or a defendant, after they get an attorney you've |
| 09:51AM | 4 | got to go through that attorney, correct? |
| 09:51AM | 5 | A.  Correct. |
| 09:51AM | 6 | Q.  Because what happens with a court case is the prosecutor |
| 09:51AM | 7 | is going to handle it once charges are filed, correct? |
| 09:51AM | 8 | A.  That's correct. |
| 09:51AM | 9 | Q.  And in this case, what happened is you take Mr. Abbate -- |
| 09:51AM | 10 | you took Mr. Anderson downtown, and you dropped off charges |
| 09:51AM | 11 | at central booking, correct? |
| 09:51AM | 12 | A.  Correct. |
| 09:51AM | 13 | Q.  And so the jury understands, central booking is where |
| 09:51AM | 14 | they hold somebody before they get arraigned for their first |
| 09:51AM | 15 | time in court, correct? |
| 09:51AM | 16 | A.  Yes. |
| 09:51AM | 17 | Q.  And central booking can't hold somebody and received them |
| 09:51AM | 18 | unless there is a charge, correct? |
| 09:51AM | 19 | A.  Yes. |
| 09:51AM | 20 | Q.  You've got to drop a defendant off with a charge or |
| 09:51AM | 21 | they're gonna say we have nothing to hold this person, |
| 09:51AM | 22 | correct? |
| 09:51AM | 23 | A.  Yeah, we fill out a booking sheet, and give the charges. |
| 09:51AM | 24 | We also sign the felony complaint that's prepared by the |
| 09:51AM | 25 | report technicians.  And, so, he's charged at that point, |

| | | |
|---|---|---|
| 09:51AM | 1 | yes. |
| 09:51AM | 2 | Q.  Right.  So -- so, Mr. Anderson is charged by the time you |
| 09:52AM | 3 | drop him off at central booking, correct? |
| 09:52AM | 4 | A.  Yes. |
| 09:52AM | 5 | Q.  That's what that process facilitates, correct? |
| 09:52AM | 6 | A.  That's correct. |
| 09:52AM | 7 | Q.  And you mentioned a term felony complaint, correct? |
| 09:52AM | 8 | A.  That's correct. |
| 09:52AM | 9 | Q.  That is a document specific to New York State Court that |
| 09:52AM | 10 | initially charges the defendant with some felony, correct? |
| 09:52AM | 11 | A.  That's right. |
| 09:52AM | 12 | Q.  So that's what Mr. Anderson was dropped off at Buffalo -- |
| 09:52AM | 13 | at the central booking with, correct? |
| 09:52AM | 14 | A.  That's correct. |
| 09:52AM | 15 | Q.  Okay.  So it would absolutely be incorrect to say that |
| 09:52AM | 16 | Wayne Anderson was not charged; is that a fair |
| 09:52AM | 17 | characterization? |
| 09:52AM | 18 | A.  Yes. |
| 09:52AM | 19 | Q.  Okay.  Now, I think you mentioned on your direct, do you |
| 09:52AM | 20 | recall these defendants, Mr. Anderson and Mr. Abbate, being |
| 09:52AM | 21 | charged with Class C felonies, correct? |
| 09:52AM | 22 | A.  Yes. |
| 09:52AM | 23 | Q.  And Class C felonies, I think you told us, are for |
| 09:52AM | 24 | anything above 10 pounds of marijuana in New York State |
| 09:52AM | 25 | Court, correct? |

| | | |
|---|---|---|
| 09:53AM | 1 | A.  Yes. |
| 09:53AM | 2 | Q.  It's essentially the highest marijuana charge that the |
| 09:53AM | 3 | state courts have that you can bring, correct? |
| 09:53AM | 4 | A.  The highest possession charge. |
| 09:53AM | 5 | Q.  Possession charge.  So whether somebody's got 1,000 |
| 09:53AM | 6 | kilograms of marijuana or it's a little more than 10 pounds, |
| 09:53AM | 7 | that's the charge they get for possession, correct? |
| 09:53AM | 8 | A.  That is correct. |
| 09:53AM | 9 | Q.  Okay.  Now, you had experience with other drug cases with |
| 09:53AM | 10 | other substances when you were at State police, correct? |
| 09:53AM | 11 | A.  Yes. |
| 09:53AM | 12 | Q.  There do exist higher level charges for other types of |
| 09:53AM | 13 | substances, correct? |
| 09:53AM | 14 | A.  Yes. |
| 09:53AM | 15 | **MR. TRIPI:**  Objection.  New York State penalties for |
| 09:53AM | 16 | other charges.  Relevance, 403. |
| 09:53AM | 17 | **THE COURT:**  Overruled. |
| 09:53AM | 18 | **BY MR. MacKAY:** |
| 09:53AM | 19 | Q.  So, there are, for example, there are Class A2 and Class |
| 09:53AM | 20 | B felonies, correct? |
| 09:53AM | 21 | A.  That's correct. |
| 09:53AM | 22 | Q.  And in sum and substance, those can carry more penalties |
| 09:53AM | 23 | than a Class C felony, correct? |
| 09:53AM | 24 | A.  That's correct. |
| 09:53AM | 25 | **THE COURT:**  We're talking about penalties for drug |

Case 1:19-cr-00227-LJV-MJR   Document 777   Filed 02/25/24   Page 12 of 33
USA v Bongiovanni - O'Rourke - MacKay/Cross - 2/21/24

12

| | | |
|---|---|---|
| 09:53AM | 1 | possession, is that what we're talking about? |
| 09:53AM | 2 | **MR. MacKAY:**  Yes, correct. |
| 09:53AM | 3 | **BY MR. MacKAY:** |
| 09:54AM | 4 | Q.  You drop Mr. Anderson off at central booking, correct? |
| 09:54AM | 5 | A.  Yes. |
| 09:54AM | 6 | Q.  You gave him the paperwork so he can be charged, correct? |
| 09:54AM | 7 | A.  Yes. |
| 09:54AM | 8 | Q.  And the drugs are sent down to your State police |
| 09:54AM | 9 | laboratory for testing, correct? |
| 09:54AM | 10 | A.  I believe they were, yes. |
| 09:54AM | 11 | Q.  Did you at some point in time see a lab report come back |
| 09:54AM | 12 | noting that the substance was, in fact, marijuana? |
| 09:54AM | 13 | A.  No, I don't recall seeing a lab report. |
| 09:54AM | 14 | Q.  Okay.  But evidence was taken from the scene of |
| 09:54AM | 15 | 17 Elmview Place, correct? |
| 09:54AM | 16 | A.  Yes.  I've seen an evidence log, but again, I was |
| 09:54AM | 17 | assisting on this case, I was not the, as we refer to, as the |
| 09:54AM | 18 | case agent who would be responsible for accumulating all |
| 09:54AM | 19 | those reports.  But I did review a -- what we call a general |
| 09:54AM | 20 | 2 evidence record. |
| 09:54AM | 21 | Q.  Okay.  But you didn't transport any evidence away from |
| 09:54AM | 22 | the scene, correct? |
| 09:54AM | 23 | A.  That's correct. |
| 09:54AM | 24 | Q.  Just the defendant, correct? |
| 09:54AM | 25 | A.  Just the defendant. |

```
09:55AM   1   Q.  And when you were at 17 Elmview Place executing the

09:55AM   2   search warrant, Mr. Bongiovanni was not present at the scene,

09:55AM   3   correct?

09:55AM   4   A.  That's right.

09:55AM   5   Q.  There was no -- this was solely a State police

09:55AM   6   investigation here in Buffalo, correct?

09:55AM   7   A.  Yes.

09:55AM   8   Q.  With the exception of the Illinois State Police

09:55AM   9   component, this was New York State Police doing what it did

09:55AM  10   on that date at that location, correct?

09:55AM  11   A.  That's correct.

09:55AM  12   Q.  I think you mentioned it was Buffalo Police Department

09:55AM  13   may be involved with SWAT?

09:55AM  14   A.  I don't believe the Buffalo Police Department was

09:55AM  15   involved.

09:55AM  16   Q.  You guys have your own Special Weapons and Tactics team?

09:55AM  17   A.  Yeah, it was the SORT team, Special Operations and Rescue

09:55AM  18   Team, I believe it stands for.

09:55AM  19   Q.  Okay.  So long story short, there's no DEA personnel on

09:55AM  20   the scene on November 25th, 2012?

09:55AM  21   A.  No, there's not.

09:55AM  22   Q.  And just to be clear, Mr. Bongiovanni doesn't reach out

09:55AM  23   to you at any point in time, for example, when you're driving

09:55AM  24   Mr. Anderson down to central booking, correct?

09:56AM  25   A.  That's correct.
```

09:56AM   1   Q.   You don't hear from him until several days later,

09:56AM   2   correct?

09:56AM   3   A.   That's right.

09:56AM   4   Q.   You approximated it to be 48 hours or so?

09:56AM   5   A.   Yes.

09:56AM   6   Q.   But let's back up.  You leave Mr. Anderson at central

09:56AM   7   booking, and that's the process in your mind that starts a

09:56AM   8   State court case, correct?

09:56AM   9   A.   That's correct.

09:56AM   10   Q.   Because you filled out -- or, somebody has filled out a

09:56AM   11   felony complaint, and that will to your knowledge wind up

09:56AM   12   being handled by a State court prosecutor, correct?

09:56AM   13   A.   Correct.

09:56AM   14   Q.   And if there's a State court crime charged in Erie

09:56AM   15   County, New York, that's generally going to be the Erie

09:56AM   16   County District Attorney's Office, correct?

09:56AM   17   A.   That's correct.

09:56AM   18   Q.   The New York State Attorney Generals can do some

09:56AM   19   prosecution, but generally most crimes in Erie County, to

09:56AM   20   your knowledge, are going to be prosecuted by an Assistant

09:56AM   21   District Attorney, correct?

09:56AM   22   A.   That's correct.

09:56AM   23   Q.   And you actually now work at that office, correct?

09:57AM   24   A.   That's correct.

09:57AM   25   Q.   You work as an investigator assisting the office, and the

09:57AM    1    attorneys in particular, correct?

09:57AM    2    A.  That's correct.

09:57AM    3    Q.  So, so let's go to this meeting.

09:57AM    4        It's preceded by, you think, at least a phone call or two

09:57AM    5    from Mr. Bongiovanni to set the meeting up?

09:57AM    6    A.  Yes.

09:57AM    7    Q.  Okay.  And then you have the meeting, it's at the CNET

09:57AM    8    office, at the State -- the old State office building,

09:57AM    9    correct?

09:57AM   10    A.  That's right.

09:57AM   11    Q.  That's where your headquarters were at the time, correct?

09:57AM   12    A.  That was a satellite office, but yes.

09:57AM   13    Q.  Okay.  And it's your understanding, going into this

09:57AM   14    meeting, that it's going to focus in some fashion on Wayne

09:57AM   15    Anderson, correct?

09:57AM   16    A.  That's correct.

09:57AM   17    Q.  Now when you actually have the meeting, Wayne Anderson is

09:57AM   18    not present, correct?

09:57AM   19    A.  That's right.

09:57AM   20    Q.  And based on what you knows happens in State court cases,

09:58AM   21    Wayne Anderson would have been represented by a lawyer at

09:58AM   22    that point in time, correct?

09:58AM   23    A.  Well, once the felony complaint is lodged, his right to a

09:58AM   24    counsel attaches, so he would have had an attorney.

09:58AM   25    Q.  Right.  So, you would not have been able to leave that

09:58AM   1   meeting and go call up Wayne Anderson personally --

09:58AM   2   A.   No.

09:58AM   3   Q.   -- correct?

09:58AM   4   A.   That's correct.

09:58AM   5   Q.   Right.  Because he -- you would be breaking certain

09:58AM   6   rules, correct?

09:58AM   7   A.   Correct.

09:58AM   8   Q.   Now, to your recollection, the conversation has something

09:58AM   9   to do with Mr. Anderson possibly being able to be used by

09:58AM   10  DEA?

09:58AM   11  A.   Yes.

09:58AM   12  Q.   Okay.  Now, do you recall whether Mr. Bongiovanni

09:58AM   13  specifically said we're going to use him as a confidential

09:58AM   14  informant, or whether it was more focused on what the nature

09:58AM   15  of the investigation was and what Mr. Anderson's exposure

09:58AM   16  was?

09:58AM   17  A.   I don't believe that there was a conversation about

09:59AM   18  specifically using him as a confidential informant.  It was

09:59AM   19  possibly the potential of, but more the investigation, our

09:59AM   20  arrest, our investigation, would have been possibly related

09:59AM   21  to Organized Crime --

09:59AM   22  Q.   Okay.

09:59AM   23  A.   -- as the focus of that meeting.

09:59AM   24  Q.   So would it be fair to characterize this meeting is sort

09:59AM   25  of an interagency meeting to determine what happened on

09:59AM 1    November 12th -- 25th, 2012?

09:59AM 2    A.  Yes, but also the potential to, again, as I testified

09:59AM 3    yesterday, to maybe take this case to a further level

09:59AM 4    federally, and it would -- it would require the cooperation

09:59AM 5    of Mr. Anderson.

09:59AM 6    Q.  But in order to get there, obviously, you have to share

10:00AM 7    some details about what happened as part of this

10:00AM 8    investigation, correct?

10:00AM 9    A.  Yeah, details and/or paperwork.

10:00AM 10   Q.  Okay.  Now, you told us a little bit about the

10:00AM 11   possibility that it could be used for a federal matter,

10:00AM 12   right?

10:00AM 13   A.  Correct.

10:00AM 14   Q.  Okay.  But I think you told us before, though, this is

10:00AM 15   still somewhat generic, there's no specifics proposed,

10:00AM 16   correct?

10:00AM 17   A.  Correct.

10:00AM 18   Q.  Okay.  And, you know, Mr. Bongiovanni never told you

10:00AM 19   something to the effect of we're going to adopt your case,

10:00AM 20   correct?

10:00AM 21   A.  Correct.

10:00AM 22   Q.  He never leaves the CNET office with any of the physical

10:00AM 23   evidence from the case, correct?

10:00AM 24   A.  No evidence, no.

10:00AM 25   Q.  Okay.  So to your knowledge the drugs, any scales, or

Case 1:19-cr-00227-LJV-MJR   Document 777   Filed 02/25/24   Page 18 of 33
USA v Bongiovanni - O'Rourke - MacKay/Cross - 2/21/24

18

10:00AM    1    anything else that was seized in this, stayed with State

10:00AM    2    police, correct?

10:00AM    3    A.  Correct.

10:00AM    4    Q.  And then you don't ever really hear from Mr. Bongiovanni

10:00AM    5    again with regard to this incident, correct?

10:00AM    6    A.  No, I don't.

10:00AM    7    Q.  Okay.  Okay.  Now, to your knowledge, after these two

10:01AM    8    defendants are arrested, the case proceeds to some degree,

10:01AM    9    correct?

10:01AM   10    A.  Yes.

10:01AM   11    Q.  Because you end up having to meet with the assigned

10:01AM   12    Assistant District Attorney at least once, correct?

10:01AM   13    A.  I don't recall meeting with the assigned District

10:01AM   14    Attorney.

10:01AM   15    Q.  Do you recall having any contact with him?

10:01AM   16    A.  Not specifically, I mean, about this case.

10:01AM   17    Q.  Do you recall the assigned assistant was ADA Paul

10:01AM   18    Williams?

10:01AM   19    A.  I do believe it would have been Mr. Williams.  He was the

10:01AM   20    chief of narcotics at the time.  And we -- any cases we did

10:01AM   21    with the District Attorney at that time was with

10:01AM   22    Mr. Williams.

10:01AM   23    Q.  Okay.  And in your experience from the law enforcement

10:02AM   24    side before you got to the District Attorney's Office, what

10:02AM   25    office happens once a case is charged is sometimes the

| | | |
|---|---|---|
| 10:02AM | 1 | prosecutor needs to reach out to the specific law enforcement |
| 10:02AM | 2 | agents to get some information on the case, correct? |
| 10:02AM | 3 | A.   Correct. |
| 10:02AM | 4 | Q.   Sometimes they might say something like, hey, we're going |
| 10:02AM | 5 | to be doing a pretrial hearing, we need you to be available |
| 10:02AM | 6 | on a certain day on testimony? |
| 10:02AM | 7 | **MR. TRIPI:**  Objection.  Speculative.  403, 401. |
| 10:02AM | 8 | **THE COURT:**  No overruled. |
| 10:02AM | 9 | **BY MR. MacKAY:** |
| 10:02AM | 10 | Q.   Did you get my question? |
| 10:02AM | 11 | A.   No, can you repeat it. |
| 10:02AM | 12 | Q.   So sometimes you might be called in to testify for a |
| 10:02AM | 13 | pretrial hearing? |
| 10:02AM | 14 | A.   That's correct. |
| 10:02AM | 15 | Q.   You could be called in to testify for trial testimony, |
| 10:02AM | 16 | correct? |
| 10:02AM | 17 | A.   That's correct. |
| 10:02AM | 18 | Q.   And sometimes you can be called because there's a proffer |
| 10:02AM | 19 | session going on where your presence as the law enforcement |
| 10:02AM | 20 | agent might be needed, correct? |
| 10:02AM | 21 | A.   Correct. |
| 10:02AM | 22 | Q.   And you've sat in on those before, correct? |
| 10:02AM | 23 | A.   Yes. |
| 10:02AM | 24 | Q.   That's really what we're talking about when there are |
| 10:02AM | 25 | cooperation -- when cooperation is going on, correct? |

USA v Bongiovanni - O'Rourke - MacKay/Cross - 2/21/24

20

10:03AM  1    A.  That's correct.

10:03AM  2    Q.  A charged defendant comes in with their lawyer, sits down

10:03AM  3    with the prosecutor, and then usually with a law enforcement

10:03AM  4    agent, correct?

10:03AM  5    A.  That's correct.

10:03AM  6    Q.  And you've done that in cases where you've been the law

10:03AM  7    enforcement agent in that room for a proffer session,

10:03AM  8    correct?

10:03AM  9    A.  Yes.

10:03AM  10   Q.  And you were never contacted by an Assistant District

10:03AM  11   Attorney's Office in this case saying we're going to do one

10:03AM  12   of those, correct?

10:03AM  13   A.  I don't recall being contacted for a proffer on this

10:03AM  14   case.  Again, I was assisting, I wasn't what we refer to as

10:03AM  15   the case agent.  So, I don't know if I would have been

10:03AM  16   directly contacted about this case.

10:03AM  17   Q.  So you're telling us that more likely who would have been

10:03AM  18   contacted if there was any need from input from the -- from

10:03AM  19   the law enforcement side would have been a supervising

10:03AM  20   investigator?

10:03AM  21        **MR. TRIPI:**  Objection as to more likely.  Again,

10:03AM  22   Judge, that's speculative, lack of personal knowledge.

10:04AM  23        **THE COURT:**  No, overruled.

10:04AM  24        **THE WITNESS:**  I may have been contacted as a witness

10:04AM  25   investigator in the case, someone that was assisting.  The

10:04AM  1   case agent is always the one that brings the paperwork, the

10:04AM  2   evidence logs, any photographs.  And there may or may not be

10:04AM  3   assisting investigators, depending if the Assistant District

10:04AM  4   Attorney wanted to interview us, if we picked up a certain

10:04AM  5   piece of evidence, they want to interview us about picking up

10:04AM  6   the evidence at the scene, or if there were some statements

10:04AM  7   made at the time by the defendants, they may want to --

10:04AM  8          **BY MR. MacKAY:**

10:04AM  9   Q.  But if I'm understanding you correctly, the point person

10:04AM  10  then at the District Attorney's Office might reach out to is

10:04AM  11  going to be the case agent, correct?

10:04AM  12  A.  Correct.

10:04AM  13  Q.  And in this matter involving Wayne Anderson, you were not

10:04AM  14  the case agent, correct?

10:04AM  15  A.  That's correct.

10:04AM  16  Q.  Do you recall who the case agent was in the case?

10:05AM  17  A.  I believe it was Investigator Kevin Gallagher.  He put

10:05AM  18  the report together.

10:05AM  19  Q.  Okay.  And then at some point in time, do you come to

10:05AM  20  learn that the case entirely has been resolved?

10:05AM  21  A.  Much later, yes.

10:05AM  22  Q.  Okay.  And was it your understanding that one of the

10:05AM  23  defendants pleaded guilty and received probation?

10:05AM  24  A.  Yes.

10:05AM  25  Q.  And that would be Mr. Abbate?

| | | |
|---|---|---|
| 10:05AM | 1 | A.  That's correct. |
| 10:05AM | 2 | Q.  And Mr. Anderson was dismissed? |
| 10:05AM | 3 | A.  That's correct. |
| 10:05AM | 4 | Q.  Okay.  And again, you've done many cases that involve |
| 10:05AM | 5 | codefendants over the years, as a law enforcement officer? |
| 10:05AM | 6 | A.  Yes. |
| 10:05AM | 7 | Q.  Not uncommon for a case where multiple defendants are |
| 10:05AM | 8 | charged that not all of them end in a conviction, correct? |
| 10:05AM | 9 | A.  That's correct. |
| 10:05AM | 10 | Q.  And you were not called, as you can recall, by the |
| 10:06AM | 11 | District Attorney's Office for any input on how this case was |
| 10:06AM | 12 | to resolve, correct? |
| 10:06AM | 13 | A.  That's correct. |
| 10:06AM | 14 | Q.  Nobody reached out to you, like Paul Williams, saying we |
| 10:06AM | 15 | want your input on how to resolve this case, correct? |
| 10:06AM | 16 | A.  That's correct. |
| 10:06AM | 17 | Q.  And obviously, like you said, you never were part of any |
| 10:06AM | 18 | proffer session in this case, correct? |
| 10:06AM | 19 | A.  Yes, that's correct. |
| 10:06AM | 20 | Q.  And you were never contacted by any attorney claiming to |
| 10:06AM | 21 | represent Mr. Anderson, correct? |
| 10:06AM | 22 | A.  No, I was not.  Or Mr. Abbate. |
| 10:06AM | 23 | Q.  And you never had to go to the State grand jury to |
| 10:06AM | 24 | testify regarding this case? |
| 10:06AM | 25 | A.  I do not recall attending grand jury on this case. |

10:06AM  1   Q.  And did you come to learn later, though, that DEA did

10:07AM  2   seize an amount of money connected to this case?

10:07AM  3   A.  You know, there -- there is a procedure where DEA has --

10:07AM  4   we will bring the money to DEA for them to seize related to

10:07AM  5   the case and a lot of other cases, but say, it's a seizure

10:07AM  6   program.

10:07AM  7   Q.  Okay.  So my question to you, though, is do you recall in

10:07AM  8   this specific case there was an amount of money seized by the

10:07AM  9   DEA?

10:07AM  10  A.  It would have been very possible that we had DEA seizure,

10:07AM  11  but I don't recall any paperwork or seeing that process.

10:07AM  12  Again, that's something that the case agent and probably a

10:07AM  13  supervisor, because it's currency, would handle.

10:07AM  14  Q.  Okay.  So if that happened, you don't have any personal

10:07AM  15  knowledge of whether it happened in this case --

10:07AM  16  A.  Correct.

10:07AM  17  Q.  -- is that fair to say?

10:07AM  18  A.  That's correct.

10:07AM  19  Q.  Okay.  Now, let's go back.  Mr. Bongiovanni and his law

10:08AM  20  enforcement partner, Joe Palmieri, meet with you, correct?

10:08AM  21  A.  That's correct.

10:08AM  22  Q.  And at that point in time, Mr. Anderson has already been

10:08AM  23  charged in State court, correct?

10:08AM  24  A.  Yes.

10:08AM  25  Q.  The case has been handed over for prosecution, correct?

| | | |
|---|---|---|
| 10:08AM | 1 | A.  Yes. |
| 10:08AM | 2 | Q.  And you're not the case agent, correct? |
| 10:08AM | 3 | A.  That's right. |
| 10:08AM | 4 | Q.  So, as you sit here today, there's no action you took |
| 10:08AM | 5 | that was any different than when a case is normally handed |
| 10:08AM | 6 | off; is that fair to say? |
| 10:08AM | 7 | A.  Yes. |
| 10:08AM | 8 | Q.  Okay.  Meaning that you've essentially taken the State |
| 10:08AM | 9 | court prosecutors a packaged-up case ready to go for |
| 10:08AM | 10 | prosecution, correct? |
| 10:08AM | 11 | A.  Yes. |
| 10:08AM | 12 | Q.  You've arrested and delivered the defendant down to |
| 10:08AM | 13 | central booking with charges, correct? |
| 10:08AM | 14 | A.  Yes. |
| 10:08AM | 15 | Q.  And while you might be contacted in the future about the |
| 10:08AM | 16 | case from the prosecutor if your assistance was needed, that |
| 10:08AM | 17 | just wasn't done in this case, correct? |
| 10:08AM | 18 | A.  Correct. |
| 10:08AM | 19 | Q.  But you did not abandon any further angles of |
| 10:09AM | 20 | investigation, correct? |
| 10:09AM | 21 | A.  We didn't abandon any, nor did we commence any. |
| 10:09AM | 22 | Q.  Nor did you start any.  The case was handed off, and it |
| 10:09AM | 23 | was ready to go for prosecution? |
| 10:09AM | 24 | A.  Yes. |
| 10:09AM | 25 | Q.  And then ultimately it resolves with at least one of the |

10:09AM   1   defendants taking a guilty plea, correct?

10:09AM   2   A.   Correct.

10:09AM   3            MR. MacKAY:  Your Honor, can I just have one moment.

10:09AM   4            THE COURT:  Sure.

10:09AM   5            MR. MacKAY:  No further questions, Your Honor.

10:09AM   6            THE COURT:  Redirect?

10:09AM   7            MR. TRIPI:  Yes, Your Honor, thank you.

10:09AM   8

10:09AM   9            REDIRECT EXAMINATION BY MR. TRIPI:

10:09AM  10   Q.   Good morning, Mr. O'Rourke.

10:09AM  11   A.   Good morning.

10:09AM  12   Q.   A few moments ago you were asked some questions regarding

10:09AM  13   State court versus Federal court, some of that interplay

10:09AM  14   where a case goes, correct?

10:09AM  15   A.   Yes.

10:09AM  16   Q.   In your experience, approximately 29 years of law

10:10AM  17   enforcement experience, generally, do federal charges provide

10:10AM  18   more leverage to induce an individual to cooperate?

10:10AM  19   A.   Absolutely.

10:10AM  20   Q.   Can you explain why?

10:10AM  21   A.   It seems that federally, the penalties are more severe in

10:10AM  22   a lot of cases.  And the time a defendant may serve seems to

10:10AM  23   be more severe or lengthier.  And it's generally -- we would

10:10AM  24   feel that some of the cases, especially in overdose deaths or

10:10AM  25   those types of things, the federal prosecution is an almost

10:10AM  1   mandatory way to go compared with the state prosecution.

10:10AM  2   Q.  In your experience in which venue, state or federal

10:11AM  3   prosecution, are charges reduced more, in your view?

10:11AM  4           MR. MacKAY:  Objection to lack of personal knowledge.

10:11AM  5           THE COURT:  Overruled.

10:11AM  6           THE WITNESS:  My experience, which is mostly in the

10:11AM  7   State court, but I believe in the State court the charges are

10:11AM  8   reduced more often.

10:11AM  9           BY MR. TRIPI:

10:11AM  10  Q.  If you were looking to flip someone in a drug case, and

10:11AM  11  you had the option to pursue state charges or federal

10:11AM  12  charges, what would you as the investigator choose?

10:11AM  13  A.  The federal charges.

10:11AM  14  Q.  When you interacted with Mr. Bongiovanni within 48 hours

10:11AM  15  of the Anderson and Abbate arrests, was it your understanding

10:11AM  16  that Mr. Bongiovanni would either seek Mr. Anderson's

10:12AM  17  cooperation or attempt to leverage him with federal charges?

10:12AM  18  A.  That was the usual routine in these type of cases.  So

10:12AM  19  yes, I assumed that they would be attempting to approach one

10:12AM  20  or both of them to pursue federal charges.

10:12AM  21  Q.  And when you were interacting with Mr. Bongiovanni, did

10:12AM  22  you trust what he was saying to you?

10:12AM  23  A.  Yeah, of course.

10:12AM  24  Q.  Did you have any reason to doubt it?

10:12AM  25  A.  No.

10:12AM    1    Q.   Is trust important amongst members of law enforcement?

10:12AM    2    A.   Yes.

10:12AM    3    Q.   Now, earlier during your testimony, Mr. MacKay asked you

10:13AM    4    a series of questions about Mr. Anderson being transported by

10:13AM    5    you, and your conversation with him, and him asking for a

10:13AM    6    lawyer; do you recall those questions?

10:13AM    7    A.   Yes.

10:13AM    8    Q.   And then he asked you some questions about the fact that

10:13AM    9    when someone asks for a lawyer, you can't speak with him

10:13AM   10    anymore; do you remember that question?

10:13AM   11    A.   Yes.

10:13AM   12    Q.   But on June 4th, 2020, you testified before a federal

10:13AM   13    grand jury, correct?

10:13AM   14    A.   Yes.

10:13AM   15    Q.   And you were under oath at that time, right?

10:13AM   16    A.   That's correct.

10:13AM   17    Q.   And you were asked to describe the conversation that you

10:13AM   18    had with Mr. Anderson while you transported him; is that

10:13AM   19    right?

10:13AM   20    A.   Right.

10:13AM   21    Q.   And in that conversation, as you relayed to the grand

10:14AM   22    jury under oath, you said Mr. Anderson did not want to

10:14AM   23    cooperate, period.

10:14AM   24    A.   Yes.

10:14AM   25    Q.   All right.  In the grand jury, you didn't say --

| | | |
|---|---|---|
| 10:14AM | 1 | **MR. MacKAY:**  Judge, I'm going to object to the |
| 10:14AM | 2 | leading. |
| 10:14AM | 3 | **MR. TRIPI:**  This is Rule 801(d)(1)(A), Your Honor. |
| 10:14AM | 4 | **THE COURT:**  No sustained. |
| 10:14AM | 5 | **MR. TRIPI:**  Were you asked this question -- |
| 10:14AM | 6 | proceeding under 801(d)(1)(A). |
| 10:14AM | 7 | **THE COURT:**  He objected to the leading. |
| 10:14AM | 8 | **BY MR. TRIPI:** |
| 10:14AM | 9 | Q.  Were you asked this question:  And can you describe how |
| 10:14AM | 10 | that conversation went with Mr. Anderson to the best of your |
| 10:14AM | 11 | recollection? |
| 10:14AM | 12 | And did you give this answer:  To the best of my |
| 10:14AM | 13 | recollection, my habit and most of ours, probably the best |
| 10:14AM | 14 | time to speak to someone is when he's more alone or just the |
| 10:14AM | 15 | two of us talking, taking him downtown, as opposed to when |
| 10:14AM | 16 | there's a bunch of people around or coconspirators or other |
| 10:14AM | 17 | suspects.  So that's what we did on the way down.  Listen, |
| 10:14AM | 18 | you're in trouble, you're looking at a felony charge.  If you |
| 10:14AM | 19 | want to be of assistance to yourself, we can talk to the DA's |
| 10:14AM | 20 | office and, you know, depending on your criminal history, we |
| 10:15AM | 21 | never make any promises, but we say we'll be able to assist |
| 10:15AM | 22 | you, maybe if you provide some meaningful cooperation to us. |
| 10:15AM | 23 | Mr. Anderson did not want to cooperate. |
| 10:15AM | 24 | Were you asked that question, and did you give that |
| 10:15AM | 25 | answer? |

10:15AM    1   A.  Yes, I did.

10:15AM    2   Q.  So that answer did not involve reference to an attorney,

10:15AM        correct?

10:15AM    3

10:15AM    4   A.  Correct.

10:15AM    5   Q.  That was mentioned by Mr. MacKay today, correct?

10:15AM    6   A.  Yes.

10:15AM    7            **MR. TRIPI:**  No further questions.

10:15AM    8            **MR. MacKAY:**  Brief recross, Your Honor.

10:15AM    9            **THE COURT:**  Sure.

10:15AM   10

10:15AM   11                **RECROSS-EXAMINATION BY MR. MacKAY:**

10:15AM   12   Q.  Mr. Anderson shuts the conversation down about going any

10:15AM   13   further about cooperation as you're driving him downtown to

10:15AM   14   central booking; is that fair to say?

10:15AM   15   A.  Yes.

10:15AM   16   Q.  Whether he invoked an attorney, or whether he said I just

10:15AM   17   don't want to cooperate, as you sit here today you knew that

10:15AM   18   whatever came out of that was he's not cooperating at this

10:15AM   19   point, correct?

10:15AM   20   A.  Right.

10:15AM   21   Q.  Now you talked about -- I think you phrase you used was

10:15AM   22   mandatory way to go with certain types of prosecutions; am I

10:16AM   23   recalling that correct from your redirect?

10:16AM   24   A.  Yes.

10:16AM   25   Q.  Now, law enforcement doesn't necessarily get to decide

10:16AM 1 which direction charges go in, correct?

10:16AM 2 A.  That's correct.

10:16AM 3 Q.  That's for the prosecutors both, state and federal?

10:16AM 4     **MR. TRIPI:**  Objection.  Asked and answered on his

10:16AM 5 direct.

10:16AM 6     **THE COURT:**  No, overruled.

10:16AM 7     **BY MR. MacKAY:**

10:16AM 8 Q.  That's for either the state or federal prosecutors to

10:16AM 9 decide, correct?

10:16AM 10 A.  That's correct.

10:16AM 11 Q.  Because they are the -- the United States or the People's

10:16AM 12 representatives in court, correct?

10:16AM 13 A.  Correct.

10:16AM 14 Q.  And to your knowledge, they have the discretion to decide

10:16AM 15 which charges to prosecute, correct?

10:16AM 16 A.  Correct.

10:16AM 17 Q.  And how to resolve those cases, correct?

10:16AM 18 A.  Correct.  Sometimes supervisory personnel from our agency

10:16AM 19 will say we're not taking this federal, or we're not taking

10:16AM 20 this state.  We may contact the Attorney General's Office.

10:16AM 21 So, they get a little bit of discretion and direction.

10:17AM 22 Q.  But ultimately, prosecutors make the final call because

10:17AM 23 they're the ones in court, correct?

10:17AM 24 A.  Correct.

10:17AM 25 Q.  And you talked a little bit about how State courts, most

| | | |
|---|---|---|
| 10:17AM | 1 | of your experience is over there, correct? |
| 10:17AM | 2 | A.  Yes. |
| 10:17AM | 3 | Q.  And fair to say State courts are busy courts, correct? |
| 10:17AM | 4 | A.  Yes. |
| 10:17AM | 5 | Q.  There's a lot of prosecutions in any one county, correct? |
| 10:17AM | 6 | A.  That's correct. |
| 10:17AM | 7 | Q.  And Erie County is a populus county, correct? |
| 10:17AM | 8 | A.  Yes. |
| 10:17AM | 9 | Q.  A lot of criminal charges being filed throughout the |
| 10:17AM | 10 | year, correct? |
| 10:17AM | 11 | A.  Yes. |
| 10:17AM | 12 | Q.  You now work in the Erie County District Attorney's |
| 10:17AM | 13 | Office.  Fair to say that's a very busy office, correct? |
| 10:17AM | 14 | A.  Yes, it is. |
| 10:17AM | 15 | Q.  Feels even overwhelmed, correct? |
| 10:17AM | 16 | **MR. TRIPI:**  Objection as to how the Court feels. |
| 10:17AM | 17 | **THE COURT:**  Yeah, sustained. |
| 10:17AM | 18 | **BY MR. MacKAY:** |
| 10:17AM | 19 | Q.  Has your experience as an investigator in that office |
| 10:17AM | 20 | been that sometimes you can't even keep up with the work? |
| 10:17AM | 21 | **MR. TRIPI:**  Objection.  He's asking about his |
| 10:17AM | 22 | experience as a DA's investigator, Your Honor. |
| 10:18AM | 23 | **MR. MacKAY:**  In his context at the DA's office. |
| 10:18AM | 24 | **THE COURT:**  Yeah, sustained -- or, overruled.  Go |
| 10:18AM | 25 | ahead. |

10:18AM 1          THE WITNESS:  I don't feel overwhelmed.  I mean, my

10:18AM 2    tasks are fairly manageable.  As far as the Assistant District

10:18AM 3    Attorney's, I don't know how they feel.

10:18AM 4          BY MR. MacKAY:

10:18AM 5    Q.  Okay.  And you talked a little bit about what usual

10:18AM 6    routine was in conjunction with -- with meetings with other

10:18AM 7    agencies; do you recall that?

10:18AM 8    A.  Yes.

10:18AM 9    Q.  Okay.  But to be clear, you recall no specifics being

10:18AM 10   discussed about what was going to come out of that

10:18AM 11   interaction, correct?

10:18AM 12   A.  Yes.

10:18AM 13         MR. MacKAY:  Okay.  No further questions, Your Honor.

10:18AM 14         THE COURT:  Anything further, Mr. Tripi?

10:18AM 15         MR. TRIPI:  No, Your Honor.

10:18AM 16         THE COURT:  You can step down, sir, thank you.

10:18AM 17         THE WITNESS:  Thank you.

10:18AM 18         (Witness excused at 10:18 a.m.)

19         (Excerpt concluded at 10:18 a.m.)

20                     **CERTIFICATE OF REPORTER**

21         In accordance with 28, U.S.C., 753(b), I certify that
     these original notes are a true and correct record of
22   proceedings in the United States District Court for the
     Western District of New York on February 21, 2024.

23

24                     s/ Ann M. Sawyer
                       Ann M. Sawyer, FCRR, RPR, CRR
25                     Official Court Reporter
                       U.S.D.C., W.D.N.Y.

1                            **<u>INDEX</u>**

2               **<u>EXAMINATION OF MICHAEL O'ROURKE - DAY 2</u>**

3                      **<u>FEBRUARY 21, 2024</u>**

4

5     **<u>W I T N E S S</u>**                          **<u>P A G E</u>**

6     **M I C H A E L   O ' R O U R K E**              2

7        CROSS-EXAMINATION BY MR. MacKAY:              2

8        REDIRECT EXAMINATION BY MR. TRIPI:            25

9        RECROSS-EXAMINATION BY MR. MacKAY:            29

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25