IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v. 19-CR-227-LJV

JOSEPH BONGIOVANNI,

Defendant.

---

**GOVERNMENT'S MOTION IN LIMINE TO PERMIT TESTIMONY**

The UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Corey R. Amundson, Chief of the Public Integrity Section, Joseph M. Tripi, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, and Jordan Dickson, Trial Attorney, Public Integrity Section, of counsel, hereby moves to permit Protected Witness #8 ("PW 8") to testify regarding her observations, made while inside Pharaoh's Gentlemen's Club ("PGC"), [redacted]

[redacted]

**FACTUAL BACKGROUND**

Count 2 charges the defendant, Joseph Bongiovanni, with conspiring with Peter Gerace to defraud the United States. ECF No. 89. Generally, the defendant is alleged to have provided protection and law enforcement information to Gerace in exchange for bribes and to ingratiate himself with Gerace. As one specific example of this protection, in or about June 2016, the defendant attempted to dissuade a fellow DEA Special Agent from investigating Gerace. *See id.* at Count 2 ¶ 25.

Thanks to the protection the defendant was providing, Gerace was able to perpetrate criminal activity virtually unabatedly during the conspiracy. Specifically, Count 2 includes an overt act alleging in part that Gerace "maintained the premises known as Pharaoh's Gentlemen's Club, located at 999 Aero Drive, Cheektowaga, New York, to facilitate prostitution; to provide drugs and money to Pharaoh's employees in exchange for sex with Gerace and others[.]" *Id.* at Count 2 ¶ 36.

The government is going to call PW 8 to testify during this trial,



[1]

[1]

During jury selection, both in the Juror Questionnaire and during live voir dire, the Court warned the jurors that they would hear some evidence of a sexual nature during this trial.

## ARGUMENT

"To be convicted as a member of a conspiracy, a defendant need not know every objective of the conspiracy." *United States v. Gleason*, 616 F.2d 2, 16 (2d Cir. 1979). "It is axiomatic that a conspirator does not need to know all of the details of a conspiracy in order to be guilty of joining the agreement[.]" *United States v. Manuel*, 371 F. Supp. 2d 404, 410 (S.D.N.Y. 2005) (citing *United States v. Downing*, 297 F.3d 52, 57 (2d Cir. 2002) and *United States v. Berger*, 224 F.3d 107, 114 (2d Cir. 2000)). The government is permitted to prove the existence of the conspiracy by proving "the defendants' knowledge of 'the essential nature of the plan and their connections with it[.]'" *Downing*, 297 F.3d at 57 (quoting *Blumenthal v. United States*, 332 U.S. 539, 557 (1947)). The government is not required to prove that the defendant knew about or participated in each overt act charged as part of a conspiracy because "it is equally axiomatic that a conspirator is responsible for the overt acts of co-conspirators[.]" *Manuel*, 371 F. Supp. 2d at 410. The Second Circuit has plainly explained,

> In short, the conspirator must agree to and participate in a scheme which he knows to have an illegal objective. If, in the course of the conspiracy, there occur other illegal acts not specifically contemplated by an individual conspirator but reasonably akin to the anticipated illegality and in furtherance or in consequence of the scheme, the conspirator may not on that account escape liability for participation in the conspiracy.

*Gleason*, 616 F.2d at 17. Additionally, as this Court well knows, "[E]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

This Court has already heard proof tending to establish the existence of a conspiracy between the defendant and Gerace. The Court heard testimony from Peter Lepiane, Dale Kasprzyk, Thomas Herbst, and Robert Cottrell about the defendant's attempts to protect Gerace from repercussions for violating the conditions of his supervised release and the defendant's attempts to prevent the FBI from continuing to pursue a case against Gerace. The Court also heard testimony from  that she used cocaine inside PGC, that she sold cocaine inside PGC, that she observed Gerace use cocaine inside PGC, and that she saw Gerace distribute cocaine inside PGC. The Court heard further testimony from  that she observed this defendant inside PGC and was introduced to the defendant by Gerace.  also testified that Gerace gave her the defendant's business card and said, in sum and substance, that  could call the defendant if she ever got in trouble. Throughout the rest of this trial, the Court will hear additional evidence about the defendant's attempts to protect Gerace from law enforcement scrutiny and his provision of law enforcement information to Gerace. The Court will also hear testimony about the defendant's receipt of bribes from Gerace. And the Court will hear testimony about how Gerace, knowing he was being protected by the defendant, continued to use PGC as a place to distribute and use illegal drugs and promote prostitution and coercive sexual conduct. Presenting evidence of Gerace's underlying criminal activity is a logical prerequisite for this jury understanding why Gerace found it necessary to bribe the defendant.

PW 8's proposed testimony is relevant to Gerace's commission of the aforementioned overt act in Count 2 and, more broadly, Gerace's underlying criminal activity that necessitated seeking protection and information from the defendant. Specifically, [redacted]

Rather, the proposed testimony is directly relevant to whether one of the defendant's co-conspirators—Gerace—committed an act in furtherance of the conspiracy. The jury should be allowed to decide whether the defendant knowingly entered into the conspiracy with Gerace and, if he did, whether the conspirators each played their role. The Court should not require the government to dilute its proof of overt acts committed in furtherance of the conspiracy simply because only one of the conspirators committed the act. Doing so would run contrary to established Second Circuit law. *See Gleason*, 616 F.2d at 17.

**CONCLUSION**

The government respectfully requests that the Court permit the government to elicit the aforementioned testimony from PW 8.

Respectfully submitted,

COREY R. AMUNDSON
U.S. Department of Justice
Chief, Public Integrity Section

BY: */S/*

JORDAN DICKSON
Trial Attorney
Public Integrity Section
U.S. Department of Justice
Criminal Division
1301 New York Ave. NW, Ste. 1000
Washington, D.C. 20530
202-597-0508
jordan.dickson@usdoj.gov

TRINI E. ROSS
United States Attorney

BY: */S/*

JOSEPH M. TRIPI
NICHOLAS T. COOPER
CASEY L. CHALBECK
Assistant United States Attorneys
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716.843.5839
JTripi@usa.doj.gov