UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   - vs. -

JOSEPH BONGIOVANNI,

     *Defendant.*

Case No. 19-CR-227-LJV

### DEFENDANT JOSEPH BONGIOVANNI'S OPPOSITION TO GOVERNMENT'S *EX PARTE* MOTION TO INTERVIEW JUROR

Defendant Joseph Bongiovanni, by and through undersigned counsel, hereby responds in opposition to the *ex parte* nature of the government's sealed motion to interview a juror.  ECF No. 890.

On Thursday, April 25, 2024, the government filed an *ex parte* sealed motion to interview a juror, which was granted by text order the next day but stayed pending resolution of an emergency motion filed by Mr. Bongiovanni.  ECF Nos. 890, 891 (text order), 893, 895 (text order).  The *ex parte* nature of the government's filing has deprived the defense of the reason for the government's request, the juror(s) to whom the request is directed, and the facts underlying the request.  The defense therefore opposes the *ex parte* nature of the request.

Federal Rule of Criminal Procedure 606(b) sets forth a general prohibition on juror testimony about deliberations, with limited exceptions set forth in subdivision (2) that deal with improper influence upon the jury or whether a mistake was made in filling out the verdict form.  *See United States v. Moten*, 582 F.2d 654, 665 (2d Cir. 1978) ("[M]any of the same interests are implicated in both situations [of post-

trial interviewing of jurors and admission of juror testimony in order to impeach a verdict], and so the same sort of balancing is appropriate to both."); *United States v. Gigante*, 53 F. Supp. 2d 274, 276 (E.D.N.Y. 1999) ("Rule 606(b) embodies a strong policy to protect jurors against any attempt to interfere with their independence.").

> An additional factor which must be considered here is one which is seldom a matter of concern in the formulation of evidentiary rules. Human nature is such that some jurors, instead of feeling harassed by post-trial interviewing, might rather enjoy it, particularly when it involves the disclosure of secrets or provides an opportunity to express misgivings and lingering doubts. A serious danger exists that, in the absence of supervision by the court, some jurors, especially those who were unenthusiastic about the verdict or have grievances against fellow jurors, would be led into imagining sinister happenings which simply did not occur or into saying things which, although inadmissible, would be included in motion papers and would serve only to decrease public confidence in verdicts. Thus, supervision is desirable not only to protect jurors from harassment but also to insure that the inquiry does not range beyond subjects on which a juror would be permitted to testify under Rule 606(b).

*Moten*, 582 F.2d at 665.

The Second Circuit has declined to set forth rigid rules for post-verdict interrogation of jurors but has commented that "[a]t a minimum, [. . .] notice to opposing counsel and the court should be given in all cases." *Id.* at 665-66. Of relevance here is the Second Circuit's further recognition that some situations warrant a complete bar on juror interviews:

> An example given in Professor Moore's Treatise is "a publicized case which ends in a hung jury and is likely to be retried." In such a case, "the trial judge should instruct jurors not to disclose the deliberation, lest it jeopardize the fairness of the second trial."

*Id.* at 666 (quoting 8A Moore's Federal Practice Criminal Rules P 31.08(1) (b), at 31-58 n.13 (2d ed. 1977)).

" 'The standard for conducting a post-verdict jury inquiry … is … demanding.' As the Second Circuit has cautioned, 'post-verdict inquiries may lead to evil consequences: subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with merit less applications, increasing temptation for jury tampering and creating uncertainty in jury verdicts.' Courts should therefore be reluctant to 'haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences.' Accordingly, a post-verdict jury inquiry is required only where there is 'clear, strong, substantial and incontrovertible evidence that a specific, non-speculative impropriety has occurred.' " *United States v. Yeagley*, 706 F. Supp. 2d 431, 433 (S.D.N.Y. 2010) (internal citations omitted).

Mr. Bongiovanni's highly publicized trial ended in a partial verdict, with a mistrial being declared on twelve (12) of the fifteen (15) counts brought to trial. *See* ECF No. 867 (minute entry). The government has announced its intention to retry Mr. Bongiovanni, both informally via an out-of-court statement by the United States Attorney, and formally via the filing of a motion to set a trial date. ECF No. 881. This outcome and the resulting circumstances counsel in favor of applying *Moten*'s guidance on a total bar on juror interviews. If, however, the government believes a situation invoking Rule 606(b)(2) is at play, the defense should be entitled to equal notice of the allegation giving rise to the request to interview, and the

Court should carefully circumscribe the process to ensure it does not spill into impermissible inquest into the general nature of the deliberations. *See Moten*, 582 F.2d at 660 ("Whenever something occurs at a trial that may tend to affect the impartiality of one or more members of the jury, both sides have a vital interest in learning everything there is to know about the matter."). But without access to the filing, the defense cannot ascertain what gives rise to the request, whether it meets the strict standard for post-verdict inquiry, and what safeguards should be employed to ensure the inquiry is appropriately limited.

Accordingly, Mr. Bongiovanni opposes the *ex parte* nature of the government's filing and requests the Court order disclosure of the *ex parte* motion papers.

Dated: April 27, 2024
     Kenmore, New York          Respectfully submitted,

                                            s/Parker R. MacKay
                                            **The Law Office of Parker R. MacKay**
                                            Parker R. MacKay, Esq.
                                            3110 Delaware Avenue
                                            Kenmore, NY 14217
                                            (716) 803-8166
                                            Fax: (716) 408-1651
                                            Parker@MacKayLawOffice.com

                                            s/Robert C. Singer

SINGER LEGAL PLLC
Compelling, Passionate Advocacy

Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York 14221
(716) 222-3288
rob@singerlegalpllc.com

Page **4** of **4**