12:12PM

1
                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF NEW YORK
2

   _____
3  UNITED STATES OF AMERICA,

                                    Case No. 1:19-cr-227
4              Plaintiff,                    (LJV)
   v.
5                                   February 26, 2024
   JOSEPH BONGIOVANNI,
6

   _____
7

8      TRANSCRIPT EXCERPT - EXAMINATION OF PAUL C. PARISI, ESQ.
              BEFORE THE HONORABLE LAWRENCE J. VILARDO
9                    UNITED STATES DISTRICT JUDGE

10

   **APPEARANCES:**            **TRINI E. ROSS, UNITED STATES ATTORNEY**
11                            **BY: JOSEPH M. TRIPI, ESQ.**
                                 **NICHOLAS T. COOPER, ESQ.**
12                               **CASEY L. CHALBECK, ESQ.**
                              Assistant United States Attorneys
13                            Federal Centre
                              138 Delaware Avenue
14                            Buffalo, New York 14202
                                 And
15                            **UNITED STATES DEPARTMENT OF JUSTICE**
                              **BY: JORDAN ALAN DICKSON, ESQ.**
16                            1301 New York Ave NW
                              Suite 1000
17                            Washington, DC 20530-0016
                              For the Plaintiff
18
                              **SINGER LEGAL PLLC**
19                            **BY: ROBERT CHARLES SINGER, ESQ.**
                              80 East Spring Street
20                            Williamsville, New York 14221
                                 And
21                            **LAW OFFICES OF PARKER ROY MacKAY**
                              **BY: PARKER ROY MacKAY, ESQ.**
22                            3110 Delaware Avenue
                              Kenmore, New York  14217
23                            For the Defendant

24 **PRESENT:**              **BRIAN A. BURNS,** FBI Special Agent
                              **MARILYN K. HALLIDAY,** HSI Special Agent
25                            **KAREN A. CHAMPOUX,** USA Paralegal

| | | |
|---|---|---|
| 1 | **LAW CLERK:** | **REBECCA FABIAN IZZO, ESQ.** |
| 2 | **COURT DEPUTY CLERK:** | **COLLEEN M. DEMMA** |
| 3 | **COURT REPORTER:** | **ANN MEISSNER SAWYER, FCRR, RPR, CRR** |
| 4 | | Robert H. Jackson Federal Courthouse |
| | | 2 Niagara Square |
| | | Buffalo, New York  14202 |
| 5 | | Ann_Sawyer@nywd.uscourts.gov |

6                    *    *    *    *    *    *    *

8              (Excerpt commenced at 10:05 a.m.)

10:06AM    9        (Jury seated at 10:05 a.m.)

10:06AM    10        **THE COURT:**  Good morning, everyone.

10:06AM    11        **ALL JURORS:**  Good morning.

10:06AM    12        **THE COURT:**  Welcome back.  The record will reflect

10:06AM    13    that all our jurors are present.  I apologize for the delay,

10:06AM    14    but we had some legal work that we needed to take care of

10:06AM    15    before you came in.

10:06AM    16        The government can call its next witness.

10:06AM    17        **MR. DICKSON:**  Thank you, Your Honor.  The government

10:06AM    18    calls Paul Parisi.

10:06AM    19        **THE COURT:**  And as we told you during jury selection,

10:06AM    20    Ms. Demma is not here this week, so we will be helped by

10:07AM    21    Ms. Kellogg, and we will not miss a beat.

10:07AM    22

10:07AM    23    **P A U L   P A R I S I**, having been duly called and sworn,

10:07AM    24    testified as follows:

10:07AM    25        **MR. DICKSON:**  May I proceed?

| | | |
|---|---|---|
| 10:07AM | 1 | **THE COURT:**  You may. |
| 10:07AM | 2 | |
| 10:07AM | 3 | **DIRECT EXAMINATION BY MR. DICKSON:** |
| 10:07AM | 4 | Q.  Good morning, sir. |
| 10:07AM | 5 | A.  Good morning. |
| 10:07AM | 6 | Q.  Will you introduce yourself to the jury, please? |
| 10:07AM | 7 | A.  My name is Paul Parisi.  I'm an attorney.  I used to work |
| 10:07AM | 8 | at the U.S. Attorney's Office from 2017 through 2022. |
| 10:07AM | 9 | Currently, I work for the Treasury Department as -- in the |
| 10:07AM | 10 | Office of the Chief Counsel to the IRS.  And I've been an |
| 10:07AM | 11 | attorney for about 16 years, most of that as a federal and |
| 10:07AM | 12 | state prosecutor leading up to my current job. |
| 10:08AM | 13 | Q.  While you were at the U.S. Attorney's Office, what was |
| 10:08AM | 14 | your job? |
| 10:08AM | 15 | A.  I was -- I had a few.  But when it started, I was in the |
| 10:08AM | 16 | narcotics and organized crime section as a line assistant, as |
| 10:08AM | 17 | we called it, it's the ones who just handle cases that come |
| 10:08AM | 18 | in. |
| 10:08AM | 19 | I was also the coordinator for the Project Safe |
| 10:08AM | 20 | Neighborhood program, which is a national program to reduce |
| 10:08AM | 21 | violence throughout those cities in the nation. |
| 10:08AM | 22 | And then by the end the my career, I was in the asset |
| 10:08AM | 23 | recovery division. |
| 10:08AM | 24 | Q.  Were you an Assistant United States Attorney? |
| 10:08AM | 25 | A.  Yes. |

10:08AM  1   Q.  Mr. Parisi, while you were with the U.S. Attorney's

10:08AM  2   Office, did you work with federal agencies?

10:08AM  3   A.  I did.

10:08AM  4   Q.  What kind of federal agencies did you work with?

10:08AM  5   A.  A lot.  So FBI, DEA, ATF, Homeland Security, IRS.

10:08AM  6   Q.  When you worked with the DEA, what kinds of cases would

10:08AM  7   you work with the DEA?

10:08AM  8   A.  Narcotic drug cases.

10:08AM  9   Q.  As an AUSA, Mr. Parisi, did you ever secure search

10:09AM  10  warrants to further an investigation that you were doing?

10:09AM  11  A.  Yes.

10:09AM  12  Q.  Can you explain to the jury what a search warrant is?

10:09AM  13  A.  Yes.  Under the Constitution, the government needs to

10:09AM  14  show probable cause to believe that there -- a crime was

10:09AM  15  committed, and that there is evidence of a crime in a certain

10:09AM  16  location, whether that's a person's house, a person's car,

10:09AM  17  could be a bank, could be a business, wherever it is, if

10:09AM  18  you're looking for physical objects.

10:09AM  19      So what happens in the case is a law enforcement officer

10:09AM  20  from the state, federal, county, will get ahold of us, they

10:09AM  21  will put together an affidavit, which is the sworn

10:09AM  22  allegations of fact to put together, and then we present

10:09AM  23  that -- we review that, we present it to a judge, who -- the

10:09AM  24  judge has to determine if there is probable cause to proceed,

10:09AM  25  and to authorize the search which has to be done of the

| | | |
|---|---|---|
| 10:09AM | 1 | premises that are detailed in the affidavit. |
| 10:10AM | 2 | Q.  As part of that affidavit that you were talking about, |
| 10:10AM | 3 | well, let me ask you this.  Who writes the affidavit? |
| 10:10AM | 4 | A.  The law enforcement officer. |
| 10:10AM | 5 | Q.  Okay.  And as part of writing that affidavit, do the -- |
| 10:10AM | 6 | does the law enforcement officer have to include their |
| 10:10AM | 7 | training and experience that's relevant to whatever case |
| 10:10AM | 8 | you're investigating? |
| 10:10AM | 9 | A.  Yes.  They put their base of knowledge, their experience, |
| 10:10AM | 10 | their relevant experience for that investigation to -- so the |
| 10:10AM | 11 | judge can determine if they have the appropriate experience |
| 10:10AM | 12 | to help factor in, because they're making -- they're putting |
| 10:10AM | 13 | factual assertions in there, but they're also making |
| 10:10AM | 14 | conclusions based on their experience.  So the judge is going |
| 10:10AM | 15 | to want to see what their experience is so they can determine |
| 10:10AM | 16 | that they have the actual experience for those conclusions. |
| 10:10AM | 17 | Q.  And so after the agent writes that affidavit, including |
| 10:10AM | 18 | their training and experience, what happens next in the |
| 10:10AM | 19 | process in terms of that affidavit? |
| 10:10AM | 20 | A.  So an AUSA will review that, and usually makes some |
| 10:10AM | 21 | edits, just whether it's grammar, whether it's we determine |
| 10:11AM | 22 | there needs to be more investigation done, or there needs to |
| 10:11AM | 23 | be more information, we have questions about it, so we can |
| 10:11AM | 24 | add more to it.  The law enforcement agent will make the |
| 10:11AM | 25 | suggested -- or, will incorporate the suggestions, put |

10:11AM     1    another draft together.

10:11AM     2        But once it is complete on our end, we submit that

10:11AM     3    package to the Court for the Court to review and determine if

10:11AM     4    there's sufficient probable cause.

10:11AM     5        Then at that point in time, we'll go over to the court --

10:11AM     6    courtroom, which is in this building, where one of the judges

10:11AM     7    in this building, and will -- a judge will have the law

10:11AM     8    enforcement officer swear to the contents of the affidavit

10:11AM     9    under oath.

10:11AM    10        And then the law enforcement agent will sign it in front

10:11AM    11    of the judge.  And then the judge will sign it if the judge

10:11AM    12    authorizes it.

10:11AM    13    Q.  When you say "swear to the contents of the affidavit," is

10:11AM    14    the agent swearing all the stuff in the affidavit is true and

10:11AM    15    accurate?

10:11AM    16    A.  Yes.

10:11AM    17    Q.  Mr. Parisi, do you know somebody named Joseph

10:11AM    18    Bongiovanni?

10:11AM    19    A.  I do.

10:11AM    20    Q.  How do you know him?

10:11AM    21    A.  He was a DEA agent when I was working as an AUSA.

10:12AM    22    Q.  And did you work with the defendant while you were an

10:12AM    23    AUSA?

10:12AM    24    A.  I did.

10:12AM    25    Q.  Mr. Parisi, I want to show you a document.

10:12AM   1          MR. DICKSON:  Can we show for the witness only,

10:12AM   2   please, Government Exhibit 145?

10:12AM   3          THE CLERK:  It's not coming on.

10:12AM   4          MR. TRIPI:  We don't have it on our screens.

10:12AM   5          MR. COOPER:  The monitor in the gallery is on.  I

10:12AM   6   think Karen is waiting.

10:12AM   7          Karen hasn't displayed it yet because the monitor in

10:12AM   8   the gallery is on.

10:12AM   9          THE CLERK:  Okay.  So now it's off.  It should be

10:12AM  10   off.

10:12AM  11          THE WITNESS:  I can see it now.

10:12AM  12          MR. DICKSON:  All good?  Thank you.

10:12AM  13          BY MR. DICKSON:

10:12AM  14   Q.  Mr. Parisi, what is this document here?

10:12AM  15   A.  The whole document?  Or just the page that I'm looking

10:13AM  16   at?

10:13AM  17   Q.  Well, we can scroll through the whole document, but have

10:13AM  18   you seen this document before?

10:13AM  19   A.  Yes.  This is the application for a search warrant of

10:13AM  20   163 Kenview Road, an apartment, and a vehicle.

10:13AM  21   Q.  Who is the agent who wrote the contents of this document?

10:13AM  22   A.  Joseph Bongiovanni.

10:13AM  23   Q.  Is this an affidavit -- is part of this document an

10:13AM  24   affidavit that you reviewed in your capacity as an AUSA?

10:13AM  25   A.  Yes.  Part of the application for the search warrant is

USA v Bongiovanni - Parisi - Dickson/Direct - 2/26/24

10:13AM  1   that affidavit.

10:13AM  2   Q.  And are parts of this document redacted, Mr. Parisi?

10:13AM  3   A.  Yes.

10:13AM  4   Q.  Aside from those redactions, is this document a fair and

10:13AM  5   accurate copy of that search warrant application that you

10:13AM  6   reviewed?

10:13AM  7   A.  Can you just scroll through the pages so I can make sure

10:13AM  8   that -- thank you.  Yes.  This is a fair and accurate copy of

10:14AM  9   the, except for the redactions, of the search warrant

10:14AM  10  application.

10:14AM  11          MR. DICKSON:  Your Honor, at this time, the

10:14AM  12  government moves Government Exhibit 145 into evidence.

10:14AM  13          MR. MacKAY:  No objection, Your Honor.  The only

10:14AM  14  thing I note though is -- I think it's -- is it 12.

10:15AM  15          I'm sorry, it's page 15 of the document,

10:15AM  16  paragraph 14, does list the target of the warrant that was not

10:15AM  17  redacted.  As I sit here today, I don't know if that person

10:15AM  18  was ever charged or whether it's an appropriately redacted

10:15AM  19  name.

10:15AM  20          THE WITNESS:  I could probably.

10:15AM  21          MR. DICKSON:  Judge --

10:15AM  22          THE COURT:  Should that have been redacted?

10:15AM  23          MR. DICKSON:  Yeah, I think we can redact that out,

10:15AM  24  Judge.  I apologize.

10:15AM  25          THE COURT:  So it's admitted with that redaction.  I

| | | |
|---|---|---|
| 10:15AM | 1 | caught that, too, Mr. MacKay.  It's admitted with that |
| 10:15AM | 2 | redaction. |
| 10:15AM | 3 | **MR. DICKSON:**  Thank you. |
| 10:15AM | 4 | **(GOV Exhibit 145 was received in evidence.)** |
| 10:15AM | 5 | **MR. DICKSON:**  Can we publish that for the jury, |
| 10:15AM | 6 | please? |
| 10:15AM | 7 | **THE COURT:**  Yeah, except let's not publish that page. |
| 10:15AM | 8 | **MR. DICKSON:**  Sure. |
| 10:15AM | 9 | **THE COURT:**  We don't think we need to publish that |
| 10:15AM | 10 | page, do we? |
| 10:15AM | 11 | **MR. DICKSON:**  Nope.  We won't publish that. |
| 10:15AM | 12 | **BY MR. DICKSON:** |
| 10:15AM | 13 | Q.  All right.  Mr. Parisi, so on this first page here, do |
| 10:15AM | 14 | you see where it says sort of halfway down the page, it says |
| 10:15AM | 15 | the search is related to violations of?  Do you see that? |
| 10:15AM | 16 | A.  Yes. |
| 10:15AM | 17 | Q.  And then does it list some statutes next to it? |
| 10:15AM | 18 | A.  It does. |
| 10:15AM | 19 | Q.  Generally, Mr. Parisi, are those statutes related to drug |
| 10:16AM | 20 | crimes? |
| 10:16AM | 21 | A.  Yes, they are.  Section 21 is the narcotics, the drug |
| 10:16AM | 22 | crimes section of the United States Code. |
| 10:16AM | 23 | Q.  Okay.  And then who is the special agent who is -- who |
| 10:16AM | 24 | has signed his name on this warrant application? |
| 10:16AM | 25 | A.  Joseph Bongiovanni. |

10:16AM 1      MR. DICKSON:  Can we go to page 4 of this document,

10:16AM 2  please?

10:16AM 3      BY MR. DICKSON:

10:16AM 4  Q.  All right.  Do you see this here, Mr. Parisi?  Is that on

10:16AM 5  your screen?

10:16AM 6  A.  Yes.  Paragraph 1, you're talking about?

10:16AM 7  Q.  Yeah.  Is this the start of the affidavit that

10:16AM 8  Mr. Bongiovanni wrote?

10:16AM 9  A.  Yes.

10:16AM 10  Q.  Okay.  I'm going to start about halfway down that

10:16AM 11  paragraph where it says I have been employed by.

10:16AM 12      MR. DICKSON:  And can you just zoom in there?  Thank

10:16AM 13  you.

10:16AM 14      BY MR. DICKSON:

10:16AM 15  Q.  Mr. Parisi, can you read that paragraph up through where

10:16AM 16  it says techniques slash methods?

10:16AM 17  A.  Yes.  It says I have been employed by the DEA since

10:16AM 18  November 1998.  Prior to my assignment to the Buffalo

10:16AM 19  resident office, I was assigned as DEA special agent to the

10:17AM 20  Orlando, Florida district office.

10:17AM 21      As part of my employment with the DEA, I successfully

10:17AM 22  completed formalized training at the United States Justice

10:17AM 23  Department Training Facility Drug Enforcement Administration

10:17AM 24  Training Academy.  During this training, I received detailed

10:17AM 25  training, both academic and practical application, in the

10:17AM  1   areas of informant handling/debriefing, drug packaging,

10:17AM  2   pricing, importation and trafficking methods.

10:17AM  3       In addition, I received both academic and practical

10:17AM  4   application training in surveillance and counter-surveillance

10:17AM  5   techniques/methods.

10:17AM  6   Q.  So just to define a couple of the terms that we just

10:17AM  7   heard there, Mr. Parisi.  Where it says informant handling/

10:17AM  8   debriefing, when you reviewed this warrant application, what

10:17AM  9   did you understand the defendant to be saying about informant

10:17AM  10  handling and debriefing?

10:17AM  11  A.  The manner and method through which he was trained in how

10:17AM  12  to handle informants, meaning how to find informants, how to

10:17AM  13  detail the conversations with informants, how the DEA

10:18AM  14  requests you to discuss with informants what is supposed to

10:18AM  15  be told to informants, what is supposed to be documented when

10:18AM  16  informants tell you things, and how to appropriately document

10:18AM  17  that for the cases going in the future.

10:18AM  18  Q.  Then where it says in addition I received both academic

10:18AM  19  and practical application training in surveillance and

10:18AM  20  counter-surveillance techniques/methods, what did you

10:18AM  21  understand surveillance and counter-surveillance

10:18AM  22  techniques/methods to mean?

10:18AM  23  A.  Surveillance, meaning how to appropriately watch a target

10:18AM  24  without being observed, meaning where you should be on the

10:18AM  25  street, how you -- how far you should be away, where you

10:18AM   1   should have cover, how many agents should be involved in

10:18AM   2   those investigations and counter surveillances, how to make

10:18AM   3   sure that you're not getting surveilled and getting watched

10:18AM   4   and people see you, and watch you and what you're doing, to

10:18AM   5   be able to see what law enforcement is up to.

10:18AM   6   Q.  Can you just go ahead and read the rest of that paragraph

10:18AM   7   there, and then we'll go to the next page?

10:19AM   8   A.  Yes.  I received legal instruction in federal drug and

10:19AM   9   conspiracy laws, preparing drug affidavits, the Controlled

10:19AM   10  Substances Act.

10:19AM   11       **MR. DICKSON:**  Then if go to the next page, please.

10:19AM   12       **BY MR. DICKSON:**

10:19AM   13  Q.  Can you just finish reading that paragraph for us?

10:19AM   14  A.  Fourth Amendment searches and seizures, Federal Rules of

10:19AM   15  Evidence, and the execution of search warrants.

10:19AM   16      Based on my training and conversations with other special

10:19AM   17  agents and task force agents of the DEA, I am familiar with

10:19AM   18  how controlled substances are cultivated, manufactured,

10:19AM   19  processed, packaged, distributed, sold, and used within the

10:19AM   20  framework of drug trafficking.

10:19AM   21      In addition, I have participated in numerous

10:19AM   22  investigations that have targeted violators of federal and

10:19AM   23  state narcotics laws, and have purchased narcotics in an

10:19AM   24  undercover capacity.

10:19AM   25      I also have participated in several investigations

10:19AM   1   involving wiretaps, and I have reviewed taped conversations

10:19AM   2   and drug records pertaining to narcotics trafficking.

10:19AM   3       I have also participated in numerous debriefings of

10:19AM   4   narcotics traffickers, cooperating individuals, and sources

10:20AM   5   of information.

10:20AM   6   Q.  Mr. Parisi, what is a wiretap?

10:20AM   7   A.  It's a recording of listening in or recording of

10:20AM   8   conversations that individuals are having over the phone.

10:20AM   9   Q.  Typically in investigations, is getting permission to do

10:20AM  10   a wiretap considered a significant investigative step?

10:20AM  11   A.  Yes.  Especially for the Department of Justice.  There's

10:20AM  12   a large number of levels that have to review it before it's

10:20AM  13   submitted to the Court.

10:20AM  14   Q.  A lot of investigation that has to happen before you get

10:20AM  15   authorization to do a wiretap?

10:20AM  16   A.  Yes.  Months of investigation.

10:20AM  17   Q.  And then where it says cooperating individuals there.  I

10:20AM  18   have also participated in numerous debriefings of narcotics

10:20AM  19   traffickers, cooperating individuals.  What did you

10:20AM  20   understand "cooperating individuals" to mean?

10:20AM  21   A.  Individuals who generally are caught doing something

10:20AM  22   illegal, who then are providing information and cooperating,

10:20AM  23   actively cooperating in an investigation to either avoid

10:21AM  24   charges, or to lessen their charges if they are charged with

10:21AM  25   a crime.

10:21AM   1          **MR. DICKSON:**  Can we go to page 10, please?  Maybe

10:21AM   2    that's wrong.  Give me just a second, sorry about that.

10:21AM   3          Page 13.  I apologize.  And can we zoom in on

10:21AM   4    paragraph D, please?

10:21AM   5          **BY MR. DICKSON:**

10:21AM   6    Q.  Can you just read that for the jury, Mr. Parisi?

10:21AM   7    A.  Yes.  Paragraph D is that persons involved in drug

10:21AM   8    trafficking or significant drug traffickers conceal proceeds

10:21AM   9    of drag sales, records of drag transactions, firearms,

10:21AM   10   ammunition, caches of drugs, large amounts of currency,

10:21AM   11   financial instruments, keys for safe deposit boxes, precious

10:21AM   12   metals, jewelry, and others items of value and/or proceeds of

10:21AM   13   drug transactions, and/or evidence of financial transactions

10:21AM   14   relating to obtaining, transferring, secreting, or spending

10:22AM   15   large sums of money made from engaging in narcotics

10:22AM   16   trafficking in their residences and in other secure

10:22AM   17   locations, including at the residences of their drug

10:22AM   18   associates and/or family members in order to conceal them

10:22AM   19   from law enforcement authorities.

10:22AM   20   Q.  Is the defendant still the person who is writing this

10:22AM   21   paragraph?

10:22AM   22   A.  Correct.

10:22AM   23   Q.  Generally, Mr. Parisi, is this about how drug traffickers

10:22AM   24   might conceal proceeds from their -- the crimes that they're

10:22AM   25   committing?

10:22AM  1   A.  Yes.

10:22AM  2        MR. DICKSON:  And then can we go to the last page of

10:22AM  3   the document, please?

10:22AM  4        BY MR. DICKSON:

10:22AM  5   Q.  Who signed this affidavit saying that everything in this

10:22AM  6   document was accurate and truthful?

10:22AM  7   A.  Joseph Bongiovanni.

10:22AM  8        MR. DICKSON:  Just one moment.

10:22AM  9        I don't have any more questions, Judge.  Thank you.

10:22AM  10       THE COURT:  Cross?

10:22AM  11

10:22AM  12            CROSS-EXAMINATION BY MR. MacKAY:

10:23AM  13  Q.  Good morning, Mr. Parisi, how are you?

10:23AM  14  A.  Good morning, Mr. MacKay.

10:23AM  15  Q.  I see you smiling.  You and I have worked against each

10:23AM  16  other in a professional capacity before, correct?

10:23AM  17  A.  That's correct.

10:23AM  18  Q.  I think both on the state and the federal side?

10:23AM  19  A.  That is correct.

10:23AM  20  Q.  We've had some dealings before.

10:23AM  21       So, you were shown Exhibit 145, which is both a search

10:23AM  22  warrant and the search warrant affidavit.  You saw that

10:23AM  23  there, correct?

10:23AM  24  A.  That's correct.

10:23AM  25  Q.  Fair to say, though, that -- well, let me back up.

10:23AM   1      You reviewed with the jury a lot of the language in that

10:23AM   2   warrant application, correct?

10:23AM   3   A.   Yes.

10:23AM   4   Q.   That's the affidavit that the law enforcement agent

10:23AM   5   provides to -- to get the search warrant, correct?

10:23AM   6   A.   Yes.

10:23AM   7   Q.   And fair to say that a lot of the language is actually

10:23AM   8   boilerplate language, correct?

10:23AM   9   A.   Yes.  We see it on a fair number of affidavits.

10:23AM   10  Q.   Right.  So, for example, I think it was paragraph 1,

10:23AM   11  Mr. Bongiovanni talks about some experience of having come

10:24AM   12  from Florida before, correct?

10:24AM   13  A.   I'm sorry, can you -- experience of having gone to

10:24AM   14  Florida?

10:24AM   15  Q.   He traces his career, and it explains that he was in

10:24AM   16  Florida before, correct?

10:24AM   17  A.   Yes.

10:24AM   18  Q.   Obviously, that's not going to be in every law

10:24AM   19  enforcement agent's affidavit, correct?

10:24AM   20  A.   Right.  They're going to put their own experience based

10:24AM   21  on where they were generally.

10:24AM   22  Q.   Right.  But then after that, we went through some further

10:24AM   23  language in paragraph 1, and then we jumped down to -- I

10:24AM   24  think it was the tenth page of the affidavit.  That's the

10:24AM   25  stuff that's generally boilerplate language, correct?

10:24AM   1   A.  I --

10:24AM   2   Q.  We can show it again.

10:24AM   3          MR. MacKAY:  Ms. Champoux, can we put Exhibit 145,

10:24AM   4   next page, please.

10:24AM   5          THE CLERK:  Do you want the jury to see?

10:24AM   6          MR. MacKAY:  Please.

10:24AM   7          BY MR. MacKAY:

10:24AM   8   Q.  So right now we're looking at page 10 of the search

10:24AM   9   warrant affidavit.  Can you read that?

10:24AM  10   A.  Do you want me to read it out loud?

10:24AM  11   Q.  No.

10:24AM  12   A.  Yes, I see it.

10:24AM  13   Q.  Yeah.  That's what I'm referring to.

10:24AM  14       That sort of language, that's generally the boilerplate

10:25AM  15   language, correct?

10:25AM  16   A.  So, yes, there will be boilerplate language that is in

10:25AM  17   here, but it's tailored to each affidavit a lot of times.  So

10:25AM  18   based on the experience of the investigator, but also based

10:25AM  19   on the case, so if they were looking for records in a bank, a

10:25AM  20   bank deposit box, this is going to get tailored to the

10:25AM  21   experience in the investigation of what is, like, a bank

10:25AM  22   deposit box.

10:25AM  23       But this was a case where we're looking at a house and a

10:25AM  24   car.  So it's the experience and as tailored what was looking

10:25AM  25   for in the house and the car.

| | | |
|---|---|---|
| 10:25AM | 1 | **MR. MacKAY:** Ms. Champoux, can we jump up to, it will |
| 10:25AM | 2 | be page 4 of the document, paragraph 1. |
| 10:25AM | 3 | **BY MR. MacKAY:** |
| 10:25AM | 4 | Q.  Okay.  In on this paragraph -- in this paragraph you're |
| 10:25AM | 5 | looking at, we see the information about Mr. Bongiovanni |
| 10:25AM | 6 | being in -- assigned as a DEA special agent at the Orlando, |
| 10:25AM | 7 | Florida district office first, do you see that, correct? |
| 10:25AM | 8 | A.  Yes. |
| 10:25AM | 9 | Q.  But after that, that's some of the language I'm talking |
| 10:26AM | 10 | about.  That's largely boilerplate, as well, too, the rest of |
| 10:26AM | 11 | the page? |
| 10:26AM | 12 | A.  It has -- there is -- I guess there's a form that these |
| 10:26AM | 13 | all follow, is the best way to explain it. |
| 10:26AM | 14 | So there's a form that these are all going to follow. |
| 10:26AM | 15 | Whether it's boilerplate or not, those are all tailored -- |
| 10:26AM | 16 | I'm taking Mr. Bongiovanni at his word that he went through |
| 10:26AM | 17 | all these changes.  I'm not individually looking at all of |
| 10:26AM | 18 | that, but -- or in any case that he had received all of this |
| 10:26AM | 19 | training. |
| 10:26AM | 20 | So, yes, there's a form -- this is a format of it, but I |
| 10:26AM | 21 | see each one a little different based on the person's |
| 10:26AM | 22 | training and also relevant experience with respect to the |
| 10:26AM | 23 | investigation. |
| 10:26AM | 24 | Q.  Right.  I mean, so for example, this search warrant was |
| 10:26AM | 25 | in furtherance of a case about fentanyl, correct? |

10:26AM   1   A.   Yes.

10:26AM   2   Q.   So it might not have all the same training and experience

10:26AM   3   or information relevant to a case about marijuana, right?

10:26AM   4   A.   Correct.

10:26AM   5   Q.   Or if, and I think I understand it here, this was to

10:26AM   6   search a house and a vehicle, correct?

10:26AM   7   A.   That's correct.

10:26AM   8   Q.   So it might not have all the same information put in

10:27AM   9   there as if we were searching a bank box or something,

10:27AM   10   correct?

10:27AM   11   A.   Yes.

10:27AM   12   Q.   So, like you said, it's pick and choose based on what

10:27AM   13   we're looking at, and what the crime might be committed,

10:27AM   14   correct?

10:27AM   15   A.   Yes, we -- yes, there would changes based on that.

10:27AM   16   Q.   But long story short, Mr. Bongiovanni or any law

10:27AM   17   enforcement agent isn't sitting down and writing these from a

10:27AM   18   blank page from total scratch, correct?

10:27AM   19   A.   No.  Not -- based on my understanding, they're using

10:27AM   20   formats that they have already.

10:27AM   21   Q.   Right.  And in your experience, you see a lot of the same

10:27AM   22   language pop up over time, correct?

10:27AM   23   A.   Yes, that would be correct.

10:27AM   24   Q.   Okay.  And you talked a little bit at the end about

10:27AM   25   Title III wiretaps, correct?

10:27AM   1   A.  Meaning I testified, or I talked about?

10:27AM   2   Q.  On direct --

10:27AM   3   A.  Yes.

10:27AM   4   Q.  -- you talked a little bit about Title III wiretaps?

10:27AM   5   A.  Yes.

10:27AM   6   Q.  You described them, I think, it's a significant

10:27AM   7   investigative step, correct?

10:27AM   8   A.  Correct.

10:27AM   9   Q.  They are not used in every drug investigation, correct?

10:28AM   10  A.  That's correct.

10:28AM   11  Q.  Not only are they a significant step, but they require a

10:28AM   12  lot of work just to get the application for them, correct?

10:28AM   13  A.  Yes.

10:28AM   14  Q.  You often have to show as an Assistant United States

10:28AM   15  Attorney and as a law enforcement agent that you've done

10:28AM   16  other things before taking the step of asking for a wiretap,

10:28AM   17  correct?

10:28AM   18  A.  Yes.

10:28AM   19  Q.  You have to -- so, some of the things, for example, you

10:28AM   20  have to show that there might have been something like

10:28AM   21  controlled buys, correct?

10:28AM   22  A.  Yes.

10:28AM   23  Q.  You might have had to show that there's surveillance on a

10:28AM   24  particular location where somebody might be, or a phone might

10:28AM   25  be located, correct?

USA v Bongiovanni - Parisi - MacKay/Cross - 2/26/24

21

10:28AM  1    A.  Yes.

10:28AM  2    Q.  You might have to have -- well, at least you have to have

10:28AM  3    identified consistent phone numbers, correct?

10:28AM  4    A.  That's correct.

10:28AM  5    Q.  Okay.  And you may have even had to have used

10:28AM  6    confidential informants up to that point, correct?

10:28AM  7    A.  That's correct.

10:28AM  8    Q.  So long story short, in telling a federal judge that you

10:28AM  9    want to get a warrant about a wiretap, you've got to show

10:28AM  10   through and everything you've done before you've asked for a

10:28AM  11   wiretap, correct?

10:28AM  12   A.  That's correct.

10:28AM  13   Q.  And I guess I'll just end with you already discussed this

10:29AM  14   was a fentanyl-based search warrant.  Had you done other

10:29AM  15   cases with Mr. Bongiovanni in your career?

10:29AM  16   A.  This was my first case that I had with him.

10:29AM  17   Q.  Okay.

10:29AM  18   A.  I remember that, because I was relatively new to the

10:29AM  19   office at the time.  So this was the first case -- this might

10:29AM  20   have been the first case I worked with the DEA at the time.

10:29AM  21   So, and it was -- there was -- it was a bigger investigation

10:29AM  22   than just what was in here, too.  So there were more facts to

10:29AM  23   this.

10:29AM  24   Q.  But my question was just did you deal with him on any

10:29AM  25   other cases?

10:29AM   1   A.   Yes, I've dealt with him after this.  But I don't think

10:29AM   2   he was the lead case agent on any other cases that I've had

10:29AM   3   like he was on this one, but I've dealt with him on other

10:29AM   4   cases where he was in a supporting role.

10:29AM   5   Q.   Okay.  Fair to say his -- let me ask it this way.  What

10:29AM   6   was the primary drug in those cases that was being targeted?

10:29AM   7   A.   In all the cases?  I mean, it was everything from heroin,

10:29AM   8   fentanyl, cocaine.  I don't know that we worked on any

10:30AM   9   marijuana cases together, but I would say heroin, fentanyl,

10:30AM   10  cocaine.

10:30AM   11  Q.   Okay.  Thank you Mr. Parisi.

10:30AM   12          **MR. MacKAY:**  I have no further questions.

10:30AM   13          **THE WITNESS:**  Thank you.

10:30AM   14          **THE COURT:**  Any redirect?

10:30AM   15          **MR. DICKSON:**  No redirect, Judge.

10:30AM   16          **THE COURT:**  Okay.  You can step down, sir.  Thank you

10:30AM   17  very much.

10:30AM   18          **THE WITNESS:**  Thanks, Judge.

10:30AM   19          (Witness excused at 10:30 a.m.)

         20          (Excerpt concluded at 10:30 a.m.)

         21            *     *     *     *     *     *     *

         22

         23

         24

         25

1

2                    **CERTIFICATE OF REPORTER**

3

4              In accordance with 28, U.S.C., 753(b), I

5    certify that these original notes are a true and correct

6    record of proceedings in the United States District Court for

7    the Western District of New York on February 26, 2024.

8

9

10                         s/ Ann M. Sawyer
                          Ann M. Sawyer, FCRR, RPR, CRR
11                        Official Court Reporter
                          U.S.D.C., W.D.N.Y.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                              **TRANSCRIPT INDEX**

2           **EXCERPT - EXAMINATION OF PAUL C. PARISI, ESQ.**

3                     **FEBRUARY 26, 2024**

4

5

6 **W I T N E S S**                              **P A G E**

7 **P A U L    P A R I S I**                   2

8    DIRECT EXAMINATION BY MR. DICKSON:      3

9    CROSS-EXAMINATION BY MR. MacKAY:       15

10

11

12 **E X H I B I T**                              **P A G E**

13 GOV Exhibit 145                     9

14

15

16

17

18

19

20

21

22

23

24

25