# EXHIBIT A

12:12PM

1              UNITED STATES DISTRICT COURT
              WESTERN DISTRICT OF NEW YORK
2

_____
3  UNITED STATES OF AMERICA,

                              Case No. 1:19-cr-227
4              Plaintiff,              (LJV)
   v.
5                              February 20, 2024

   JOSEPH BONGIOVANNI,
6

_____Defendant._____
7

8        TRANSCRIPT EXCERPT - EXAMINATION OF R.K.
        BEFORE THE HONORABLE LAWRENCE J. VILARDO
9              UNITED STATES DISTRICT JUDGE

10

   **APPEARANCES:**        **TRINI E. ROSS, UNITED STATES ATTORNEY**
11                    **BY: JOSEPH M. TRIPI, ESQ.**
                         **NICHOLAS T. COOPER, ESQ.**
12                       **CASEY L. CHALBECK, ESQ.**
                     Assistant United States Attorneys
13                   Federal Centre
                     138 Delaware Avenue
14                   Buffalo, New York 14202
                        And
15                   **UNITED STATES DEPARTMENT OF JUSTICE**
                     **BY: JORDAN ALAN DICKSON, ESQ.**
16                   1301 New York Ave NW
                     Suite 1000
17                   Washington, DC 20530-0016
                     For the Plaintiff
18
                     **SINGER LEGAL PLLC**
19                   **BY: ROBERT CHARLES SINGER, ESQ.**
                     80 East Spring Street
20                   Williamsville, New York 14221
                        And
21                   **LAW OFFICES OF PARKER ROY MacKAY**
                     **BY: PARKER ROY MacKAY, ESQ.**
22                   3110 Delaware Avenue
                     Kenmore, New York  14217
23                   For the Defendant

24  **PRESENT:**          **BRIAN A. BURNS,** FBI Special Agent
                     **MARILYN K. HALLIDAY,** HSI Special Agent
25                   **KAREN A. CHAMPOUX,** USA Paralegal

| | | |
|---|---|---|
| 1 | **LAW CLERK:** | **REBECCA FABIAN IZZO, ESQ.** |
| 2 | **COURT DEPUTY CLERK:** | **COLLEEN M. DEMMA** |
| 3 | **COURT REPORTER:** | **ANN MEISSNER SAWYER, FCRR, RPR, CRR** |
| 4 | | Robert H. Jackson Federal Courthouse<br>2 Niagara Square |
| 5 | | Buffalo, New York  14202<br>Ann_Sawyer@nywd.uscourts.gov |

6

7                     *     *     *     *     *     *     *

8

9           (Excerpt commenced at 1:40 p.m.)

10          (Jury is not present.)

01:40PM   11          **THE COURT:**  So, yeah.  Okay.  So let's bring him in,

01:40PM   12   please.

01:40PM   13          (Mr. R.K. seated in the witness box at 1:41 p.m.)

01:41PM   14          **THE COURT:**  Okay, Pat.

01:42PM   15          (Jury seated at 1:42 p.m.)

01:42PM   16          **THE COURT:**  Welcome back, everyone.  The record will

01:42PM   17   reflect that all our jurors are present.  Let's swear in the

01:42PM   18   next witness.

01:42PM   19

01:42PM   20   **R.K.,** having been duly called and sworn, testified as follows:

01:43PM   21

01:43PM   22          **MR. TRIPI:**  May I inquire, Your Honor?

01:43PM   23          **THE COURT:**  You may.

01:43PM   24          **MR. TRIPI:**  Thank you, Your Honor.

01:43PM   25

USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

| | | |
|---|---|---|
| 01:43PM | 1 | **DIRECT EXAMINATION BY MR. TRIPI:** |
| 01:43PM | 2 | Q.  Good afternoon, Mr. R.K. |
| 01:43PM | 3 | A.  Good afternoon. |
| 01:43PM | 4 | Q.  Mr. R.K., how old are you, sir? |
| 01:43PM | 5 | A.  50. |
| 01:43PM | 6 | Q.  And where are you from generally? |
| 01:43PM | 7 | A.  Buffalo, New York. |
| 01:43PM | 8 | Q.  And did you grow up in the Buffalo area? |
| 01:43PM | 9 | A.  Yes, sir. |
| 01:43PM | 10 | Q.  How far have you gone in school? |
| 01:43PM | 11 | A.  About eleven. |
| 01:43PM | 12 | Q.  Eleventh grade? |
| 01:43PM | 13 | A.  Yeah. |
| 01:43PM | 14 | Q.  What school did you attend up till eleventh grade? |
| 01:43PM | 15 | A.  Buffalo Alternative. |
| 01:43PM | 16 | Q.  Buffalo Alternative?  Is that a high school? |
| 01:43PM | 17 | A.  Yeah. |
| 01:43PM | 18 | Q.  Okay.  Now, Mr. R.K., I just want to address something |
| 01:43PM | 19 | right out of the gate.  Is it fair to say that you didn't |
| 01:43PM | 20 | want to come here to court today? |
| 01:43PM | 21 | A.  I didn't want to -- what? |
| 01:43PM | 22 | Q.  That you didn't want to come here to testify? |
| 01:43PM | 23 | A.  Yeah. |
| 01:43PM | 24 | Q.  Okay.  And as a result of that, did you actually get |
| 01:43PM | 25 | arrested under what's called a material witness warrant and |

USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

4

| | | |
|---|---|---|
| 01:44PM | 1 | brought to court to testify? |
| 01:44PM | 2 | A.  Yes. |
| 01:44PM | 3 | Q.  Okay.  And fair to say that you previously testified in a |
| 01:44PM | 4 | federal grand jury in this matter? |
| 01:44PM | 5 | A.  Yes, sir. |
| 01:44PM | 6 | Q.  Okay. |
| 01:44PM | 7 | **THE COURT:**  I want you to speak right into the |
| 01:44PM | 8 | microphone, please. |
| 01:44PM | 9 | **THE WITNESS:**  Yes, sir. |
| 01:44PM | 10 | **THE COURT:**  Nice and loud. |
| 01:44PM | 11 | **THE WITNESS:**  Yes, sir. |
| 01:44PM | 12 | **BY MR. TRIPI:** |
| 01:44PM | 13 | Q.  And that was some years ago; is that right? |
| 01:44PM | 14 | A.  Yes, sir. |
| 01:44PM | 15 | Q.  Other than that, and a brief few-minute meeting earlier |
| 01:44PM | 16 | today, we haven't spoken prior to your testimony today, other |
| 01:44PM | 17 | than your grand jury, and briefly on the lunch break; is that |
| 01:44PM | 18 | correct? |
| 01:44PM | 19 | A.  Yes, sir. |
| 01:44PM | 20 | Q.  Okay.  Now, would it be fair to say that you -- you have |
| 01:44PM | 21 | a criminal record, right? |
| 01:44PM | 22 | A.  Yes, sir. |
| 01:44PM | 23 | Q.  And generally, that record includes several felony |
| 01:44PM | 24 | convictions; is that right? |
| 01:44PM | 25 | A.  Yes, sir. |

USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

5

| | | |
|---|---|---|
| 01:45PM | 1 | **MR. SINGER:**  Judge, we object to the leading at this |
| 01:45PM | 2 | time. |
| 01:45PM | 3 | **THE COURT:**  Yeah, sustained.  Let's not lead, please, |
| 01:45PM | 4 | Mr. Tripi. |
| 01:45PM | 5 | **MR. TRIPI:**  Okay, Judge.  For future reference, just |
| 01:45PM | 6 | 611C, if you'll keep it under advisement, that's all.  Okay? |
| 01:45PM | 7 | **BY MR. TRIPI:** |
| 01:45PM | 8 | Q.  What types of convictions do you have? |
| 01:45PM | 9 | A.  Burglaries. |
| 01:45PM | 10 | Q.  Okay.  Now, directing your attention to -- back to April |
| 01:45PM | 11 | 2013, do you remember that general time frame of your life? |
| 01:45PM | 12 | A.  Yes, sir. |
| 01:45PM | 13 | Q.  Around that time were you interviewed -- without telling |
| 01:45PM | 14 | us what the interview was about -- were you interviewed by |
| 01:45PM | 15 | the Amherst Police Department? |
| 01:45PM | 16 | A.  Yes, sir. |
| 01:45PM | 17 | Q.  And can you tell the jury what the circumstances were, |
| 01:45PM | 18 | had you gotten in some trouble? |
| 01:45PM | 19 | A.  Yes. |
| 01:45PM | 20 | Q.  Can you tell the jury what that was?  Just generally. |
| 01:45PM | 21 | A.  It was a burglary. |
| 01:45PM | 22 | Q.  Okay.  Do you remember what law enforcement agency |
| 01:45PM | 23 | investigated that burglary? |
| 01:45PM | 24 | A.  No. |
| 01:45PM | 25 | Q.  Okay.  What police agency do you remember speaking with |

USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

6

| | | |
|---|---|---|
| 01:46PM | 1 | after the burglary? |
| 01:46PM | 2 | A.  Buffalo. |
| 01:46PM | 3 | Q.  Okay.  Eventually, did you get referred to an Amherst |
| 01:46PM | 4 | Police Department detective? |
| 01:46PM | 5 | A.  Yes. |
| 01:46PM | 6 | Q.  Okay.  Do you remember that person's name? |
| 01:46PM | 7 | A.  No, I don't. |
| 01:46PM | 8 | Q.  Did that Amherst Police Department detective refer you to |
| 01:46PM | 9 | the DEA? |
| 01:46PM | 10 | A.  Yes. |
| 01:46PM | 11 | Q.  Okay.  Who were you referred to at the DEA? |
| 01:46PM | 12 | A.  Well, who did I speak with?  Or who -- |
| 01:46PM | 13 | Q.  Yeah, who were you put in touch with at -- let me |
| 01:46PM | 14 | withdraw. |
| 01:46PM | 15 | Were you put in touch with a DEA agent? |
| 01:46PM | 16 | A.  Yes. |
| 01:46PM | 17 | Q.  Do you remember that person's name? |
| 01:47PM | 18 | A.  Yes. |
| 01:47PM | 19 | Q.  What was that person's name? |
| 01:47PM | 20 | A.  Oh, I don't know how to say it.  Joseph. |
| 01:47PM | 21 | Q.  Can you do the best to say? |
| 01:47PM | 22 | A.  Bonajonavie.  Bonjonnie.  I don't know. |
| 01:47PM | 23 | Q.  Do you see that person in court today? |
| 01:47PM | 24 | A.  Yes. |
| 01:47PM | 25 | Q.  Can you please point to him and describe something he's |

01:47PM    1    wearing?

01:47PM    2    A.   Burgundy tie.

01:47PM    3    Q.   In which chair over there?

01:47PM    4    A.   Sitting right in the middle.

01:47PM    5         **MR. TRIPI:**   Your Honor, may the record reflect that

01:47PM    6    the witness has identified Mr. Bongiovanni.

01:47PM    7         **THE COURT:**   It does.

01:47PM    8         **MR. TRIPI:**   Thank you, Your Honor.

01:47PM    9         **BY MR. TRIPI:**

01:47PM   10    Q.   And what -- what was the circumstances under which you

01:47PM   11    were put in touch with Mr. Bongiovanni, can you tell the

01:47PM   12    jury?

01:47PM   13    A.   There was -- because I knew a kid named T.S. who was a,

01:47PM   14    you know, doing a lot of things.  So they, you know, if I

01:47PM   15    helped them get him, I'd get some help on my case.

01:48PM   16    Q.   And at that time, who was T.S. connected to as far as you

01:48PM   17    knew doing those things?

01:48PM   18    A.   Ron Serio.

01:48PM   19    Q.   And when you say "doing things," what are you referring

01:48PM   20    to?

01:48PM   21    A.   Marijuana, cocaine.

01:48PM   22    Q.   What about marijuana and cocaine?

01:48PM   23    A.   Just had a lot of it, transported it.

01:48PM   24    Q.   So transporting, as in distribution?

01:48PM   25    A.   Yeah.

USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

| | | |
|---|---|---|
| 01:48PM | 1 | Q.  Okay.  Do you remember what happened when you first met |
| 01:48PM | 2 | with Special Agent Bongiovanni? |
| 01:48PM | 3 | A.  I -- I was told to, you know, get more friendly with him |
| 01:48PM | 4 | and try to buy, you know, at least an ounce or so from him. |
| 01:48PM | 5 | And to try to find out where his warehouse was. |
| 01:48PM | 6 | Q.  Okay.  When you first met with Bongiovanni, were you |
| 01:49PM | 7 | interviewed by him? |
| 01:49PM | 8 | A.  Yes, him and a couple other agents. |
| 01:49PM | 9 | Q.  Okay.  Where was that? |
| 01:49PM | 10 | A.  At the DEA agent, on I believe it's Swan. |
| 01:49PM | 11 | Q.  Okay. |
| 01:49PM | 12 | A.  I'm not sure. |
| 01:49PM | 13 | Q.  Was it at their office space? |
| 01:49PM | 14 | A.  Yeah, the office space, yes. |
| 01:49PM | 15 | Q.  And in that setting, with how many other agents other |
| 01:49PM | 16 | than Mr. Bongiovanni did you meet with? |
| 01:49PM | 17 | A.  Probably four. |
| 01:49PM | 18 | Q.  Okay.  And were they asking you questions? |
| 01:49PM | 19 | A.  Yes. |
| 01:49PM | 20 | Q.  Were you giving answers? |
| 01:49PM | 21 | A.  Yes. |
| 01:49PM | 22 | Q.  And who were you telling them about in that meeting? |
| 01:49PM | 23 | A.  T.S. |
| 01:49PM | 24 | Q.  Did you mention Ron Serio as well? |
| 01:49PM | 25 | A.  I mentioned that I was in a room where, you know, I seen |

Case 1:19-cr-00227-LJV-MJR   Document 1009-1   Filed 06/14/24   Page 10 of 67
USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

9

| | | |
|---|---|---|
| 01:49PM | 1 | Ron Serio and somebody else do some business.  But other than |
| 01:50PM | 2 | that, the main focus was T.S. |
| 01:50PM | 3 | Q.  Okay.  How long was that meeting, that debriefing, that |
| 01:50PM | 4 | interview? |
| 01:50PM | 5 | A.  I don't know.  Maybe 30 minutes. |
| 01:50PM | 6 | Q.  After that, did you agree to sign up with Special Agent |
| 01:50PM | 7 | Bongiovanni to be a confidential source? |
| 01:50PM | 8 | A.  Yes. |
| 01:50PM | 9 | Q.  And were you advised of the series of rules that there |
| 01:50PM | 10 | were? |
| 01:50PM | 11 | A.  I basically was just told get ahold of T.S., try to |
| 01:50PM | 12 | befriend him.  Try to, you know, make buys from him.  And |
| 01:50PM | 13 | then the one time he had told me he had had a warehouse, and |
| 01:50PM | 14 | so I told them.  And they wanted me to find out where his |
| 01:50PM | 15 | warehouse was. |
| 01:51PM | 16 | Q.  I'm not there yet, I'm still talking about getting signed |
| 01:51PM | 17 | up.  So if you can focus back on that. |
| 01:51PM | 18 | A.  Oh, okay. |
| 01:51PM | 19 | Q.  Did you have to sign a document -- |
| 01:51PM | 20 | A.  Yes.  Yes.  Yes. |
| 01:51PM | 21 | Q.  Okay.  Did that document have essentially the parameters |
| 01:51PM | 22 | of your agreement with the DEA? |
| 01:51PM | 23 | A.  Yes.  They gave me a number and everything. |
| 01:51PM | 24 | Q.  I'm going to hand you up a document, it's marked |
| 01:51PM | 25 | Government Exhibit 9E-2.  I'm going to ask you to look at |

| | | |
|---|---|---|
| 01:51PM | 1 | this two-page document.  And when you're done, look up, okay? |
| 01:51PM | 2 | A.  Yeah. |
| 01:51PM | 3 | Q.  Can you look at the second page?  There's a second page |
| 01:51PM | 4 | there. |
| 01:52PM | 5 | A.  Yes. |
| 01:52PM | 6 | Q.  Okay.  Do you see -- do you see -- do you recognize that |
| 01:52PM | 7 | two-page document? |
| 01:52PM | 8 | A.  Yes. |
| 01:52PM | 9 | Q.  What is that two-page document? |
| 01:52PM | 10 | A.  That's what they give you when you sign up, that's what |
| 01:52PM | 11 | they give you when you sign up to be a confidential |
| 01:52PM | 12 | informant. |
| 01:52PM | 13 | Q.  And is that your agreement? |
| 01:52PM | 14 | A.  Yes.  My initials, my signature. |
| 01:52PM | 15 | Q.  Okay.  So you recognize it? |
| 01:52PM | 16 | A.  Yes. |
| 01:52PM | 17 | Q.  Is that an accurate copy of what you signed? |
| 01:52PM | 18 | A.  Yes. |
| 01:52PM | 19 | **MR. TRIPI:**  Your Honor, the government offers |
| 01:52PM | 20 | Exhibit 9E-2. |
| 01:52PM | 21 | **MR. SINGER:**  No objection. |
| 01:52PM | 22 | **THE COURT:**  Received without objection. |
| 01:52PM | 23 | **(GOV Exhibit 9E-2 was received in evidence.)** |
| 01:52PM | 24 | **MR. TRIPI:**  Thank you, Your Honor. |
| 01:52PM | 25 | It's going to be shown on the screen next to you in |

01:52PM    1    just a moment, okay?

01:52PM    2         Ms. Champoux, can we publish the document, please,

01:53PM    3    now that it is in evidence?  And can we just blow up the top

01:53PM    4    half of the page for the jury to be able to read it?

01:53PM    5    Subsection I.

01:53PM    6         May the record reflect we've blown up the top half of

01:53PM    7    the document, Your Honor, and I'm publishing it for the jury.

01:53PM    8    I'm not going to ask the witness to read it aloud.

01:53PM    9         **BY MR. TRIPI:**

01:53PM   10    Q.  Mr. R.K., I know that's up on the monitor, but as you

01:53PM   11    understand it as part of your agreement, did you agree to

01:53PM   12    consensual recording and the wearing of what's commonly

01:53PM   13    referred to as a wire, if necessary?

01:54PM   14    A.  Yes.

01:54PM   15         **MR. TRIPI:**  Okay.  If we can unbold that, and can we

01:54PM   16    bold the second part?

01:54PM   17         **BY MR. TRIPI:**

01:54PM   18    Q.  Mr. R.K., what was your understanding about when you

01:54PM   19    signed up about how your identity would be treated?

01:54PM   20    A.  I was understood -- it was understood that my identity

01:55PM   21    would be, you know, unknown.  That nobody would know what I

01:55PM   22    did.  But that was false.

01:55PM   23    Q.  And as part of the agreement, did you agree to provide

01:55PM   24    truthful information?

01:55PM   25    A.  Yes.

USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

12

01:55PM   1          **MR. TRIPI:**  Okay.  We can unhighlight that.

01:55PM   2          I'm going to ask Ms. Champoux to move to page 2 of

01:55PM   3   this document.  And if we can just bold the top paragraphs

01:55PM   4   there.  Provide a moment for the Court and the jury to read

01:55PM   5   it.

01:56PM   6          **BY MR. TRIPI:**

01:56PM   7   Q.  Now, how long did you agree to serve as a confidential

01:56PM   8   source for the DEA?  What was the term of your agreement?

01:56PM   9   A.  I figured that --

01:56PM  10   Q.  I'm going to ask you, look at paragraph 13.  Are those

01:56PM  11   the dates filled in there that you agreed to?

01:56PM  12   A.  Yes.  Yes.

01:56PM  13   Q.  Is that April 29th, 2013 to April 29, 2014?

01:56PM  14   A.  Yes.  Yes.

01:56PM  15   Q.  And in the column, we see a bunch of initials.  Have all

01:56PM  16   of those initials been yours?

01:56PM  17   A.  Yes.

01:56PM  18   Q.  R.K., R.K.?

01:56PM  19   A.  Yes.

01:56PM  20          **MR. TRIPI:**  Ms. Champoux, if we can look at the

01:56PM  21   signature page, please.

01:56PM  22          **BY MR. TRIPI:**

01:56PM  23   Q.  And that top line there, is that your signature under the

01:56PM  24   label confidential source?

01:56PM  25   A.  Yes.

01:56PM  1  Q.  And then under your name, there's a number there; is that

01:56PM  2  right?

01:57PM  3  A.  Yes.

01:57PM  4  Q.  Can you read that, please?

01:57PM  5  A.  C.S.-13-144841.

01:57PM  6  Q.  And who signed below your name as the handling agent or

01:57PM  7  controlling investigator?  Sorry.

01:57PM  8  A.  Bongiovanni.

01:57PM  9  Q.  And do you know who's name appears on the bottom line

01:57PM  10 there?  Do you remember who that was?

01:57PM  11 A.  No, I don't.

01:57PM  12 Q.  Okay.  After you signed this document and reached this

01:57PM  13 agreement --

01:57PM  14      **MR. TRIPI:**  We can take that down, now.

01:57PM  15      **BY MR. TRIPI:**

01:57PM  16 Q.  -- who was your handling agent?

01:57PM  17 A.  Bongiovanni.

01:57PM  18 Q.  Did he have contact information for you?

01:57PM  19 A.  Yes.

01:57PM  20 Q.  Who type of contact information did you provide him for

01:57PM  21 yourself?

01:57PM  22 A.  I was to call T.S.

01:57PM  23 Q.  No.  Contact information for you.

01:58PM  24 A.  For me?

01:58PM  25 Q.  How was Bongiovanni supposed to get ahold of you?

| | | |
|---|---|---|
| 01:58PM | 1 | A.  Oh.  I would call him at the -- at the office. |
| 01:58PM | 2 | Q.  Okay.  Did you have a phone number? |
| 01:58PM | 3 | A.  Yes. |
| 01:58PM | 4 | Q.  Did you provide that to him? |
| 01:58PM | 5 | A.  Yes. |
| 01:58PM | 6 | Q.  Did you have family in the area? |
| 01:58PM | 7 | A.  Yes. |
| 01:58PM | 8 | Q.  Did you provide their addresses? |
| 01:58PM | 9 | A.  No. |
| 01:58PM | 10 | Q.  Okay.  Do you know whether or not he knew where your |
| 01:58PM | 11 | mother lived? |
| 01:58PM | 12 | A.  Yes. |
| 01:58PM | 13 | Q.  Now, by the time you signed up as a confidential source, |
| 01:58PM | 14 | how long had you known T.S.? |
| 01:58PM | 15 | A.  About eight months. |
| 01:58PM | 16 | Q.  How long had you known Ron Serio? |
| 01:58PM | 17 | A.  Two years. |
| 01:58PM | 18 | Q.  How long had you known Ron's brother, Tom Serio? |
| 01:58PM | 19 | A.  Since 1994. |
| 01:58PM | 20 | Q.  Did you know an individual named David Oddo?  Oddo? |
| 01:59PM | 21 | O-D-D-O? |
| 01:59PM | 22 | A.  Yes. |
| 01:59PM | 23 | Q.  How long had you known him? |
| 01:59PM | 24 | A.  Forty years. |
| 01:59PM | 25 | Q.  Did you know an individual named Chris Baker? |

01:59PM  1   A.  Yes.

01:59PM  2   Q.  How long had you known him?

01:59PM  3   A.  Thirty years.

01:59PM  4   Q.  Are those names, names that you discussed during your

01:59PM  5   initial interview with the defendant?

01:59PM  6   A.  Yes.

01:59PM  7   Q.  Are those people that you believed you could have bought

01:59PM  8   drugs from during that time frame?

01:59PM  9   A.  Yes.

01:59PM  10  Q.  What type of drugs do you believe you could have bought

01:59PM  11  from Ron Serio at that time?

01:59PM  12  A.  Cocaine or marijuana.

01:59PM  13  Q.  In your mind, was there any limit to the amount of

01:59PM  14  cocaine you could have bought from Ron Serio?

01:59PM  15  A.  No.

02:00PM  16  Q.  What would be the limiting factor?  Your amount of money?

02:00PM  17  A.  Amount of money, yeah.

02:00PM  18  Q.  Do you believe there was any limit to the amount of

02:00PM  19  marijuana you could have purchased from Ron Serio?

02:00PM  20  A.  No.

02:00PM  21  Q.  What drugs at that time do you believe you could have

02:00PM  22  purchased from Tom Serio?

02:00PM  23  A.  Whatever money I had, I could get.

02:00PM  24  Q.  What type of drugs?

02:00PM  25  A.  Cocaine or marijuana.

| | | |
|---|---|---|
| 02:00PM | 1 | Q.  What type of drugs do you believe you could have |
| 02:00PM | 2 | purchased from T.S.? |
| 02:00PM | 3 | A.  Cocaine and marijuana. |
| 02:00PM | 4 | Q.  What type of drugs do you believe you could have |
| 02:00PM | 5 | purchased from David Oddo? |
| 02:00PM | 6 | A.  Cocaine and marijuana. |
| 02:00PM | 7 | Q.  What type of drugs do you believe you could have |
| 02:00PM | 8 | purchased from Chris Baker? |
| 02:00PM | 9 | A.  Cocaine and marijuana. |
| 02:00PM | 10 | Q.  Are each of those individuals, at that time at least, |
| 02:00PM | 11 | were each of those individuals associated with one another? |
| 02:00PM | 12 | A.  Yes. |
| 02:00PM | 13 | Q.  As the handling agent for you as a DEA confidential |
| 02:01PM | 14 | source, did the defendant ever ask you to buy marijuana or |
| 02:01PM | 15 | cocaine from Ron Serio? |
| 02:01PM | 16 | A.  No.  No. |
| 02:01PM | 17 | Q.  Did the defendant ever ask you to make a purchase of |
| 02:01PM | 18 | cocaine or marijuana from Tom Serio? |
| 02:01PM | 19 | A.  No. |
| 02:01PM | 20 | Q.  Did the defendant ever ask you to purchased cocaine or |
| 02:01PM | 21 | marijuana or any other drug from T.S.? |
| 02:01PM | 22 | A.  Yes. |
| 02:01PM | 23 | Q.  What did he ask you to purchase from T.S.? |
| 02:01PM | 24 | A.  He told me to, you know, just gain his confidence, try to |
| 02:01PM | 25 | get an ounce from him at first, and then go from there.  And |

02:01PM  1    if I could find out where, you know, like I said, the kid

02:01PM  2    said he had a warehouse, where the warehouse was.

02:01PM  3    Q.  Did you ever make any purchases from T.S.?

02:01PM  4    A.  No.  Something else happened.

02:01PM  5          **MR. TRIPI:**  Let me just -- just a moment, please,

02:02PM  6    Your Honor.

02:02PM  7          **BY MR. TRIPI:**

02:02PM  8    Q.  I want to circle back to that in just a moment.

02:02PM  9        Were you asked to make any purchases from David Oddo?

02:02PM 10    A.  No.

02:02PM 11    Q.  Were you ever asked to make any purchases from

02:02PM 12    Christopher Baker?

02:02PM 13    A.  No.

02:02PM 14    Q.  What, if any, premises or houses -- when I say

02:02PM 15    "premises," I'm referring to houses or premises, what if any

02:02PM 16    premises associated with Ron Serio had you been to during

02:02PM 17    that time frame?

02:02PM 18    A.  The house on Lebrun.

02:02PM 19    Q.  Was that a big house on Lebrun?

02:02PM 20    A.  Yes.

02:02PM 21    Q.  How many times had you been there?

02:02PM 22    A.  Well, six times.  Five, six times.

02:03PM 23    Q.  Had you ever gotten drugs there from Mr. Serio?

02:03PM 24    A.  Yes.

02:03PM 25    Q.  What had you purchased from him previously in your own

USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

18

| 02:03PM | 1 | individual capacity? |
| 02:03PM | 2 | A.  Marijuana. |
| 02:03PM | 3 | Q.  And how much marijuana when you would purchase from |
| 02:03PM | 4 | Mr. Serio would you typically get? |
| 02:03PM | 5 | A.  5 pounds. |
| 02:03PM | 6 | Q.  And how much was he charging you per pound? |
| 02:03PM | 7 | A.  3,200. |
| 02:03PM | 8 | Q.  And then you were getting it and selling it? |
| 02:03PM | 9 | A.  Yes. |
| 02:03PM | 10 | Q.  Was that transpiring before you became a confidential |
| 02:03PM | 11 | source for the DEA? |
| 02:03PM | 12 | A.  Yes. |
| 02:03PM | 13 | Q.  Prior to signing up with the DEA, did you ever store any |
| 02:03PM | 14 | marijuana for any members of Serio's group, the members I |
| 02:03PM | 15 | just talked about? |
| 02:04PM | 16 | A.  No. |
| 02:04PM | 17 | Q.  Based on what you were purchasing and what you observed, |
| 02:04PM | 18 | what was your understanding of how much marijuana was being |
| 02:04PM | 19 | trafficked by Mr. Serio and others? |
| 02:04PM | 20 | A.  Hundreds of pounds. |
| 02:04PM | 21 | Q.  Were you generally able to find out when loads were |
| 02:05PM | 22 | coming into town? |
| 02:05PM | 23 | A.  No. |
| 02:05PM | 24 | Q.  Were you ever asked to wear a wire and speak to Mr. Serio |
| 02:05PM | 25 | about that? |

USA v Bongiovanni - R.K. - Tripi/Direct - 2/20/24

19

| 02:05PM | 1 | A.  No. |
| 02:05PM | 2 | Q.  According to your agreement that we just went through, if |
| 02:05PM | 3 | you were asked to do that, would you have tried do that? |
| 02:05PM | 4 | A.  Yes. |
| 02:05PM | 5 | Q.  Now, did you start making controlled buys -- withdrawn. |
| 02:05PM | 6 | Did you start making buys for Mr. Bongiovanni into |
| 02:06PM | 7 | someone else not associated with Mr. Serio? |
| 02:06PM | 8 | A.  Yes. |
| 02:06PM | 9 | Q.  Who was that individual? |
| 02:06PM | 10 | A.  Peter Militello. |
| 02:06PM | 11 | Q.  Do you remember how many buys you made into |
| 02:06PM | 12 | Mr. Militello? |
| 02:06PM | 13 | A.  I made one buy of 6 to 8 bags. |
| 02:06PM | 14 | Q.  Of what? |
| 02:06PM | 15 | A.  Heroin. |
| 02:06PM | 16 | Q.  After that, what happened to your status as a |
| 02:06PM | 17 | confidential source with the DEA? |
| 02:06PM | 18 | A.  It was over. |
| 02:06PM | 19 | Q.  Who told you it was over? |
| 02:06PM | 20 | A.  They said that they -- he did.  Mr. Bonavetti said |
| 02:06PM | 21 | they -- now they got Peter Militello, they didn't need me no |
| 02:07PM | 22 | more, they didn't need me or anybody else. |
| 02:07PM | 23 | Q.  How were you advised that you were done being a |
| 02:07PM | 24 | confidential source? |
| 02:07PM | 25 | A.  He stopped contacting me. |

02:07PM   1   Q.  Did you have a conversation before that?

02:07PM   2   A.  No.  They just told me that, you know, we got Peter

02:07PM   3   Militello at his brother's hospital.  He had so many bags on

02:07PM   4   him.  And, you know, he confessed to giving the heroin that

02:07PM   5   killed Bobby.  And that was it.

02:07PM   6   Q.  Okay.  So there was someone who died of heroin?

02:07PM   7   A.  Yeah.

02:07PM   8   Q.  And after that person was arrested, Mr. Militello, what

02:07PM   9   were you advised?  I want to be clear, what were you advised

02:07PM  10   by Mr. Bongiovanni as to your status as a confidential

02:07PM  11   source?

02:07PM  12   A.  Nothing.  I wasn't asked to do anything else.

02:07PM  13   Q.  At any point, were you asked to go back and talk to

02:08PM  14   anybody related to Ron Serio or T.S.?

02:08PM  15   A.  No.

02:08PM  16   Q.  So once Militello's arrest was done, you were done?

02:08PM  17   A.  Yes.

02:08PM  18   Q.  This was your decision or the defendant's decision?

02:08PM  19   A.  It was their decision.

02:08PM  20   Q.  "Theirs," meaning the DEA?

02:08PM  21   A.  DEA, yeah.

02:08PM  22   Q.  Did you work with the defendant for a long time or a

02:08PM  23   short time?

02:08PM  24   A.  Not a long time.

02:08PM  25   Q.  Do you remember how long it was?

| | | |
|---|---|---|
| 02:08PM | 1 | A.  Three weeks, maybe. |
| 02:08PM | 2 | Q.  But you had agreed to work for a year? |
| 02:08PM | 3 | A.  Yeah. |
| 02:08PM | 4 | **MR. TRIPI:**  One moment, please, Your Honor. |
| 02:08PM | 5 | **BY MR. TRIPI:** |
| 02:09PM | 6 | Q.  Just one thing I wanted to clarify.  As far as you |
| 02:09PM | 7 | understood, based upon your knowledge of the streets at that |
| 02:09PM | 8 | time, did Peter Militello have anything to do with Serio's |
| 02:09PM | 9 | organization? |
| 02:09PM | 10 | A.  No. |
| 02:09PM | 11 | **MR. TRIPI:**  Okay.  No further questions, Your Honor. |
| 02:09PM | 12 | **THE COURT:**  Cross? |
| 02:09PM | 13 | |
| 02:09PM | 14 | **CROSS-EXAMINATION BY MR. SINGER:** |
| 02:09PM | 15 | Q.  Hi, Mr. R.K. |
| 02:09PM | 16 | A.  How are you doing? |
| 02:09PM | 17 | Q.  Doing pretty good. |
| 02:09PM | 18 | So, you didn't want to come today; is that right? |
| 02:09PM | 19 | A.  No.  No, I didn't. |
| 02:09PM | 20 | Q.  Were you using any drugs, sir? |
| 02:09PM | 21 | A.  Was I? |
| 02:09PM | 22 | Q.  Yes. |
| 02:10PM | 23 | A.  No. |
| 02:10PM | 24 | Q.  No? |
| 02:10PM | 25 | A.  No. |

02:10PM   1   Q.  You've had a problem with abusing substances over the

02:10PM   2   course of your life; is that a fair statement?

02:10PM   3   A.  I'd say my whole life.

02:10PM   4   Q.  Yeah.  Like, so, is it pretty much your whole adult life

02:10PM   5   that you've been using some type of substances?

02:10PM   6   A.  As a child, yeah, too.

02:10PM   7   Q.  And that included alcohol?

02:10PM   8   A.  Everything.

02:10PM   9   Q.  That included drugs?

02:10PM   10  A.  Yeah.

02:10PM   11  Q.  Crack cocaine?

02:10PM   12  A.  Yes.

02:10PM   13  Q.  Heroin?

02:10PM   14  A.  Yes.

02:10PM   15  Q.  Anything else?

02:10PM   16  A.  Pills.

02:10PM   17  Q.  When you were in the throes of addiction, how often would

02:10PM   18  use these substances?

02:10PM   19  A.  Any times I could get my hands on them.

02:10PM   20  Q.  And I think you'd agree with me that using substances

02:10PM   21  like that continuously sometimes may affect your memory?

02:10PM   22  A.  No.

02:10PM   23  Q.  You don't think so?

02:10PM   24  A.  No.

02:10PM   25  Q.  So you think that when you use substances like crack

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

23

| | | |
|---|---|---|
| 02:10PM | 1 | cocaine, or heroin, or alcohol, other things like pills -- |
| 02:10PM | 2 | A.  When you're -- when you're using them, per se, yeah. |
| 02:10PM | 3 | But when you're doing something for some people, you're |
| 02:11PM | 4 | not -- those -- those people don't have you on drugs going |
| 02:11PM | 5 | door to door to make buys or stuff on drugs. |
| 02:11PM | 6 | So, no, I wasn't on drugs when I was dealing with him. |
| 02:11PM | 7 | No. |
| 02:11PM | 8 | Q.  Okay.  So you weren't on drugs at any time you were |
| 02:11PM | 9 | dealing with -- |
| 02:11PM | 10 | A.  No. |
| 02:11PM | 11 | Q.  -- Agent Bongiovanni? |
| 02:11PM | 12 | A.  No. |
| 02:11PM | 13 | Q.  Okay.  April 2013, you were first contacted by members of |
| 02:11PM | 14 | the Amherst Police Department; is that right? |
| 02:11PM | 15 | A.  Yes. |
| 02:11PM | 16 | Q.  And they contacted you because someone referred you to |
| 02:11PM | 17 | them? |
| 02:11PM | 18 | A.  Yes. |
| 02:11PM | 19 | Q.  And that was because you had pending charges in county |
| 02:11PM | 20 | court at that point in time? |
| 02:11PM | 21 | A.  Yes. |
| 02:11PM | 22 | Q.  There was a burglary third charge at that point in time? |
| 02:11PM | 23 | A.  Yes. |
| 02:11PM | 24 | Q.  And that's something you had been arrested for and |
| 02:11PM | 25 | charged with in February of 2013, roughly? |

| | | |
|---|---|---|
| 02:11PM | 1 | A.  Yes. |
| 02:11PM | 2 | Q.  And so one of the reasons why you agreed to meet with |
| 02:11PM | 3 | Amherst Police Department was that you wanted to do something |
| 02:12PM | 4 | to help yourself out on that potential charge and conviction, |
| 02:12PM | 5 | correct? |
| 02:12PM | 6 | A.  Yes. |
| 02:12PM | 7 | Q.  Because you knew that you were potentially going to be |
| 02:12PM | 8 | serving some time in state prison as a result of the conduct |
| 02:12PM | 9 | you engaged in in February, correct? |
| 02:12PM | 10 | A.  Yes. |
| 02:12PM | 11 | Q.  So Amherst Police Department, a representative from their |
| 02:12PM | 12 | organization, do you remember who you met with? |
| 02:12PM | 13 | A.  No. |
| 02:12PM | 14 | Q.  Was it a man or a woman? |
| 02:12PM | 15 | A.  It was a woman. |
| 02:12PM | 16 | Q.  You met with a woman? |
| 02:12PM | 17 | A.  Yeah. |
| 02:12PM | 18 | Q.  And they spoke to you about information you might have on |
| 02:12PM | 19 | investigations of interest to them? |
| 02:12PM | 20 | A.  Yes. |
| 02:12PM | 21 | Q.  And so when you met with them, you talked about Ron |
| 02:12PM | 22 | Serio, correct? |
| 02:12PM | 23 | A.  Not at first, no. |
| 02:12PM | 24 | Q.  Not at first? |
| 02:12PM | 25 | A.  No. |

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

25

| | | |
|---|---|---|
| 02:12PM | 1 | Q.  So the first person you spoke about was T.S.? |
| 02:12PM | 2 | A.  Yes. |
| 02:12PM | 3 | Q.  And you knew Mr. T.S. because he was somebody that you |
| 02:12PM | 4 | were dealing with presently at that point in time, right? |
| 02:12PM | 5 | A.  Yes, in the streets, yes. |
| 02:12PM | 6 | Q.  Over the last couple of months, correct? |
| 02:12PM | 7 | A.  Yes. |
| 02:12PM | 8 | Q.  And Mr. T.S., did they indicate to you whether he was a |
| 02:13PM | 9 | person of interest at the Amherst Police Department? |
| 02:13PM | 10 | A.  No. |
| 02:13PM | 11 | Q.  But you talked to the Amherst Police Department about |
| 02:13PM | 12 | T.S., correct? |
| 02:13PM | 13 | A.  Yes. |
| 02:13PM | 14 | Q.  And you talked to him -- talked about Mr. T.S. being |
| 02:13PM | 15 | involved in marijuana dealing? |
| 02:13PM | 16 | A.  And cocaine, yes. |
| 02:13PM | 17 | Q.  And cocaine?  So marijuana and cocaine? |
| 02:13PM | 18 | A.  Yeah. |
| 02:13PM | 19 | Q.  And you mentioned that you might be able to help out in |
| 02:13PM | 20 | an investigation regarding T.S.? |
| 02:13PM | 21 | A.  Yes. |
| 02:13PM | 22 | Q.  And, so, as far as Ron Serio's concerned, he comes up |
| 02:13PM | 23 | later in this discussion? |
| 02:13PM | 24 | A.  In the discussion with -- |
| 02:13PM | 25 | Q.  With Amherst PD, correct? |

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24
26

| | | |
|---|---|---|
| 02:13PM | 1 | A.   No, not with Amherst PD, with DEA. |
| 02:13PM | 2 | Q.   So there was no discussion about Ron Serio that you can |
| 02:13PM | 3 | recall occurring with Amherst PD at all? |
| 02:13PM | 4 | A.   No.   The DEA is the one that bring up Ron Serio. |
| 02:13PM | 5 | Q.   Okay.   All right.   So -- so, after you meet up with |
| 02:13PM | 6 | Amherst, at some point in time the person who met with you at |
| 02:13PM | 7 | Amherst said, hey, we're gonna connect you with the DEA, |
| 02:14PM | 8 | because we believe they might want to talk to you, right? |
| 02:14PM | 9 | A.   Yeah. |
| 02:14PM | 10 | Q.   And that person was trying to get in touch with you, and |
| 02:14PM | 11 | I guess had a meeting sometime in mid April; is that right? |
| 02:14PM | 12 | A.   Yeah. |
| 02:14PM | 13 | Q.   So, let me just go backwards.   So when you met up with |
| 02:14PM | 14 | Amherst, that was in early April of 2013, correct? |
| 02:14PM | 15 | A.   Yeah. |
| 02:14PM | 16 | Q.   And when you got contacted about a follow-on meeting with |
| 02:14PM | 17 | Amherst Police Department, that was in mid April of 2013? |
| 02:14PM | 18 | A.   Yeah. |
| 02:14PM | 19 | Q.   Okay.   And when you were supposed to have that meeting |
| 02:14PM | 20 | with the person from Amherst Police Department, you didn't |
| 02:14PM | 21 | attend that meeting, right? |
| 02:14PM | 22 | A.   No. |
| 02:14PM | 23 | Q.   Blew off the officer? |
| 02:14PM | 24 | A.   Yeah. |
| 02:14PM | 25 | Q.   So they had to make some investigative steps to find you |

| | | |
|---|---|---|
| 02:14PM | 1 | again; is that right? |
| 02:14PM | 2 | A.   Yes. |
| 02:14PM | 3 | Q.   And then I think they contacted your mother to try to |
| 02:14PM | 4 | find out where you might be? |
| 02:14PM | 5 | A.   Yeah. |
| 02:14PM | 6 | Q.   Because you didn't have any type of established address |
| 02:14PM | 7 | at that time? |
| 02:14PM | 8 | A.   Correct, yeah. |
| 02:14PM | 9 | Q.   Were you living on the streets, sir? |
| 02:14PM | 10 | A.   No, with friends. |
| 02:14PM | 11 | Q.   Okay.  But Amherst police didn't know where you were |
| 02:14PM | 12 | located at that time, correct? |
| 02:15PM | 13 | A.   Correct. |
| 02:15PM | 14 | Q.   And your mother, did she know where you were located at |
| 02:15PM | 15 | that time? |
| 02:15PM | 16 | A.   Yes. |
| 02:15PM | 17 | Q.   So she told the officers where to potentially find you, |
| 02:15PM | 18 | and eventually the detectives found you again? |
| 02:15PM | 19 | A.   Yes. |
| 02:15PM | 20 | Q.   And at that point in time, Amherst Police Department |
| 02:15PM | 21 | tells you that they want to put you in connection with the |
| 02:15PM | 22 | DEA? |
| 02:15PM | 23 | A.   Yes. |
| 02:15PM | 24 | Q.   And then later that month in April, finally a meeting |
| 02:15PM | 25 | occurs between you, Amherst Police Department, and the DEA; |

| | | |
|---|---|---|
| 02:15PM | 1 | is that right? |
| 02:15PM | 2 | A.  Yes. |
| 02:15PM | 3 | Q.  And you testified earlier that Mr. Bongiovanni was one of |
| 02:15PM | 4 | the people from the DEA at that meeting? |
| 02:15PM | 5 | A.  Yes. |
| 02:15PM | 6 | Q.  Did he introduce himself to you? |
| 02:15PM | 7 | A.  Yes. |
| 02:15PM | 8 | Q.  Shake your hand? |
| 02:15PM | 9 | A.  No. |
| 02:15PM | 10 | Q.  What generally did you talk about with him? |
| 02:15PM | 11 | A.  At first, we talked -- at first we talked about me doing |
| 02:15PM | 12 | knock to knocks, going to doors, making buys, bringing them |
| 02:15PM | 13 | to the DEA.  And then they would do what they do, raid the |
| 02:16PM | 14 | houses, whatever.  Then T.S.'s name came up. |
| 02:16PM | 15 | Q.  Okay. |
| 02:16PM | 16 | A.  And then I was asked to, you know, get him on the phone, |
| 02:16PM | 17 | get him rolling. |
| 02:16PM | 18 |     And as all this happened, a friend of mine had died. |
| 02:16PM | 19 | Q.  Yeah, but -- |
| 02:16PM | 20 | A.  And, so -- |
| 02:16PM | 21 | Q.  I'll stop you right there, we'll get to all that. |
| 02:16PM | 22 | A.  Okay. |
| 02:16PM | 23 | Q.  But I want to take this sequentially. |
| 02:16PM | 24 | A.  Yeah, go ahead. |
| 02:16PM | 25 | Q.  And so the first meeting you had with Agent Bongiovanni |

02:16PM    1    and Amherst Police Department, you don't meet over at the

02:16PM    2    office, you're meeting out somewhere in town, correct?

02:16PM    3    A.   Yeah.

02:16PM    4    Q.   And then they mentioned that they want to sign you up as

02:16PM    5    a confidential informant, correct?

02:16PM    6    A.   Yeah.

02:16PM    7    Q.   So then you have a follow-on meeting a couple days later

02:16PM    8    in April where you actually go into the office with the DEA,

02:16PM    9    correct?

02:16PM   10    A.   Yeah.

02:16PM   11    Q.   And that's when you sign that confidential source

02:16PM   12    agreement; is that right?

02:16PM   13    A.   Yes.

02:16PM   14    Q.   So that was the exhibit that Mr. Tripi showed you

02:16PM   15    earlier?

02:16PM   16    A.   Yes.

02:16PM   17    Q.   The 9A-2 exhibit?

02:16PM   18    A.   Yes.

02:16PM   19    Q.   And so you signed that agreement indicating, hey, I want

02:16PM   20    to be a confidential informant for you, for the DEA, correct?

02:17PM   21    A.   Correct.

02:17PM   22    Q.   All right.  So, after that meeting you had with

02:17PM   23    Mr. Bongiovanni, and a couple of his DEA counterparts, to

02:17PM   24    sign that agreement, you have another meeting where you get

02:17PM   25    into what is the information you know about, correct?

02:17PM  1    A.  Correct.

02:17PM  2    Q.  And at that point in time, you testified earlier that

02:17PM  3    T.S. is someone you who started talking to the DEA about,

02:17PM  4    correct?

02:17PM  5    A.  Correct.

02:17PM  6    Q.  Just like you did with Amherst Police Department before,

02:17PM  7    correct?

02:17PM  8    A.  Correct.

02:17PM  9    Q.  Because he was the person that you knew very well at that

02:17PM  10   point in time, right?

02:17PM  11   A.  Correct.

02:17PM  12   Q.  Somebody that you dealt with very recently, correct?

02:17PM  13   A.  Correct.

02:17PM  14   Q.  And so you had mentioned T.S. to them.  And they asked

02:17PM  15   you whether or not you'd be willing to do some type of

02:17PM  16   controlled buys with Mr. T.S.?

02:17PM  17   A.  Correct.

02:17PM  18   Q.  And they talked to you about generally about how that

02:17PM  19   would work, correct?

02:17PM  20   A.  Correct.

02:17PM  21   Q.  And at that meeting, that's when the topic of Ron Serio

02:17PM  22   comes up, you said?

02:17PM  23   A.  Not at that meeting, no.

02:17PM  24   Q.  Okay.  So when did Ron Serio come up in conversation with

02:18PM  25   the DEA?

02:18PM    1    A.  He came up maybe a week later.

02:18PM    2    Q.  So a week later, you had a conversation with the DEA?

02:18PM    3    A.  Because -- because T.S. was close with Ron Serio.  So

02:18PM    4    when Tom said to me, I gotta wait, I can't do anything until

02:18PM    5    I talk to Ron, that's what I told them.

02:18PM    6        So that's when the two combined.

02:18PM    7    Q.  Okay.  And that's when you first alerted DEA to Ron

02:18PM    8    Serio?

02:18PM    9    A.  Yeah.

02:18PM   10    Q.  How about Tom Serio?

02:18PM   11    A.  Tom Serio?

02:18PM   12    Q.  When did you first talk to DEA about Tom Serio?

02:18PM   13    A.  Tom Serio, I've known since '94.  The first time I talked

02:18PM   14    to him was when they had me here maybe 5 years ago.

02:18PM   15    Q.  No, and so I guess that's -- that's the basis of my

02:18PM   16    question.  When did Tom Serio come up in your discussions

02:18PM   17    with the DEA?

02:18PM   18    A.  Well, Tom Serio came up again because they're all, you

02:18PM   19    know, Tom, Ron, they're all together.  They're all hanging

02:18PM   20    together.  They're all -- so they all came up together.

02:18PM   21    Q.  So Tom Serio you know is the brother of Ron Serio,

02:19PM   22    correct?

02:19PM   23    A.  Correct, yeah.

02:19PM   24    Q.  And so when you mentioned Ron Serio to the DEA, as you

02:19PM   25    testified earlier about a week after --

02:19PM  1    A.  I didn't mention Ron Serio, they did.

02:19PM  2    Q.  Okay.  So they brought up Ron Serio to you?

02:19PM  3    A.  Yeah.

02:19PM  4    Q.  And then when they asked you about Ron Serio, that's when

02:19PM  5    you brought up Tom Serio?

02:19PM  6    A.  I said I know his brother, yes.

02:19PM  7    Q.  Okay.  And what do you remember telling the DEA about Ron

02:19PM  8    Serio in that meeting?

02:19PM  9    A.  Just that I could get whatever I want.

02:19PM  10   Q.  Okay.  You could get whatever you wanted from him?

02:19PM  11   A.  Yeah.

02:19PM  12   Q.  And you testified earlier that you had mentioned a couple

02:19PM  13   of different drug transactions you may have been involved

02:19PM  14   with him; is that right?

02:19PM  15   A.  Yeah.

02:19PM  16   Q.  What kind of buys were you doing with Ron Serio at that

02:19PM  17   time?

02:19PM  18   A.  Just marijuana.

02:19PM  19   Q.  Just marijuana?

02:19PM  20   A.  Yeah.

02:19PM  21   Q.  How many pounds of marijuana were you purchasing?

02:19PM  22   A.  4 or 5.

02:19PM  23   Q.  4 or 5 pounds?

02:19PM  24   A.  Yeah.

02:19PM  25   Q.  And he was charging you somewhere in the neighborhood

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

33

| | | |
|---|---|---|
| 02:19PM | 1 | $3,000 a pound for that? |
| 02:19PM | 2 | A.  Yeah. |
| 02:19PM | 3 | Q.  What would you use to purchase the marijuana from Ron |
| 02:20PM | 4 | Serio? |
| 02:20PM | 5 | A.  Cash. |
| 02:20PM | 6 | Q.  Cash? |
| 02:20PM | 7 | A.  Um-hum. |
| 02:20PM | 8 | Q.  So 5 pounds of marijuana, so you had roughly $15,000 to |
| 02:20PM | 9 | go front to Mr. Serio to buy that marijuana? |
| 02:20PM | 10 | A.  Yes. |
| 02:20PM | 11 | Q.  And what were you doing for work at that point in time, |
| 02:20PM | 12 | sir? |
| 02:20PM | 13 | A.  I was working in a pizzeria. |
| 02:20PM | 14 | Q.  All right.  How much did you make an hour in the |
| 02:20PM | 15 | pizzeria? |
| 02:20PM | 16 | A.  I made about $18 an hour. |
| 02:20PM | 17 | Q.  $18 an hour?  What year was this again? |
| 02:20PM | 18 | A.  2013. |
| 02:20PM | 19 | Q.  2013. |
| 02:20PM | 20 | A.  Yeah. |
| 02:20PM | 21 | Q.  Do you know what the minimum wage was back then, sir? |
| 02:20PM | 22 | A.  No. |
| 02:20PM | 23 | Q.  Okay.  But you said you were making $18 an hour at the |
| 02:20PM | 24 | pizzeria? |
| 02:20PM | 25 | A.  Yeah. |

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24
34

02:20PM     1    Q.   What were you doing at the pizzeria?

02:20PM     2    A.   Making pizzas.

02:20PM     3    Q.   All right.  So you were just there making pizzas, putting

02:20PM     4    them in the oven, taking them out of the oven?

02:20PM     5    A.   Yep.

02:20PM     6    Q.   So you had purchased this marijuana from Ron Serio,

02:20PM     7    according to your testimony today?

02:21PM     8    A.   Yeah.

02:21PM     9    Q.   How many purchases do you think you made from Ron Serio

02:21PM    10    at this time period?

02:21PM    11    A.   One.

02:21PM    12    Q.   You made one purchase?

02:21PM    13    A.   Yeah.

02:21PM    14    Q.   So that's it?

02:21PM    15    A.   That's it.

02:21PM    16    Q.   You testified earlier that you knew him for two years,

02:21PM    17    right?

02:21PM    18    A.   True.

02:21PM    19    Q.   But you purchased one time from him?

02:21PM    20    A.   Yeah.  It doesn't mean I wasn't there on mutual times,

02:21PM    21    when somebody else was purchasing, but I purchased one time.

02:21PM    22    Q.   Again, I'd just ask you to just listen to my question.

02:21PM    23    A.   One time.  One time.

02:21PM    24    Q.   So one time you purchased with Ron Serio.  What year was

02:21PM    25    that?

Case 1:19-cr-00227-LJV-MJR  Document 1009-1  Filed 06/14/24  Page 36 of 67
USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

35

| | | |
|---|---|---|
| 02:21PM | 1 | A.  2012. |
| 02:21PM | 2 | Q.  2012 you purchased him? |
| 02:21PM | 3 | A.  Yeah. |
| 02:21PM | 4 | Q.  And where did you sell the marijuana? |
| 02:21PM | 5 | A.  What's that? |
| 02:21PM | 6 | Q.  Where did you sell the marijuana? |
| 02:21PM | 7 | A.  Where did I -- |
| 02:21PM | 8 | Q.  Correct.  Where did you sell it that you purchased from |
| 02:21PM | 9 | Ron Serio in 2012? |
| 02:21PM | 10 | A.  I just put it in the street. |
| 02:21PM | 11 | Q.  Where? |
| 02:21PM | 12 | A.  Friends. |
| 02:21PM | 13 | Q.  Who? |
| 02:21PM | 14 | **MR. TRIPI:**  Objection. |
| 02:21PM | 15 | **THE COURT:**  Hang on. |
| 02:21PM | 16 | **MR. TRIPI:**  Objection as to relevance. |
| 02:21PM | 17 | **THE COURT:**  Yeah. |
| 02:21PM | 18 | **MR. SINGER:**  Judge, I'm testing the witness's memory. |
| 02:21PM | 19 | And I think I should have some latitude to ask some basic |
| 02:22PM | 20 | questions about who he consummated his drugs transactions |
| 02:22PM | 21 | with. |
| 02:22PM | 22 | **THE COURT:**  Okay.  Yeah, I'll allow it.  Go ahead. |
| 02:22PM | 23 | **BY MR. SINGER:** |
| 02:22PM | 24 | Q.  So who did you sell to? |
| 02:22PM | 25 | A.  Ron, John, and Jerry. |

| | | |
|---|---|---|
| 02:22PM | 1 | Q.  Ron, John, and Jerry?  What are their last names? |
| 02:22PM | 2 | A.  I don't ask last names. |
| 02:22PM | 3 | Q.  What do they look like?  Let's start with Ron. |
| 02:22PM | 4 | A.  Like me. |
| 02:22PM | 5 | Q.  Were they white?  Were they black? |
| 02:22PM | 6 | A.  Like me.  White. |
| 02:22PM | 7 | Q.  John, same thing? |
| 02:22PM | 8 | A.  Yes. |
| 02:22PM | 9 | Q.  Jerry, the same thing? |
| 02:22PM | 10 | A.  Yes. |
| 02:22PM | 11 | Q.  How old was Ron? |
| 02:22PM | 12 | A.  About 30. |
| 02:22PM | 13 | Q.  How about John? |
| 02:22PM | 14 | A.  40. |
| 02:22PM | 15 | Q.  Jerry? |
| 02:22PM | 16 | A.  35. |
| 02:22PM | 17 | Q.  And how long had you known these three individuals for? |
| 02:22PM | 18 | A.  Ten years. |
| 02:22PM | 19 | Q.  So did you talk about this marijuana purchase from Ron |
| 02:22PM | 20 | Serio when you met with the DEA? |
| 02:22PM | 21 | A.  No. |
| 02:22PM | 22 | Q.  You didn't mention that at all? |
| 02:22PM | 23 | A.  No. |
| 02:22PM | 24 | Q.  And you'd agree with me that that would be pertinent |
| 02:22PM | 25 | information if you were trying to talk with them about Ron |

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

37

02:23PM  1   Serio being a supplier.

02:23PM  2   A.   Again, I wasn't trying to talk to them about Mr. Serio,

02:23PM  3   they were.

02:23PM  4        **MR. TRIPI:**  Objection as to what's pertinent.

02:23PM  5        **THE COURT:**  No, overruled.

02:23PM  6        **BY MR. SINGER:**

02:23PM  7   Q.   Do you need me to repeat the question, sir?

02:23PM  8   A.   No.  I mean, again, wasn't trying to talk, they were

02:23PM  9   trying to talk about him.  I wasn't.  I never mentioned Ron

02:23PM  10  Serio, they did.

02:23PM  11  Q.   That's what I'm getting at.  Is that DEA asked you a

02:23PM  12  question about Ron Serio, correct?

02:23PM  13  A.   And all's I said was I can buy from Ron Serio.  That was

02:23PM  14  it.

02:23PM  15  Q.   That's all you said?

02:23PM  16  A.   That was it.  End of questioning, that was it.

02:23PM  17  Q.   They didn't ask you any specifics --

02:23PM  18  A.   No.

02:23PM  19  Q.   -- about it whatsoever?

02:23PM  20  A.   No.

02:23PM  21  Q.   Okay.  So DEA asks you to make some buys from T.S.; is

02:23PM  22  that right?

02:23PM  23  A.   Yes.

02:23PM  24  Q.   And you have a little bit of a problem at that point in

02:23PM  25  time to make these buys, right?

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

38

02:23PM    1   A.   Yes.

02:23PM    2   Q.   Because you ow T.S. a drug debt, correct?

02:23PM    3   A.   Yes.

02:23PM    4   Q.   And until that's settled up, T.S. is not gonna deal with

02:23PM    5   you, correct?

02:23PM    6   A.   Correct.

02:23PM    7   Q.   So part of the plan to get you back in with T.S. that the

02:24PM    8   DEA proposed to you is that they would potentially provide

02:24PM    9   you some money, and that you would use that money to pay down

02:24PM   10   the drug debt, and then get back in and make some purchases

02:24PM   11   with T.S., correct?

02:24PM   12   A.   Correct.

02:24PM   13   Q.   But when you reached out to T.S., you don't make contact

02:24PM   14   with him, right?

02:24PM   15   A.   No, he got nervous.

02:24PM   16   Q.   He got nervous?

02:24PM   17   A.   Yeah.

02:24PM   18   Q.   So, he didn't want to meet with you?

02:24PM   19   A.   No.

02:24PM   20   Q.   So, DEA proposes a plan to try to get you back in with

02:24PM   21   T.S., right?

02:24PM   22   A.   Yeah.

02:24PM   23   Q.   You call T.S., correct?

02:24PM   24   A.   Yep.

02:24PM   25   Q.   And T.S. doesn't agree to meet with you anymore, correct?

02:24PM    1    A.  Correct.

02:24PM    2    Q.  And you said because he was nervous?

02:24PM    3    A.  I guess.

02:24PM    4    Q.  Was that because he knew that you were pending a felony

02:24PM    5    charge for burglary?

02:24PM    6         MR. TRIPI:  Objection as to what someone else knew,

02:24PM    7    Your Honor.

02:24PM    8         THE WITNESS:  Or that he was gonna get robbed.

02:24PM    9         THE COURT:  When there's an objection, please don't

02:24PM   10    answer.

02:24PM   11         THE WITNESS:  Oh, I'm sorry.

02:24PM   12         THE COURT:  No, that's okay.  You don't need to

02:24PM   13    apologize.

02:24PM   14         THE WITNESS:  Okay.

02:24PM   15         THE COURT:  Sustained.  You can rephrase the

02:24PM   16    question.  But the objection to the form of the question is

02:24PM   17    sustained.

02:25PM   18         BY MR. SINGER:

02:25PM   19    Q.  Was Mr. T.S. aware of your arrest and charge for felony

02:25PM   20    burglary at that point in time in 2013?

02:25PM   21    A.  Everybody was aware.

02:25PM   22    Q.  Okay.  So you would agree with me, if you were pending a

02:25PM   23    charge, that may have been one of the reasons why T.S. was

02:25PM   24    nervous, correct?

02:25PM   25    A.  Could have been.

02:25PM  1   Q.  Okay.  So he refuses in any way deal with you at that

02:25PM  2   point in time, right?

02:25PM  3   A.  Correct.

02:25PM  4   Q.  As far as Ron Serio is concerned, now, you never drove

02:25PM  5   anywhere and delivered drugs for Ron Serio; is that right?

02:25PM  6   A.  Correct.

02:25PM  7   Q.  You never drove to New York City or anything like that to

02:25PM  8   try to get any type of money for Ron Serio, correct?

02:25PM  9   A.  Correct.

02:25PM  10  Q.  And you I know you think you know Ron Serio.  You said

02:25PM  11  you've known him for two years, correct?

02:25PM  12  A.  Um-hum.

02:25PM  13  Q.  You testified earlier on direct that you've been over to

02:25PM  14  Ron Serio's house on Lebrun; is that right?

02:25PM  15  A.  Correct.

02:25PM  16  Q.  And that's the house in Amherst on Lebrun?

02:25PM  17  A.  I don't know where it is, I just know it was on Lebrun.

02:26PM  18  Q.  But you remember it was a big house, right?

02:26PM  19  A.  Yeah.

02:26PM  20  Q.  And you said earlier that you'd been there roughly five

02:26PM  21  to six times, right?

02:26PM  22  A.  About that, yeah.

02:26PM  23  Q.  Do you remember testifying before a grand jury, sir?

02:26PM  24  A.  Yeah.

02:26PM  25  Q.  Yeah.  And it was connected to this case before you came

| | | |
|---|---|---|
| 02:26PM | 1 | into court today, correct? |
| 02:26PM | 2 | A.  Before I came into this court? |
| 02:26PM | 3 | Q.  Before you came into this court, did you testify before a |
| 02:26PM | 4 | grand jury? |
| 02:26PM | 5 | A.  No. |
| 02:26PM | 6 | Q.  You didn't testify before a grand jury? |
| 02:26PM | 7 | A.  No. |
| 02:26PM | 8 | **THE COURT:**  I don't think he understands the |
| 02:26PM | 9 | question. |
| 02:26PM | 10 | **MR. SINGER:**  Certainly.  Let me work back a little. |
| 02:26PM | 11 | **BY MR. SINGER:** |
| 02:26PM | 12 | Q.  So, when you were first contacted by authorities about |
| 02:26PM | 13 | this case -- |
| 02:26PM | 14 | A.  Yes. |
| 02:26PM | 15 | Q.  -- you met with the prosecutors in this case, correct? |
| 02:26PM | 16 | A.  Yes. |
| 02:26PM | 17 | Q.  And they asked to you testify before a grand jury, |
| 02:26PM | 18 | correct? |
| 02:26PM | 19 | A.  Yes. |
| 02:26PM | 20 | Q.  And that was in this building here? |
| 02:26PM | 21 | A.  Yes. |
| 02:26PM | 22 | Q.  And the grand jury was not as similar like this, it was |
| 02:26PM | 23 | just a room where several people were located, and you and |
| 02:26PM | 24 | the prosecutor, and he was asking you questions, right? |
| 02:26PM | 25 | A.  Um-hum. |

02:26PM   1    Q.  And you remember testifying before them about the facts

02:27PM   2    of this case, right?

02:27PM   3    A.  Correct.

02:27PM   4    Q.  And do you remember testifying at that point in time when

02:27PM   5    you got asked the question about how many times you'd been

02:27PM   6    over to Ron Serio's house on Lebrun; do you remember that?

02:27PM   7    A.  Yes.

02:27PM   8    Q.  And do you recall stating at that point in time that you

02:27PM   9    were over there four occasions?

02:27PM  10    A.  Four occasions?

02:27PM  11    Q.  Yes.

02:27PM  12    A.  Oh, what did I say now?

02:27PM  13    Q.  Is that -- do you have any reason to disagree with me

02:27PM  14    about --

02:27PM  15    A.  No.

02:27PM  16    Q.  -- the grand jury testimony?

02:27PM  17    A.  No.

02:27PM  18    Q.  So if that's what it says, that's what it says?

02:27PM  19    A.  If that's what it says, that's what it says.

02:27PM  20    Q.  Okay.  All right.  So as far as the five or six times

02:27PM  21    that you testified today, do you agree with me that when you

02:27PM  22    testified before the grand jury, the facts of this case were

02:27PM  23    more fresh in your mind back then than they are now?

02:27PM  24    A.  I don't know.  Four, five, I don't know.  It's --

02:27PM  25    Q.  You don't know?

02:27PM  1    A.  I mean, I don't keep track.  Everybody's house I go to, I

02:27PM  2    don't keep track every time I go to their houses.  You know,

02:27PM  3    you asked me a question, I say four.  If you ask me about two

02:27PM  4    months later, it might have been five.  I don't know.  I

02:28PM  5    don't -- you know.

02:28PM  6    Q.  So it's back and forth?

02:28PM  7    A.  Not back and forth, just reality I'm sure.  Everybody has

02:28PM  8    a little, you know.

02:28PM  9    Q.  So I guess the reality is is you can't really sit here

02:28PM  10   today and say how many times you're over at Ron Serio's house

02:28PM  11   at that point in time back in 2013, right?

02:28PM  12   A.  No.  Well, I know what the house is.  I know how big it

02:28PM  13   is.  I know what's on the doors.  I know everything, what's

02:28PM  14   inside.  So I might have to -- maybe it was four maybe, maybe

02:28PM  15   it was five.  It was my mistake if I said five, six.  My

02:28PM  16   mistake, I apologize.

02:28PM  17   Q.  Okay.  So at the time that you're going over to the Serio

02:28PM  18   house, you're going over there because you're friends with

02:28PM  19   Frank Burkhardt, right?

02:28PM  20   A.  Yeah.

02:28PM  21   Q.  Yeah.  You know Mr. Burkhardt going back how many years?

02:28PM  22   A.  45 years.

02:28PM  23   Q.  I mean, you've known him practically all your life,

02:28PM  24   right?

02:28PM  25   A.  Correct.

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

44

| | | |
|---|---|---|
| 02:28PM | 1 | Q. And he was a friend of yours, correct? |
| 02:28PM | 2 | A. Correct. |
| 02:28PM | 3 | Q. And he's hanging out with Ron Serio; is that right? |
| 02:28PM | 4 | A. Correct. |
| 02:28PM | 5 | Q. Okay. So, you know Burkhardt better than Ron Serio; fair |
| 02:29PM | 6 | statement? |
| 02:29PM | 7 | A. Correct. |
| 02:29PM | 8 | Q. Do you remember talking to Amherst PD -- |
| 02:29PM | 9 | **MR. TRIPI:** Objection, beyond the scope. |
| 02:29PM | 10 | **THE COURT:** Overruled. |
| 02:29PM | 11 | **BY MR. SINGER:** |
| 02:29PM | 12 | Q. Do you remember talking to Amherst Police Department when |
| 02:29PM | 13 | you first met up with agents regarding cooperation in this |
| 02:29PM | 14 | case? |
| 02:29PM | 15 | A. Do I remember talking to Amherst Police Department? |
| 02:29PM | 16 | Q. Yes. |
| 02:29PM | 17 | A. Yes. |
| 02:29PM | 18 | Q. And do you remember talking to them about how you'd like |
| 02:29PM | 19 | to try to get closer to Ron Serio? |
| 02:29PM | 20 | A. No. |
| 02:29PM | 21 | Q. You don't remember that? |
| 02:29PM | 22 | A. No. |
| 02:29PM | 23 | Q. Do you remember testifying earlier that when DEA asked |
| 02:29PM | 24 | you what you knew about Ron Serio, that you would like to try |
| 02:29PM | 25 | to get closer to him in some way? |

| | | |
|---|---|---|
| 02:29PM | 1 | A.  Not I would, they want me to. |
| 02:29PM | 2 | Q.  Okay. |
| 02:29PM | 3 | A.  Yeah. |
| 02:29PM | 4 | Q.  And the reason for that was that you weren't very close |
| 02:29PM | 5 | with Ron Serio at that point in time, correct? |
| 02:29PM | 6 | A.  No, I wasn't.  It's not like we're hand in hand, but I |
| 02:29PM | 7 | knew him. |
| 02:29PM | 8 | Q.  You knew him? |
| 02:29PM | 9 | A.  And I talked to him, yeah, but we weren't -- |
| 02:29PM | 10 | Q.  I guess that's what I'm getting at.  You knew Ron Serio, |
| 02:30PM | 11 | right? |
| 02:30PM | 12 | A.  Yeah. |
| 02:30PM | 13 | Q.  But you didn't know him for 45 likes you knew Frank |
| 02:30PM | 14 | Burkhardt, right? |
| 02:30PM | 15 | A.  No. |
| 02:30PM | 16 | Q.  You didn't interact with him on a narcotics basis like |
| 02:30PM | 17 | T.S. for eight months prior to that, right? |
| 02:30PM | 18 | A.  No. |
| 02:30PM | 19 | Q.  So your connection is a little different with Ron Serio |
| 02:30PM | 20 | than it was with other people, correct? |
| 02:30PM | 21 | A.  Correct. |
| 02:30PM | 22 | Q.  And you said that everybody knew about your burglary case |
| 02:30PM | 23 | that was in existence at that time, right? |
| 02:30PM | 24 | A.  My burglary case? |
| 02:30PM | 25 | Q.  Correct. |

| | | |
|---|---|---|
| 02:30PM | 1 | A.  Sure. |
| 02:30PM | 2 | Q.  That was something that was common knowledge amongst your |
| 02:30PM | 3 | friends? |
| 02:30PM | 4 | A.  Well, I mean, I was -- I think I was on the news for it, |
| 02:30PM | 5 | so, yeah. |
| 02:30PM | 6 | Q.  Okay.  So it was widely known? |
| 02:30PM | 7 | A.  Yeah. |
| 02:30PM | 8 | Q.  And what did you try to do to get in contact with Ron |
| 02:30PM | 9 | Serio at that time when the DEA asked you to? |
| 02:30PM | 10 | A.  They didn't ask me to get in -- they didn't ask me to |
| 02:30PM | 11 | call him or anything.  They asked me to call T.S.. |
| 02:30PM | 12 | Q.  Okay.  They never asked you to make any contact with Ron |
| 02:30PM | 13 | Serio? |
| 02:30PM | 14 | A.  No.  They just mentioned his name. |
| 02:31PM | 15 | Q.  Okay.  They just mentioned his name? |
| 02:31PM | 16 | A.  If you hear -- yeah, if you hear anything about him, let |
| 02:31PM | 17 | us know. |
| 02:31PM | 18 | Q.  Okay.  So your cooperation or attempted cooperation to |
| 02:31PM | 19 | try to talk with T.S., that pretty much went nowhere by the |
| 02:31PM | 20 | middle of May, correct? |
| 02:31PM | 21 | A.  Correct. |
| 02:31PM | 22 | Q.  And at one point in time, the DEA contacts you, Special |
| 02:31PM | 23 | Agent Bongiovanni contacts you to call you into the office, |
| 02:31PM | 24 | correct? |
| 02:31PM | 25 | A.  Correct. |

02:31PM   1    Q.  And the purpose of that conversation was to talk to you

02:31PM   2    about cooperation and whether this is working or not,

02:31PM   3    correct?

02:31PM   4    A.  I'm sorry, say that again?

02:31PM   5    Q.  And the purpose of that conversation was to talk to you

02:31PM   6    about whether your cooperation would be necessary or not,

02:31PM   7    correct?

02:31PM   8    A.  Yes.

02:31PM   9    Q.  And so at that point in time, you also have this court

02:31PM  10    case in county court, right?

02:31PM  11    A.  Yes.

02:31PM  12    Q.  And you know that you're facing a felony burglary charge,

02:32PM  13    correct?

02:32PM  14    A.  Yes.

02:32PM  15    Q.  And you know that as a second time felony offender,

02:32PM  16    you're looking at some hard time Upstate, correct?

02:32PM  17    A.  Two years.

02:32PM  18    Q.  Two years?  Two to four years?

02:32PM  19    A.  Two to four, yeah.

02:32PM  20    Q.  Two to four, yeah.  Two to four, undetermined, right?

02:32PM  21    A.  Hard time.  Hard time.

02:32PM  22    Q.  And, yeah, I mean, it's hard time.  I mean, so state

02:32PM  23    prison is not a fun place, right?

02:32PM  24    A.  No, it's not.

02:32PM  25    Q.  Food sucks?

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

02:32PM    1    A.  Food sucks.

02:32PM    2    Q.  It's dangerous?

02:32PM    3    A.  Very dangerous.

02:32PM    4    Q.  You don't have any contact with --

02:32PM    5    A.  Unless you're a dangerous person, then you ain't gotta

02:32PM    6    worry about it.

02:32PM    7    Q.  You don't have any contact with family members or

02:32PM    8    anything like that?

02:32PM    9    A.  Excuse me?

02:32PM    10   Q.  You don't have any contact with any family members when

02:32PM    11   you're in state prison?

02:32PM    12   A.  Sure.

02:32PM    13   Q.  Sometimes, but not the same as if you're back home,

02:32PM    14   right?

02:32PM    15   A.  Sure.

02:32PM    16   Q.  Sometimes it can get a little lonely in there, right?

02:32PM    17   A.  Nah.

02:32PM    18   Q.  So this meeting was supposed to happen at the end of May,

02:32PM    19   correct?

02:32PM    20   A.  Yeah.

02:32PM    21   Q.  And then you hinted at this earlier.  Before that

02:32PM    22   meeting, something happens to one of your friends, right?

02:32PM    23   A.  Yes.

02:33PM    24   Q.  And that friend is Robert Runfola?

02:33PM    25   A.  Yes.

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

49

02:33PM   1   Q.  So, Robert Runfola, he's an individual that you know how

02:33PM   2   long?

02:33PM   3   A.  45 years.

02:33PM   4   Q.  So it goes all the way back, correct?

02:33PM   5   A.  Yeah.

02:33PM   6   Q.  And Robert Runfola, he, at some point in time, purchased

02:33PM   7   heroin, correct?

02:33PM   8   A.  Correct.

02:33PM   9   Q.  And he was a user of heroin, right?

02:33PM   10   A.  Correct.

02:33PM   11   Q.  And you were a user of heroin, right?

02:33PM   12   A.  Correct.

02:33PM   13   Q.  So Robert Runfola, before this meeting that you were

02:33PM   14   supposed to have with Special Agent Bongiovanni, he took some

02:33PM   15   heroin, correct?

02:33PM   16   A.  Correct.

02:33PM   17   Q.  And he eventually overdosed on that heroin, correct?

02:33PM   18   A.  Correct.

02:33PM   19   Q.  And you remember that he picked this up from a dealer

02:33PM   20   named Peter Militello, correct?

02:33PM   21   A.  Correct.

02:33PM   22   Q.  And you were with Mr. Runfola the day that he picked up

02:33PM   23   the heroin from Mr. Militello, correct?

02:33PM   24   A.  Correct.

02:33PM   25   Q.  It was outside the Buffalo City Court building?

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

50

02:33PM  1   A.  Correct.

02:33PM  2   Q.  I think, was Mr. Runfola supposed to report in for court

02:34PM  3   that morning?

02:34PM  4   A.  Yes.

02:34PM  5   Q.  And you were in car where Mr. Militello picked him up

02:34PM  6   outside the Buffalo City Court building, drove the two of you

02:34PM  7   around, to consummate the transaction?

02:34PM  8   A.  Correct.

02:34PM  9   Q.  And so you departed ways at that point in time, correct?

02:34PM  10  A.  Who did?

02:34PM  11  Q.  And you Runfola?

02:34PM  12  A.  No, we went into the courtroom.

02:34PM  13  Q.  You went into the courtroom?  And after you got out of

02:34PM  14  court, did you use the heroin that you purchased?

02:34PM  15  A.  We used it before we went into the courtroom.

02:34PM  16  Q.  You used it before you went into court?

02:34PM  17  A.  Yes.

02:34PM  18  Q.  And then Mr. Runfola later passed away that day about it,

02:34PM  19  correct?

02:34PM  20  A.  Mr. Runfola had more heroin on him that I didn't know

02:34PM  21  about.

02:34PM  22  Q.  Okay.  And he took that heroin?

02:34PM  23  A.  And then he went home and shot it, and passed away.

02:34PM  24  Q.  Okay.  So he overdosed?

02:34PM  25  A.  Yes.

02:34PM  1  Q.  So when Mr. Bongiovanni contacted you, you reported this

02:34PM  2  to him, correct?

02:34PM  3  A.  I just -- I let him know that -- I let him know that my

02:34PM  4  friend died, and how he died, and I was in the car.  And then

02:34PM  5  light bulbs went off with all of them, and they dropped

02:35PM  6  everything, and Mr. Militello was the case now.

02:35PM  7  Q.  Um-hum.  And that was something that was important to the

02:35PM  8  agents to investigate, right?

02:35PM  9  A.  Correct.

02:35PM  10  Q.  And Robert Runfola, he's your friend, correct?

02:35PM  11  A.  Correct.

02:35PM  12  Q.  He passed away from doing drugs that someone else dealt

02:35PM  13  to him, right?

02:35PM  14  A.  Correct.

02:35PM  15  Q.  So you wanted to see some justice served in this matter

02:35PM  16  just as much, right?

02:35PM  17  A.  Correct.

02:35PM  18  Q.  And if Mr. Militello was the one that sold him that fatal

02:35PM  19  dose, you wanted to see Mr. Militello held accountable,

02:35PM  20  correct?

02:35PM  21  A.  Correct.

02:35PM  22  Q.  And you also knew that you had this case happening in

02:35PM  23  county court with the burglary charge that you were looking

02:35PM  24  at two to four years on, and you also wanted to help

02:35PM  25  yourself, right?

02:35PM   1    A.  Correct.

02:35PM   2    Q.  So that's when the DEA asked you to engage in undercover

02:35PM   3    buys with Peter Militello, correct?

02:35PM   4    A.  Correct.

02:35PM   5    Q.  And you eventually make a buy from Mr. Militello,

02:35PM   6    correct?

02:35PM   7    A.  Correct.

02:35PM   8    Q.  And it happens quickly, correct?

02:35PM   9    A.  Correct.

02:35PM   10   Q.  And later, Mr. Militello is arrested for what happened as

02:36PM   11   far as the dealing to Robert Runfola, correct?

02:36PM   12   A.  Correct.

02:36PM   13   Q.  And do you recall his arrest happened shortly after your

02:36PM   14   buy?

02:36PM   15   A.  Correct.

02:36PM   16   Q.  So, I know that the buy was towards the end of May.  Do

02:36PM   17   you have any reason to disagree with me that Mr. Militello

02:36PM   18   was arrested in June?

02:36PM   19   A.  June, I believe, yeah.

02:36PM   20   Q.  Okay.

02:36PM   21   A.  Um-hum.

02:36PM   22   Q.  And so, June, you have this successful case that the DEA

02:36PM   23   has now as a result of your cooperation, correct?

02:36PM   24   A.  Correct.

02:36PM   25   Q.  But you're also going back into court on your pending

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

53

02:36PM   1   burglary charge, correct?

02:36PM   2   A.  Correct.

02:36PM   3   Q.  And you're looking at potentially being sentenced two to

02:36PM   4   four years, correct?

02:36PM   5   A.  Correct.

02:36PM   6   Q.  And you go in on July 3rd of 2013, and you plead guilty

02:36PM   7   to the burglary felony that you're pending, correct?

02:36PM   8   A.  Correct.

02:36PM   9   Q.  And sentencing at that point in time was deferred?

02:36PM  10   A.  Correct.

02:36PM  11   Q.  Because of the cooperation you engaged in, you had the

02:36PM  12   opportunity to enter into the judicial diversion program,

02:37PM  13   correct?

02:37PM  14   A.  Correct.

02:37PM  15   Q.  So that's drug court?

02:37PM  16   A.  Yeah.  But after he told them I wore a wire, I was

02:37PM  17   labeled as a rat, so it didn't really matter.  You know.

02:37PM  18   Q.  I'm sorry, I didn't hear you.

02:37PM  19   A.  After he said I wore a wire to the kid, I was labeled as

02:37PM  20   a rat.  So being in a drug court program, or anywhere in this

02:37PM  21   city didn't matter, because he told them I wore a wire.

02:37PM  22   Q.  Okay.  So you wore a wire with regard to the Militello

02:37PM  23   investigation?

02:37PM  24   A.  Yeah.

02:37PM  25   Q.  Okay.  And that's something that the drug court

02:37PM  1    communicated back to you, or to other people?

02:37PM  2    A.  No.  By him telling Mr. Militello that I wore a wire, it

02:37PM  3    got to the neighborhood that I wore a wire.  So everywhere I

02:37PM  4    went, drug court, streets, I'm fighting for my life.  People

02:37PM  5    trying to stab me, everything.  Because he told them I wore a

02:37PM  6    wire.

02:37PM  7    Q.  All right.  So, I mean, safe to say at that point in time

02:37PM  8    then you were burned as a confidential informant?

02:37PM  9    A.  Yeah, because I thought C meant confidential informant,

02:37PM  10   not we tell everything and we just put the person on the

02:38PM  11   street to die.  But you see I'm still here, I'm still walking

02:38PM  12   the streets.

02:38PM  13   Q.  Okay.  So, I mean, you didn't feel comfortable acting as

02:38PM  14   a confidential informant after the Militello case?

02:38PM  15   A.  No.

02:38PM  16   Q.  So you have a situation where you don't feel comfortable

02:38PM  17   being a confidential informant yourself anymore, correct?

02:38PM  18   A.  Correct.

02:38PM  19   Q.  You have a situation where you're currently in drug

02:38PM  20   court, correct?

02:38PM  21   A.  Yes.

02:38PM  22   Q.  And people know about your case, you testified about that

02:38PM  23   earlier, correct?

02:38PM  24   A.  Correct.

02:38PM  25   Q.  And then you also have the issue that at the time you're

02:38PM   1    acting as a confidential informant for DEA, you purchased

02:38PM   2    heroin, correct?

02:38PM   3    A.  Correct.

02:38PM   4    Q.  And you didn't purchase it from Mr. Militello at

02:38PM   5    Mr. Bongiovanni's direction, you purchased it outside of

02:38PM   6    Mr. Bongiovanni's direction, correct?

02:38PM   7    A.  No.  I purchased it at his direction.  He gave me the

02:38PM   8    money.  He gave me the money to buy it.

02:38PM   9    Q.  So let's unpack that.  I know that you made the

02:39PM   10   controlled buy from Mr. Militello.

02:39PM   11   A.  Yeah.

02:39PM   12   Q.  Correct?

02:39PM   13   A.  Um-hum.

02:39PM   14   Q.  But when you purchased the heroin with Robert Runfola

02:39PM   15   before you --

02:39PM   16   A.  I didn't purchase no heroin with Robert Runfola.

02:39PM   17   Q.  Well, you testified to that earlier, sir.

02:39PM   18   A.  Robert Runfola gave me heroin.

02:39PM   19   Q.  So he gave you heroin?

02:39PM   20   A.  Yeah.  I didn't purchase it.

02:39PM   21   Q.  So you didn't purchase it, but Mr. Runfola gave it to

02:39PM   22   you?

02:39PM   23   A.  Yes.

02:39PM   24   Q.  And you used it?

02:39PM   25   A.  Yes.

02:39PM   1   Q.  And you know that that's a violation of your confidential

02:39PM   2   informant/confidential source agreement with the DEA, right?

02:39PM   3   A.  Well, no, because this was before they knew Militello,

02:39PM   4   before Bobby died.

02:39PM   5           **MR. SINGER:**  Ms. Champoux, would you mind bringing up

02:39PM   6   Government Exhibit 9E-2.

02:39PM   7           **THE COURT:**  In evidence?

02:39PM   8           **MR. SINGER:**  In evidence.

02:39PM   9           And if you can scroll to the second page.  And if you

02:39PM   10   can enlarge paragraph 6 at the top, please.

02:39PM   11           **BY MR. SINGER:**

02:40PM   12   Q.  So, sir, Mr. Tripi went through this agreement with you,

02:40PM   13   correct?

02:40PM   14   A.  Correct.

02:40PM   15   Q.  Remember going through that earlier?

02:40PM   16   A.  Yes.

02:40PM   17   Q.  And this was what your responsibilities were to act as a

02:40PM   18   confidential informant with the DEA, correct?

02:40PM   19   A.  Correct.

02:40PM   20   Q.  And so paragraph 6 talks about one of your

02:40PM   21   responsibilities, is that you're not authorized to

02:40PM   22   participate in any criminal activity except that specifically

02:40PM   23   authorized in writing by a prosecutor and/or my controlling

02:40PM   24   investigator, do you see that?

02:40PM   25   A.  Yeah.

02:40PM   1   Q.   And when you took the heroin from Robert Runfola, and

02:40PM   2   used it --

02:40PM   3   A.   Yes.

02:40PM   4   Q.   -- you engaged in a criminal act, correct?

02:40PM   5   A.   I guess I did, yes.

02:40PM   6   Q.   Yeah.  Illegal use of heroin, correct?

02:40PM   7   A.   Um-hum.

02:40PM   8   Q.   And that violated your agreement, correct?

02:40PM   9   A.   Um-hum.

02:40PM  10   Q.   And I'm sure DEA told you at the time that if you violate

02:40PM  11   this agreement --

02:40PM  12        **MR. SINGER:**  You can take that down, Ms. Champoux.

02:40PM  13   Thank you.

02:40PM  14        **BY MR. SINGER:**

02:40PM  15   Q.   -- at the time if you violate that agreement, that pretty

02:40PM  16   much ends your ability to act as a confidential informant,

02:40PM  17   correct?

02:40PM  18   A.   Correct.  But if I told them that Peter Militello wanted

02:40PM  19   me to sniff the bag so he can make sure that I'm a good dude,

02:41PM  20   they would tell me to sniff the bag.  So, you know, you gotta

02:41PM  21   do what you gotta do to get what you want, right?  So if they

02:41PM  22   want him, and he says sniff the bag, that line that you just

02:41PM  23   read doesn't mean nothing.  I'm gonna sniff the bag for them

02:41PM  24   to show him that I'm okay.  Bottom line.

02:41PM  25        **MR. SINGER:**  Just one moment, Judge.

02:41PM  1          **BY MR. SINGER:**

02:41PM  2  Q.  So one of the things you have testified to when I was

02:42PM  3  asking you questions a few moments ago is that you believe it

02:42PM  4  was Mr. Bongiovanni who outed you to Mr. Militello?

02:42PM  5  A.  I know it was.

02:42PM  6  Q.  You know it was?

02:42PM  7  A.  Yeah.

02:42PM  8  Q.  Were you in the room when Mr. Bongiovanni did this?

02:42PM  9  A.  No.  But the person he told, told somebody else.

02:42PM  10  Q.  So the person that he told, told somebody else?

02:42PM  11  A.  It was just me and him in the car when he gave it to me.

02:42PM  12  It was just me and him in the car when he gave it to me.

02:42PM  13  Q.  When you're talking about when he gave it to me, what are

02:42PM  14  you referring to?

02:42PM  15  A.  The camera, the phone, the wire, everything.  To use,

02:42PM  16  showed me how to use it and everything.  It was just me and

02:42PM  17  him in the car.

02:42PM  18  Q.  Okay.  Do you remember having conversations with Peter

02:42PM  19  Militello after the controlled purchase that you consummated

02:42PM  20  with him?

02:42PM  21  A.  After?

02:42PM  22  Q.  Correct.  So, let me back up.  Let me ask that a

02:42PM  23  different way.  All right?

02:42PM  24      So you tell Mr. Bongiovanni about Robert Runfola

02:42PM  25  overdosing, correct?

USA v Bongiovanni - R.K. - Singer/Cross - 2/20/24

59

02:42PM   1   A.  Yes.

02:42PM   2   Q.  And you tell him that Peter Militello was the source of

02:43PM   3   the heroin that Robert Runfola overdosed on, correct?

02:43PM   4   A.  Correct.

02:43PM   5   Q.  You consummate a controlled purchase of heroin from Peter

02:43PM   6   Militello, correct?

02:43PM   7   A.  Correct.

02:43PM   8   Q.  And then after that was done, Mr. Runfola has a funeral

02:43PM   9   going on?

02:43PM  10   A.  Yes.

02:43PM  11           **MR. TRIPI:**  Objection, 403.  Judge, if we may be

02:43PM  12   heard --

02:43PM  13           **THE COURT:**  Yeah, I suppose.  Come on up if you want

02:43PM  14   to argue.

02:43PM  15           (Sidebar discussion held on the record.)

02:43PM  16           **MR. TRIPI:**  Your Honor, my objection is under

02:43PM  17   Rule 403.  I have let quite a bit of questioning go without

02:43PM  18   any objection regarding probing the relationship between

02:43PM  19   Mr. Bongiovanni and this informant vis-à-vis the Militello

02:43PM  20   investigation.

02:43PM  21           But now, we're talking about something beyond the

02:43PM  22   Militello arrest.  We're talking about the Runfola funeral.

02:44PM  23           Now we're getting into, like, confusing of the issues

02:44PM  24   under Rule 403.  We're a little far afield, in other words.

02:44PM  25           **THE COURT:**  No, hang on.

02:44PM  1       **MR. SINGER:**  So the reason why I'm asking these

02:44PM  2   questions, Judge, is that the witness testified that my client

02:44PM  3   outed him as a source.

02:44PM  4       **THE COURT:**  Right.

02:44PM  5       **MR. SINGER:**  That's his belief.  And he says that the

02:44PM  6   reason why was because he wore a wire.

02:44PM  7       There are DEA-6s that we provided in discovery which

02:44PM  8   talk about how Mr. Militello was -- I'm sorry, Mr. R.K. was

02:44PM  9   involve in controlled phone calls with Mr. Militello,

02:44PM  10  postdating the sale of the heroin on the controlled buy that

02:44PM  11  Mr. Bongiovanni essentially used to prosecute Militello.  So

02:44PM  12  the only thing I'm getting into right here is that there

02:44PM  13  wasn't a wire involved here, it was a controlled phone call

02:44PM  14  that happened.

02:44PM  15      And the only reason why I brought up the funeral is

02:44PM  16  the controlled phone call that happens, happens after the day

02:44PM  17  of the funeral.  And we talk about how Runfola's family is

02:45PM  18  pissed off at Militello, because they think he's the person

02:45PM  19  who sold it.

02:45PM  20      And Militello basically says, hey, we gotta stick to

02:45PM  21  our stories that I wasn't the guy.

02:45PM  22      **THE COURT:**  So there wasn't a wire?

02:45PM  23      **MR. SINGER:**  There wasn't a wire, Judge, it's just a

02:45PM  24  controlled phone call.

02:45PM  25      **THE COURT:**  So why can't he explore that?

02:45PM   1       **MR. TRIPI:**  I think the explanation proves the 403

02:45PM   2   objection, because it's convoluted and confusing, and it's

02:45PM   3   quite far afield.

02:45PM   4       **THE COURT:**  I don't think it is at all.  I don't

02:45PM   5   think so at all.  He wants to impeach the statement that he

02:45PM   6   wore a wire, and that Bongiovanni outed him for wearing a

02:45PM   7   wire.

02:45PM   8       And that, according to Mr. Singer, he's got evidence

02:45PM   9   that that's not true.  Why can't he -- why can't he do that?

02:45PM  10   Of course he can.

02:45PM  11       **MR. TRIPI:**  I don't see how that testimony addresses

02:45PM  12   that concern.  But if you disagree, that's okay, Judge.

02:45PM  13       **THE COURT:**  He didn't wear a wire?

02:45PM  14       **MR. TRIPI:**  How the story about the funeral tying

02:45PM  15   into the --

02:45PM  16       **THE COURT:**  I don't think the funeral has any type

02:45PM  17   of --

02:45PM  18       **MR. TRIPI:**  Okay.

02:45PM  19       **THE COURT:**  The funeral is just for context.

02:45PM  20       You're not going to get into the funeral?

02:46PM  21       **MR. SINGER:**  No, I just don't know how much he

02:46PM  22   remembers.  I'm just trying to give him a marker.

02:46PM  23       **THE COURT:**  The objection is overruled.  Go ahead.

02:46PM  24   You're not going to get into the funeral --

02:46PM  25       **MR. SINGER:**  I won't get into that, Judge.

| | | |
|---|---|---|
| 02:46PM | 1 | **MR. TRIPI:**  I objected about the funeral. |
| 02:46PM | 2 | (End of sidebar discussion.) |
| 02:46PM | 3 | **BY MR. SINGER:** |
| 02:46PM | 4 | Q.  So let me restate the question, Mr. R.K.. |
| 02:46PM | 5 | So -- so after the controlled purchase, correct, you end |
| 02:46PM | 6 | up making a telephone call to Peter Militello; is that right? |
| 02:46PM | 7 | Do you remember that? |
| 02:46PM | 8 | A.  Yeah.  They wanted me to, like, scare him. |
| 02:46PM | 9 | Q.  And, so, when you're mentioning a wire, you weren't |
| 02:46PM | 10 | speaking to Mr. Militello face to face, correct? |
| 02:46PM | 11 | A.  No. |
| 02:46PM | 12 | Q.  They recorded the phone call that you made to |
| 02:46PM | 13 | Mr. Militello? |
| 02:46PM | 14 | A.  No, no, no, no, no.  I got in a car with Mr. Militello to |
| 02:46PM | 15 | make the buy, is when I had the -- I had the little camera. |
| 02:46PM | 16 | And he said point it at him, make sure you point it at his |
| 02:46PM | 17 | face.  I had the phone, he said make sure you hold it here so |
| 02:47PM | 18 | it gets him there.  All that inside the car. |
| 02:47PM | 19 | Q.  Okay.  So you're talking about the controlled purchase |
| 02:47PM | 20 | you made from Militello? |
| 02:47PM | 21 | A.  Correct. |
| 02:47PM | 22 | Q.  But later you make a phone call, correct? |
| 02:47PM | 23 | A.  Yes.  They told me to tell him that the family is looking |
| 02:47PM | 24 | for him to get him all scared up. |
| 02:47PM | 25 | Q.  That phone call was recorded, correct? |

02:47PM  1  A.  Correct.

02:47PM  2  Q.  Okay.  And then you said you heard from somebody, you

02:47PM  3  told somebody else, that Agent Bongiovanni outed you?

02:47PM  4  A.  Yes.

02:47PM  5  Q.  Okay.  But who was that person?

02:47PM  6  A.  Who, what?  The person who Peter told over the phone from

02:47PM  7  jail?

02:47PM  8  Q.  Who was the person who Mr. Bongiovanni allegedly told you

02:47PM  9  were using a wire?

02:47PM  10  A.  Peter Militello.  When he arrested him.

02:47PM  11  Q.  Peter Militello?

02:47PM  12  A.  Yeah.

02:47PM  13  Q.  And then Peter Militello told somebody else?

02:47PM  14  A.  Yeah.

02:47PM  15  Q.  And then at that point in time, that was already out in

02:47PM  16  the street based on your knowledge?

02:47PM  17  A.  Yeah.

02:47PM  18  Q.  Okay.

02:47PM  19         **MR. SINGER:**  I have no further questions, Judge.

02:47PM  20         **THE COURT:**  Redirect?

02:47PM  21         **MR. TRIPI:**  Very brief, Judge, thank you.

02:48PM  22

02:48PM  23              **REDIRECT EXAMINATION BY MR. TRIPI:**

02:48PM  24  Q.  Mr. R.K., I think I have about three questions for you,

02:48PM  25  okay?  Just to clarify something, just the marijuana that you

02:48PM  1   were purchasing from Mr. Serio, or any drugs that you were

02:48PM  2   purchasing, it was to resell it to make money; is that right?

02:48PM  3   A.  Correct.

02:48PM  4   Q.  Okay.  So you weren't limited in your pizza income?

02:48PM  5   A.  No.

02:48PM  6   Q.  Okay.  Now, I asked you about your initial meeting with

02:48PM  7   the DEA and who was in the room.  And you indicated the

02:48PM  8   defendant and several other people; do you remember that?

02:48PM  9   A.  Correct.

02:48PM  10  Q.  In subsequent meetings after you signed that agreement,

02:48PM  11  and the defendant was your handling agent, was it you and the

02:48PM  12  defendant one on one interacting with each other?

02:48PM  13  A.  Yes.

02:48PM  14  Q.  And I'm not talking about later from jail with

02:48PM  15  Mr. Militello in a jail call, but I'm talking about at the

02:48PM  16  time the defendant told you you were no longer going to be a

02:49PM  17  confidential source, could you have gotten into people in the

02:49PM  18  Serio organization and made buys?

02:49PM  19  A.  I could have gotten to anybody.

02:49PM  20  Q.  In that organization specifically?

02:49PM  21  A.  Yeah.

02:49PM  22          MR. TRIPI:  Okay, nothing further.

02:49PM  23          THE COURT:  Anything more, Mr. Singer?

02:49PM  24          MR. SINGER:  No, Judge.

02:49PM  25          THE COURT:  You can step down, sir.  Thank you.

02:49PM

1            (Witness excused at 2:49 p.m.)

2            (Excerpt concluded at 2:49 p.m.)

3            *    *    *    *    *    *    *

4

5

6

7                    **CERTIFICATE OF REPORTER**

8

9            In accordance with 28, U.S.C., 753(b), I

10   certify that these original notes are a true and correct

11   record of proceedings in the United States District Court for

12   the Western District of New York on February 20, 2024.

13

14

15                    s/ Ann M. Sawyer
                      _____
                      Ann M. Sawyer, FCRR, RPR, CRR
16                    Official Court Reporter
                      U.S.D.C., W.D.N.Y.
17

18

19

20

21

22

23

24

25

1

2                        **TRANSCRIPT INDEX**

3                  **EXCERPT - EXAMINATION OF R.K.**

4                      **FEBRUARY 20, 2024**

5

6

7    **W I T N E S S**                              **P A G E**

8    **R. K.**                                      2

9       DIRECT EXAMINATION BY MR. TRIPI:            3

10      CROSS-EXAMINATION BY MR. SINGER:            21

11      REDIRECT EXAMINATION BY MR. TRIPI:          63

12

13

14

15   **E X H I B I T**                              **P A G E**

16   GOV Exhibit 9E-2                               10

17

18

19

20

21

22

23

24

25