

**U.S. Department of Justice**

*United States Attorney*
*Western District of New York*

*Federal Center*                                    *716/843-5700*
*138 Delaware Avenue*                          *fax 716/551-3052*
*Buffalo, New York   14202*    *Writer's Telephone:   716/843-5881*
                                                  *Writer's fax:   716/551-3052*
                                                  *Casey.Chalbeck@usdoj.gov*

July 3, 2024

**VIA PACER**
Hon. Lawrence J. Vilardo
United States District Judge
Robert H. Jackson United States Courthouse
2 Niagara Square
Buffalo, New York 14202

Re:     ***United States of America v. Joseph Bongiovanni,***
         **Case Number: 19-CR-227-LJV**

Dear Judge Vilardo:

The government hereby submits this letter in response to defendant Joseph Bongiovanni's supplemental authority regarding his Rule 29 motion.  *See* Ltr., at 1, (ECF No. 1040) (filed July 1, 2024).   The Supreme Court's recent decision in *Snyder v. United States*, --- S.Ct. ----, 2024 WL 3165518 (2024) focused on 18 U.S.C § 666, which is specific to state and local officials and inapplicable to this case.

**1.     The Second Superseding Indictment Charges Mr. Bongiovanni under 18 U.S.C. § 201(b).**

Mr. Bongiovanni is a federal official charged under 18 U.S.C § 201 which, unlike § 666, has a separate gratuities subsection under § 201(c). The Second Superseding Indictment, however, charges Mr. Bongiovanni in Count 5 with bribery under 18 U.S.C. § 201(b) and alleges:

> Beginning in or about 2009, and continuing to on or about June 6, 2019, the exact dates being unknown to the Grand Jury, in the Western District of New York, the defendant, JOSEPH BONGIOVANNI, a public official, directly and indirectly did corruptly demand, seek, receive, accept, and agree to receive and accept something of value personally, in return being influenced in the performance of an official act and for being induced to do an act and omit to do an act in violation of official duty, as opportunities arose; that is the defendant, JOSEPH

BONGIOVANNI, was paid United States currency to, among other acts and omissions, omit to enforce the drug laws of the United States against Peter Gerace Jr., and against Pharaoh's Gentlemen's Club located at 999 Aero Drive, Cheektowaga, New York; to falsely advise an Federal Bureau of Investigation (FBI) Special Agent (SA) that Peter Gerace Jr. was a DEA confidential source, thereby inducing the FBI SA to abandon a narcotics investigation into Peter Gerace Jr. and Pharaoh's Gentlemen's Club; to provide advice and information to Peter Gerace Jr.; to help Peter Gerace Jr. and Pharaoh's Gentlemen's Club avoid federal narcotics investigations; to make statements to his co-worker, a fellow DEA SA, to dissuade and discourage the fellow DEA SA from investigating Peter Gerace Jr., and Pharaoh's; to make false and misleading statements to other members of law enforcement; to provide information about law enforcement methods and techniques; and, to help such drug trafficking activities continue.

**All in violation of Title 18, United States Code, Sections 201(b)(2)(A) and 201(b)(2)(C)**.

Sec. Super. Ind., at 28, (ECF No. 89), (filed Feb. 25, 2021)

In seeking to dismiss Count 5, Mr. Bongiovanni relies on a few misplaced words in the government attorney's lengthy opening statement, wherein the government's attorney inartfully referred to cash payments made by Peter Gerace, Jr., to Mr. Bongiovanni as "rewards for a job well done." *See* Tr. Opening Stmnt. Tran., at 66–67, (dated Feb. 15, 2024). In Mr. Bongiovanni's view, this statement is evidence that the government "presented proof of a gratuity, not a bribe." Ltr., at 1. And because "[g]ratuities are typically payments to an official *after* an official act" is performed "as [] token[s] of appreciation," Mr. Bongiovanni invites this Court to dismiss Count 5. *Snyder*, 2024 WL 3165518, at *3 (emphasis added). This argument fails for three reasons.

2. **The Government's Proof Comports with Supreme Court and Second Circuit Precedent Interpreting § 201(b), Including *Snyder*, by Showing that Mr. Bongiovanni Accepted Bribes with the Intent to Be Influenced in Official Acts.**

First, *Snyder* did not upend the Supreme Court's earlier directive that "for bribery there must be a quid pro quo—a specific intent to give or receive something of value in exchange for an official act." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404–05 (1999). That "exchange" can consist of a public official intending to act for the benefit of the bribe payor as opportunities arise to do so in exchange for bribes. *See United States v. Skelos*, 988 F.3d 645, 655 (2d Cir. 2021) ("Put differently, this theory means that the government does not have to prove an explicit promise to perform a particular act made at the time of payment so long as the general nature of the act to be taken was understood at the time of the payment. (internal quotation marks omitted)). That is exactly what the government's proof at trial showed Mr. Bongiovanni did here.

In particular, the government's proof demonstrated that when "the defendant . . . accepted cash from Gerace, [he] accepted those payments with an understanding that he was expected to continue protecting Gerace from law enforcement scrutiny concerning drug-related investigations and to not, personally, investigate Gerace or Pharoah's, in violation of his duties as a DEA Special Agent."  Govt. Opp. to Def. Bongiovanni's Mot. for J. of Acquittal & New Tr., at 12, (ECF No. 948) (dated May 17, 2024).  This inference—which the Court must draw in the government's favor—is specifically bolstered by Mr. Bongiovanni's actions **subsequent** to accepting the cash: he (1) interceded on Gerace's behalf to protect him from investigations spearheaded by Anthony Casullo; (2) attempted to pressure Casullo into investigating black and Hispanic people instead of Gerace; (3) instructed Gerace to remove a woman overdosing at Pharoah's from the club; (4) declined to assist other investigative efforts targeting Gerace despite knowing Gerace's criminal conduct; and (5) disclosed sensitive law enforcement information regarding "ping" technology to Gerace.

Such evidence falls within the heartland of the federal bribery statute's "defining characteristics": a "corrupt state of mind and the intent to be influenced in the official act." *Snyder*, 2024 WL 3165518, at *7.  Because the evidence at trial permits a rational jury to conclude that Mr. Bongiovanni accepted cash payments in exchange for protecting Gerace from law enforcement scrutiny—that is, that he "corruptly accept[ed] a payment in return for being influenced in an official act"—his Rule 29 motion must fail.  *Id.* at *6 (internal quotations omitted).

### 3.    Rule 29 Requires the Court to Evaluate Evidence, and Opening Statements are Not Evidence.

Second, though Rule 29 requires the Court to evaluate whether "the trial evidence" is sufficient to sustain a jury verdict, *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003), the purported evidentiary basis for Mr. Bongiovanni's gratuities argument—an inartful comment during the prosecutor's lengthy opening statement—amounts to no evidence at all. *See, e.g.*, *United States v. Sparano*, 422 F.2d 1095, 1099 (2d Cir. 1970) (recognizing that opening statements are "not evidence and . . . not to be taken as evidence"); *United States v. Kenner*, No. 21-2289, 2023 WL 4692508, at *5 (2d Cir. July 24, 2023) (unpublished) ("Even assuming that the government's remark constituted a misrepresentation of [defendant's] testimony, such a misrepresentation did not substantially prejudice [defendant].  The district court instructed the jury that 'the statements that the attorneys make[ ], both in their opening statements and in their summations, are not evidence.'"), *cert. denied*, 144 S. Ct. 616 (2024); *United States v. Saunders*, No. 22-569-CR, 2023 WL 3220460, at *3 (2d Cir. May 3, 2023) (unpublished) (holding that district court's instruction that "statements and arguments made by lawyers are not evidence" was "sufficient to cure any prejudice that may have resulted from the prosecutor's statement").

For that reason, it is unsurprising that Mr. Bongiovanni fails to identify a single case for this Court's consideration in which a comment made during opening statements sustained a Rule 29 motion.  *Cf. United States v. Heimann*, 705 F.2d 662 (2d Cir. 1983) (reversing district court's judgment of acquittal where district court relied on discrete statements made in prosecutor's opening statement instead of the proof at trial).

**4.      Mr. Bongiovanni's Argument Overlooks the Myriad Instances Wherein the Government's Opening Statement References the Bribery Exchanges Prohibited by § 201(b).**

Third, and finally, Mr. Bongiovanni's argument ignores the fact that the government's opening statement—and the ensuing trial proof—was replete with references and evidence that Bongiovanni was paid bribes in exchange for protecting drug dealers, including Gerace. *See e.g.*, Tr. Opening Stmnt. Tran., at 91 ("The bribes, the money that he was provided, those cash envelopes in conspiracies one and two that he received over time provided a much-needed life raft when he needed it most.") (dated Feb. 15, 2024); *see also id.* at 2 (explaining that this case is about a "DEA special agent who violated his oath and duties to the Constitution and to enforce the drug laws of this nation *in exchange for* upwards of a quarter million dollars in *bribes*" (emphasis added); 7–8 (explaining that Bongiovanni "protect[ed] the drug operation [Gerace] had centered around his strip club, Pharoah's, . . . . eventually for cash bribes"); 17 (explaining that Bongiovanni was "receiving bribes").    Plainly, the government's presentation of its case comported with the charges levied in the Second Superseding Indictment and "accurate[ly] predict[ed] . . . the proof to come."  *Heimann*, 705 F.2d at 667.

To the extent Mr. Bongiovanni additionally asserts that the government presented proof of a gratuity—as opposed to a bribe—"throughout its case," Ltr., at 1, he fails to offer either the government or this Court additional citations supporting his declaration.[1]   On this score, another recent Supreme Court decision bears heeding: "[i]t is especially important to hold [movants] to their burden in a case like this one," where the trial record spans nearly eight weeks of testimony, as "[j]udges are not like pigs, hunting for truffles buried [in the record]."  *Murthy v. Missouri*, --- S.Ct. ----, 2024 WL 3165801, at *12 n.7, (2024).

Accordingly, the Court should deny Mr. Bongiovanni's Rule 29 motion with respect to Count 5.

Very truly yours,

TRINI E. ROSS
United States Attorney

BY:    CASEY L. CHALBECK
Assistant United States Attorney

CC:    Parker MacKay, Esq.
Rob Singer, Esq.

---

[1]      Additionally, Mr. Bongiovanni's defense on Count 5 amounted to a claim that the government failed to prove there was cash inside the envelopes he received from Gerace or Gerace's ex-wife, Katrina Nigro.   In other words, Mr. Bongiovanni's defense was that he neither accepted bribes *nor* gratuities.

Joseph M. Tripi, Esq.
Nicholas T. Cooper, Esq.
Jordan A. Dickson, Esq.