UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                   **REPLY IN FURTHER SUPPORT**
                                                                     **OF JOINT MOTION**
                                                                     **FOR BRADY DISCLOSURE**
                                                                     **AND RELATED RELIEF**

                                                                     Case No.: 19-CR-227

JOSEPH BONGIOVANNI,

PETER GERACE, JR.,

Defendants.

_____

UNITED STATES OF AMERICA,

v.

PETER GERACE, JR.,                                                   Case No.: 23-CR-37


_____

       Peter Gerace, Jr. (Mark A Foti, Esq. and Eric M. Soehnlein, Esq.) and Joseph

Bongiovanni (Robert Singer, Esq. and Parker MacKay, Esq.) respectfully submit the

following reply in further support of the Defendants' Joint Motion for *Brady* Disclosure

and Related Relief (Dkt. # 1083).  The Court should grant the relief requested.

I.       **Introduction**

       On July 25, 2024, the Defendants made a joint motion for disclosure in response to

material  inconsistencies  between  government  witness  Katrina  Nigro's  grand  jury

testimony and her trial testimony on March 19, 2024. This Court, in its decision to grant Mr. Bongiovanni's Rule 29 motion as to Count 5, has already identified some of these inconsistencies. Dkt. # 1077 at pp. 11-12.

Based on this Court's previous observations, this motion is straightforward: if *Brady* material exists as to Ms. Nigro (and it likely does), the government should disclose it as required by law; if *Brady* material does not exist (because the government was unaware and unprepared for the fact that Ms. Nigro would alter her testimony), the government should say so.[1]

In response, the government sidesteps the issue. First, the government claims that Defendants' request for *Brady* material and related exculpatory information is

---

[1]     The government's memorandum suggests that Ms. Nigro's changed testimony was not anticipated by the government. For strategic reasons, the government does not concede that point. Instead, the government argues that the "record demonstrates that the government did not know that Ms. Nigro would testify any differently than she did in grand jury." Dkt.# 1100 at p. 18. The position appears to be different from the position advanced by the government at oral argument on the Bongiovanni Rule 29 motion. id. at p. 3. Regardless, the government understands that an admission that, even after years of meetings with the government and trial prep, Ms. Nigro altered her testimony on her own without the prior knowledge of the government would lend further support to Mr. Gerace's pending motion to dismiss the indictments due to the government's reliance on the unreliable, clearly false testimony of Ms. Nigro. But, on this record either Ms. Nigro testified falsely in the grand jury or she testified falsely at trial. There is no possibility that her testimony was completely truthful. The government knows this. Yet the government persists in using Ms. Nigro as a witness in this case.

The alternative to making the admission – that Ms. Nigro altered her testimony with knowledge and preparation of the government – doubtlessly gives rise to *Brady* material and triggers the government's obligations to disclose that material. The law mandates that such material be disclosed to the defense. Disregarding the clear falsity of Ms. Nigro's statements, and putting aside the fact that the government did not believe her testimony as she testified before the grand jury, the government chose to use Ms. Nigro as a witness in this prosecution. The government is not immune from the consequences of that decision.

gamesmanship.  Dkt. # 1100 at p. 2. Equal parts shocking and offensive, the government's assertion confirms what judges in this district have repeatedly noted: there is "a fundamental misconception by prosecutors in the USAO-WDNY about what their discovery obligations are" leading "the government…to approach its discovery obligations by finding ways not to disclose evidence and excuses for not disclosing it sooner or at all." *See United States v. Parks*, 19-cr-87, Dkt.# 972 at p.3, 10.  A defense motion seeking exculpatory evidence is not gamesmanship.

Second, the government apparently concedes that Ms. Nigro's trial testimony was inconsistent with her grand jury testimony and that these exculpatory inconsistencies would be fuel for impeachment of Ms. Nigro. Yet, the government does not address whether the *Brady* material exists or whether the government must disclose this information. Instead, the government cites cases that involved *Brady* violations and argues that the government should not be sanctioned because the defendants have not been prejudiced. If Defendants had moved for sanctions, that argument might be relevant. But that is not the issue on this motion.  This deflection is further evidence that "the government doesn't fully understand what its obligations are under *Brady*." *United States v. Brown,* Case No.19-CR-222-EAW, Dkt. # 46 at 23.

The key facts are not in dispute: 1) the government has material in its possession that is favorable to the Defendants as it relates to the testimony of Katrina Nigro; 2) Ms. Nigro is an important witness for the government in its case against both Defendants; 3)

the government has not disclosed this material; 4) the material is unknown and unknowable to the Defendants; and 5) with the trial of Mr. Bongiovanni ongoing, and trial of Mr. Gerace set to commence in weeks, the Court should order this disclosure at this time.

## II.   Facts

The critical facts are not in dispute:

1. In grand jury, Ms. Nigro provided testimony that federal prosecutors found so uncredible that the prosecutor handling the grand jury presentation tried to alter her testimony and correct her clear error.  Dkt.# 1030 at pp 10-11;

2. The government prepared "a lot" for Ms. Nigro's trial testimony.  Dkt.# 856 at p.27.  The government made strategic decisions regarding what testimony to elicit.  Dkt.# 1100 at p. 3; Tr. March 26, 2024 at p. 27.  The government characterized this as the strategic decision to "focus on what [Ms. Nigro] personally was involved in, by *observation* and what she handed." Id. at 27 (italics for emphasis);

3. Ms. Nigro's testimony regarding the relationship between Mr. Gerace and Mr. Bongiovanni, and specifically about the exchange of money between Mr. Gerace and Mr. Bongiovanni, was material testimony the government used to support Count 5 of the 19-cr-227 indictment.  Dkt. # 1077 at pp 30-37.  Ms. Nigro's testimony about the payment of money and the purpose of those payments is material to the allegations against Mr. Gerace and Mr. Bongiovanni. id.;

4. In grand jury, Ms. Nigro testified she personally observed Bongiovanni receive envelopes from Gerace on about 30 occasions from 2013 to 2016.[2]  Exh. 3577A at 75-76 ("the ones I witnessed would be about 30").  At trial, Ms. Nigro testified to only three such occasions.  Dkt.# 856 at p. 59;

---

[2]      Despite the government's argument that it sought to limit Ms. Nigro's testimony to what she "observed," the government did not elicit this observation at trial.

5. In grand jury, Ms. Nigro testified she "knew for a fact" that Gerace gave Bongiovanni $5,000 in a birthday card because "[she] had to sign a card and stuff." Exh. 3577A at 76. At trial, Ms. Nigro testified she did not know how much money was in the birthday card. Dkt. # 856 at p. 57;

6. In grand jury, Ms. Nigro testified she believed the purpose of the envelopes was "drug dealing, paying people off." Exh. 3577A at p. 15. At trial, Ms. Nigro testified she did not know what the purpose of the envelopes was. Dkt.# 856 at p. 69.

7. The differences between Ms. Nigro's grand jury testimony and trial testimony were helpful and exculpatory to the defendants. Dkt. # 1100 at p. 18. The government met with Ms. Nigro on several occasions to prepare its case in the last several years. Dkt.# 1083;

8. To date, the defense has not received any disclosure regarding Ms. Nigro's changed testimony or the basis for that changed testimony. *See generally* Dkt.# 1083, 1100.

## III.    The government's Disclosure Obligations

The government has a due process obligation, grounded in the Fourteenth Amendment, to disclose material evidence favorable to the defendant. *United States v. Moses*, No. 6-19-CR-06074 (EAW), 2021 WL 5309831, at *2 (W.D.N.Y. 2021), citing *United States v. Gil*, 297 F.3d 93, 101 (2d Cir. 2002). This fundamental obligation includes "evidence that is useful to impeach the credibility of a government witness"—so-called *Giglio* material. *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001), citing *Giglio v. United States*, 405 U.S. 150, 154 (1972).

Materiality is judged in terms of nondisclosure. *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence is material if there is a reasonable probability that if "the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley* at 682. For example, evidence directly affecting "the credibility of a witness and the reliability of a given witness may well be determinative of guilt or innocence" and therefore would be material. *United States v. Frank*, 11 F. Supp. 2d 322, 325 (S.D.N.Y. 1998), citing *Giglio*, 405 U.S. at 154.

The government itself recognizes that "it is sometimes difficult to assess the materiality of evidence before trial, [and that] prosecutors generally must take a broad view of materiality and to err on the side of disclosing exculpatory and impeaching evidence." U.S. Justice Manual (U.S.J.M.), 9-5.001 Policy Regarding Disclosure of Exculpatory and Impeachment Information, 2006 WL 4803861, at *1, citing *Kyles v. Whitley*, 514 U.S. 419, 439 (1995). In line with this broad view of materiality, disclosure must be made in time for the effective use of the material at trial. *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).

Here, Ms. Nigro is expected to testify during Mr. Bongiovanni's ongoing trial, and counsel for Mr. Gerace believes she will be called as a witness at Gerace's upcoming trial scheduled to begin October 28, 2024. To date, the government has not provided any disclosure or information regarding the basis for Ms. Nigro's changed testimony.   The

government opposes this disclosure on the grounds it is not material to the defense and that the disclosure would be cumulative.  Both arguments are wrong.

### a.  The Evidence is Material

Surprisingly, the government argues the impeachment evidence is not material because Ms. Nigro's "credibility has already been shown to be questionable.[3]"  Dkt.# 1100 at p.17.  This is another example of this United States Attorney's Office taking an impermissibly narrow view of what evidence is "material" within the context of its *Brady* obligations.  *See Parks*, Case No. 19-cr-87, Dkt.# 972 at p. 10.

In a case where Gerace is alleged to have paid Bongiovanni to use his position in law enforcement for protection, Ms. Nigro's testimony changed with respect to: the number of times Gerace paid Bongiovanni; the amount of money Gerace paid Bongiovanni; and the purpose of the payments from Gerace to Bongiovanni.  The contrast in the testimony was noted by the Court in granting Bongiovanni's Rule 29 motion as to Count 5 in the indictment.[4]  The materiality of the changed testimony is clear.

---

[3]      It goes without saying that the government's argument is another concession that Ms. Nigro's testimony is flawed and not credible.

[4]      "Nigro testified—as she did before the grand jury—that she had "witnessed" Bongiovanni receive [allegedly cash-filled] envelopes from Gerace on "about 30" occasions from 2013 to 2016, including giving Bongiovanni envelopes five or six times "[her]self" versus her trial testimony where she testified to two occasions.  Dkt. #1077 at pp. 11, 6.

### b.  The Evidence Would not be Cumulative

In reply, the government also argues that it should not have to disclose *Brady* material regarding Ms. Nigro's changed testimony because such evidence is "cumulative." Dkt. # 1100 at p. 17.   Of course, the defense does not know what the material is, so it cannot weigh in directly on this point.  From the record, however, it appears that the assertion is incorrect.  What is known is that Ms. Nigro's changed testimony provides intervening events and new/different versions of previously testified to events.  This testimony was previously unknown until Bongiovanni's first trial.  In strategically deciding what to elicit from Ms. Nigro, the government likely learned more information than came out at trial.  Thus, any disclosure would not be duplicative or otherwise inadmissible.

More critically, and as referenced above, the changed testimony goes to the heart of the allegations against Gerace and Bongiovanni.  And whatever the government learned that caused the government to change course in the testimony it elicited from Ms. Nigro doubtlessly goes to the veracity of Ms. Nigro's claims and, therefore, to the credibility of the entirety of the government's case.  At a minimum, because the changed testimony goes to content and credibility of Ms. Nigro's testimony, the material may provide a basis to preclude all of Ms. Nigro's testimony at trial.

Simply put, the information is important.  It is exculpatory to the Defendants.  It is not known to the defense.  It weighs on critical issues in this case.  It should be disclosed.

## IV.    Conclusion

As the Court has already noted, on March 19, 2024 Katrina Nigro gave trial testimony that was different than her grand jury testimony on material and important issues in this prosecution.   The changed testimony was helpful and exculpatory to the Defendants, going to the core of allegations of bribery and public corruption.   The government indicated it prepared for Ms. Nigro's testimony and made a strategic decision as to what testimony to elicit.  Receiving no disclosure relating to the changed testimony, the defense requested disclosure consistent with the government's obligations under *Brady* and its progeny.

The government's response fails to address the issue.  Rather than saying that no *Brady* material exists or providing the disclosure as contemplated by law, the government instead chose to characterize the request for exculpatory evidence as gamesmanship while simultaneously asserting that no disclosure would be required because Ms. Nigro's credibility was already sufficiently called into question.

Both the law and fundamental fairness require the disclosure of exculpatory information.  In this case, on this issue, and with regard to this testimony, the disclosure

of the material is even more critical.  A government witness whose credibility has already been called into question and whose testimony is critical support for serious allegations of public corruption and bribery changed key parts of her testimony at trial.  The defense has a right to possess the information that led the government to change course in its presentation of Ms. Nigro.

The motion should be granted.

DATED:        August 7, 2024

s/ Mark A. Foti, Esq.

Mark A. Foti, Esq.
**The Foti Law Firm, P.C.**
16 W Main Street, Suite 100
Rochester, NY 14614
(585) 461-1999
(585) 491-6512

 s/ Eric M. Soehnlein, Esq.

Eric M. Soehnlein, Esq.
**Soehnlein Law, PLLC**
2100 Main Place Tower
350 Main Street
Buffalo, NY 14202
(716) 771-9092

s/ Robert Singer, Esq.

Robert Singer, Esq.
**Singer Legal PLLC**
80 East Spring Street
Williamsville, NY 14221
716-222-3288

s/ Parker MacKay, Esq.

Parker MacKay, Esq.
**Law Offices of Parker MacKay**
3110 Delaware Ave.
Kenmore, NY 14217
716-803-8166