IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

      v.                                                                            19-CR-227-LJV

JOSEPH BONGIOVANNI,

      Defendant

---

## GOVERNMENT'S MEMORANDUM OF LAW REGARDING THE ADMISSIBILITY OF SPECIFIC ACTS EVIDENCE UNDER FEDERAL RULE OF EVIDENCE 608

The UNITED STATES OF AMERICA, by and through its attorneys, Trini E. Ross, United States Attorney for the Western District of New York, Joseph M. Tripi, Nicholas T. Cooper, and Casey L. Chalbeck, Assistant United States Attorneys, hereby files this memorandum of law regarding the admissibility of specific acts evidence under Federal Rule of Evidence 608.

### INTRODUCTION

Counsel for Mr. Bongiovanni adopted ▓▓▓▓▓▓ as a character witness. On that direct examination, ▓▓▓▓▓▓ provided her opinion and evaluation of Katrina Nigro's character (and reputation) for truthfulness or untruthfulness. On **redirect**, counsel sought to solicit testimony from ▓▓▓▓▓▓ of specific instances of Ms. Nigro's conduct that undergird her opinion and evaluation. Federal Rule of Evidence 608(b), however, only permits inquiry into specific instances of Ms. Nigro's conduct "on cross-examination." FED. R. EVID. 608(b)(1). Because counsel for Mr. Bongiovanni adopted ▓▓▓▓▓▓ as his own witness when soliciting her opinion about Ms. Nigro's reputation for having a character for untruthfulness, the rule plainly forecloses him from soliciting specific-acts-evidence on re-direct. Accordingly, the Court should sustain the government's objection to Mr. Bongiovanni's solicitation of specific-acts-evidence from ▓▓▓▓▓▓.

I.     FACTUAL BACKGROUND

During his cross-examination of ▮▮▮▮, counsel began to "lay [the] foundation for ▮▮▮▮ to offer her opinion as to the character for truthfulness of Ms. Nigro, as well as her reputation within the community . . . that she exists as far as truthfulness is concerned." Tr. Tran., at 10, (dated Sept. 13, 2024) (Singer Cross-Examination of ▮▮▮▮). Counsel for the government responded, "Well, I think he certainly . . . has to adopt the witness as his own, no question." *Id.* Counsel for Mr. Bongiovanni then proceeded to adopt ▮▮▮▮ as a character witness to offer opinion and reputation testimony regarding Ms. Nigro, a fact witness. Specifically, counsel solicited ▮▮▮▮ opinion that Ms. Nigro is "a compulsive liar" and is "untruthful," *id.* at 17, and her view that Ms. Nigro has a reputation for being "untruthful," *id.* at 21.

Counsel for the government then proceeded to cross-examine ▮▮▮▮. *See id.* (AUSA Cooper: "Judge, I'm going to start with some cross-examination from the adoption of the witness and —" The Court: "Yep." AUSA Cooper: " . . . and then maybe circle back."). That cross-examination focused on the sources of ▮▮▮▮ bias against Ms. Nigro: *See, e.g.*, *id.* at 22 (AUSA Cooper: "Ma'am, you have a child with Peter Gerace, you told the jury before, that was in 2006, right?"); *id.* at 23 (AUSA Cooper: "Has Peter ever, since your child was born, financially supported your child?"); *id.* (AUSA Cooper: "Is [Peter's financial support of your child] important to you?"); *id.* at 27 (AUSA Cooper: "I'm asking you . . . do you have a rooting interest in the outcome of the case against Peter?" ▮▮▮▮: "Yes." AUAS Cooper: ". . . . And that's causing you to have some bias when you talk about Ms. Nigro, right, ma'am?"). Counsel even made clear—to the Court and to Mr. Bongiovanni's attorneys—that he was asking questions that went

2

to ▇▇▇▇ bias. *See id.* at 24 (AUSA Cooper: "It's bias. I have to be able to explore bias when this line of questioning comes out.").

Separately, government counsel questioned ▇▇▇▇ ability to perceive Peter Gerace and Ms. Nigro during certain periods of time and at certain events. For example, counsel asked, "[A]s you sit here today, were you at the Boss Restaurant with the defendant and Peter Gerace and Katrina Nigro in 2016?" *Id.* at 34. Similarly, counsel confirmed with ▇▇▇▇ that she "didn't interact with Ms. Nigro . . . for years directly at all." *Id.* at 38.

On redirect, and without first seeking to voir dire the witness, counsel for Mr. Bongiovanni attempted to solicit testimony from ▇▇▇▇ regarding specific instances of Ms. Nigro's conduct that are probative of her character for truthfulness:

> Mr. Singer: ▇▇▇▇, the government challenged your opinion regarding Ms. Nigro, and I want to get into a couple reasons why you hold that opinion. Okay?
>
> ▇▇▇▇: Yes.
>
> Mr. Singer: Did Ms. Nigro tell you and others that she —
>
> AUSA Cooper: Objection. Specific instances are improper, Judge.
>
> Mr. Singer: Unless the witness is impeached.

*Id.* at 44–45.

During the ensuing argument, counsel for Mr. Bongiovanni argued that because the government "offered multiple instances of specific acts of what they would believe are truthful statements that — that the witness would not disagree were untruthful" the door was opened to him soliciting the "specific acts" undergirding ▇▇▇▇ "opinion." *Id.* at 48.

3

## II. LEGAL FRAMEWORK

### A. Rule 608

Rule 608 provides, in relevant part, as follows:

> **(a) Reputation or Opinion Evidence**.   A witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character. But evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked.
>
> **(b) Specific Instances of Conduct**.   Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, **on cross-examination**, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of:
>
>   (1)   the witness; or
>
>   (2)   another witness whose character the witness being cross-examined has testified about.

FED. R. EVID. 608(a)–(b) (emphasis added).

The purpose of Rule 608 is to establish a fact witness's truthful or untruthful character through certain means of impeachment. *See* STEVEN GOODE & OLIN GUY WELLBORN III § 608 COURTROOM HANDBOOK ON FED. EVID. (2024 ed.). One way to do so is "by calling another witness (the "character witness") to testify as to the fact witness's reputation—in the community or among his associates—for untruthfulness." *Id.* (citing *Wilson v. City of Chicago*, 6 F.3d 1233, 1239 (7th Cir. 1993)).

Critically, however, "[t]he testimony must be limited to the fact witness's reputation; the character witness cannot give examples or explain why the reputation exists" when solicited on direct or re-direct examination. *Id.*; *see United States v. McNatt*, 931 F.2d 251, 255 (4th Cir. 1991) (holding that Rule 608(b) "does not allow the party calling the witness to inquire into specific

4

instances of conduct nor introduce extrinsic evidence of such"). Rather, any reference to specific instances of conduct is limited, as the Rule plainly states, to cross-examination. *See United States v. Triumph Capital Grp., Inc.*, 237 F. App'x 625, 629 (2d Cir. 2007) (unpublished) ("Rule 608(b) allows a witness to be *cross-examined* about specific instances of conduct . . . ." (emphasis added)); Advisory Committee Notes to Rule 608(b) ("Particular instances of conduct, though not the subject of criminal conviction, may be inquired into on *cross-examination* of the principal witness himself or of a witness who testifies concerning his character for truthfulness. Effective *cross-examination* demands that some allowance be made for going into matters of this kind, but the possibilities of abuse are substantial." (emphases added)); *see also United States v. Nelson*, 365 F. Supp. 2d 381, 386 (S.D.N.Y. 2005) (recognizing that Rule 608(b) speaks to "the permissibility of inquiring into such instances [of specific conduct] on *cross-examination*"); *accord* FED. R. EVID. 405(a) ("When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation or by testimony in the form of an opinion. *On cross-examination of the character witness*, the court may allow an inquiry into relevant specific instances of the person's conduct." (emphasis added)).

### III.   ANALYSIS

Mr. Bongiovanni's counsel adopted ▇▇▇▇ as a character witness to testify about Ms. Nigro, a fact witness. Consistent with Rule 608(a), defense counsel solicited ▇▇▇▇ opinion as to Ms. Nigro's character and her view that Ms. Nigro has a reputation of having a character for untruthfulness. But after the government (1) raised ▇▇▇▇ bias and (2) showed that ▇▇▇▇ was not present to make perceptions of Ms. Nigro for years at a time, Mr. Bongiovanni's counsel now seeks to re-write the terms of 608(b) to permit him to solicit specific instance of *Ms. Nigro's* conduct on re-direct. The plain terms of Rule 608(b) do not permit this. Under the rule,

inquiry into specific-acts-evidence is permissible only on cross-examination. Cross-examination is not re-direct. And there is no exception to this rule where the character witness is cross-examined as to her bias. Accordingly, the Court should sustain the government's objection.

### 1. Rule 608 Plainly Forecloses Mr. Bongiovanni from Soliciting Specific Acts Evidence on Direct or Re-direct Examination.

As multiple circuit courts, district courts, and treatises have observed, the proposition that Mr. Bongiovanni urges today—that "specific instances of prior misconduct [probative of a witness's character for untruthfulness] may be inquired into on direct" or redirect examination—"has long been disallowed." *United States v. Embry*, 452 F. App'x 826, 835 (10th Cir. 2011) (unpublished); *United States v. Edwards*, 549 F.2d 362 (5th Cir. 1977) (specific acts not admissible on direct or redirect of witness testifying as to bad character); *McNatt*, 931 F.2d at 255 ("On redirect examination, the witness was asked to tell the jury what had changed her mind about Clarke's credibility. The trial judge sustained an objection to this line of testimony, and we find no abuse of discretion in this ruling."); *see generally* 4 MICHAEL H. GRAHAM, HANDBOOK OF FEDERAL EVIDENCE § 608:4 n. 12 (9th ed. 2023) ("Specific instances of conduct probative of character for truthfulness or untruthfulness of the witness on the stand may not be developed under Rule 608(b) upon direct or redirect examination; inquiry on cross-examination only is specified."); MICHAEL H. GRAHAM § 608:5 WINNING EVIDENCE ARGUMENTS § 608:5 (2023 Ed.) ("Specific instances of conduct probative of the truthfulness or untruthfulness of the principal witness may not be brought out upon direct or redirect examination."). Rather, "[u]nder the clear terms of Rule 608(b)," questions soliciting specific-conduct-testimony are "only permitted . . . on *cross-examination*." *Andrade v. Walgreens-Optioncare, Inc.*, 784 F. Supp. 2d 533, 536 (E.D. Pa. 2011) (emphasis added)).

6

Extending the proper framework to the facts here, counsel for Bongiovanni can—and has—asked ▓▓▓▓▓ to testify as a character witness for Ms. Nigro, the government's fact witness. But, in keeping with the plain meaning of Rule 608(b)(2)'s clear text, Mr. Bongiovanni's counsel cannot solicit from ▓▓▓▓▓ specific-acts-testimony probative of Ms. Nigro's character for truthfulness or untruthfulness on his re-direct examinations.[1]  As the Fourth Circuit explained when rejecting an analogous argument, "there are limits on how [the appellant may attack the credibility of the government's witnesses] by use of opinion and reputation evidence, and specific instances of conduct." *McNatt*, 931 F.2d at 255.  And here, as there, it is improper under the Rule to solicit "[o]n redirect examination" the specific instances of conduct that undergird the character witness's opinion about the fact witness's "credibility." *Id.*

This restriction makes eminent sense, as it prevents the defendant's trial from spinning into myriad mini-trials. *Cf. United States v. Davis*, 183 F.3d 231, 257 n. 12 (3d Cir. 1999) ("[C]ounsel should not be permitted to circumvent [Rule 608] by tucking a third person's opinion about prior acts into a question asked of the witness who denied the act.").  "Trials would be endless" if, on direct or redirect examination, counsel could solicit specific-acts-evidence from a character witness on every falsehood a fact witness may have uttered in his or her life.  *Wilson* 6 F.3d at 1239.  To guard against this inefficiency, Rule 608's drafters found it sufficient to cabin a character witness's direct and re-direct testimony to her evaluation of the fact witness's reputation for having a character for truthfulness or untruthfulness, and her opinion.  This Court should do the same.  Accordingly, the government's objection should be sustained.

---

[1] Rule 608's application would be different were the government to put on a character witness to testify about Ms. Nigro's character for truthfulness.  Under those circumstances, counsel for Mr. Bongiovanni could *cross-examine* the witness about specific instances of conduct he has a good faith basis to believe are probative of Ms. Nigro's character for truthfulness, though he is bound by the witness's answer.  *See* FED. R. EVID. 608(b)(2) ("[T]he court may, on cross-examination, allow [specific instances of conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness" of the witness); *Andrade*, 784 F. Supp. 2d at 536.

2. **Rule 608's Limitations Do Not Disappear Where the Witness Is Cross-Examined as to Her Bias.**

Just as well, Rule 608 admits no exception to this explicit limitation when the cross-examination focuses on the character witness's bias.[2] Indeed, as the Second Circuit (echoing the Supreme Court) has indicated, impeaching the witness's bias is analytically distinct from showing either her "character for truthfulness or untruthfulness" or the character of other witnesses under Rule 608. *See United States v. Figueroa*, 548 F.3d 222, 229–30 (2d Cir. 2008) ("Here, . . . the purpose of the proposed line of cross-examination was not to show the witness's 'character for truthfulness or untruthfulness; it was to impeach the witness for bias." (citing *United States v. Abel*, 469 U.S. 45, 52 (1984) and FED. R. EVID. 608)).  Consequently, that the government tended to show ▮▮▮▮ bias against Ms. Nigro does not implicate Rule 608's provisions permitting inquiry into specific acts. To hold otherwise would graft an unwritten exception onto Rule 608 that swallows the authority of its plain text—a chilling and troubling proposition given that nearly all cross-examinations of character witnesses attempt to show the witness's bias.

Mr. Bongiovanni might argue that his solicitation of Ms. Nigro's specific conduct on re-direct is necessary to rebut the inference of bias.  This argument show be rejected.  Not only does it run contrary to Rule 608's purpose and plain meaning, *see United States v. Taylor*, 900 F.2d 779, 781 (4th Cir. 1990) ("[I]t was error for the district court to admit extrinsic evidence that the informer, Phillips, had provided reliable information and testimony that resulted in several

---

[2]   According to the Supreme Court,

> [b]ias is a term used in the common law of evidence to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party.  Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest.

*United States v. Abel*, 469 U.S. 45, 52 (1984) (internal quotations omitted).

8

convictions, in order to bolster Philips' credibility."), but it is also belied by the actual record: counsel clearly and unmistakably stated that he wanted to understand "why [████] h[e]ld th[e] opinion" that Ms. Nigro is untruthful, not that he wanted to rebut the suggestion of her bias. Tr. Tran., at 44.

That is, Mr. Bongiovanni solicited specific acts testimony for the "purpose" of "bolster[ing] [████] credibility" as to her opinion of Ms. Nigro and her evaluation of Ms. Nigro's reputation, neither of which are permitted by Rule 608(b). *United States v. Sumlin*, 271 F.3d 274, 282 (D.C. Cir. 2001). But this solicitation of "past conduct to suggest a witness has a generally dishonest character is precisely what Rule 608(b) does not allow." *United States v. Carthen*, 906 F.3d 1315, 1321 (11th Cir. 2018).

Moreover, soliciting ████ testimony as to why, specifically, she believes Ms. Nigro is untruthful does not rebut the sources of ████ bias, such as her former relationship with Peter Gerace, Gerace's financial support of her son, and the pain Gerace's cases have caused her son and extended family. Rather, such testimony would *distract* from those biases by suggesting that, irrespective of them, ████ has independent reasons for disliking Ms. Nigro. This, too, is prohibited by the rules, *cf. Carthen*, 906 F.3d at 1321 (affirming district court's preclusion of specific acts testimony purportedly designed to show bias where it was actually intended to show specific instances of witness's untruthful conduct), and, in any event, would inject substantial confusion and prejudice to the government if permitted for that purpose. *See* FED. R. EVID. 403; Advisory Committee Notes to Rule 608(b)(2) ("Also, the overriding protection of Rule 403 requires that probative value not be outweighed by danger of unfair prejudice, confusion of issues, or misleading the jury . . . ."). Accordingly, the objection should be sustained.

**CONCLUSION**

      For the reasons stated above, the government respectfully requests that the Court sustain its Rule 608 objection.

DATED: Buffalo, New York, September 17, 2024.

                                          TRINI E. ROSS
                                          United States Attorney

BY:              s/JOSEPH M. TRIPI
                    s/NICHOLAS T. COOPER
                    s/CASEY L. CHALBECK
                    Assistant United States Attorney
                    Western District of New York
                    138 Delaware Avenue
                    Buffalo, New York 14202
                    716-843-5839
                    Joseph.Tripi@usdoj.gov