UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -v-                                    CASE NO. 1:19-CR-227 (LJV)

JOSEPH BONGIOVANNI,

                  Defendant.

## DEFENDANT'S MOTION FOR DISCLOSURE, UNDER *BRADY V. MARYLAND*, OF ALL FAVORABLE INFORMATION IN THE POSSESSION OF GOVERNMENT INVESTIGATOR LYESON DANIEL AND THE GOVERNMENT PROSECUTION TEAM INVOLVING JOHN FLICKINGER AND THE GOVERNMENT'S DECISION NOT TO CALL FLICKINGER TO TESTIFY DURING MR. BONGIOVANNI'S FIRST TRIAL AND OTHER <u>RELIEF</u>

Mr. Bongiovanni is respectfully moving this Court for:

1) An order directing immediate government disclosure of any/all information possessed by government investigator Lyeson Daniel and/or any other member of the prosecution team regarding exculpatory and/or favorable statements made by John Flickinger to Daniel while in Buffalo waiting to testify in Bongiovanni Trial #1.

2) A declaration from the government attorney who dismissed Flickinger indicating what the government attorney was told by Daniel regarding Flickinger's prospective testimony prior to dismissing Flickinger.

3) An evidentiary hearing where defense counsel would be permitted to cross-examine Daniel and the government attorney regarding this issue.

## I.    Factual Background

After the government's cross examination of Mr. Flickinger on September 30, 2024, counsel for Mr. Bongiovanni interviewed Mr. Flickinger and learned:

1) That the government planned to call Mr. Flickinger to testify at the first trial regarding deactivation documents concerning Robert Kaiser ("Trial 1");

2) That Flickinger, although he did not communicate this belief to the government, had reservations regarding the accuracy of the government's theory that Mr. Bongiovanni had used certain law enforcement databases as "trip wires" to alert Bongiovanni to other law enforcement investigatory activities into members of the Serio DTO. Flickinger did not believe, during the time alleged, and given the limitations of the relevant databases then in use, that such conduct was even possible.

3) That Flickinger did not share this belief due to his concerns about how Mr. Tripi would respond and what actions Tripi would take against Flickinger.

4) That Flickinger, while in the courthouse waiting to testify at Trial 1, told government investigator Lyeson Daniel that, if asked on cross examination, Flickinger would testify, *inter alia*, that Mr. Bongiovanni had performed well as an agent, had been given an award in recognition for his valor in saving a woman from a burning building, and that Flickinger had no concerns about Bongiovanni's ethics or conduct;

5) That, additionally, while waiting to testify, Flickinger told Daniel about his (Flickinger's) historic concerns about Mr. Tripi's reputation for dishonest and unethical conduct with.

6) That Flickinger had not engaged in any form of confrontation or otherwise adversarial interaction with Daniel or any other member of the prosecution team.

7) That at the close of the trial day, Flickinger was informed that his testimony would be offered through Agent Shane Nastoff, and that Flickinger would no longer be called to testify.

*See* Declaration of John Gilsenan, 10/1/2024. This motion for the above requested relief now follows.

## II.   Legal Standard

"By requiring the prosecutor to assist the defense in making its case, the Brady rule represents a limited departure from a pure adversary model." *United States v. Bagley*, 473 U.S. 667, 675 n.6 (1985). This is because "the prosecutor's role transcends that of an adversary: the prosecutor 'is the representative not of an ordinary party to a controversy, but of a sovereignty . . . whose interest . . . in a criminal prosecution is not that it shall win a case, but that justice shall be done.'" *Id*. (quoting *Berger v. United States*, 295 U.S. 78, 88 [1935]). When analyzing *Brady* claims, a court should examine whether the prosecution is acting consistently with its obligation "to assist the defense in making its case" or whether it is acting strategically—*e.g.* failing to inform the defense that a witness under its control disclosed favorable information

during a witness preparation session and then subsequently deciding not to call the witness to testify—which is antithetical to the government's duty to "transcend" its role as "an adversary." *Bagley*, 473 U.S. at 675 n.6; *see also Breakiron v. Horn*, 642 F.3d 126, 133 (3d Cir. 2011) (expressing dismay that "prosecutors, so long after Brady became law, still play games with justice and commit constitutional violations by secreting and/or withholding exculpatory evidence from the defense").

As the Court knows, it is well-established by *Brady* and related authorities that in a criminal prosecution, "the government has an affirmative duty" under the Due Process Clause "to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense." *United States v. Hunter*, 32 F.4th 22, 30 (2d Cir. 2022); *Youngblood v. West Virginia*, 547 U.S. 867, 868 (2006). The duty to disclose favorable evidence to an accused is an affirmative one that extends "to material evidence . . . known to the prosecutor." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir, 1998).

A prosecutor is presumed "to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'" *Avellino*, 136 F.3d at 255 (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 [1995]); *see also United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995); *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013).

*Brady* requires the disclosure of evidence that is material either to guilt or punishment, and prior statements by crucial trial witnesses that radically differ from

their testimony to the jury. *Kyles*, 514 U.S. at 442-45 (1995); see *Giglio v. United States*, 405 U.S. 150 (1972) (requiring government production of any evidence or information indicating that any prospective prosecution witness on any occasion gave false or misleading information regarding any of the offenses charged in the indictment, or any related matters, to persons involved in law enforcement, their agents or informers, or others) *Marino v. Miller*, 97-CV-2001 (JG), 2002 U.S. Dist. LEXIS 16310, at *18 (E.D.N.Y. Aug. 22, 2002). This disclosure requirement extends to notes of law enforcement interviews with trial witnesses and must "be disclosed pursuant to *Brady* if they contain material and exculpatory information". *United States v. Alvarez*, 86 F.3d 901, 904 (9th Cir. 1996); *United States v. Bates*, 2007 U.S. Dist. LEXIS 54005, 2007 WL 2156278, *3 (E.D. Mich. 2007), aff'd, 363 Fed. App'x 369 (6th Cir. 2010) ("the government's [Brady] obligation extends to an agent's rough interview notes if they contain exculpatory evidence not otherwise disclosed"); *see also United States v. Ahmad*, No. 20-CR-00089(LJV)(JJM), 2021 U.S. Dist. LEXIS 170454, at *10 (W.D.N.Y. June 23, 2021).

## III.    Analysis

Here, because the government failed to disclose the fact that Mr. Flickinger informed government investigators that Flickinger would, during cross examination by defense counsel, provide favorable testimony on Mr. Bongiovanni's behalf, the government's conduct amounts to withholding of favorable and/or exculpatory information, contrary to *Brady v. Maryland* and its progeny, and the above requested

## IV.    Conclusion

For these reasons, this Court should order the requested relief.


DATED: October 1, 2024                          Respectfully Submitted

                                                 /s/ Robert Singer
                                                Counsel for Joseph Bongiovanni