08:26AM

1
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

2

_____

3    UNITED STATES OF AMERICA,

                                Case No. 1:19-cr-227
4              Plaintiff,              (LJV)

v.

5                                September 30, 2024

JOSEPH BONGIOVANNI,

6

                Defendant.
7    _____

8      TRANSCRIPT EXCERPT - EXAMINATION OF BRIAN BURNS - DAY 2
            BEFORE THE HONORABLE LAWRENCE J. VILARDO
9                 UNITED STATES DISTRICT JUDGE

10   **APPEARANCES:**          **TRINI E. ROSS, UNITED STATES ATTORNEY**
                         **BY: JOSEPH M. TRIPI, ESQ.**
11                           **NICHOLAS T. COOPER, ESQ.**
                             **CASEY L. CHALBECK, ESQ.**
12                       Assistant United States Attorneys
                         Federal Centre, 138 Delaware Avenue
13                       Buffalo, New York 14202
                         For the Plaintiff
14
                         **SINGER LEGAL PLLC**
15                       **BY: ROBERT CHARLES SINGER, ESQ.**
                         80 East Spring Street
16                       Williamsville, New York 14221
                             And
17                       **LAW OFFICES OF PARKER ROY MacKAY**
                         **BY: PARKER ROY MacKAY, ESQ.**
18                       3110 Delaware Avenue
                         Kenmore, New York 14217
19                           And
                         **OSBORN, REED & BURKE, LLP**
20                       **BY: JOHN J. GILSENAN, ESQ.**
                         120 Allens Creek Road
21                       Rochester, New York 14618
                         For the Defendant
22
     **PRESENT:**             **BRIAN A. BURNS,** FBI Special Agent
23                       **MARILYN K. HALLIDAY,** HSI Special Agent
                         **KAREN A. CHAMPOUX,** USA Paralegal
24
     **LAW CLERK:**           **REBECCA FABIAN IZZO, ESQ.**
25

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

1  **COURT DEPUTY CLERK:  COLLEEN M. DEMMA**

2  **COURT REPORTER:**       **ANN MEISSNER SAWYER, FCRR, RPR, CRR**
                             Robert H. Jackson Federal Courthouse
3                            2 Niagara Square
                             Buffalo, New York  14202
4                            Ann_Sawyer@nywd.uscourts.gov

5                       *    *    *    *    *    *    *

6

7              (Excerpt commenced at 9:05 a.m.)

8              (Jury present.)

9              **THE COURT:**  The record will reflect that all our

10  jurors are present.

11              I remind the witness that he's still under oath.

12              And, Mr. MacKay, you're up.

13

14  **B R I A N   B U R N S**, having been previously duly called and

15  sworn, continued to testify as follows:

16

17              **(CONT'D) CROSS-EXAMINATION BY MR. MacKAY:**

18  Q.  All right.  Good morning, again, Agent Burns, how are

19  you?

20  A.  Good morning, Mr. MacKay, I'm disappointed after last

21  night.

22  Q.  So we talked on Friday about an FBI investigation into

23  individuals associated with the bar Gables in North Buffalo;

24  do you recall that?

25  A.  That's correct.

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

3

09:06AM 1    Q.  You told us the people were arrested back in 2010, 2011

09:06AM 2    timeframe, correct?

09:06AM 3    A.  I think '09 and '10 maybe, without the records.  But

09:06AM 4    around there, yeah.

09:06AM 5    Q.  Right there.  Somewhere in --

09:06AM 6    A.  Absolutely.

09:06AM 7    Q.  -- the '10 timeframe?

09:06AM 8    A.  Yeah.

09:06AM 9    Q.  And you told us those individuals were released back into

09:06AM 10   the community after the arrest, correct?

09:06AM 11   A.  That's correct.

09:06AM 12   Q.  And they were arrested, but they weren't charged,

09:06AM 13   correct?

09:06AM 14   A.  Correct.

09:06AM 15   Q.  And you'd agree with me, it's very possible that these

09:06AM 16   individuals went back into the community and talked about

09:07AM 17   their arrest to other people in the community?

09:07AM 18   A.  I would say it's possible, I don't know about very

09:07AM 19   possible, but it's possible.

09:07AM 20   Q.  It's something that could have happened, fair to say?

09:07AM 21   A.  I would agree with that, that's something that could have

09:07AM 22   happened.

09:07AM 23   Q.  Okay.  It's very -- it's possible they could have told

09:07AM 24   the people at the bar they worked at, correct?

09:07AM 25   A.  My experience --

| | | |
|---|---|---|
| 09:07AM | 1 | Q.  Not -- so the question was:  Is it possible they could |
| 09:07AM | 2 | have done that? |
| 09:07AM | 3 | **MR. COOPER:**  Objection. |
| 09:07AM | 4 | **THE COURT:**  Overruled. |
| 09:07AM | 5 | **THE WITNESS:**  It's possible.  Anything is possible. |
| 09:07AM | 6 | **BY MR. MacKAY:** |
| 09:07AM | 7 | Q.  Okay.  And you knew Mike Masecchia was an individual who |
| 09:07AM | 8 | frequented the bars in North Buffalo, correct? |
| 09:07AM | 9 | A.  Yes, he was known to be -- frequent those bars in North |
| 09:07AM | 10 | Buffalo. |
| 09:07AM | 11 | Q.  Okay.  And to your knowledge, working on the FBI |
| 09:07AM | 12 | investigation, as far as you know, the FBI didn't share |
| 09:07AM | 13 | anything about this arrest with the public, correct? |
| 09:07AM | 14 | A.  As far as I know, that's correct. |
| 09:07AM | 15 | Q.  Okay.  And in your investigation, you also don't know |
| 09:07AM | 16 | when Ron Serio learned about this information, correct? |
| 09:07AM | 17 | A.  Just what he testified in the courtroom. |
| 09:08AM | 18 | Q.  Okay.  Now, I want to go through these charts that were |
| 09:08AM | 19 | produced. |
| 09:08AM | 20 | **MR. MacKAY:**  Can we pull up, Ms. Champoux, Government |
| 09:08AM | 21 | Exhibit 552? |
| 09:08AM | 22 | **BY MR. MacKAY:** |
| 09:08AM | 23 | Q.  We'll call this the lines connection chart; is that fair? |
| 09:08AM | 24 | A.  That's fair. |
| 09:08AM | 25 | Q.  What you tried to do here is visualize some of the |

09:08AM    1    connections that have been generated in this trial, correct?

09:08AM    2    A.   That's correct.

09:08AM    3    Q.   You based it on testimony and evidence that came in at

09:08AM    4    this trial, correct?

09:08AM    5    A.   That's correct.

09:08AM    6    Q.   Now, fair to say this chart is produced using some sort

09:08AM    7    of computer program, correct?

09:08AM    8    A.   Yeah.  I think -- I forget the name of it.

09:08AM    9    Q.   Yeah, I mean, you don't sit here and draw all these lines

09:08AM   10    one by one, correct?

09:08AM   11    A.   No.  We, I mean, we had a paper one at the beginning that

09:08AM   12    had little sticky notes and lines, but then we had an analyst

09:08AM   13    generate it.

09:08AM   14    Q.   But 552, that's in front of us in the jury, you put

09:08AM   15    information in a program and it helps you to actually

09:08AM   16    generate the final product that we see here, correct?

09:09AM   17    A.   Right.  Yeah.  My understanding that we gave the links,

09:09AM   18    and then the computer would make the lines and angle them so

09:09AM   19    they all wouldn't overlap.

09:09AM   20    Q.   Right.  I mean, like, I don't have the artistic mind to

09:09AM   21    do this, I assume, you know, you didn't sit here and do the

09:09AM   22    same thing trying to freehand this whole chart?

09:09AM   23    A.   No, not at all, the program did that.

09:09AM   24    Q.   It's generated by -- you give the computer program,

09:09AM   25    here's the people that are connected, and it makes the chart

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

6

09:09AM  1   in the simplest form, correct?

09:09AM  2   A.  That's accurate, I agree.

09:09AM  3   Q.  And in doing that, you can really organize it to put, for

09:09AM  4   example, anybody in the middle, correct?

09:09AM  5   A.  Yeah, we chose to put the defendant in the middle because

09:09AM  6   it was kind of the focus of the trial.

09:09AM  7   Q.  Right.  Because this is a trial about Joe Bongiovanni,

09:09AM  8   correct?

09:09AM  9   A.  That's correct.

09:09AM  10  Q.  I mean, you can reorganize this chart to put, for

09:09AM  11  example, Peter Gerace in the middle, correct?

09:09AM  12  A.  We could, yes.

09:09AM  13  Q.  It would reorganize the lines in some fashion, but same

09:09AM  14  program, same connections, you can generate the chart to look

09:09AM  15  like that, correct?

09:09AM  16  A.  That's my understanding, I don't know how to run the

09:09AM  17  program, but --

09:09AM  18  Q.  Okay.  And, for example, you can choose what picture you

09:10AM  19  want to put there of Mr. Bongiovanni, correct?

09:10AM  20  A.  That's correct.  Well, I think we had to choose a picture

09:10AM  21  that was in evidence.

09:10AM  22  Q.  Right.  But, you know, ultimately, this is work product

09:10AM  23  of the FBI and the -- the prosecution, correct?

09:10AM  24  A.  Yes, and HSI.  Absolutely.

09:10AM  25  Q.  And these charts, you began creating them before this

09:10AM    1   trial, correct?

09:10AM    2   A.  I'm sorry?

09:10AM    3   Q.  You began working and formulating these charts prior to

09:10AM    4   the start of this actual trial, correct?

09:10AM    5   A.  Yeah, I think it was mid to late June.

09:10AM    6   Q.  Yeah.  Do you have any reason to disagree with me they

09:10AM    7   were first turned over to the defense sometime in like, June?

09:10AM    8   A.  Or early maybe July, right around there.  I would agree

09:10AM    9   with you.

09:10AM   10   Q.  Yeah.  Sometime prior to the July 29th date that we all

09:10AM   11   came into court to start selecting a jury; fair to say?

09:10AM   12   A.  It evolved.  I mean, we did that based on testimony from

09:10AM   13   a prior proceeding, and -- with the understanding that what

09:10AM   14   would come out here would be what is heard this trial, in

09:10AM   15   this courtroom.

09:10AM   16   Q.  Okay.  Yeah, so let's talk about that.

09:10AM   17      What you did is in determining how to create this, you

09:11AM   18   looked at what happened in a prior proceeding; correct?

09:11AM   19   A.  That was our foundation to start.

09:11AM   20   Q.  Right.  And this chart did not exist for the prior

09:11AM   21   proceeding, correct?

09:11AM   22   A.  Did not.

09:11AM   23   Q.  Okay.  And it might sound silly, but you didn't call us

09:11AM   24   up, you didn't call me or Mr. Singer to ask you how to make

09:11AM   25   this chart, did you?

| | | |
|---|---|---|
| 09:11AM | 1 | A.  No, sir. |
| 09:11AM | 2 | Q.  Okay.  Now, it certainly wasn't a collaborative project |
| 09:11AM | 3 | between the prosecution and the defense, correct? |
| 09:11AM | 4 | A.  No, sir. |
| 09:11AM | 5 | Q.  Now if you draw a line from the judge to the door in the |
| 09:11AM | 6 | back of the courtroom, this is essentially work product of |
| 09:11AM | 7 | everybody on this side of the courtroom, correct? |
| 09:11AM | 8 | A.  It's a government exhibit, yes. |
| 09:11AM | 9 | Q.  Okay.  Now, let's talk about some of the connections that |
| 09:11AM | 10 | are embodied here. |
| 09:11AM | 11 | The lines here, they're all the same thickness; correct? |
| 09:11AM | 12 | A.  That's correct. |
| 09:11AM | 13 | Q.  But you'd agree with me that some of the connections |
| 09:11AM | 14 | between individuals, there's different levels of connection |
| 09:11AM | 15 | here; that fair to say? |
| 09:11AM | 16 | A.  That's fair to say. |
| 09:11AM | 17 | Q.  Like, for example, the connection line between Joe |
| 09:11AM | 18 | Bongiovanni and Lou Selva, that's generated because they're |
| 09:12AM | 19 | best friends; fair to say? |
| 09:12AM | 20 | A.  Yes. |
| 09:12AM | 21 | Q.  Now the connection on other individuals comes in, at |
| 09:12AM | 22 | least some cases, because somebody's contact is in a phone, |
| 09:12AM | 23 | correct? |
| 09:12AM | 24 | A.  That's correct. |
| 09:12AM | 25 | Q.  For example, Joe Bella, do you see him there?  Circle him |

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

09:12AM  1  here?

09:12AM  2  A.   Yep.

09:12AM  3  Q.   The lines coming mostly from his little bubble there,

09:12AM  4  we'll call it, those are formed from contacts in his phone,

09:12AM  5  correct?

09:12AM  6  A.   Right.  Mr. Bella did not testify, so we utilized the

09:12AM  7  phone extraction to pull the contacts from the -- his phone

09:12AM  8  extraction.

09:12AM  9  Q.   Yeah, but that's --

09:12AM  10  A.   His phone extraction that was seized by Agent Mozg.

09:12AM  11  Q.   Yeah, that was my question.  Joe Bella didn't testify in

09:12AM  12  this proceeding, correct?

09:12AM  13  A.   That's correct.

09:12AM  14  Q.   And what you used as -- I think it was exhibit, maybe one

09:12AM  15  of the 310 exhibits, that was the phone extraction that

09:12AM  16  showed his contacts, correct?

09:12AM  17  A.   Yeah, I don't remember the number, but, I mean, yeah.

09:12AM  18  Q.   Yeah, I don't remember the exhibit number, but, you know,

09:12AM  19  take my word, it's the extraction?

09:13AM  20  A.   Yeah, I agree, that's --

09:13AM  21  Q.   And that was used to generate some of those lines,

09:13AM  22  correct?

09:13AM  23  A.   Definitely, yeah.

09:13AM  24  Q.   And, you know, so fair to say we didn't hear testimony in

09:13AM  25  this trial about how, like, those contacts got in the phone,

09:13AM    1    correct?

09:13AM    2    A.  Definitely.

09:13AM    3    Q.  Okay.  We didn't hear testimony about how often these

09:13AM    4    individuals called each other, correct?

09:13AM    5    A.  That's correct.

09:13AM    6    Q.  Okay.  Now, let's look at the line between Joe Bella and

09:13AM    7    Joe Bongiovanni.  Why'd you draw that line?

09:13AM    8    A.  It's related to the Nancy Standish testimony.

09:13AM    9    Q.  How so?

09:13AM    10   A.  When she testified that they would be at the same bar in

09:13AM    11   proximity to each other.

09:13AM    12   Q.  Okay.  So, that line, here, is based simply because two

09:13AM    13   people were in close proximity to each other in a bar,

09:13AM    14   correct?

09:13AM    15   A.  Well, I'd like to -- if I could look at that and see if

09:13AM    16   there's anything else on that, the supporting, the 3500, I

09:13AM    17   just want to review that.

09:13AM    18   Q.  Well, no.  I mean, for right now, my question stands, to

09:13AM    19   your recollection, how did you actually generate that line?

09:13AM    20   A.  That's to my recollection.  But if I had -- there might

09:13AM    21   be additional, I mean, to recall, as I mentioned it was 179

09:13AM    22   of these connections and -- in our -- in the spreadsheet we

09:14AM    23   created.

09:14AM    24   Q.  Sure, yeah.  So what you're referring to is a spreadsheet

09:14AM    25   that actually you used is kind of a master list to generate

09:14AM    1    the corrections, correct?

09:14AM    2    A.  Correct.  And it would be if somebody's testimony, if two

09:14AM    3    people testified to something, I would put their -- we would

09:14AM    4    put their names on the line.  And then if there was an

09:14AM    5    exhibit or two, and it's quite possible that that one is just

09:14AM    6    the Standish testimony, but I'd want to -- I think your

09:14AM    7    original question was how did you generate it, so if I had

09:14AM    8    that, there might be additional information.

09:14AM    9    Q.  Sure.  And I'm not trying to hide anything here.

09:14AM    10          **MR. MacKAY:**  So, Ms. Champoux, can we show the

09:14AM    11    witness only Government Exhibit 3633AQ?

09:14AM    12          **BY MR. MacKAY:**

09:14AM    13    Q.  Can you read that?

09:14AM    14    A.  Yeah.  That -- that's -- that 3500 relates to items in

09:14AM    15    the paper file, the shared drive, and the --

09:14AM    16    Q.  Well, no, I don't want you to narrate what this is

09:14AM    17    because it's not in evidence.

09:14AM    18    A.  Oh, okay.

09:14AM    19          **MR. MacKAY:**  Can we scroll down some pages,

09:15AM    20    Ms. Champoux?  Some pages, I think we'll see it here.

09:15AM    21          You can keep going.  Okay.

09:15AM    22          **BY MR. MacKAY:**

09:15AM    23    Q.  All right.  So, I think we're on page -- I think this is

09:15AM    24    4 of the exhibit.

09:15AM    25          All right.  So, again, I don't want you to narrate, I

09:15AM    1    just want you to look --

09:15AM    2    A.  I understand.

09:15AM    3    Q.  -- and try to figure out the answer of my original

09:15AM    4    question.  Why did you draw the line from Joe Bella to Joe

09:15AM    5    Bongiovanni?

09:15AM    6    A.  Okay.  So I did indicate that Nancy Standish, as I

09:15AM    7    mentioned, and additionally in looking at this, it refreshes

09:15AM    8    my memory that Louis Selva also testified that they had a

09:15AM    9    connection, a relationship.

09:15AM    10   Q.  Okay.  Now, we'll leave that up there in case you need

09:15AM    11   any review.

09:15AM    12       What we're looking at here, this chart -- well, sorry,

09:15AM    13   we're not looking at it.  But what you refreshed your

09:15AM    14   recollection with was a chart, again, showing the connections

09:15AM    15   as you understood them to be based on your review of

09:15AM    16   testimony and evidence, correct?

09:15AM    17   A.  You're referring to the spreadsheet?

09:15AM    18   Q.  Yes, what's in front of you.

09:15AM    19   A.  Yes.

09:16AM    20   Q.  Okay.  Now, that's not the first version of that

09:16AM    21   spreadsheet, correct?

09:16AM    22   A.  No, it evolved as the trial went on, like each week,

09:16AM    23   or --

09:16AM    24   Q.  So, yes.  So the one you're looking at now is not the one

09:16AM    25   that you originally started with, correct?

09:16AM    1    A.  That's correct.

09:16AM    2    Q.  You had a prior version, and you modified that over time,

09:16AM    3    correct?

09:16AM    4    A.  That's correct.

09:16AM    5    Q.  And the prior version, what you started with, was based

09:16AM    6    on, again, the testimony or the evidence at the prior

09:16AM    7    proceeding, correct?

09:16AM    8    A.  I would say it was our baseline.  But, I mean, obviously

09:16AM    9    to make that exhibit for this trial, it had to -- all that

09:16AM   10    information had to come through the course of this trial.  It

09:16AM   11    had to be introduced.

09:16AM   12    Q.  Okay, so, let's take a look.

09:16AM   13            **MR. MacKAY:**  Ms. Champoux, can we go back to

09:16AM   14    Government Exhibit 552?

09:16AM   15            **BY MR. MacKAY:**

09:16AM   16    Q.  Okay.  This guy, Mark Falzone.

09:16AM   17    A.  Correct.

09:16AM   18    Q.  He was a subject of investigation in -- your total

09:16AM   19    investigation that you ran, correct?

09:16AM   20    A.  I'm sorry?

09:16AM   21    Q.  I mean, he was a subject of investigation in this case,

09:16AM   22    correct?

09:16AM   23    A.  Yeah.  He was part of the Serio drug-trafficking

09:16AM   24    organization.

09:16AM   25    Q.  Right.  There's a line here.  I don't know that I'll get

09:17AM    1    it right, but there's a line that reflects his connection to

09:17AM    2    Ron Serio, correct?

09:17AM    3    A.  Yeah.  They were, like, best friends, and he helped him

09:17AM    4    in the marijuana distribution, including trips to New York

09:17AM    5    and then at the residence when they offloaded the wood chips.

09:17AM    6    Q.  Sure.  Now, again, you sat here in court.  Mark Falzone

09:17AM    7    did not testify in this proceeding, correct?

09:17AM    8    A.  He did not in this proceeding.

09:17AM    9    Q.  Yet, in drawing some of the lines here, you did rely on

09:17AM    10   his testimony though, correct?

09:17AM    11   A.  I did not.

09:17AM    12   Q.  Okay.  Do you want to take a look at your sheet again?

09:17AM    13   A.  Certainly.

09:17AM    14        **MR. MacKAY:**  Okay.  Ms. Champoux, can we go back to

09:17AM    15   Government Exhibit 3633AQ, can we go to page 9?  Can you

09:17AM    16   rotate that?

09:17AM    17        **BY MR. MacKAY:**

09:17AM    18   Q.  Okay.  Take a look at that, and refresh your rec -- tell

09:17AM    19   me if that refreshes your recollection as to whether you

09:18AM    20   relied on Mark Falzone's testimony to produce that chart.

09:18AM    21   A.  Well, that one you're referring to is Chris Baker.  But

09:18AM    22   we did not use Mark Falzone's.

09:18AM    23       That was from the original version, but we did not

09:18AM    24   consider any of Mark Falzone's testimony in this trial.

09:18AM    25   Q.  Okay.  But you recall that in the prior versions of

09:18AM  1   charts that you produced, in the prior version -- I'm sorry,

09:18AM  2   the prior version of these charts you produced, you had Mark

09:18AM  3   Falzone's in a lot -- name in a lot more places; correct?

09:18AM  4   A.  That's correct.

09:18AM  5   Q.  And you tried to remove that where you thought the

09:18AM  6   evidence in this trial satisfied that, correct?

09:18AM  7   A.  That's correct.

09:18AM  8   Q.  But here, ultimately in the final chart that you did use

09:18AM  9   to produce the exhibit, you still left Mark Falzone's name

09:18AM  10  in, correct?

09:18AM  11       **MR. COOPER:**  Objection to the form of question.  The

09:18AM  12  chart that's in evidence doesn't have this index that he's

09:18AM  13  being asked about, and so if we can -- I'd like to come up and

09:18AM  14  argue it if we're gonna continue down this --

09:18AM  15       **THE COURT:**  Come up and argue it.

09:18AM  16       **MR. COOPER:**  Thanks.

09:19AM  17       (Sidebar discussion held on the record.)

09:19AM  18       **THE COURT:**  I don't see anything wrong with the form

09:19AM  19  of the question.

09:19AM  20       **MR. COOPER:**  So the -- so the line that exists

09:19AM  21  between Serio and Baker that Mr. MacKay is questioning him

09:19AM  22  about, has five witnesses and in the exhibit of evidence that

09:19AM  23  are in support of it.  What he's pointing out, which I

09:19AM  24  understand, is that Falzone's name wasn't removed from that,

09:19AM  25  but the -- the form of the question is saying you used

09:19AM      1    Falzone's testimony to draw that line.  There's six bases for

09:19AM      2    the line that exists between Baker and Serio.

09:19AM      3         **THE COURT:**  And you can do that on redirect.  You can

09:19AM      4    say that wasn't the only reason, there were other reasons as

09:19AM      5    well.

09:19AM      6         **MR. COOPER:**  Okay.  Understood.  All right.

09:19AM      7         I'll withdraw the objection.  Thank you, Judge.

09:19AM      8         (End of sidebar discussion.)

09:19AM      9         **THE COURT:**  So are you withdrawing?

09:19AM     10         **MR. COOPER:**  I'll withdraw the objection.  Thanks,

09:19AM     11    Judge.

09:19AM     12         **MR. MacKAY:**  I'm sorry, Ms. Sawyer, can you read back

09:19AM     13    the last question for us?

09:19AM     14         (The above-requested question was then read by the

09:19AM     15    reporter.)

09:20AM     16         **THE WITNESS:**  On this index, yes.

09:20AM     17         **BY MR. MacKAY:**

09:20AM     18    Q.  Okay.

09:20AM     19    A.  The chart does not rely on Mark Falzone's testimony, as

09:20AM     20    he did not testify in this trial.

09:20AM     21    Q.  Okay.

09:20AM     22         **MR. MacKAY:**  All right.  Ms. Champoux, can we go to

09:20AM     23    Government Exhibit 551?

09:20AM     24         **BY MR. MacKAY:**

09:20AM     25    Q.  Okay.  So this is another of the charts you produced?

| | | |
|---|---|---|
| 09:20AM | 1 | A.  That's correct. |
| 09:20AM | 2 | Q.  Same thing, you put Joe Bongiovanni in the middle, |
| 09:20AM | 3 | correct? |
| 09:20AM | 4 | A.  That's correct. |
| 09:20AM | 5 | Q.  Because he's the defendant here, correct? |
| 09:20AM | 6 | A.  That's accurate. |
| 09:20AM | 7 | Q.  And is a fair way to summarize this, the government's |
| 09:20AM | 8 | theory about what witnesses and evidence pertain to what |
| 09:20AM | 9 | overt acts and Counts, correct? |
| 09:20AM | 10 | A.  I'm sorry? |
| 09:20AM | 11 | Q.  Is a fair way to summarize what this chart is trying to |
| 09:20AM | 12 | impart is the government's theory on what witnesses and what |
| 09:20AM | 13 | evidence pertain to what Counts and overt acts in the |
| 09:20AM | 14 | indictment? |
| 09:20AM | 15 | A.  That's accurate. |
| 09:20AM | 16 | Q.  Okay.  Now, I'm not going to go through all of this, but, |
| 09:21AM | 17 | you know, it's fair to say there were a lot of agencies |
| 09:21AM | 18 | involved in this investigation, correct? |
| 09:21AM | 19 | A.  A lot of witnesses from various agencies. |
| 09:21AM | 20 | Q.  Okay.  Now, yeah, I mean, I want to clarify that.  Just |
| 09:21AM | 21 | because a witness came in and testified, that doesn't mean |
| 09:21AM | 22 | that their agency was directly involved in the investigation |
| 09:21AM | 23 | of Joe Bongiovanni, correct? |
| 09:21AM | 24 | A.  That's what I was alluding to, is they're witnesses, they |
| 09:21AM | 25 | weren't involved in the investigation of Mr. Bongiovanni. |

| | | |
|---|---|---|
| 09:21AM | 1 | Q. Right. So if we go -- |
| 09:21AM | 2 | A. Some were, but not -- |
| 09:21AM | 3 | Q. If we go around the circle on the witnesses, these are |
| 09:21AM | 4 | all law enforcement witnesses, correct? |
| 09:21AM | 5 | A. Correct. |
| 09:21AM | 6 | Q. Right. Because next to each one of these, you have the |
| 09:21AM | 7 | symbols for their own agencies, correct? |
| 09:21AM | 8 | A. That's correct. |
| 09:21AM | 9 | Q. Now, what I was getting at with my prior question is, you |
| 09:21AM | 10 | know, Mike O'Rourke, I circled him here. |
| 09:21AM | 11 | A. Yes. |
| 09:21AM | 12 | Q. You know, you've got his name and you got the State |
| 09:21AM | 13 | Police logo above that, correct? |
| 09:21AM | 14 | A. That's correct. |
| 09:21AM | 15 | Q. But the State Police were not involved in investigating |
| 09:21AM | 16 | Joe Bongiovanni, correct? |
| 09:21AM | 17 | A. They were not. |
| 09:21AM | 18 | Q. Okay. I'm just going to focus on one here. |
| 09:22AM | 19 | So, you've got this line here that I'm drawing from Joe |
| 09:22AM | 20 | Bongiovanni, Agent Mozg investigation of Bella, correct? |
| 09:22AM | 21 | A. That's correct. |
| 09:22AM | 22 | Q. And then, you know, there's another line that goes off of |
| 09:22AM | 23 | that, that ultimately connects to Tom Mozg; you see that? |
| 09:22AM | 24 | A. That's correct. |
| 09:22AM | 25 | Q. Okay. What are you trying to embody with this series of |

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

19

| | | |
|---|---|---|
| 09:22AM | 1 | lines that connect up to Tom Mozg? |
| 09:22AM | 2 | A.  Well, it ties back, if -- I mean, if I could have a copy |
| 09:22AM | 3 | of the indictment, I can -- that Count and those overt acts |
| 09:22AM | 4 | that references, that supports what occurred related to his |
| 09:22AM | 5 | testimony and -- or, his, Mr. Mozg, or Officer Mozg's |
| 09:22AM | 6 | testimony as well as the exhibits. |
| 09:22AM | 7 | Q.  Okay.  So, is it fair to say that what you're trying to |
| 09:22AM | 8 | encapsulate with this little prong of the chart is that June |
| 09:22AM | 9 | 2016 meeting between Tom Mozg and Joe Bongiovanni, and what |
| 09:22AM | 10 | that relates to in the indictment; is that a fair statement? |
| 09:22AM | 11 | A.  Yeah, I would feel more comfortable saying that |
| 09:22AM | 12 | definitively if I could read that -- that overt act on that |
| 09:22AM | 13 | Count, but -- |
| 09:22AM | 14 | Q.  Sure, I'll get rid of the line. |
| 09:23AM | 15 | A.  No, I meant, I'm sorry, the indictment itself just to -- |
| 09:23AM | 16 | for the right phrase. |
| 09:23AM | 17 | Q.  Okay.  Well, I'm not going to pull up the whole |
| 09:23AM | 18 | indictment right here. |
| 09:23AM | 19 | A.  Okay. |
| 09:23AM | 20 | Q.  But, you know, for example, that's -- what we're just |
| 09:23AM | 21 | talking about contains one portion of this case, correct? |
| 09:23AM | 22 | A.  Absolutely. |
| 09:23AM | 23 | Q.  Yeah.  And, you know, again, I'll circle him, Tom Mozg, |
| 09:23AM | 24 | you're trying to embody in this chart that he has something |
| 09:23AM | 25 | to do with that piece of the case, correct? |

USA v Bongiovanni - Burns - MacKay/Cross - 9/30/24

| | | |
|---|---|---|
| 09:23AM | 1 | A.  The meeting you referred to. |
| 09:23AM | 2 | Q.  Yeah.  Now you recall that there was another individual |
| 09:23AM | 3 | besides Joe Bongiovanni and Tom Mozg present at that |
| 09:23AM | 4 | June 26th meeting? |
| 09:23AM | 5 | A.  Special Agent Casullo, you're referring to. |
| 09:23AM | 6 | Q.  I'm going to circle him.  He's up there? |
| 09:23AM | 7 | A.  That's correct. |
| 09:23AM | 8 | Q.  I mean, you didn't put him down here to remind the jury |
| 09:23AM | 9 | that he's also involved in that same incident? |
| 09:23AM | 10 | A.  Well, it was -- Mozg was the individual that brought that |
| 09:23AM | 11 | information to the DEA.  So -- |
| 09:23AM | 12 | Q.  Right.  And when he brought it to the DEA, there was |
| 09:23AM | 13 | another DEA present named Anthony Casullo, correct? |
| 09:23AM | 14 | A.  That's correct. |
| 09:23AM | 15 | Q.  But you didn't put those two together in that same area |
| 09:23AM | 16 | of the chart, correct? |
| 09:23AM | 17 | A.  I did not. |
| 09:24AM | 18 | Q.  Okay? |
| 09:24AM | 19 | **MR. MacKAY:**  Judge, I have no further questions at |
| 09:24AM | 20 | this point. |
| 09:24AM | 21 | **THE COURT:**  Redirect? |
| 09:24AM | 22 | **MR. COOPER:**  Briefly, Judge.  Can I just have one |
| 09:24AM | 23 | second to -- |
| 09:24AM | 24 | **THE COURT:**  Sure. |
| 09:24AM | 25 | **MR. COOPER:**  Thank you. |

09:24AM     1          **REDIRECT EXAMINATION BY MR. COOPER:**

09:24AM     2   Q.  Special Agent Burns, were there a number of different

09:24AM     3   versions of this chart to try to fit everything on a piece of

09:24AM     4   paper like this, or a screen?

09:24AM     5   A.  Yes, there were many versions, and it was kind of a tall

09:24AM     6   order to make everything fit.

09:24AM     7   Q.  Did it become challenging during the creation of this

09:24AM     8   exhibit to fit all the information you were trying to fit in

09:24AM     9   one space?

09:24AM    10   A.  Yes.  We could not include all of the information

09:24AM    11   because -- for that reason.

09:24AM    12   Q.  Okay.

09:24AM    13          **MR. COOPER:**  Can we go back to 552 for a second,

09:24AM    14   please, Ms. Champoux?

09:24AM    15          **BY MR. COOPER:**

09:24AM    16   Q.  You were asked some questions about whether you relied on

09:24AM    17   Mark Falzone's testimony from a prior proceeding in

09:24AM    18   generating some of the lines on this chart; do you remember

09:24AM    19   being asked that question?

09:24AM    20   A.  Yes, I do.

09:24AM    21   Q.  You described for defense counsel on cross-examination

09:24AM    22   that you kept an index where you documented, as this trial

09:25AM    23   went on, what came into evidence, which witnesses testified;

09:25AM    24   is that correct?

09:25AM    25   A.  That's correct.

09:25AM   1    Q.  Did Falzone testify at this trial?

09:25AM   2    A.  He did not.

09:25AM   3    Q.  Did you endeavor to remove him from the index where he

09:25AM   4    was referenced as a witness in support of connections on this

09:25AM   5    chart?

09:25AM   6    A.  Yeah.  I mean, we thought we got most of them.

09:25AM   7    Q.  Okay.  And, so, to the extent that Mr. MacKay pointed one

09:25AM   8    out to you here, the connection between Ron Serio and Chris

09:25AM   9    Baker, you see the line that exists?

09:25AM   10   A.  Yes.

09:25AM   11   Q.  Between Ron Serio and Chris Baker?

09:25AM   12   A.  Yes.

09:25AM   13   Q.  Okay.

09:25AM   14        MR. COOPER:  Mr. MacKay, I'm holding a paper copy of

09:25AM   15   that index.

09:25AM   16        MR. MacKAY:  AQ?

09:25AM   17        MR. COOPER:  It's AQ.

09:25AM   18        MR. MacKAY:  Okay.

09:25AM   19        MR. COOPER:  May I approach the witness?

09:25AM   20        THE COURT:  You may.

09:25AM   21        BY MR. COOPER:

09:25AM   22   Q.  Look towards the bottom of that, I scribbled on it, but

09:25AM   23   it's my copy.  But do you see the connection between Ron

09:25AM   24   Serio and Chris Baker?

09:25AM   25   A.  Yes, I do.

09:25AM    1    Q.  How many different witnesses' testimony support that

09:26AM    2    connection in your chart, not including Mark Falzone?

09:26AM    3    A.  Ron Serio, R.K., J.R., Lou Selva, and Exhibit AI.

09:26AM    4    Q.  Okay.  So four other witnesses and an exhibit?

09:26AM    5    A.  Supports that link, yes.

09:26AM    6    Q.  Okay.  And so when you created the index and as you

09:26AM    7    updated it throughout the trial, did you leave Falzone's name

09:26AM    8    in one -- in one cell of a giant spreadsheet?

09:26AM    9    A.  Yes.  A 179-line spreadsheet.

09:26AM   10    Q.  Is Falzone's testimony alone the predication for the line

09:26AM   11    between Baker and Serio?

09:26AM   12    A.  No.  It does not support -- his testimony wasn't

09:26AM   13    considered in that.

09:26AM   14    Q.  Okay.  Four other witnesses, right?

09:26AM   15    A.  And an exhibit, yes.

09:26AM   16        MR. COOPER:  Okay.  May I approach, Judge?

09:26AM   17        THE COURT:  Yes, you may.

09:26AM   18        MR. COOPER:  Thank you.

09:26AM   19        BY MR. COOPER:

09:26AM   20    Q.  You were asked some questions also about, I think the

09:26AM   21    Gables topic, about whether people might have gone out and

09:26AM   22    told others that they got arrested and they were working as

09:27AM   23    informants, something like that; do you remember those

09:27AM   24    questions?

09:27AM   25    A.  I do.

09:27AM  1  Q.  In your experience working as an FBI agent, have you

09:27AM  2  handled informants?

09:27AM  3  A.  Yeah, hundreds.

09:27AM  4  Q.  It sounds like you started to give an answer and

09:27AM  5  Mr. MacKay cut you off.  What were you trying to tell the

09:27AM  6  jury about whether informants run around telling people

09:27AM  7  they're informants?

09:27AM  8  A.  Informants, I mean, it's -- informants don't want to be

09:27AM  9  known.  I mean, they're cooperating against friends,

09:27AM  10  associates.  It's dangerous.  So, it's rare in my experience

09:27AM  11  that they would share with anyone.  I mean, sometimes they

09:27AM  12  slip with a spouse or a close acquaintance.  But informants

09:27AM  13  don't have an incentive to disclose that they're cooperating

09:27AM  14  with the government.

09:27AM  15  Q.  Okay.  Did you do your best on Government Exhibit 552 to

09:27AM  16  assist the jury in being able to see the connections on a

09:27AM  17  physical chart?

09:27AM  18  A.  That was the purpose of the chart.

09:27AM  19  Q.  Okay.

09:27AM  20       MR. COOPER:  I have no further redirect, Judge.

09:27AM  21       MR. MacKAY:  I'll do it from here, Judge.

09:27AM  22

09:27AM  23              RECROSS-EXAMINATION BY MR. MacKAY:

09:27AM  24  Q.  So, Agent Burns, you just testified you did your best

09:27AM  25  trying to produce these charts?

USA v Bongiovanni - Burns - Cooper/Redirect - 9/30/24    25

09:28AM  1   A.  Well, I mean, I made -- they're accurate, I can tell you

09:28AM  2   that.

09:28AM  3   Q.  Well, but you -- you told us that you thought you got

09:28AM  4   most of the references removed, but you missed one, correct?

09:28AM  5   A.  And again, I, we didn't rely on that reference.

09:28AM  6   Q.  Right.  But I'm saying, in cross checking your work, you

09:28AM  7   made a mistake in some fashion, correct?

09:28AM  8   A.  Right, I left Mark Falzone's name on the one line, yes.

09:28AM  9   Q.  So you made a mistake in some fashion, correct?

09:28AM  10  A.  I wouldn't say it's a mistake.  I mean, the charge is

09:28AM  11  what is in evidence, not my working, the items I used to

09:28AM  12  create the chart.

09:28AM  13  Q.  But you're hoping the jury relies on this chart to

09:28AM  14  convict Mr. Bongiovanni?

09:28AM  15        **MR. COOPER:**  Objection as to what Mr. Burns is

09:28AM  16  hoping, Judge.

09:28AM  17        **THE COURT:**  Overruled.

09:28AM  18        **THE WITNESS:**  I'm sorry, what was your question?

09:28AM  19        **BY MR. MacKAY:**

09:28AM  20  Q.  I said you're hoping the jury relies on this chart in

09:28AM  21  trying to convict Mr. Bongiovanni?

09:28AM  22  A.  I mean, I hope they use it to examine the evidence at

09:28AM  23  trial.  That's the purpose of it, was to organize it and tie

09:28AM  24  the connections.

09:28AM  25        **MR. MacKAY:**  No further questions, Your Honor.

09:28AM      1              **MR. COOPER:**  I'm good.  Thank you, Judge.

09:28AM      2              **THE COURT:**  Okay.  You can step down, sir.  Thank

09:28AM      3    you.

09:28AM      4              (Witness excused at 9:28 a.m.)

      5              (Excerpt concluded at 9:28 a.m.)

      6              *     *     *     *     *     *     *

      7

      8

      9

     10

     11

     12                    **CERTIFICATE OF REPORTER**

     13

     14              In accordance with 28, U.S.C., 753(b), I

     15    certify that these original notes are a true and correct

     16    record of proceedings in the United States District Court for

     17    the Western District of New York on September 30, 2024.

     18

     19                        s/ Ann M. Sawyer
                               _____
     20                        Ann M. Sawyer, FCRR, RPR, CRR
                               Official Court Reporter
     21                        U.S.D.C., W.D.N.Y.

     22

     23

     24

     25

Case 1:19-cr-00227-LJV-MJR    Document 1338    Filed 11/03/24    Page 27 of 27
USA v Bongiovanni - Burns - Cooper/Redirect - 9/30/24

27

**TRANSCRIPT INDEX**

**EXCERPT - EXAMINATION OF BRIAN BURNS - DAY 2**

**SEPTEMBER 30, 2024**

**W I T N E S S**                                      **P A G E**

**B R I A N   B U R N S**                              2

  (CONT'D) CROSS-EXAMINATION BY MR. MacKAY:        2

  REDIRECT EXAMINATION BY MR. COOPER:            21

  RECROSS-EXAMINATION BY MR. MacKAY:             24