UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                Plaintiff,

      v.                                  Case No. 19-CR-227-1-LJV

JOSEPH BONGIOVANNI,

                Defendant.
_____


# DEFENDANT JOSPEH BONGIOVANNI'S
# RESPONSE IN OPPOSITION TO THE GOVERNMENT'S
# STATEMENT WITH RESPECT TO SENTENCING FACTORS (ECF 1566)

                                                The Law Office of Parker R. MacKay
                                                Parker R. MacKay, Esq.
                                                3110 Delaware Avenue
                                                Kenmore, NY 14217
                                                (716) 803-8166 (o)
                                                (716) 408-1651 (f)
                                                Parker@MacKayLawOffice.com



Robert C. Singer, Esq.
80 East Spring Street
Williamsville, New York 14221
(716) 222-3288
rob@singerlegalpllc.com

*Attorneys for Joseph Bongiovanni*

In its Statement with Respect to Sentencing Factors, the government has moved to make several "corrections and clarifications" to the Draft PSR. *See* ECF 1566 at 1-3. The government also seeks to apply an enhancement pursuant to USSG § 3B1.1(b) and a fine in this case. For the reasons set forth below, the Court should reject these requests in their entirety.

I.   **The Court should not make the "corrections and clarifications" to Parts A and C of the Draft PSR that the government seeks.**

In its Statement with Respect to Sentencing Factors, the government seeks to make nearly twenty changes to Parts A and C of the Draft PSR. For the reasons set forth below, the Court should deny these requests.

### A. Proposed changes to the factual narrative in Part A.

The government proposes several changes to ¶29, ¶32, ¶38, ¶39, ¶40, ¶41, ¶42, ¶43, ¶44, ¶48, ¶52, ¶55, ¶56, ¶68, ¶70, ¶73, ¶75, and ¶78. Globally, most of these changes should not be made because the government seeks to include conduct in the PSR that Mr. Bongiovanni was acquitted of committing and, consequently, is irrelevant. *See* USSG § 1B1.3(c). Additionally, the allegations should not be included in the PSR because they are not "helpful" to imposing a sentence or treatment pursuant to Rule 32(d)(2)(A)(iii). *See* FED. R. CRIM. PROC. 32(d)(2)(A)(iii) ("The presentence report must also contain . . . the defendant's history and characteristics, including . . . any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment."). While the defense objections to the Draft PSR discuss these objections at length, *see* ECF 1567, more specific comment on the government's proposed changes is below.

- **¶29**. The government seeks to include language to clarify Mr. Bongiovanni's purported meetings with Masecchia to accept bribe payments and why the meetings did not include the exchange of information. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The

jury acquitted Mr. Bongiovanni of engaging in such conduct. *See* ECF 1567 at 14. The paragraph should be deleted.

- **¶34**. The defense concurs with this proposed change. The defense argued similarly in its objections. *See* ECF 1567 at 14-15.
- **¶38**. The government seeks to include language in a paragraph that discusses conduct for which Mr. Bongiovanni was acquitted. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in a larger conspiracy to protect the Serio-Masecchia DTO. *See* ECF 1567 at 16. The paragraph should be deleted.
- **¶39**. The government seeks to include language in a paragraph that discusses conduct for which Mr. Bongiovanni was acquitted. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in a larger conspiracy to protect the Serio-Masecchia DTO. *See* ECF 1567 at 16. The paragraph should be deleted.
- **¶40**. The defense concurs with this proposed change in principle. The defense argued similarly in its objections. However, the paragraph should be deleted. *See* ECF 1567 at 16.
- **¶41**. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant, misleading, and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in this conduct and the Draft PSR incorrectly summarized Mr. Myszka's testimony. *See* ECF 1567 at 17-19. The paragraph should be deleted.
- **¶42**. The defense does not object to this revision.
- **¶43**. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant, misleading, and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in this conduct. *See* ECF 1567 at 19-20. The paragraph should be deleted.
- **¶44**. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant, misleading, and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in this conduct. *See* ECF 1567 at 20. The paragraph should be deleted.

- **¶48**. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in this conduct. *See* ECF 1567 at 20-21. The paragraph should be deleted.

- **¶52**. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant, misleading, and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in this conduct. *See* ECF 1567 at 20. The paragraph should be deleted.

- **New paragraph between ¶¶55 and 56.** The defense opposes this change, as the language in ¶75 communicates facts relevant to the allegations. Furthermore, as argued in the defense's objections to the Draft PSR, this paragraph should be amended to reflect that the file was seized at Mr. Bongiovanni's residence, and Mr. Bongiovanni, when asked about the file, stated he kept the file at his house because he thought the Serio case would come up again and wanted to make sure everything was on the "up and up." *See* ECF 1567 at 31. The inclusion of any other information is irrelevant, misleading, and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). Regarding how this allegation applies to a Count Group, please refer to the defense's argument on this point in its objections. *See* ECF 1567 at 42-44.

- **¶68**. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant, misleading, and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in this conduct. *See* ECF 1567 at 20. The paragraph should be deleted.

- **New Paragraph after ¶70**. Inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant, misleading, and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury and the court acquitted Mr. Bongiovanni of engaging in this conduct. *See* ECF 1567 at 20.

- **¶73 and ¶75**. The defense opposes this change. Application of these allegations to Count Groups is not controlled by where the information appears in the report. Including the same information twice is needlessly cumulative, and repetitive allegations are prejudicial, as doing so improperly inflates the severity of the conduct of the defendant. Regarding the revision of ¶75, please see comments in "New paragraph between ¶¶55 and 56" above, *supra*.

      Regarding how these allegations apply to a Count Group, please refer to the defense's argument on this point in its objections. *See* ECF 1567 at 42-44.

- **¶78**. The defense opposes this change. First, Ms. Bifano's testimony was not introduced at Trial #2. As a result, the jury did not consider this information. Since the counts of conviction in Trial #1 do not relate to financial motive or bribery, inclusion of this information in the PSR would be improper. Second, inclusion of this paragraph, in general, or the proposed change, in particular, is irrelevant, misleading, and violates the acquitted conduct rule. *See* USSG § 1B1.3(c). The jury acquitted Mr. Bongiovanni of engaging in this conduct. The paragraph should be deleted.[1] Finally, the allegation that Ms. Bifano located "$73,000 in unexplained cash deposits, money with no identifiable source in the defendant's accounts" was thoroughly debunked at Trial #1. As Mr. Devereaux testified and deposit tickets and other evidence proved, the "unexplained cash deposits" consisted of regular cash rent payments from Fred and Maria Bongiovanni, converted cash rent payments from the Whalen tenants, and other gifts from family. If necessary, the defense is prepared to introduce additional evidence it prepared for Trial #2 to debunk this claim in the event the Court believes this fact requires further resolution.

### B. Proposed change to the Count Groups.

      The government proposed the inclusion of language in ¶88 regarding the merger of Count Groups 1 and 2 in the Draft PSR. As discussed in the defense's objections, the Count Groups reflected in the Draft PSR are incorrect. Regarding how these counts should be grouped, please refer to the defense's argument on this point in its objections. *See* ECF 1567 at 42-44.

---

[1] In reviewing the defense objections in ECF 1567, it appears the defense submission contains a typographical error and "¶76 and ¶77" is noted twice. The objections pertaining to ¶78 and ¶79 appear under the subject heading "Pages 21-22 (Financial Investigation)." *See* ECF 1567 at 32.

### C. Proposed inclusion of "other criminal conduct."

The government proposes the inclusion of three other allegations that it deems "criminal" and relevant to the PSR and sentencing: 1) Mr. Bongiovanni's alleged conduct towards his ex-girlfriend, Protected Witness 13, in or about 2008; 2) Mr. Bongiovanni's alleged attempt to mislead a DEA Task Force Officer into providing an accident report that contained false information; and, 3) allegations that Mr. Bongiovanni "stole" a radio antenna from a DEA colleague's vehicle and lied to his colleague when confronted. *See* ECF 1566 at 3. None of these unproven allegations should be included in the PSR or considered during sentencing.

These unproven allegations were the subject of pretrial briefing. The government proposed that these allegations were admissible pursuant to FRE 404(b). *See* ECF 441. The defense opposed the government's motion to admit these unproven allegations for legal reasons (i.e., failure to meet the requirements of FRE 404(b) and the *Carboni* rule) and factual reasons (i.e., the defense did not believe the allegations were true or the accusers were credible). *See* ECF 593, 728. The defense factually opposed the allegations because each witness who made the allegations had a significant motive to fabricate the allegations. *See id.* The allegations also lacked corroboration. *See id.* Ultimately, the Court denied the government's motion to introduce any of the allegations above because introducing these allegations violated the propensity rule in FRE 404(b), was unfairly prejudicial, and wasted time. *See* ECF 752 at 3, ¶I(A)(7); ECF 738 at 45:16-51:16 & 91:3-98:18. In ruling in this fashion, the defense did not get the opportunity to test the veracity of these accusers via cross-examination or introduce evidence which disputed the allegations.

The defense does not believe that inclusion of these unproven allegations in the PSR is proper. First, the allegations were never the subject of a formal conviction. As a result, inclusion in the PSR is not required pursuant to Rule 32(d)(2)(A)(i). *See* FED. R. CRIM. PROC. 32(d)(2)(A)(i) ("The presentence report must also contain . . . the defendant's history and characteristics, including

. . . any prior criminal record."). Second, the allegations are not "helpful" for the purpose of imposing a sentence or treatment pursuant to Rule 32(d)(2)(A)(iii). *See* FED. R. CRIM. PROC. 32(d)(2)(A)(iii) ("The presentence report must also contain . . . the defendant's history and characteristics, including . . . any circumstances affecting the defendant's behavior that may be helpful in imposing sentence or in correctional treatment."). Consequently, these unproven allegations have no purpose in the PSR and should be excluded.

To the extent these unproven allegations are included in the PSR, the defense will request a *Fatico* hearing to adjudicate each allegation pursuant to Rule 32(i)(2).

## II.  The Court Should Not Apply an Aggravating Role Enhancement Pursuant to USSG § 3B1.1(b).

In its Statement with Respect to Sentencing Factors, the government moved for a three (3) level enhancement to Mr. Bongiovanni's offense level pursuant to USSG § 3B1.1(b). USSG § 3B1.1(b) provides an enhancement for an "aggravating role" in the offense of conviction when:

> [T]he defendant was a manager or supervisor (but not an organizer or leader) [of one or more other participants] and the criminal activity involved five or more participants or was otherwise extensive . . . .

*See* USSG § 3B1.1(b); *United States v. Gaskin*, 364 F.3d 438, 466-67 (2d Cir. 2004) (internal quotation marks omitted); USSG. § 3B1.1, Application Note 2.

"A defendant is properly considered a manager or supervisor 'if he exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-level participants.'" *United States v. Blount*, 291 F.3d 201, 217 (2d Cir. 2002) (alterations and internal quotation marks omitted). A "participant" is defined as "a person who is criminally responsible for the commission of the offense, but need not

have been convicted [or even charged]. A person who is not criminally responsible for the commission of the offense (*e.g.*, an undercover law enforcement officer) is not a participant." USSG § 3B1.1, Application Note 1; *see also United States v. Al-Sadawi*, 432 F.3d 419, 426-27 (2d Cir. 2005). "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered," including the defendant himself. Thus, a crime that 'involved only three participants but used the unknowing services of many outsiders could be considered extensive.'" *United States v. Pristell*, 941 F.3d 44, 50 (2d Cir. 2019) (citing USSG § 3B1.1, Application Note 3).

The government must prove by a preponderance of the evidence that the defendant's conduct meets the requirements of the enhancement. *See United States v. Molina*, 356 F.3d 269, 274 (2d Cir. 2004). "A district court must make specific factual findings, by a preponderance of the evidence, to support any sentencing enhancement under the Guidelines." *United States v. Ahders*, 622 F.3d 115, 119 (2d Cir. 2010) (internal quotation marks omitted).

To justify application of this enhancement, the government argued that the evidence purportedly proved that Mr. Bongiovanni:

> exercised considerable decision-making authority, including the manner in which he handled the nuanced details of the protection he provided, the unwitting participants he involved to carry out his corrupt protection scheme, and the manner in which he provided information to, and received payment from, the criminal drug trafficking organization that he was protecting. Thus, the defendant exercised significant control of the complex criminal scheme in which he was a major participant.

*See* ECF 1566 at 4. The government also argued that Mr. Bongiovanni "exercised some degree of control over Lou Selva," including:

1) "[T]he general and specific information the defendant selected for Lou Selva to provide to others in the organization, such as Michael Masecchia and Ron Serio";

Page **7** of **17**

2) "[R]epeated directives to Selva reminding Selva that he should pretend that the defendant was recruiting Selva to be an informant in the event law enforcement approached Selva and questioned him about the criminal conspiracy and conduct underlying the defendant's convictions";

3) "[T]he defendant's preference to meet with Selva to provide information . . ."; and,

4) "[T]he defendant's control of certain details he provided to Selva to pass along to other co-conspirators."

*See id.* at 5.  The government finally argued that Mr. Bongiovanni's purported "protection scheme covered a lengthy period of time and involved a myriad of individuals . . . including outsiders [from the DEA, APD, USAO-WDNY, and NYSP] who provided unwitting services."  *See id.*  For the reasons set forth below, this enhancement does not apply.

### A. The Government failed to prove the core of its allegations against Mr. Bongiovanni, which makes application of this enhancement moot.

As argued previously, the government continues to have trouble accepting that it failed to prove the case it set out to prove from the beginning, to wit: that Mr. Bongiovanni conspired with Ron Serio, Mike Masecchia, and others to protect the Serio/Masecchia DTO.  As the verdict made clear, Mr. Bongiovanni did not do this.  He did not accept bribes.  He did not act to protect the Serio/Masecchia DTO.  Instead, the verdict confined Mr. Bongiovanni's conduct to a limited agreement to protect his best friend Lou Selva by not reporting Selva's basement marijuana grow to law enforcement.  While the defense continues to dispute that this conduct constitutes an "agreement" or a valid conviction, *see* ECF 1446 (retrial Rule 29 motion) at 10-13, 19-20, 27-31, under the facts believed by the jury, Selva and Mr. Bongiovanni were the only parties to the agreement in the conspiracy.  Since neither Selva nor Mr. Bongiovanni controlled another person within this purported conspiracy, neither occupied a role of "management or supervision" over anyone for this role enhancement to apply.  For this reason alone, the government's argument fails,

and the Court should not apply this enhancement on these facts and the acquitted conduct rule in USSG § 1B1.3(c).[2]

### B. "Decision-making authority" and "control . . . of the criminal scheme" are factors that do not apply to USSG § 3B1.1(b).

In its Statement with Respect to Sentencing Factors, the government argues that the Court should consider some of the factors in Application Note 4 to USSG § 3B1.1 to determine the applicability of this enhancement to Mr. Bongiovanni. *See* ECF 1566 at 4 ("Pursuant to Application Note 4 to Guidelines Section 3B 1.1, factors the court should consider include: 'the exercise of decision-making authority, the nature of participation in the commission of the offense ... [and] the nature and scope of the criminal activity.'")  The Court should decline this invitation, as none of these factors apply.

As the Second Circuit has made clear, the factors in Application Note 4 are "inapposite" when "the enhancement sought [] relates to a manager rather than a leader" because the factors in Application Note 4 "are intended to distinguish leaders and organizers of criminal enterprises from managers and supervisors" rather than define what a "manager and supervisor" is

---

[2] It also is worth noting that based on the verdict, the jury acquitted Mr. Bongiovanni of his alleged provision of information to Serio, Masecchia, and Selva regarding law enforcement sources and methods.  The jury disbelieved this allegation because Selva's and Serio's testimony regarding what information Mr. Bongiovanni purportedly provided did not match.  As the defense demonstrated on cross-examination, the names allegedly provided to Selva by Serio (and vice versa) did not match and the information Selva allegedly conveyed to Serio (and vice versa) did not match or Selva and Serio denied providing/receiving the information altogether.  Many of the conflicts involved core players in the conspiracy (e.g., major marijuana suppliers internal and external to the conspiracy) as well as major parts of the investigation (e.g., the USAO/Deming financial investigation into Ron Serio that Serio never learned about).  The only thing Selva and Serio could agree on were basic items like "watch out for cars with tinted windows" and "watch your utilities" – in other words, "advice" that was so self-evident and obvious, that the necessity of having Mr. Bongiovanni provide such "tips" was thoroughly unnecessary.  The jury saw right through this contrived testimony and chose not to credit such lies and acquitted Mr. Bongiovanni of participating in the larger conspiracy, to include providing this information.  This is why none of these allegations belong in the PSR.

under the guideline *See United States v. Pristell*, 941 F.3d 44, 50-51 (2d Cir. 2019) (citing USSG § 3B1.1, Application Note 4 ("Factors to Consider . . . **[i]n distinguishing** a leadership and organizational role from one of mere management or supervision . . . .") (emphasis added)). Here, the government argued that USSG § 3B1.1(b) should apply only. *See* ECF 1566 at 3-5. The government did not argue that USSG § 3B1.1(a) should apply or that Mr. Bongiovanni was a "leader or organizer." *See id.* As a result, the seven factors in Application Note 4 do not apply to the analysis; instead, the focus of the inquiry is whether Mr. Bongiovanni "'exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-level participants.'" *Blount*, 291 F.3d at 217 (alterations and internal quotation marks omitted). This is why Mr. Bongiovanni's purported "decision-making authority" or "control" regarding how information was conveyed, money was received, and the like, *see* ECF 1566 at 3, is inapplicable. Furthermore, the jury acquitted Mr. Bongiovanni of these allegations, so use of them as part of an enhancement is barred by common-sense and the acquitted conduct rule in USSG § 1B1.3(c).

### C. The evidence does not prove that Mr. Bongiovanni "controlled" Selva (or others) or that he "recruited or supervised" lower-level participants.

As discussed above, the proper focus of the Court's inquiry is limited to evidence showing that Mr. Bongiovanni "'exercised some degree of control over others involved in the commission of the offense or played a significant role in the decision to recruit or to supervise lower-level participants.'" *Blount*, 291 F.3d at 217 (alterations and internal quotation marks omitted). In this regard, the evidence is wholly absent.

First, there is absolutely *zero* evidence that Mr. Bongiovanni "'played a significant role in the decision to recruit or to supervise lower-level participants.'" No evidence presented by the government at trial proved that Mr. Bongiovanni had *any* involvement in the DTO's decision to

recruit or supervise lower-level participants, let alone a "significant" role in those selections. Even if the jury believed the government's theory that Mr. Bongiovanni protected the Serio-Masecchia DTO (which it did not), Mr. Bongiovanni's role in the alleged conspiracy was limited to protection of the DTO. He did not manage day-to-day operations or personnel. He did not protect specific drug deals or shipments. He did not help Serio or Masecchia select the sellers, growers, and other participants in lower echelons. In fact, the trial evidence was consistent that Mr. Bongiovanni never spoke to or met Ron Serio *once* and generally limited his interactions with Masecchia to the alleged collection of bribe payments (according to Selva and Serio, Selva was the information conduit). *See, e.g.,* ECF 1466 at 19:10-17, 93:11-18; ECF 1473 at 5:2-10; ECF 1469 at 27:12-23 (Serio Testimony); ECF 1178 at 11:9-13:16, 131:22-10; ECF 1179 at 3:7-4:5, 27:1-20, 107:1-3, 108:18-25, 109:1-24 (Selva Testimony). As a result, this part of USSG § 3B1.1(b) does not apply.

Second, the government's attempts to stretch the definition of what constitutes the "'exercise[ of] some degree of control over others involved in the commission of the offense'" fails and should be rejected. Initially, it is important to note that the government's laundry list of "unwitting participants" that Mr. Bongiovanni purportedly "controlled" (the DEA, APD, USAO-WDNY, and NYSP) cannot trigger this enhancement because the enhancement applies to controlling "participants" involved in the criminal activity only. As Application Note 1 makes clear, a "participant" includes "a person who is criminally responsible for the commission of the offense" only. USSG § 3B1.1, Application Note 1. For this reason, "[a] person who is not criminally responsible for the commission of the offense (*e.g.*, an undercover law enforcement officer) is not a participant." *See id.* Here, like an "undercover officer," law enforcement officers with the DEA, APD, USAO-WDNY, and NYSP who were mentioned by the government as "unwitting participants," *see* ECF 1566 at 5-7, cannot be held "criminally responsible for the commission of the offense," so using such personnel for the purpose of applying USSG § 3B1.1(b) is improper.

As for Selva, the government's theory that Mr. Bongiovanni "controlled" Selva is contradicted by the trial evidence and the government's own theory of this purported conspiracy. According to Selva and the indictment, Selva *approached* Mr. Bongiovanni on several occasions *to recruit him to get involved* in the conspiracy, not the other way around. *See* ECF 1177 at 93:3-97:12; ECF 1178 at 5:2- 7:23; ECF 1179 at 104:22-105:20. Then, after Mr. Bongiovanni purportedly joined this alleged conspiracy, Selva (and the government's theory) had both Selva and Bongiovanni occupying roles *beneath* Masecchia and Serio. *See, e.g.,* ECF 1468 at 28:17-19 (Serio Testimony); ECF 1178 7:24-10:20, ECF 1179 at 27:1-20 (Selva Testimony). Thus, Selva and Mr. Bongiovanni were, at best, co-equals under the government's own theory.

The government's three factual examples of "control" also are inapplicable or belied by the evidence. First, the government claims that this enhancement applies because Mr. Bongiovanni controlled "the general and specific information" or "certain details" provided to Selva to pass along to other co-conspirators. *See* ECF 1566 at 5. This argument fails because, as *Blount* makes clear, the inquiry focuses on the control of *participants*, not information. Selecting what information to provide to Selva and others has nothing to do with controlling Selva's activities and is more akin to a "decision-making" factor in Application Note 4 that does not apply here. *See* Section II(B), *supra*. What's more, according to the government's trial testimony, Serio and Masecchia controlled to some degree when Selva met with Mr. Bongiovanni and what types of information Selva should inquire about, not the other way around, *see* ECF 1473 at 9:22-12:14 (Serio Testimony); ECF 1178 at 18:19-19:19, 63:21-65:23, 81:5-82:18; ECF 1179 at 27:1-24, 29:7-20, 227:4-13 (Selva Testimony) – Bongiovanni had nothing to do with structuring information requests other than to respond to inquiries Selva purportedly made to him and to give Selva the "all clear" when no investigations were active. *See, e.g.* ECF 1179 at 82:7-17, 337:1-18. Second, Mr. Bongiovanni's purported "preference to meet" with Selva to convey information, *see* ECF 1566 at 5, also does not

demonstrate "control" over Selva because the testimony belies this claim. According to Serio's and Selva's testimony, this arrangement was decided upon not for reasons of "control," but because Selva's and Bongiovanni's close relationship would not arouse suspicion if someone saw them meeting together. *See* ECF 1473 at 5:2-10 (Serio); ECF 1179 at 99:3-104:21, 107:21-25. Third, Mr. Bongiovanni purportedly telling Selva that Selva should claim that he is Mr. Bongiovanni's informant if ever caught, *see* ECF 1566 at 5, does not demonstrate Mr. Bongiovanni's "control" over Selva. As Selva testified, this was a false narrative and simply a cover-story – Selva never acted as an informant under Bongiovanni's control. *See* ECF 1178 at 129:9-12, 132:15-23, 133:9-12, 158:16-22. Absent acting as a true informant, Selva was never "controlled to some degree" by Mr. Bongiovanni.

At best, all the evidence showed in this case was that Mr. Bongiovanni occupied a singular role in this conspiracy and "controlled" nobody else. Selva, on the other hand, occupied a position under Masecchia and Serio as a mid-level player. Selva grew marijuana for Serio and Masecchia and handled the information-collection part of the relationship with Mr. Bongiovanni for Serio and Masecchia. Notwithstanding the fact that the jury rejected purported scheme *twice*, even when the trial evidence is considered in the light most favorable to the government, this evidence is woefully insufficient to support an enhancement under USSG § 3B1.1(b). As a result, the Court should not apply this enhancement.

### D. The verdict neither encompassed criminal activity of five or more participants nor was "otherwise extensive."

Beyond "control," application of USSG § 3B1.1(b) also requires proof that "the criminal activity involved five or more participants or was otherwise extensive." The jury rejected the larger conspiracy that the government relies upon to show that five or more participants or otherwise extensive activity was involved in this case. At best, the "conspiracy" Mr. Bongiovanni was convicted of engaging in was a conspiracy involving two people: Himself and Lou Selva only.

As discussed previously, neither Mr. Bongiovanni nor Selva controlled other participants. And as for the "unwitting participants" at the DEA, APD, USAO-WDNY, and NYSP, the only reasons any of these persons could relate to this enhancement is based on their unwitting involvement in protecting the larger Serio-Masecchia DTO – a theory of guilt the jury rejected and acquitted Mr. Bongiovanni of participating in. Based on the verdict and the acquitted conduct rule, the government cannot meet the requirements of USSG § 3B1.1(b) and show extensive conduct or conduct involving more than five participants. This is another reason why the Court should not apply this enhancement.

### III. The Court should not impose a fine in this case. Mr. Bongiovanni does not have the ability to pay a fine as the Probation Office properly determined.

In its Statement with Respect to Sentencing Factors, the government argues that Mr. Bongiovanni "has the ability to pay a fine in the Guideline range." *See* ECF 1566 at 7. The government marshals no evidence to support its position. *See id.* This position conflicts with the conclusion of the Probation Office that Mr. Bongiovanni is unable to pay a fine within the guideline range (currently, the guideline range of a fine as calculated in the draft PSR is $50,000 to $250,000). *See* ECF 1503 at 27, 32-35.

The Guidelines state "that a sentencing court must impose a fine in all cases 'except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.'" USSG § 5E1.2(a)). "A court may impose a fine on a defendant who is presently indigent only if there is evidence in the record that he will have the earning capacity to pay the fine after release from prison." *United States v. Aregbeyen*, 251 F.3d 337, 338-39 (2d Cir. 2001) (internal quotation marks omitted). Some factors relevant to that analysis include the need to disgorge any ill-begotten gains made by the defendant during the commission of the crime, the defendant's earning capacity

and financial resources, the burden on the defendant's dependents, and equity. *See* USSG § 5E1.2(d). "The determination of the fine guideline range may be dispensed with entirely upon a court determination of present and future inability to pay any fine. The . . . fact that a defendant is represented by (or was determined eligible for) assigned counsel are significant indicators of present inability to pay any fine. In conjunction with other factors, they may also indicate that the defendant is not likely to become able to pay any fine." *See* USSG § 5E1.2, Application Note 3.

The defense will make a more detailed argument on this point at sentencing, but, at this time, it is important to note a few facts which undermine the government's conclusory assertion. First, this Court has knowledge of Mr. Bongiovanni's financial position based both the Draft PSR and the evidence presented at both trials. Simply put, Mr. Bongiovanni is not a wealthy man. He leveraged himself financially before this case commenced. After he was indicted, Mr. Bongiovanni retained two high-priced defense attorneys to defend him of these charges. After years of government efforts to delay this case via successive (and unnecessary) indictments and interference with his first retained attorney, Mr. Bongiovanni was left in financial ruin. He was under conditions and unemployable. As the Draft PSR notes, this caused great financial strain. Second, a fine in this case would not just punish Mr. Bongiovanni – a fine also would punish Mr. Bongiovanni's wife as the only significant asset and savings they share is the marital residence. Third, Mr. Bongiovanni is 60 years old. He is a retired law-enforcement officer on a fixed pension. This case has rendered him unemployable in a position where he could make a significant income again. Fourth, the Court assigned defense counsel to this case because of Mr. Bongiovanni's precarious financial circumstances—with another district court judge reviewing a sworn CJA-23 financial affidavit and determining assignment of counsel was appropriate. Fifth, there are no ill-begotten gains to recover as the government failed to prove bribes were paid. For all of these reasons, a fine is inappropriate in this case.

**Conclusion**

As set forth above, the majority of the government's proposed revisions to the PSR are inconsistent with the verdict and irrelevant to sentencing. Requesting inclusion of this information is nothing more than a poor attempt to recast the verdict into something it is not. The arguments smack of "sour grapes" and should be rejected.

As for the other arguments, even under the government's strained reading of the USSG § 3B1.1(b) enhancement – an interpretation that finds no support in the law – the trial evidence does not support the application of USSG § 3B1.1(b). And as the Probation Office determined in the PSR, Mr. Bongiovanni cannot afford to pay a fine. Consequently, these arguments also are without merit. One is left wonder why the government would argue for the application of this enhancement and a fine. The reason is a punitive one. The government seeks the enhancement because, if the Court decides to do so, then Mr. Bongiovanni's downward adjustment as a "zero-point offender" no longer applies. *See* USSG § 4C1.1(a)(10) (noting how the "zero-point offender" adjustment does not apply when the defendant is subject to an adjustment under USSG § 3B1.1 (Aggravating Role)). This would increase sentencing exposure. The government seeks a fine in this case because the verdict – which rejected the government's primary theory involving bribery – prevents the government from seeking forfeitures. This prevents any financial recovery on the bribe-theory rejected by two juries. Simply put, the government's motive now – as it always has been in this case – is to seek the most punitive sentence possible for Mr. Bongiovanni. The government is doing this because it is angry that its multi-million-dollar crusade against Mr. Bongiovanni *twice* failed to produce the result it sought. Such dissatisfaction

does not justify these requests. For all of the reasons set forth above, the Court should reject these requests entirely.

Dated: July 2, 2025
      Buffalo, New York

| **THE LAW OFFICE OF PARKER R. MACKAY** | **SINGER LEGAL PLLC** |
|---|---|
| *Attorneys for Joseph Bongiovanni* | *Attorneys for Joseph Bongiovanni* |
| By:   s/Parker R. MacKay | By:   s/Robert C. Singer |
|     Parker R. MacKay, Esq. |     Robert C. Singer, Esq. |
| 3110 Delaware Avenue | 80 East Spring Street |
| Kenmore, NY 14217 | Williamsville, New York 14221 |
| (716) 803-8166 (o) | (716) 222-3288 |
| (716) 408-1651 (f) | rob@singerlegalpllc.com |
| Parker@MacKayLawOffice.com | |