UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

JOSEPH BONGIOVANNI,

        Defendant.

19-CR-227
DECISION & ORDER

---

Before the Court are two motions filed by the defendant, Joseph Bongiovanni, following his second jury trial.[1]  First, Bongiovanni moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29, Docket Item 1446; second, he moves for an inquiry into alleged juror misconduct, Docket Item 1572.  After the government responded to both motions, Docket Items 1487 and 1580, Bongiovanni replied in support of his Rule 29 motion, Docket Item 1534.  The Court then heard oral argument and reserved decision on both motions.[2]  *See* Docket Items 1558 and 1588.  For the reasons that follow, this Court denies Bongiovanni's motions.

---

[1] Bongiovanni's first trial resulted in a mistrial on 12 of 15 counts.  *See* Docket Item 867.  More specifically, the jury was unable to reach a unanimous verdict on counts 1-11 and 14, acquitted Bongiovanni on count 12, and convicted Bongiovanni on counts 13 and 15.  *See id.*  The Court later granted a judgment of acquittal on count 5.  Docket Item 1077.  The remaining 11 counts were retried beginning in July 2024.  *See* Docket Items 1095 and 1193.

[2] The Court also heard argument and reserved decision on the parties' objections to the Presentence Investigation Report.  *See* Docket Item 1588.  The Court will issue a separate decision addressing those objections.

## **LEGAL PRINCIPLES**

I.   **RULE 29 MOTION**

A defendant seeking a judgment of acquittal faces a heavy burden:  A court can grant a Rule 29 motion only if no "rational trier of fact could have found the essential elements of the crime established beyond a reasonable doubt."  *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015) (quoting *United States v. Moore*, 54 F.3d 92, 100 (2d Cir. 1995)).  Stated another way, "[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'"  *See United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

If a court reserves ruling on a Rule 29 motion until after the jury has returned a verdict, it "must decide the motion on the basis of the evidence at the time the ruling was reserved."  Fed. R. Crim. P. 29(b); *see also United States v. Velasquez*, 271 F.3d 364, 371 (2d Cir. 2001).  Here, Bongiovanni first moved under Rule 29 following the close of the government's case.  *See* Docket Item 1247.  Because the Court first reserved ruling on Bongiovanni's Rule 29 motion at that time, *see id.*, it examines whether the government met its burden based on the evidence presented in the government's case in chief.

In conducting its analysis, the Court "must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor."  *United States v. Pauling*, 924 F.3d 649, 656 (2d Cir. 2019) (quoting *United States v. Martoma*, 894 F.3d 64, 72 (2d Cir. 2017)).  That being said, "if

the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt." *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002) (internal quotation marks omitted).

## II.  INQUIRY INTO ALLEGED JUROR MISCONDUCT

"[A] defendant who seeks a new trial based on allegations of juror misconduct faces a very high hurdle." *United States v. Stewart*, 317 F. Supp. 2d 432, 436 (S.D.N.Y. 2004). A post-verdict inquiry of jurors is appropriate only when there is "clear, strong, substantial[,] and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." *United States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (quoting *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)); *see Anderson v. Miller*, 346 F.3d 315, 327 (2d Cir. 2003) (explaining "that possible *internal* abnormalities in a jury will not be inquired into except '*in the gravest and most important cases*'" (quoting *United States v. Dioguardi*, 492 F.2d 70, 79 n.12 (2d Cir. 1974))). Moreover, "an allegation of intra[-]jury pressure that does not rise to the level of physical coercion is insufficient to require a post-verdict jury inquiry." *See United States v. Yeagley*, 706 F. Supp. 2d 431, 434 (S.D.N.Y. 2010) (emphasis omitted).

Additionally, Rule of Evidence 606(b)(1)—sometimes referred to as the "no-impeachment rule"—"assure[s] jurors that, once their verdict has been entered, it will not later be called into question based on the comments or conclusions they expressed during deliberations." *Pena-Rodriguez v. Colorado*, 580 U.S. 206, 211 (2017). The rule explicitly provides that:

> [d]uring an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's

3

> deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

Fed. R. Evid. 606(b)(1). That rule is subject to only three narrow exceptions: "A juror may testify about whether" the jury improperly considered "extraneous prejudicial information"; whether "an outside influence was improperly brought to bear on any juror"; or whether the jury made a clerical mistake when completing the verdict form. *Id.* (b)(2).

## DISCUSSION[3]

### I.  RULE 29 MOTION

#### A.  Count 1

Count 1 charged Bongiovanni with conspiring to defraud the United States in violation of 18 U.S.C. § 371. *See* Docket Item 1193 at 4-17.[4] Bongiovanni first argues that there was a prejudicial variance because the conspiracy charged in the indictment, which included bribery, was not the conspiracy that the government proved.

As an initial matter, inconsistency between a jury's verdict on a conspiracy count and its verdict on a related substantive count is not a basis for a judgment of acquittal. *See United States v. Acosta*, 17 F.3d 538, 544-45 (2d Cir. 1994) (explaining that "it has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty"). The exception

---

[3] The Court assumes the reader's familiarity with the factual background and will recount the facts only as necessary to explain its decision.

[4] Page numbers in docket citations refer to ECF pagination.

to this rule is if "the necessary proof on the substantive charge is identical [to] that required to convict on the conspiracy count."  *United States v. Chen*, 378 F.3d 151, 164 (2d Cir. 2004) (quoting *United States v. Palmieri*, 456 F.2d 9, 12 (2d Cir. 1972)).  But here, even assuming that the evidence and necessary proof on the substantive bribery count were identical to the evidence and necessary proof on the conspiracy charge, that would not dispose of count 1.

As the government observes, Docket Item 1487 at 89, count 1 charged a conspiracy with two separate objectives—(1) to defraud the United States and the Drug Enforcement Administration ("DEA") and (2) to commit bribery, *see* Docket Item 1193 at 4-5—and the government had to prove only one of those objectives.  Thus, the jury could convict Bongiovanni on count 1 if it found that he defrauded the United States and the DEA *without* receiving money in exchange for his efforts.  And in fact, there was ample evidence suggesting that Bongiovanni did just that.

Nor is it true, as Bongiovanni contends, that he was not on notice of the charged conduct absent bribery.  On the contrary, the manner and means section of the indictment alleges that

> [i]t was part of the conspiracy that, in exchange for payments he received *and in order to ingratiate himself to individuals whom he believed were members and associates of [Italian Organized Crime]*, [Bongiovanni] utilized his position as a DEA [special agent] to attempt to dissuade other members of law enforcement: from conducting investigations of his coconspirators, friends, associates[,] and individuals [Bongiovanni] believed to be connected to or associated with [Italian Organized Crime].

*Id.* at 5 (emphasis added).  Thus, even if the government proved only that Bongiovanni defrauded the DEA without accepting bribes, that would be sufficient to maintain the conviction on count 1.

5

Bongiovanni also argues that the jury's special finding about the amount of drugs in count 3 necessarily means that it found that he did not conspire with Michael Masecchia and others in the Serio Drug Trafficking Organization ("DTO") as charged in count 1.  Docket Item 1446 at 9.  According to Bongiovanni, the jury's finding that less than 50 kilograms of marijuana was foreseeable to him indicates that the jury found him guilty only of conspiring to protect his longtime friend, Lou Selva, with respect to the basement grow at Selva's house, not of conspiring to protect the much larger DTO.  *Id.*

But to reach that conclusion, this Court must speculate as to what was in the jurors' minds—which the Second Circuit has explicitly prohibited.  *See Acosta*, 17 F.3d at 545.  Indeed, even when verdicts are clearly inconsistent, "the court is not to try to guess which of the inconsistent verdicts is the one the jury really meant."  *Id.* (citations and internal quotation marks omitted).  As the Supreme Court explained in *United States v. Powell*, 469 U.S. 57 (1984), "the jury, though presumed to follow the instructions of the trial court, may make its ultimate decisions 'for impermissible reasons,' such as 'mistake, compromise, or lenity,' [and] its power to do so is 'unreviewable.'"  *Acosta*, 17 F.3d at 545 (internal citations omitted) (quoting *Powell*, 469 U.S. at 63, 65).

Here, the only definitive conclusion the Court can draw from the jury's verdict on count 3 is that the government did not prove that Bongiovanni could reasonably foresee that the conspiracy involved more than 50 kilograms of marijuana.  To infer that the jury also concluded that Bongiovanni did not conspire with Masecchia is mere speculation.  Moreover, there was ample evidence that Bongiovanni used his position as a DEA

6

agent to cover for Masecchia even if Bongiovanni received no bribes and even if he did not know the full scope of the drug conspiracy.

Based on the same theory—that the jury must have convicted him only of "protecting Lou Selva and not reporting to the DEA that Selva was growing marijuana in his residence," Docket Item 1446 at 23—Bongiovanni argues that the government failed to prove a *Klein* conspiracy. *See United States v. Klein*, 247 F.2d 908 (2d Cir. 1957); *United States v. Ballistrea*, 101 F.3d 827, 832 (2d Cir. 1996) (explaining that to prove a *Klein* conspiracy, "the government [must] show (1) [that defendant] entered into an agreement (2) to obstruct a lawful function of the government (3) by deceitful or dishonest means and (4) at least one overt act in furtherance of the conspiracy" (citation omitted)). That argument fails for the same reason. Bongiovanni asks the Court to do precisely what the Second Circuit has clearly instructed courts not to do: speculate on the jury's rationale for reaching its decision. *See Acosta*, 17 F.3d at 545.

For all those reasons, this Court denies Bongiovanni's rule 29 motion with respect to count 1.

### B.     Count 3

Bongiovanni's argument on count 3 is similar. Essentially, Bongiovanni says that because the jury attributed only the smallest amount of marijuana to him, "the trial lacked proof that he conspired to help Selva possess any marijuana [Selva] grew with an intent to distribute it." Docket Item 1446 at 31. "At best," Bongiovanni says, the evidence "could establish only knowledge of Selva's simple possession under 21 U.S.C. § 844." Docket Item 1446 at 31.

7

Once again, Bongiovanni asks this Court to read too much into the jury's verdict. As explained above, the only thing the Court can glean from the jury's verdict is that the government failed to prove that more than 50 kilograms of marijuana was reasonably foreseeable to Bongiovanni as part of the conspiracy. But that does not, as Bongiovanni claims, permit the inference that the jury found only that he protected Selva's small grow operation or that the government's proof on Bongiovanni's involvement in the Serio DTO conspiracy was lacking. Again, this Court is not permitted to speculate as to why the jury reached its verdict. *See Acosta*, 17 F.3d at 545.

What is more, there is a perfectly reasonable explanation for the jury's conclusion: Viewing Selva's testimony in the light most favorable to the government, there was plenty of evidence that Bongiovanni knew that Selva was distributing marijuana—with or without Masecchia—and agreed to protect either or both of them. And that might be true even if the government did not prove beyond a reasonable doubt that Bongiovanni could reasonably foresee more than 50 kilograms of marijuana was involved in the conspiracy.

For all those reasons, the Court denies Bongiovanni's Rule 29 motion with respect to count 3.

**C.   Count 6**

Count 6 charged Bongiovanni with obstructing justice in connection with the DEA-6 report dated November 4, 2014, in which he said that Robert Kaiser was "no longer viable" as a confidential source. *See* Docket Item 1193 at 15, 29. Bongiovanni again argues that the jury's drug weight finding on count 3 makes it clear that the jury did not connect him to the Serio DTO. This Court rejects that conclusion for the same

8

reason that it rejected it in connection with counts 1 and 3.  Any determinations beyond the marijuana drug weight about what the jury thought as to whom and what the conspiracy involved is impermissible speculation.

### D. Count 7

Count 7 charged obstruction of justice related to the DEA-6 report dated January 28, 2015, which closed the Wayne Anderson case file.  Bongiovanni argues that he should be acquitted on this count because the statements in that report were "undeniably factually true."  See Docket Item 1446 at 43.  For example, the case file was in fact closed.  Id. at 45.

The government counters that Bongiovanni is taking too narrow a view of what it means to "falsify" a record.  See Docket Item 1487 at 105.  Rather than meaning that the words on the page must literally be false, the government explains, falsifying a document also includes "creat[ing] a document that misrepresents the truth."  Id. (quoting United States v. Rowland, 826 F.3d 100, 108 (2d Cir. 2016)).  Moreover, the government says, there were statements in the report that were in fact false, such as the representation that Kaiser was "no longer viable" as a source.  Id. at 105-06.

The Court agrees with the government that there was sufficient evidence for the jury to find that the January 2015 DEA-6 was a document that misrepresented the truth as part of Bongiovanni's overall scheme to protect his friends.  The obstruction conviction on count 7 therefore stands.  See Rowland, 826 F.3d at 108.

### E. Count 8

Count 8 charged Bongiovanni with obstruction of justice related to his statements about the extent of his relationship with Peter Gerace.  Bongiovanni argues that his

9

statement that he had only had "minimal in-person contact" with Gerace that "primarily consisted of random telephonic communication" was true. *See* Docket Item 1446 at 48-49.

But as the government observes, that argument fails to view the facts in the light most favorable to the government, as is required on a Rule 29 motion. *See* Docket Item 1487 at 110. The jury saw numerous text message exchanges between Bongiovanni and Gerace, as well as photographs of them socializing over the years. *See id.* at 110-11. That is more than enough evidence to support the jury's conclusion that Bongiovanni obstructed justice by minimizing his contacts with Gerace.

Thus, Bongiovanni's motion is denied as to count 8.

### F.     Count 10

Count 10 charged obstruction of justice based on Bongiovanni's statements in a memorandum dated January 28, 2019, about Gerace and DEA Special Agent Anthony Casullo. More specifically, count 10 charged that Bongiovanni "made false and misleading statements . . . relating to the nature of his relationship and extent of his communications with [Gerace], in order to cover up, mislead, create a false justification for, and misrepresent the true relationship between [Bongiovanni and Gerace] and to misrepresent the true nature of the relationship between [Gerace] and [Casullo]." Docket Item 1193 at 32-33.

Bongiovanni first argues that his memorandum could not have misrepresented his relationship with Gerace because the memorandum does not discuss that relationship; rather, it discusses only the alleged relationship between Casullo and Gerace. *See* Docket Item 1446 at 51. But as the government observes, "a rational jury

10

could have concluded that [Bongiovanni] was trying to divert attention away from his own corrupt relationship with Gerace and undermine his colleague's credibility." Docket Item 1487 at 115. And "[b]ecause a rational jury could have concluded that [Bongiovanni]'s stated purpose for writing the memorandum was false, it could have concluded both that the record was falsified *and* that [he] acted with corrupt intent." *Id.* This Court agrees with the government.

Bongiovanni also argues that the memo could not have obstructed justice because at the time it was submitted, Casullo was not responsible for investigating Gerace. Docket Item 1446 at 53. But that misses the point. The government's theory was not that Bongiovanni wrote the memorandum to interfere with Casullo's investigation; rather, it was that that Bongiovanni was attempting to discredit Casullo because Casullo "had first-hand knowledge of [Bongiovanni]'s . . . efforts to protect Gerace." *See* Docket Item 1487 at 115. In other words, according the to government, Bongiovanni wrote the memorandum to keep any federal authorities who were investigating the relationship between Gerace and Bongiovanni off Bongiovanni's trail. *See id.* at 115-16.

For all those reasons, Bongiovanni's motion is denied with respect to count 10.

### G.     Count 11

Count 11 charged that in an interview with Special Agent David Carpenter on March 29, 2019, Bongiovanni, among other things, falsely "denied ever initiating contact with . . . Gerace." *See* Docket Item 1193 at 33. Bongiovanni says that because the question of whether he ever initiated contact with Gerace was so vague and ambiguous, he should be acquitted on this count. Docket Item 1446 at 54-56. The government

11

counters first that this should have been raised on a Rule 12 motion to dismiss, Docket Item 1487 at 117-18, and second that the question was not vague, *id.* at 118-19.

This Court agrees with the government. Even if Bongiovanni did not waive this argument by not raising it sooner, the question of whether someone "ever initiat[ed] contact" with someone else is fairly straightforward—especially when viewing the evidence in the light most favorable to the government. Perhaps there were multiple ways to understand this question and the government therefore did not prove beyond a reasonable doubt that Bongiovanni purposefully made a false statement; that was a reasonable argument for the jury to consider. But the jury rejected that argument, and there was sufficient evidence to support the jury's conclusion.

For all those reasons, the Court denies Bongiovanni's motion as to count 11.

## II.    MOTION FOR FURTHER INQUIRY

On June 20, 2025, the Court disclosed to the parties that it had received an unsolicited letter from one of the jurors in Bongiovanni's first trial. *See* Docket Item 1568 at 1. Among other things, the letter stated the following:

> Before the trial even began [a juror] stated she would be attending Mr. Bongiovanni's sentencing. Another juror let her know she should at least wait for the trial to begin before she plans for that. The [first juror] replied the government has the charges against him, he must be guilty of something (after the trial she and several other jurors were concerned with letting the government down as they felt obligated to not disappoint them after all of the time and money they had spent on this trial)[.] So many jurors had seen news coverage and had already formed an opinion from the beginning. Then the trial ended and deliberations began. The first thing that occurred upon entering the deliberation room was a vote to determine who thought Mr. Bongiovanni was guilty and who thought he was not guilty. There was no prior discussion of what he was guilty of. There was no discussion at all as required to make a fair decision before the vote took place. There was yelling and name calling by the guilty voters. They wanted the not guilty voters to prove his innocence. It's easy to understand

> how someone could change their mind just to not have to endure this especially for weeks.

*Id.* at 2. Based on the contents of that letter, Bongiovanni moves for "an evidentiary hearing . . . and, if warranted, further inquiry into possible juror misconduct and jurors' failure to follow instructions." Docket Item 1573 at 2.

As noted above, a post-verdict inquiry into alleged juror misconduct is permissible only when there is "clear, strong, substantial[,] and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." *Ianniello*, 866 F.2d at 543 (quoting *United States v. Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983)). For the reasons that follow, the unsolicited letter from the juror in the first trial does not meet this high bar.

To start, this Court already has addressed the allegation that "the not guilty voters" were asked by other jurors "to prove [Bongiovanni's] innocence." *See* Docket Item 1568 at 2. Following his first trial, Bongiovanni moved for a new trial on the counts on which he was convicted under Federal Rule of Criminal Procedure 33. Docket Item 908. Among other things, Bongiovanni argued that a note written by a juror during deliberations—which indicated to the Court that other jurors had made comments, including "I knew [Bongiovanni] was guilty from day 1" and "[y]ou have to prove to us that he is innocent"—warranted a new trial. *Id.* at 12; *see United States v. Bongiovanni*, 2024 WL 3487914, at *12 (W.D.N.Y. July 19, 2024). This Court denied the rule 33 motion, finding that "those comments d[id] not necessarily show that the jurors did not follow the Court's instructions." *Bongiovanni*, 2024 WL 3487914, at *12.

"The first comment," the Court explained, "while indicating a tentative conclusion, does not conclusively demonstrate that the juror refused to keep an open mind in

13

deliberations." *Id.*; *see Brown v. Greiner*, 2003 WL 22964395, at *13 (E.D.N.Y. Oct. 2, 2003) ("Our criminal justice system does not contemplate that jurors will avoid forming tentative conclusions about the guilt or innocence of a defendant before all the evidence has been presented and the judge releases them to the jury room for deliberations.  All that is required of a juror is that he or she keep an 'open mind' and remain receptive to the parties['] arguments and evidence.").  "And the second comment," the Court continued, "could easily have occurred in the context of a holdout situation during deliberations, i.e., asking the juror in the minority to convince the others of her conclusion, rather than a failure to apply the proper burden of proof." *Bongiovanni*, 2024 WL 3487914, at *12.  Moreover, the Court found, "[t]his conclusion is bolstered by the fact that the jury reached a not-guilty verdict on one count and failed to reach a verdict on 12 others." *Id.*

Those same conclusions apply here.  Contrary to the allegation that a juror had prejudged Bongiovanni's guilt, the jury unanimously found Bongiovanni not guilty on one of the obstruction counts.  And all the jurors—including the juror who wrote the note—found Bongiovanni guilty on the two counts on which he was convicted at the first trial.

In addition, as the government observes, Docket Item 1580 at 10-11, the timing of the juror's alleged comments regarding Bongiovanni's guilt is not clear.  The comments might have been made before the Court gave its preliminary instructions or even before voir dire began, in which case the comments give no indication that the

14

juror did not follow the instructions once given.  So the note does not provide "incontrovertible evidence" of misconduct.[5]  *See Ianniello*, 866 F.2d at 543.

Finally, any inquiry that would address the allegations in the juror's note is barred by Rule 606(b).  *See United States v. Baker*, 899 F.3d 123, 132 (2d Cir. 2018) (explaining that "Rule 606(b) of the Federal Rules of Evidence prohibited the jurors from impeaching their verdict by testifying about the effect of such deliberations on the verdict").  Here, the bulk of the juror's allegations deal with the internal workings of the jury rather than purported outside influences.[6]  Thus, the requested inquiry would be "futile from the start."  *See id.*; *see also United States v. Richards*, 241 F.3d 335, 343 (3rd Cir. 2001) (affirming denial of motion for new trial based on juror's post-trial affidavit attesting that he "overheard two jurors comment in the presence of other jurors and prior to the close of the evidence that they believed [the defendant] was guilty" because inquiry into "whether or not the premature statements affected their verdict" would be prohibited by Rule 606(b)).

---

[5] Additionally, as the government observes, this particular juror appears to be far from impartial.  *See* Docket Item 1580 at 7-8.  In addition to the excerpt above, the juror's letter stated that Bongiovanni "has always been an exemplary citizen and an outstanding[,] accomplished member of the DEA his entire career."  Docket Item 1568 at 2.  The juror further implored the Court not to sentence Bongiovanni to time in prison.  *See id.*  Moreover, the Court has observed this juror with Bongiovanni's family at several court proceedings following the first trial.

[6] The one possible exception is that the juror alleges that "many jurors had seen news coverage and had already formed an opinion from the beginning."  Docket Item 1568 at 2.  The Court extensively questioned the jurors about exposure to news coverage during voir dire, and it is true that many jurors had seen some coverage.  But all of them assured the Court that they could still be impartial, and the letter does not give any indication—other than pure speculation—that those answers were untruthful.  Nor does the letter give any nonspeculative indication that the jurors failed to follow this Court's instruction to shield themselves from any further news coverage once they had been sworn in as jurors.

15

As the Second Circuit has recognized, "[b]ecause . . . of the 'evil consequences' likely to result from post-verdict inquiries—'subjecting juries to harassment, inhibiting juryroom deliberation, burdening courts with meritless applications, increasing temptation for jury tampering[,] and creating uncertainty in jury verdicts'—such inquiries are not undertaken in the absence of reasonable grounds." *Baker*, 899 F.3d at 131 (quoting *Ianniello*, 866 F.2d at 543). For the reasons explained above, the juror's note here does not meet the high bar for such an inquiry, and Bongiovanni's motion therefore is denied.

## **CONCLUSION**

For all those reasons, this Court DENIES Bongiovanni's motions for a judgment of acquittal under Rule 29, Docket Item 1446, and for inquiry into alleged juror misconduct, Docket Item 1572.

SO ORDERED.

Dated:     August 27, 2025
              Buffalo, New York

                                            ***/s/ Lawrence J. Vilardo***
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE