Fiscal Year 2024
https://www.ussc.gov/research/quick-facts



# QuickFacts

## Theft, Property Destruction, and Fraud

**Population Snapshot**

*61,678 cases were reported in FY24;*

*5,015 involved Theft, Property Destruction, and Fraud.[1]*

*These cases have increased 15.0% since FY20.*

**Number of Theft, Property Destruction, and Fraud Offenses**



- FY 2020: 4,356
- FY 2021: 4,234
- FY 2022: 5,208
- FY 2023: 4,904
- FY 2024: 5,015

**Median Loss Amounts for Theft, Property Destruction, and Fraud Offenses[2]**



- FY 2020: $99,996
- FY 2021: $134,293
- FY 2022: $160,737
- FY 2023: $200,000
- FY 2024: $210,410

**Individual and Offense Characteristics**

70.2% of individuals sentenced for theft, property destruction, and fraud offenses were men.

38.6% were White, 38.6% were Black, 16.0% were Hispanic, and 6.8% were Other races.

Their average age was 43 years.

88.2% were United States citizens.

73.0% had little or no prior criminal history (Criminal History Category I).

The median loss for these offenses was $210,410;[3]
- 9.1% involved loss amounts of $6,500 or less;
- 19.6% involved loss amounts greater than $1.5 million.

Sentences were increased for:
- the number of victims or extent of harm to victims (31.0%);[4]
- using sophisticated means to execute or conceal the offense (19.7%);
- using an unauthorized means of identification (14.8%);
- a leadership or supervisory role in the offense (9.9%);
- abusing a public position of trust or using a special skill (15.6%);
- obstructing or impeding the administration of justice (3.7%).

Sentences were decreased for:
- minor or minimal participation in the offense (4.7%).

The top five districts for individuals sentenced for theft, property destruction, and fraud offenses were:
- Southern District of Florida (272);
- Southern District of New York (232);
- Central District of California (179);
- Southern District of Texas (168);
- Middle District of Florida (145).

**Punishment**

The average sentence length for individuals sentenced for theft, property destruction, and fraud offenses was 22 months.

74.2% were sentenced to prison.

8.7% were convicted of an offense carrying a mandatory minimum penalty; 17.4% of those individuals were relieved of that penalty.



DEFENSE EXHIBIT
E
19-CR-227-1-LJV

*This document was produced and published at U.S. taxpayer expense.*

DE E - Page 1 of 14



## QuickFacts
### Theft, Property Destruction, and Fraud



**Sentences Relative to the Guideline Range**

**Sentences Relative to the Guideline Range**

60.1% of sentences for theft, property destruction, and fraud offenses were under the *Guidelines Manual*.

- 41.4% were within the guideline range.
- 14.5% were substantial assistance departures.
  - *The average sentence reduction was 68.1%.*
- 0.1% were Early Disposition Program (EDP) Departures.[5]
  - *The average sentence reduction was 30.6%.*
- 3.8% were some other downward departure.
  - *The average sentence reduction was 55.5%.*
- 0.3% were upward departures.
  - *The average sentence increase was 104.1%.*

39.9% of sentences for theft, property destruction, and fraud offenses were variances.

- 37.9% were downward variances.
  - *The average sentence reduction was 57.0%.*
- 2.0% were upward variances.
  - *The average sentence increase was 59.6%.*

The average guideline minimum slightly increased while the average sentence imposed remained steady over the past five years.

- The average guideline minimum slightly increased from 28 months in fiscal year 2020 to 31 months in fiscal year 2024.
- The average sentence imposed was 21 months in fiscal year 2020 and 22 months in fiscal year 2024.



**Sentences Relative to the Guideline Range by Fiscal Year**



**Average Guideline Minimum and Average Sentence (months)**

---

[1] Theft, Property Destruction, and Fraud offenses include cases in which the individual was sentenced under §2B1.1 (Larceny, Embezzlement, and Other Forms of Theft; Offenses Involving Stolen Property; Property Damage or Destruction; Fraud and Deceit; Forgery; Offenses Involving Altered or Counterfeit Instruments Other than Counterfeit Bearer Obligations of the United States).

[2] Cases with incomplete sentencing information were excluded from the analysis.

[3] The Loss Table was amended effective November 1, 2001 and November 1, 2015.

[4] The Victims Table and Sophisticated Means adjustment were amended effective November 1, 2015.

[5] "Early Disposition Program" (or EDP) departures are departures where the government sought a sentence below the guideline range because the defendant participated in the government's Early Disposition Program, through which cases are resolved in an expedited manner. See USSG §5K3.1.

SOURCE: United States Sentencing Commission, FY 2020 through FY 2024 Datafiles, USSCFY20-USSCFY24.



# QuickFacts

## Marijuana Trafficking

Fiscal Year 2024
https://www.ussc.gov/research/quick-facts

### Individual and Offense Characteristics

92.2% of individuals sentenced for marijuana trafficking were men.

34.5% were Hispanic, 32.0% were Black, 24.4% were White, and 9.1% were Other races.

Their average age was 36 years.

74.1% were United States citizens.

69.1% had little or no prior criminal history (Criminal History Category I); 2.2% were individuals sentenced under the career offender guideline (§4B1.1).

The median base offense level in these cases was 24, corresponding to between 100 and 400 kilograms of marijuana.

Sentences were increased for:
- possessing a weapon (30.3%);
- a leadership or supervisory role in the offense (8.4%).

Sentences were decreased for:
- minor or minimal participation in the offense (12.3%);
- meeting the safety valve criteria in the sentencing guidelines (43.3%).

The top five districts for marijuana trafficking offenses were:
- Southern District of Texas (56);
- Western District of Texas (37);
- Western District of Missouri (27);
- Eastern District of Texas (25);
- Eastern District of Virginia (23).

### Punishment

The average sentence for individuals trafficking marijuana was 37 months.

85.3% were sentenced to prison.

41.0% were convicted of an offense carrying a mandatory minimum penalty; 71.6% of those individuals were relieved of that penalty.

### Population Snapshot

61,678 cases were reported in FY24;
18,150 involved drugs,[1]
18,029 involved drug trafficking.[2]

2.6% of such cases involved marijuana, down 57.9% since FY20.

### Number of Marijuana Trafficking Offenses



FY 2020: 1,118
FY 2021: 995
FY 2022: 806
FY 2023: 561
FY 2024: 471

### Sentence Length[3]



Fiscal Year 2024
- Ten years or more (6.9%)
- Five to less than ten years (17.5%)
- Less than five years (75.6%)

### Means of Relief from Mandatory Minimum Penalty for Marijuana Trafficking

| Means of Relief | Percent |
| --- | --- |
| Safety Valve | 42.1% |
| Substantial Assistance | 14.2% |
| Both | 15.3% |

*This document was produced and published at U.S. taxpayer expense.*



# QuickFacts
## Marijuana Trafficking

## Sentences Relative to the Guideline Range

60.0% of sentences for marijuana trafficking were under the *Guidelines Manual*.

- 35.2% were within the guideline range.
- 20.5% were substantial assistance departures.
  - *The average sentence reduction was 71.7%.*
- 0.0% were Early Disposition Program (EDP) departures.[4]
- 4.3% were some other downward departure.
  - *The average sentence reduction was 59.9%.*
- 0.0% were upward departures.

40.0% of sentences for marijuana trafficking were variances.

- 35.6% were downward variances.
  - *The average sentence reduction was 49.0%.*
- 4.3% were upward variances.
  - *The average sentence increase was 145.5%.*

The average guideline minimum and the average sentence imposed have increased over the past five years.

- The average guideline minimum increased from 38 months in fiscal year 2020 to 52 months in fiscal year 2024.
- The average sentence imposed increased from 29 months in fiscal year 2020 to 37 months in fiscal year 2024.



### Sentences Relative to the Guideline Range



### Sentences Relative to the Guideline Range by Fiscal Year



### Average Guideline Minimum and Average Sentence (months)

---

[1] Drug offenses include cases where individuals were sentenced under USSG Chapter Two, Part D (Drugs). There were 471 individuals sentenced for marijuana offenses under USSG Chapter Two, Part D (Drugs) in FY 2024.

[2] Individuals sentenced for drug trafficking were sentenced under USSG §§2D1.1 (Drug Trafficking), 2D1.2 (Protected Locations), 2D1.5 (Continuing Criminal Enterprise), 2D1.6 (Use of a Communication Facility), 2D1.8 (Rent/Manage Drug Establishment), 2D1.10 (Endangering Human Life), or 2D1.14 (Narco-Terrorism).

[3] Cases with incomplete sentencing information were excluded from the analysis.

[4] "Early Disposition Program" (or EDP) departures are departures where the government sought a sentence below the guideline range because the defendant participated in the government's Early Disposition Program, through which cases are resolved in an expedited manner. See USSG §5K3.1.

SOURCE: United States Sentencing Commission, FY 2020 through FY 2024 Datafiles, USSCFY20-USSCFY24.



# QuickFacts
### Zero-Point Individuals

Fiscal Year 2024
https://www.ussc.gov/research/quick-facts

**Who is a Zero-Point Individual?**

*Section §4C1.1 of the* Guidelines Manual *provides for a 2-point reduction in the offense level for individuals assigned zero criminal history points at sentencing and whose instant offense did not involve specified aggravating factors.*[1]

## Population Snapshot

61,678 cases were reported in FY24;

22,177 involved individuals assigned zero criminal history points at sentencing.[2]

72.6% (13,456) of these individuals received an adjustment under §4C1.1.[3]

## Most Common Offense Types[4]



| Offense | Count |
|---|---|
| Immigration | 4,895 |
| Drug Trafficking | 4,458 |
| Fraud/Theft/Embezzlement | 2,331 |
| Money Laundering | 561 |
| Tax | 281 |
| Bribery/Corruption | 233 |
| Administration of Justice | 173 |
| Environmental | 62 |
| All Other | 462 |

## Most Common Drugs Trafficked



- Methamphetamine (35.5%)
- Powder Cocaine (34.1%)
- Fentanyl (18.4%)
- Marijuana (4.1%)
- Other (3.9%)
- Heroin (3.0%)
- Crack Cocaine (1.0%)

## Individual and Offense Characteristics

78.8% of zero-point individuals receiving an adjustment under §4C1.1 were men.[5]

66.4% were Hispanic, 16.6% were White, 12.5% were Black, and 4.5% were Other races.

Their average age was 38 years.

50.0% were United States citizens.

The most common offense types in cases where §4C1.1 was applied were: Immigration (36.4%), Drug Trafficking (33.1%), Fraud/Theft/Embezzlement (17.3%), Money Laundering (4.2%), and Tax Fraud (2.1%).

- The most common offense types for zero-point individuals *not* receiving an adjustment under §4C1.1 were: Drug Trafficking (22.7%), Firearms (13.4%), Child Pornography (12.9%), Sexual Abuse (12.5%), and Fraud/Theft/Embezzlement (8.4%).

The top five districts with the most cases in which §4C1.1 was applied were:
- Western District of Texas (2,799);
- Southern District of Texas (1,521);
- Southern District of California (926);
- District of Arizona (815);
- District of Puerto Rico (476).

The top five districts with the highest proportion of §4C1.1 application were:
- District of Northern Mariana Islands (74.4%);
- District of Virgin Islands (67.4%);
- District of Puerto Rico (44.8%);
- Southern District of California (42.6%);
- Western District of Texas (36.9%).

## Punishment

The average sentence for zero-point individuals receiving an adjustment under §4C1.1 was 19 months, compared to 89 months for zero-point individuals not receiving the adjustment.[6]

81.7% were sentenced to prison, compared to 91.8% of zero-point individuals not receiving the adjustment.

*This document was produced and published at U.S. taxpayer expense.*





**Length of Sentence Imposed**

Fiscal Year 2024
- Five to less than ten years (7.9%)
- Ten to less than 20 years (1.8%)
- Less than five years (90.3%)

### Punishment (cont'd)

18.0% were convicted of an offense carrying a mandatory minimum penalty, compared to 38.4% of zero-point individuals not receiving the adjustment.

- 84.2% of those individuals convicted of an offense carrying a mandatory minimum penalty were relieved of that penalty, compared to 15.6% of zero-point individuals not receiving the adjustment.

### Sentences Relative to the Guideline Range

72.0% of sentences in cases with an adjustment under §4C1.1 were under the *Guidelines Manual*.

- 51.2% were within the guideline range.
- 10.5% were substantial assistance departures.
  - *The average sentence reduction was 65.5%.*
- 7.4% were Early Disposition Program (EDP) departures.[7]
  - *The average sentence reduction was 61.1%.*
- 2.7% were some other downward departure.
  - *The average sentence reduction was 59.0%.*

28.0% of sentences in cases with an adjustment under §4C1.1 were variances.

- 25.5% were downward variances.
  - *The average sentence reduction was 53.0%.*
- 2.5% were upward variances.
  - *The average sentence increase was 76.1%.*



**Sentences Relative to the Guideline Range**

Fiscal Year 2024
- Variances (28.0%)
- Under the *Guidelines Manual* (72.0%)

| | |
|---|---|
| Within Range | 51.2% |
| Substantial Assistance | 10.5% |
| Early Disposition Program (EDP) | 7.4% |
| Other Downward Departure | 2.7% |
| Upward Departure | 0.2% |

---

[1] Effective November 1, 2023, sentenced individuals are eligible for an adjustment under §4C1.1 if they meet the criteria specified under §4C1.1(a)(1) – (a)(11). Individuals sentenced prior to November 1, 2023 are eligible to seek a reduction in their sentence through the retroactive application of this provision under §1B1.10 but are not included in this analysis.

[2] Cases with incomplete sentencing information were excluded from the analysis.

[3] In fiscal year 2024, 3,665 individuals were assigned zero criminal history points but sentenced prior to the November 1, 2023 effective date of §4C1.1 and are not included in this analysis.

[4] Individuals sentenced for drug trafficking were sentenced under §§2D1.1 (Drug Trafficking), 2D1.2 (Protected Locations), 2D1.5 (Continuing Criminal Enterprise), 2D1.6 (Use of a Communication Facility), 2D1.8 (Rent/Manage Drug Establishment), 2D1.10 (Endangering Human Life), or 2D1.14 (Narco-Terrorism).

[5] Among zero-point individuals who did not receive an adjustment under §4C1.1, 86.8% were men, 35.8% were Hispanic, 81.2% were United States citizens, and their average age was 38 years.

[6] The average guideline minimum for zero-point individuals receiving an adjustment under §4C1.1 was 28 months, compared to 115 months for zero-point individuals not receiving the adjustment.

[7] "Early Disposition Program" (or EDP) departures are departures where the government sought a sentence below the guideline range because the defendant participated in the government's Early Disposition Program, through which cases are resolved in an expedited manner. See USSG §5K3.1.

SOURCE: United States Sentencing Commission, FY 2020 through FY 2024 Datafiles, USSCFY20-USSCFY24.

Fiscal Year 2024
https://www.ussc.gov/research/quick-facts



# QuickFacts

## Bribery Offenses

**Population Snapshot**

**61,678 cases** *were reported in FY24;*
**229 involved bribery.**[1]

Bribery offenses have **increased 56.0%** since FY2020.

**Number of Bribery Offenses**



| FY 2020 | FY 2021 | FY 2022 | FY 2023 | FY 2024 |
|---|---|---|---|---|
| 147 | 156 | 228 | 238 | 229 |

**Median Loss Amounts for Bribery Offenses**[2]



| FY 2020 | FY 2021 | FY 2022 | FY 2023 | FY 2024 |
|---|---|---|---|---|
| $30,690 | $52,328 | $37,000 | $35,115 | $43,701 |

### Individual and Offense Characteristics

85.8% of individuals sentenced for bribery offenses were men.

31.4% were White, 27.8% were Hispanic, 26.9% were Black, and 13.9% were Other races.

Their average age was 49 years.

90.2% were United States citizens.

90.7% had little or no prior criminal history (Criminal History Category I).

The median loss for these offenses was $43,701;[3]
- 29.7% involved loss amounts of $15,000 or less;
- 10.1% involved loss amounts greater than $1.5 million.

Sentences were increased for:
- being a public official (49.8%);
- involving multiple bribes (75.1%);
- involving a high-level elected official (45.3%);
- a leadership or supervisory role in the offense (5.8%);
- abusing a public position of trust or using a special skill (0.4%);
- obstructing or impeding the administration of justice (8.4%).

Sentences were decreased for:
- minor or minimal participation in the offense (2.2%).

The top five districts for individuals sentenced for bribery offenses were:
- Southern District of New York (30);
- Eastern District of New York (21);
- District of Columbia (14);
- Eastern District of Pennsylvania (14);
- Southern District of Texas (13).

### Punishment

The average sentence for individuals sentenced for bribery offenses was 20 months.

80.0% were sentenced to prison.

1.3% were convicted of an offense carrying a mandatory minimum penalty; 33.3% of those individuals were relieved of that penalty.

*This document was produced and published at U.S. taxpayer expense.*



## QuickFacts
### Bribery Offenses

**Sentences Relative to the Guideline Range**

52.0% of sentences for bribery offenses were under the *Guidelines Manual*.

- 22.2% were within the guideline range.
- 24.9% were substantial assistance departures.
    - *The average sentence reduction was 72.2%.*
- 4.4% were some other downward departure.
    - *The average sentence reduction was 60.6%.*
- 0.4% were upward departures.[4]

48.0% of sentences for bribery were variances.

- 46.7% were downward variances.
    - *The average sentence reduction was 54.6%.*
- 1.3% were upward variances.
    - *The average sentence increase was 38.5%.*

The average guideline minimum and average sentence imposed have fluctuated over the past five years.

- The average guideline minimum increased and decreased throughout the fiscal years. The average guideline minimum was 40 months in fiscal year 2020 and 37 months in fiscal year 2024.
- The average sentence imposed increased and decreased throughout the fiscal years. The average sentence imposed was 15 months in fiscal year 2020 and 20 months in fiscal year 2024.

---

[1] Bribery offenses include cases in which the offender was sentenced under §2C1.1 or §2C1.2 (Offering, Giving, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions or Offering, Giving, Soliciting, or Receiving a Gratuity).

[2] Cases with incomplete sentencing information were excluded from the analysis.

[3] The Loss Table was amended effective November 1, 2001 and November 1, 2015.

[4] The Commission does not report the average for categories with fewer than three cases.

SOURCE: United States Sentencing Commission, FY 2020 through FY 2024 Datafiles, USSCFY20-USSCFY24.



**Sentences Relative to the Guideline Range**

Fiscal Year 2024
- Variances (48.0%)
- Under the Guidelines Manual (52.0%)

| | |
|---|---|
| Substantial Assistance | 24.9% |
| Within Range | 22.2% |
| Other Downward Departure | 4.4% |
| Upward Departure | 0.4% |



**Sentences Relative to the Guideline Range by Fiscal Year**

Within Range • Substantial Assistance • Other Downward Departure • Variances



**Average Guideline Minimum and Average Sentence (months)**

Guideline Minimum • Sentence



# QuickFacts

## Powder Cocaine Trafficking

Fiscal Year 2024
https://www.ussc.gov/research/quick-facts

## Population Snapshot

61,678 cases were reported in FY24;
18,150 involved drugs,[1]
18,029 involved drug trafficking.[2]

19.5% of such cases involved powder cocaine, up 30.0% since FY20.

### Number of Powder Cocaine Trafficking Offenses



FY 2020: 2,704
FY 2021: 2,935
FY 2022: 3,457
FY 2023: 3,577
FY 2024: 3,516

### Sentence Length[3]



Fiscal Year 2024
- Ten years or more (15.7%)
- Five to less than ten years (33.9%)
- Less than five years (50.4%)

### Individual and Offense Characteristics

91.4% of individuals sentenced for powder cocaine trafficking were men.

72.3% were Hispanic, 21.0% were Black, 5.6% were White, and 1.1% were Other races.

Their average age was 39 years.

62.2% were United States citizens.

68.1% had little or no prior criminal history (Criminal History Category I); 2.8% were sentenced under the career offender guideline (§4B1.1).

The median base offense level in these cases was 30, corresponding to between five and 15 kilograms of powder cocaine.

Sentences were increased for:
- possessing a weapon (21.2%);
- a leadership or supervisory role in the offense (9.1%).

Sentences were decreased for:
- minor or minimal participation in the offense (18.2%);
- meeting the safety valve criteria in the sentencing guidelines (47.5%).

The top five districts for powder cocaine trafficking offenses were:
- District of Puerto Rico (563);
- Southern District of Texas (364);
- Western District of Texas (171);
- Southern District of California (170);
- Middle District of Florida (170).

### Punishment

The average sentence for individuals trafficking powder cocaine was 64 months.

96.5% were sentenced to prison.

65.1% were convicted of an offense carrying a mandatory minimum penalty; 63.0% of those individuals were relieved of that penalty.

### Means of Relief from Mandatory Minimum Penalty for Powder Cocaine Trafficking

| Means of Relief | Percent |
| --- | --- |
| Safety Valve | 41.4% |
| Substantial Assistance | 10.8% |
| Both | 10.8% |

*This document was produced and published at U.S. taxpayer expense.*



## QuickFacts
### Powder Cocaine Trafficking

**Sentences Relative to the Guideline Range**

61.8% of sentences for powder cocaine trafficking were under the *Guidelines Manual*.

- 35.8% were within the guideline range.
- 18.4% were substantial assistance departures.
  - *The average sentence reduction was 52.9%.*
- 3.4% were Early Disposition Program (EDP) departures.[4]
  - *The average sentence reduction was 61.3%.*
- 4.0% were some other downward departure.
  - *The average sentence reduction was 40.2%.*
- 0.2% were upward departures.
  - *The average sentence increase was 43.7%.*

38.2% of sentences for powder cocaine trafficking were variances.

- 36.4% were downward variances.
  - *The average sentence reduction was 35.6%.*
- 1.8% were upward variances.
  - *The average sentence increase was 39.8%.*

The average guideline minimum has fluctuated while the average sentence imposed remained steady over the past five years.

- The average guideline minimum was 88 months in fiscal year 2020 and 85 months in fiscal year 2024.
- The average sentence imposed was 66 months in fiscal year 2020 and 64 months in fiscal year 2024.

---

[1] Drug offenses include cases where individuals were sentenced under USSG Chapter Two, Part D (Drugs). There were 3,524 individuals sentenced for powder cocaine offenses under USSG Chapter Two, Part D (Drugs) in FY 2024.

[2] Individuals sentenced for drug trafficking were sentenced under USSG §§2D1.1 (Drug Trafficking), 2D1.2 (Protected Locations), 2D1.5 (Continuing Criminal Enterprise), 2D1.6 (Use of a Communication Facility), 2D1.8 (Rent/Manage Drug Establishment), 2D1.10 (Endangering Human Life), or 2D1.14 (Narco-Terrorism).

[3] Cases with incomplete sentencing information were excluded from the analysis.

[4] "Early Disposition Program" (or EDP) departures are departures where the government sought a sentence below the guideline range because the defendant participated in the government's Early Disposition Program, through which cases are resolved in an expedited manner. See USSG §5K3.1.

SOURCE: United States Sentencing Commission, FY 2020 through FY 2024 Datafiles, USSCFY20-USSCFY24.

**Sentences Relative to the Guideline Range**



**Sentences Relative to the Guideline Range by Fiscal Year**



**Average Guideline Minimum and Average Sentence (months)**



**USSC Interactive Data Analyzer – Marijuana Offenses**





**USSC Interactive Data Analyzer – Fraud Offenses**





**USSC Interactive Data Analyzer – Bribery Offenses**





**USSC Interactive Data Analyzer – Powder Cocaine Offenses**



### Distribution of Imprisonment Length
Fiscal Year 2015,2016,2017,2018,2019,2020,2021,2022,2023,2024

- Less than 2 years 45.5%
- 2 to less than 5 years 22.7%
- 5 to less than 10 years 22.7%
- 10 to less than 15 years 9.1%

The figure includes the 22 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure.
**FILTER:**
Fiscal Year: 2015,2016,2017,2018,2019,2020,2021,2022,2023,2024; Circuit: All; State: All; District: All; Race: All; Gender: All; Age: Over 60; Citizenship: U.S. Citizen; Education: College graduate or more; Crime Type: Drug Trafficking; Guideline: All; Drug Type: Powder Cocaine; Sentencing Zone: All; Criminal History: I; Career Offender Status: Exclude Career Offenders

### Average and Median Imprisonment Length
Fiscal Year 2015,2016,2017,2018,2019,2020,2021,2022,2023,2024



- Imprisonment Length (Average Months): 43
- Imprisonment Length (Median Months): 27

The figure includes the 22 cases reported to the Commission. Cases missing information necessary to complete the analysis were excluded from this figure. Sentences of 470 months or greater (including life) were included in the sentence average computations as 470 months. The information in this figure does not include probation or conditions of confinement as described in USSG §5C1.1.
**FILTER:**
Fiscal Year: 2015,2016,2017,2018,2019,2020,2021,2022,2023,2024; Circuit: All; State: All; District: All; Race: All; Gender: All; Age: Over 60; Citizenship: U.S. Citizen; Education: College graduate or more; Crime Type: Drug Trafficking; Guideline: All; Drug Type: Powder Cocaine; Sentencing Zone: All; Criminal History: I; Career Offender Status: Exclude Career Offenders